UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No: 15-20356-CIV-MARTINEZ-GOODMAN

MIADECO CORP., a Florida Corporation,
et al.,

    Plaintiffs,

v.

UBER TECHNOLOGIES, INC., and
LYFT, INC.,

    Defendants.
_____/

## JOINT SCHEDULING REPORT AND JOINT PROPOSED SCHEDULING ORDER

Pursuant to Fed. R. Civ. P. 16(b), and 26(f), S.D. Fla. L.R. 16.1, and this Court's Order Requiring Parties to Meet and File Joint Scheduling Report and Proposed Order and Directing Parties to File Certificates of Interested Parties [D.E. 5], counsel for the Plaintiffs Miadeco Corp., et al., (the "Plaintiffs") and counsel for the Defendants Uber Technologies, Inc. ("Uber") and Lyft, Inc. ("Lyft") (collectively, the "Parties") submit this Joint Scheduling Conference Report (the "Report"). Counsel for the Parties have communicated about the issues identified in the Court's Order and S.D. Fla. Local Rule 16.1(b) and have worked together to create and submit this Report.

### I. INTRODUCTION

    **1. Plaintiffs' Statement of the Case:**

The Plaintiffs in this matter are for-hire license holders in Miami-Dade County, Florida and will seek to represent a putative class that will include "all persons or entities holding for-

hire licenses in Miami-Dade County and operating an authorized for-hire transportation service pursuant to [chapter] 31 of the [Miami-Dade County Code of Ordinances]." (Compl. § 16(a)).

In Miami-Dade County, ownership of a for-hire license is an intangible property right that empowers an individual or entity to provide transportation services via automobile in exchange for monetary compensation. The amount of existing for-hire licenses is explicitly capped and controlled by the Miami-Dade County Consumer Services Department ("CSD"), and because for-hire licenses are alienable this has created a legitimate and concrete basis for the fair-market valuation of for-hire licenses. This fair-market valuation is premised on the exclusive right of a for-hire license owner to provide for-hire transportation services in the County.

The Plaintiffs are bringing this putative class action to seek compensatory relief for the devaluation of their for-hire licenses as a result of Uber's and Lyft's unauthorized and illegal for-hire transportation service operations in Miami-Dade County. Specifically, the Plaintiffs initially brought claims against Uber and Lyft for: (1) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Counts I-II); (2) tortious interference with an advantageous business relationship (Counts III-IV); (3) tortious interference with a contractual relationship (Counts V-VI); (4) violations of the Florida Racketeer Influenced and Corrupt Organization Act ("Florida RICO Act") (counts VII-VIII); (5) trespass to chattels (Counts IX-X); (6) unjust enrichment (Counts XI-XII); (6) violations of the Lanham Act (Counts XIII-XIV); and (7) declaratory judgment as to UBER's and LYFT's status vis-à-vis chapter 31 of the Miami-Dade County Code of Ordinances ("MDCCO") (Counts XV-XVI). Later, after a thorough re-examination, Plaintiffs filed a "Notice of Voluntary Dismissal" for their Florida RICO Act and unjust enrichment claims. [D.E. 27].

Part of the Plaintiffs' claims against Uber and Lyft for violations of FDUTPA and the Lanham Act are premised on Uber's and Lyft's numerous actionable misrepresentations regarding: (i) the Defendants' status as regulated entities; (ii) that the Defendant's services are comparable to being in compliance with applicable laws and regulations; (iii) the characterization of their services as something other than for-profit, such as "ridesharing"; and (iv) the scope and applicability of their insurance to passengers using the Defendants' for-hire services. The Plaintiffs have pled with specificity as to the facts showing that these representations are both false, and as to their ability to mislead and confuse consumers.

It is pertinent to note that the Plaintiffs' claims in this matter are not directly premised on the failure of Uber and Lyft to comply with the requirements of chapter 31 of the MDCCO, but upon the tortious impact that Uber's and Lyft's unauthorized and illegal for-hire transportation service operations have had on the Plaintiffs and the putative class in Miami-Dade County. In this sense, the Plaintiffs are simply looking to the Court to exercise its vested authority to provide redress for the very real damages that have been inflicted by Uber and Lyft. This principle of legal recourse is at the very core of our judicial system.

Uber and Lyft seem to believe that they should be exempt from the consequences of their actions because they are currently trying to circumvent the judicial process by lobbying numerous Florida legislative bodies in an attempt to become legal. There is no basis in law to stay an action because of lobbying efforts. Should the state legislature or the county commission ever bless Uber's and Lyft's actions, perhaps they will then have a mootness argument, but that day has not come and a comity doctrine designed to keep courts from evaluating the actions of other courts has no bearing on whether Uber and Lyft have damaged the Plaintiffs and the putative class through their unauthorized and illegal for-hire transportation service operations.

Plaintiffs' strongly believe that class action treatment is appropriate here and that the class requirements of Rule 23(a), 23(b)(2) and (b)(3) have been met. Indeed, the Plaintiffs believe that the putative class has been tailored to meet the requirements of Rule 23(a), 23(b)(2) and (b)(3) because: (i) members of the putative class are so numerous that joinder of all members would be impracticable; (ii) because Uber and Lyft have acted on grounds which have affected all Plaintiffs uniformly, thereby creating common questions of fact and law; (iii) these common questions of fact and law predominate over any questions affecting only individual Plaintiffs; (iv) the Plaintiffs' claims are typical of the respective putative class's claims; (v) the Plaintiffs are adequate representatives of the putative class; (vi) the putative class is clearly ascertainable; (vii) joinder of all putative class members would create extreme hardship and inconvenience for the affected members; (viii) there are no known individual members of the putative class who are interested in individually controlling the prosecution of separate actions; (ix) the interests of justice and judicial efficiency will be well served by resolving the common disputes of the putative class in one forum; (x) individual suits would not be cost effective or economically maintainable as individual actions; (xi) individual suits would be difficult to manage because common legal rulings could not be applied to each individual suit; and (xii) this action is manageable as a class action.

    **2.    Defendants' Statement of the Case**:

Defendants are competitor technology companies that offer an internet application for connecting passengers seeking rides with drivers willing to give rides. Plaintiffs are for-hire license holders in Miami-Dade County who compete against the drivers who use Defendants' applications. Plaintiffs initially asserted eight separate claims against Uber and Lyft for: (1) a violation of FDUTPA (Counts I-II); (2) tortious interference with an advantageous business

4

relationship (Count III-IV); (3) tortious interference with a contractual relationship (Count V-VI); (4) violation of the Florida RICO Act (count VII-VIII); (5) trespass to chattels (Count IX-X); (6) unjust enrichment (Count XI-XII); (6) violation of the Lanham Act (Count XIII-XIV); and (7) declaratory judgment (Count XV-XVI). Plaintiffs filed a "Notice of Voluntary Dismissal" as to their RICO and unjust enrichment claims. [D.E. 27].

Defendants Uber and Lyft will file motions to dismiss on March 25, 2015, and March 30, 2015, respectively, and believe that Plaintiffs' legal theory is defective as a matter of law for many reasons. Most fundamentally, this putative class action is merely an attempt to circumvent the absence of a private cause of action in Chapter 31 of the MDCCO, which regulates "Vehicles for Hire." Plaintiffs' claims are based on alleged violations of Chapter 31, but Chapter 31 does not create a private cause of action and does not permit private parties, such as the Plaintiffs, to enforce its provisions. To the contrary, Chapter 31 specifically vests *exclusive enforcement authority* in the Director of the CSD and the municipal police departments in Miami-Dade County. Only the CSD has standing to bring a legal action for alleged violations of Chapter 31. Plaintiffs cannot usurp the authority of the County and circumvent legislative intent by bringing common law and statutory claims based upon alleged violations of Chapter 31.[1]

In addition, Plaintiffs also allege that Uber and Lyft made certain misrepresentations on their respective websites. However, Plaintiffs have failed to identify any false or misleading statement made by any Defendant, much less alleged any facts to show how any statement impacted the decision-making of any passenger to use Uber or Lyft drivers (rather than Plaintiffs) or somehow caused Plaintiffs to suffer any type of cognizable injury. Nor can

---

[1] Plaintiffs' Complaint fails to allege facts in support of the assertion that Uber and Lyft are subject to, much less in violation of, Chapter 31. Fundamentally, Plaintiffs are competitors of Defendants and seek to use this Court to thwart competition. Further, this matter should be stayed or dismissed in the interest of comity—out of respect for the County's enforcement role, and respect for the ongoing state and local legislative processes.

Plaintiffs satisfy any of the other remaining elements of their claims. Indeed, Defendants assert that as competitors of drivers who use Defendants' applications, Plaintiffs have tried to manufacture claims that simply do not exist. Further, this matter should be stayed or dismissed in the interest of comity and out of respect for the ongoing state and local legislative process. For these reasons and the others that will be more fully explained in their motions to dismiss, Defendants believe that Plaintiffs' Complaint should be dismissed with prejudice.

Finally, Defendants believe that Plaintiffs' claims are not appropriate for class treatment. Defendants believe that Plaintiffs cannot satisfy their "rigorous" evidentiary burden of meeting the requirements of Rules 23(a) and Rule 23(b), including, but not limited to, ascertainability, numerosity, commonality, typicality, adequacy, predominance, superiority, and manageability. Defendants further note that a class action is not an efficient or proper way to proceed, particularly when each putative class member may file a complaint with the CSD, the exclusive enforcement agency for Chapter 31.

## II.  INITIAL DISCLOSURES AND DISCOVERY

The Parties have agreed to exchange initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure on or before March 30, 2013.

The Parties anticipate conducting written discovery and depositions on all issues identified in the pleadings, and have agreed that discovery should be completed on modified standard track, in a bifurcated, two-phase process as detailed in Exhibit A. S.D. Fla. Local Rule 16.1(a)(2). The Parties also anticipate that discovery will be limited to those issues identified in the Pleadings.

Defendants reserve the right to seek a stay of discovery pending resolution of Defendants' motions to dismiss, once filed.

Counsel for both Uber and Lyft, which are competitors, have raised issues regarding the privilege and protection of discovery materials in this case and the need to limit access to such materials. Counsel for both Uber and Lyft, along with Plaintiffs, will meet and confer in good faith to reach an appropriate protective order to govern the disclosure of confidential and proprietary information.

### III. JOINT SCHEDULING REPORT

On March 2, 2015 at 11:30a.m., the following parties met in person to discuss the Joint Scheduling Report.

| | |
|---|---|
| Ryan P. Forrest | Counsel for Plaintiffs |
| Jose Menendez | Counsel for Plaintiffs |
| Daniel M. Samson | Counsel for Plaintiffs |
| Robert M. Brochin | Counsel for Defendant, Uber |
| Melissa M. Coates | Counsel for Defendant, Uber |
| Andrew Kemp-Gerstel | Counsel for Defendant, Lyft |
| Junaid Savani | Counsel for Defendant, Lyft |

#### 1. Likelihood of Settlement

The Parties have determined that settlement is unlikely at this juncture. The Parties may, in good faith, re-enter into settlement discussions at other points to be determined during the course of this matter.

#### 2. Likelihood of Appearance in the Action of Additional Parties

There is a possibility that the Plaintiffs will seek to add additional parties to this action in the future. Defendants do not presently anticipate the need to add additional parties.

#### 3. Proposed Time Limits

The parties proposed limits on time: (i) to join other parties and to amend the pleadings; (ii) to file and hear motions; and (iii) to complete discovery, and will follow a modified form of

the standard track. As set forth in Exhibit A, the Parties' proposed discovery schedule provides specific deadlines for class certification discovery and briefing.

4. **Proposals for the Formulation and Simplification of Issues, Including the Elimination of Frivolous Claims or Defenses, and the Number and Timing of Motions for Summary Judgment or Partial Summary Judgment.**

Upon meeting, counsel for both Uber and Lyft provided good faith notice of their position that there was no basis for Counts VII and VIII of the Plaintiffs' Complaint regarding allegations of Uber's and Lyft's violations of the Florida Racketeer Influenced and Corrupt Organization Act, or for Counts XI, and XII of the Plaintiffs' Complaint regarding allegations of Uber's and Lyft's unjust enrichment. Counsel for both Uber and Lyft also announced their intention to pursue Rule 11 Sanctions for these counts.

Counsel for the Plaintiffs indicated that it would undertake a good-faith re-examination of these issues as a result of the Defendants' concerns. Upon a thorough re-examination, the Plaintiffs decided to voluntarily dismiss the aforementioned claims in a show of good faith, and did so on March 4, 2015.

5. **Necessity or Desirability of Amendments to the Pleadings.**

None at this time. The Parties will continue to explore this issue during and after discovery.

6. **Possibility of Obtaining Admissions of Fact and Documents, Electronically Stored Information or Things which Will Avoid Unnecessary Proof, stipulations regarding the Authenticity of Documents, Electronically Stored Information or Things, and the Need for Advance Rulings from the Court on Admissibility of Evidence.**

The Parties will strive to avoid presenting unnecessary proof and cumulative evidence. The Parties agree that they will seek to stipulate to the admissibility of testimonial, physical, and documentary evidence wherever possible.

8

The Parties further agree to meet and confer on an on-going basis to discuss stipulations regarding facts, the authenticity of documents, and the need for advance rulings from the Court on the admissibility of evidence.

### 7. Suggestions for the Avoidance of Unnecessary Proof and of Cumulative Evidence

The Parties will strive to avoid presenting unnecessary proof and cumulative evidence. The Parties agree that they will seek to stipulate to the admissibility of testimonial, physical, and documentary evidence wherever possible.

### 8. Suggestions on the Advisability of Referring Matters to A Magistrate Judge or Master

The Parties consent to the referral of this action to a Magistrate Judge for discovery purposes only, and do not consent to the referral of this action to a Magistrate Judge for any substantive or dispositive motions, or for trial.

### 9. Preliminary Estimate of the Time Required for Trial

It is difficult to predict how long it will take to try this case until the Court first rules on Defendants' motion to dismiss and, to the extent necessary, Plaintiffs' motion for class certification. At this juncture, the Parties' preliminary estimate is that a trial will require at least 10 days with the Plaintiffs' portion of the trial lasting at least 5 days and the Defendants' portion of the trial lasting at least 5 days.

### 10. Requested Date(s) for Conferences Before Trial, Final Pre-trial Conference, and Trial.

The Parties' proposed time frames for conferences and trial are listed on in the joint proposed discovery schedule (Exhibit A).

### 11. Any other Information that Might be Helpful to the Court in Setting the Case for Status or Pretrial Conference

First, Plaintiffs filed a "Notice of Voluntary Dismissal of Counts VII, VIII, XI, and XII," which covers their Florida RICO and unjust enrichment claims. [D.E. 27].

Second, the Parties have agreed to the following regarding disclosure or discovery of electronically stored information: (a) whenever feasible, the parties will produce all electronically stored information in bate-stamped portable document format ("pdf"). Alternatively, if unable to produce electronically stored information in such a manner, the parties will produce the information in the currently stored format; and (b) they will maintain all relevant electronically stored information in its original format until final resolution of this matter.

Third, other similar cases against Uber and Lyft have been filed and are pending in this District. Plaintiffs' counsel filed another putative class action seeking injunctive and declaratory relief against Uber and Lyft, which is captioned *Borja. et al v. Uber Technologies, Inc.*, et al., No. 1:15-cv-20040-RNS (S.D. Fla.) ("*Borja* Class Action"), and is currently pending before Judge Scola.

In addition, a third putative class action was recently filed against Uber and Lyft, as well as Miami-Dade County, in the Circuit Court of Miami-Dade County. It was removed to this Court on March 11, 2015, and is captioned *Davis v. Miami-Dade County, et al.*, No. 1:15-cv-20994 (S.D. Fla.). That putative class action asserts a claim for an injunction against Miami-Dade County, and claims for restitution, tortious interference with advantageous business relationships, and a violation of the Florida Antitrust Act against Uber and Lyft. It has been assigned to Judge Altonaga.

**12. Whether the Trial will be Jury or Non-Jury**

This will be a jury trial on all matters, with the exception of the allegations found in Counts I and II, which pertain to the Florida Deceptive and Unfair Trading Practices Act, and which will be decided in a non-jury format.

**13. A Good Faith Estimate of the Specific Dollar Valuation of Actual Damages and other Relief at Issue.**

The Plaintiffs currently estimate the devaluation of all for-hire licenses in Miami-Dade County to be approximately $222,100,000.00, which has been incurred as a result of Uber's and Lyft's for-hire transportation service operations in Miami-Dade County. This loss figure is derived from the information available to the Plaintiffs that the average devaluation of a for-hire license in Miami-Dade County has been approximately $100,000.00 since Uber and Lyft began offering for-hire transportation services in Miami-Dade County, and in order to reach a good faith estimate for the putative class, that $100,000.00 devaluation figure has been multiplied by 2,221, which represents the overall number of for-hire licenses in Miami-Dade County.

Defendants dispute that Plaintiffs have plead a cognizable injury, much less that Plaintiffs are entitled to any damages. Defendants further dispute the basis for and propriety of Plaintiffs' alleged calculation of damages above.

**14. The need for variance from the discovery limitations imposed by the Local Rules/Federal Rules of Civil Procedure, including grounds supporting the requested variance.**

The Parties do not request variance from the discovery limitations imposed by the Local Rules and/or the Federal Rules of Civil Procedure at this time.

### 15. Outline of the Legal Elements of Each Claim and Defense Raised by the Pleadings (modeled on pattern substantive jury instructions applicable to this court)

Plaintiffs provide the following outline of the legal elements of each claim, other than Claims VII-VIII (Florida RICO) and XI-XII (unjust enrichment), which Plaintiffs have dismissed without prejudice.

## CLAIMS

### Counts I and II - Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201(1) et seq.

Plaintiffs bring Counts I and II pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201(1) et seq. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

Unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.[2] In construing Fla. Stat. § 501.204(1), due consideration and great weight shall be given to interpretations of the Federal Trade Commission and the federal courts relating to the Federal Trade Commission Act.[3]

Section 5 of the FTC Act declares unfair or deceptive acts or practice in or affecting commerce unlawful.[4] In order to establish that the Defendants engaged in deceptive acts and practices in violation of Section 5 of the FTC Act, the Plaintiffs must demonstrate that (1) there was a representation or omission; (2) the representation or omission was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation or omission was material.[5]

---

[2] Fla. Stat. § 501.204(1)(2014).
[3] Fla. Stat. § 501.204(2), (2014).
[4] 15 U.S.C. § 45.
[5] *FTC v. Peoples Credit First, LLC*, 244 F. Appx. 942, 944 (11th Cir. 2007)(citing *FTC v. Tashman*, 318 F.ed 1273, 1277 (11th Cir. 2003)).

12

Courts look to the net impression that the representation had on the general populace in determining whether a representation is likely to mislead reasonable consumers.[6] A claim is considered material if it involves information important to consumers and, hence, is likely to affect their choice of, or conduct regarding a product.[7] Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumed to be material.[8]

### Counts III and IV - Claims for Tortious Interference with an Advantageous Business Relationship

Plaintiffs bring Counts III and IV pursuant to the Florida common law claim of Tortious Interference with an Advantageous Business Relationship. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

In Florida, to be actionable, tortious interference with an advantageous business relationship requires: "(1) the existence of an advantageous business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with that relationship by the defendant, and (3) damage to the plaintiff as a result of the breach of the business relationship.[9]

Interference with an advantageous business relationship is defined as inducing or otherwise causing an entity not to enter a contract with a claimant, not to continue doing business

---

[6] *FTC v. Peoples Credit First, LLC*, No. 8:03-cv-2353, 2005 U.S. Dist. LEXIS 38545, *24 (M.D. Fla. Dec. 18, 2005), Aff'd, 244 F. Appx. 942, 944 (11th Cir. 2007); *see also Tashman*, 318 F. 3d at 1283; *FTC v. Atlantex Assocs.*, No. 87-0045, 1987 U.S. Dist. LEXIS 10911, at 29. The "net impression" approach involves viewing the representation as it would be seen "by the public generally which includes the ignorant, the unthinking and incredulous, who, in making purchases, do not stop to analyze but too often are governed by appearances and general impressions." *Peoples Credit First*, 2005 U.S. Dist. LEXIS 38545 at 24.
[7] *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d at 1167, 1190 (N.D. Ga. 2008), *aff'd*, 2009 U.S. Dist. LEXIS 273888 (11th Cir. Dec. 15, 2009); *see also FTC v. USA Beverages Inc.*, No. 05-61682, 2005 U.S. Dist. LEXIS 39075, * 17 (S.D. Fla. Dec. 5, 2005).
[8] *Nat'l Urological Group, Inc.*, 645 F. Supp. 2d at 1190; *Peoples Credit First*, 2005 U.S. Dist. LEXIS 38545 at * 26; *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1267 (S.D. Fla. 2007).
[9] *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc.*, 361 So. 2d 769 (Fla. 4th DCA 1978) (*citing Symon v. J. Rolfe Davis, Inc.*, 245 So. 2d 278 (Fla. 4th DCA 1971)).

13

with the claimant, or to terminate or bring to an end a contract that the entity was not bound to continue with the claimant.[10]

The Plaintiff must not only prove by the greater weight of the evidence that the Defendant's conduct interfered with the Plaintiff's business relationships with an entity, but the Plaintiff must also prove that the Defendant's interference was improper.[11] Interference is improper if an entity interferes through the use of misrepresentations, or illegal conduct.[12]

## Counts V and VI - Claims for Tortious Interference with a Contractual Business Relationship

Plaintiffs bring Counts V and VI pursuant to the Florida common law claim of Tortious Interference with a Contractual Business Relationship. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

An essential element for the establishment of a tortious interference with a contractual relationship is the existence of a contract.[13] The elements of a cause of action for tortious interference with a contractual relationship are: "(1) The existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of any justification or privilege, (5) damages resulting from the breach."[14]

Interference with an advantageous business relationship is defined as inducing or otherwise causing an entity not to enter a contract with a claimant, not to continue doing business

---

[10] Fla. Std. Jury Instr. (Civ.) 408.6.
[11] Fla. Std. Jury Instr. (Civ.) 408.6.
[12] Fla. Std. Jury Instr. (Civ.) 408.6.
[13] *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397 (Fla. 1st DCA 1992).
[14] *Id.* at 397-98.

14

with the claimant, or to terminate or bring to an end a contract that the entity was not bound to continue with the claimant.[15]

The Plaintiff must not only prove by the greater weight of the evidence that the Defendant's conduct interfered with the Plaintiff's business relationships with an entity, but the Plaintiff must also prove that the Defendant's interference was improper.[16] Interference is improper if an entity interferes through the use of misrepresentations, or illegal conduct.[17]

### Counts IX and X – Claims for Trespass to Chattels

Plaintiffs bring Counts IX and X pursuant to the Florida common law claim of Trespass to Chattels. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

In Florida, the elements of a trespass to chattels claim are: "the intentional use of, or interference with, a chattel which is in the possession of another, without justification."[18] Florida courts have defined chattel as "[e]very species of property, movable or immovable, which is less than a freehold. Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another."[19]

Therefore, to prevail on this claim, the Plaintiffs must prove by the greater weight of the evidence that their chattels were interfered with, without justification.

### Counts XIII and XIV – Claims for Violations of the Lanham Act

Plaintiffs bring Counts XIII and XIV regarding violations of the Lanham Act, which is codified at 15 U.S.C. 1125(a)(1)(b). Federal law gives a civil cause of action to any person that

---

[15] Fla. Std. Jury Instr. (Civ.) 408.6.
[16] Fla. Std. Jury Instr. (Civ.) 408.6.
[17] Fla. Std. Jury Instr. (Civ.) 408.6.
[18] *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998).
[19] *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 846 (Fla. 4th DCA 2001).

15

has been wronged by another entity through false or misleading advertisements or representations of fact.[20] To prevail on a false advertising claim under the Lanham Act, a plaintiff must establish by the greater weight of the evidence that:

> (1) the defendant's advertisements were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has been injured as a result of the false advertising.[21]

"An advertisement is 'false' if it is literally false; an advertisement is 'misleading' if it may literally be true (or is ambiguous) but implicitly conveys a false impression, is misleading in context, or is likely to deceive consumers."[22] "If an advertisement is not literally false, then the Plaintiff must demonstrate that consumers were actually deceived."[23] Finally, statements amounting to an opinion or "puffery" are generally not actionable under the Lanham Act.[24]

### Counts XV and XVI – Claims for Declaratory Judgment

Plaintiffs bring Counts XV and XVI for Declaratory Judgment. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The purpose of a declaratory judgment is to afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations.[25]

In order to be entitled to declaratory relief, a party must show:

> [1] There is a bona fide, actual, present practical need for the declaration; [2] that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; [3] that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law

---

[20] 15 U.S.C. 1125(a)(1)(b).
[21] *Intertape Polymer Corp. v. Inspired Technologies, Inc.*, 725 F. Supp. 2d 1319, 1332 (M.D. Fla. 2010).
[22] *Id.* at 1333 (citing *Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256, 1261 (11th Cir.2004)).
[23] *Id.* (citing *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir.2002); *see also Border Collie Rescue, Inc. v. Ryan*, 418 F.Supp.2d 1330, 1346–47 (M.D.Fla.2006).
[24] *Id.*
[25] *Santa Rosa Cnty. v. Admin. Comm'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1192 (Fla. 1995).

applicable to the facts; [4] that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; [5] that the antagonistic and adverse interests are all before the court by proper process or class representation and [6] that the relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.[26]

## DEFENSES

Defendants do not believe that Plaintiffs have pled or can meet the elements of their claims, and Defendants reserve the right to challenge Plaintiffs' description (above) of their claims and what they must allege and prove to succeed on those claims. By March 25, 2015, and March 30, 2015, Defendants will file motions to dismiss that explain why Plaintiffs' claims fail as a matter of law, including why Plaintiffs have failed to plead the fundamental elements of their claims (such as any actionable misconduct, causation, or a cognizable injury). Because Defendants will move to dismiss Plaintiffs' Complaint, Defendants have not yet pled any affirmative defenses.

**Respectfully submitted this 23rd day of March, 2015.**

*[Signature Page Follows]*

---

[26] *Harris v. Aberdeen Prop. Owners Ass'n, Inc.*, 135 So. 3d 365, 368 (Fla 4th DCA 2014).

| | |
|---|---|
| /s Daniel M. Samson    .<br>Daniel M. Samson, Esq.<br>Florida Bar No. 866911<br>dan@samsonappellatelaw.com<br>Samson Appellate Law<br>201 S. Biscayne Blvd., Suite 2700<br>Miami, Florida 33131<br>T: (305) 341-3055<br>F: (305) 379-3428<br>*Attorneys for the Plaintiffs* | /s Ralph G. Patino    .<br>Ralph G. Patino, Esq.<br>Florida Bar No. 768881<br>Ryan P. Forrest, Esq.<br>Florida Bar No. 111487<br>service@patinolaw.com<br>Patino & Associates, P.A.<br>550 Biltmore Way, Suite 740<br>Coral Gables, Florida 33134<br>T: (305) 443-6163<br>F: (305) 443-5635<br>*Attorneys for the Plaintiffs* |
| /s Brian M. Ercole    .<br>Robert M. Brochin, Esq.<br>Florida Bar No. 0319661<br>Brian M. Ercole, Esq.<br>Florida Bar No. 102189<br>Bercole@morganlewis.com<br>Rbrochin@morganlewis.com<br>Morgan, Lewis, Bockius, LLP<br>200 S. Biscayne Blvd., Suite 5300<br>Miami, FL 33131-2339<br>Phone: 305-415-3303<br>Fax: 877-432-9652<br>*Attorneys for Uber Technologies, Inc.:* | /s Andrew Kemp-Gerstel    .<br>Andrew Kemp-Gerstel, Esq.<br>Florida Bar No. 44332<br>Junaid N. Savani, Esq.<br>Florida Bar No. 88816<br>Service@lgplaw.com<br>akg@lgplaw.com<br>jns@lgplaw.com<br>mkv@lgplaw.comLiebler, Gonzalez & Portuondo<br>44 W. Flagler St.<br>Miami, FL 33130<br>Phone:  305-379-0400<br>Fax:    305-379-9626<br>*Attorneys for Lyft, Inc.* |
| | /s Danny David    .<br>Danny David, Esq.<br>Texas Bar No. 24028267<br>Danny.david@bakerbotts.com<br>Baker Botts LLP<br>One Shell Plaza<br>910 Louisiana Street<br>Houston, Texas 77002<br>Phone: 713-229-4055<br>Fax: 713-229-2855<br>*Attorneys for Lyft, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

By:    /s Ralph G. Patino  .
**RALPH G. PATINO, ESQ.**
Florida Bar No. 768881