**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(MIAMI DIVISION)**

**CASE NO. 1:15-cv-20356**

MIADECO CORP., a Florida Corporation,
B&S TAXI CORP., a Florida Corporation,
CHECKER CAB OPERATIONS, INC., a
Florida Corporation, and PHIL ELLIS
LOWERY, MINNE MAE LOWERY,
EDIELENE GAIL LOWERY BROWN, and
ARNETT LEE JR., individually and on
behalf of others similarly situated,

      Plaintiffs,

vs.

UBER TECHNOLOGIES, INC., and LYFT,
INC.,

      Defendants.

_____/

**LYFT'S MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

TABLE OF CONTENTS

I.Page

I.      BACKGROUND .................................................................................................. 2

II.     LEGAL STANDARD .......................................................................................... 3

III.    ARGUMENTS AND AUTHORITIES ............................................................... 3

        II.A.   Plaintiffs cannot obtain a declaratory judgment enforcing the Miami-Dade
                County ordinances. ................................................................................ 3

                III.1.   Plaintiffs do not seek a declaration of their own rights or legal
                         interests. ..................................................................................... 4

                IV.2.    Plaintiffs cannot base their DJA claim on the ordinances because
                         they grant no private cause of action. ........................................ 4

                V.3.     Lyft is not subject to the ordinances as a matter of law ............... 7

        VI.B.   Plaintiffs fail to state a claim under the Lanham Act ............................... 8

                VII.1.   Plaintiffs fail to plead an actionable misrepresentation of fact, let
                         alone one that actually or potentially materially deceived
                         consumers. .................................................................................. 8

                         VIII.a. The "ridesharing" representations are not false or
                                 misleading. ........................................................................ 9

                         IX.b.   The compliance-with-law representations are not false or
                                 misleading. ...................................................................... 10

                         X.c.    The insurance representations are not false or misleading. .......... 11

                XI.2.    Plaintiffs do not adequately plead an injury or proximate causation ........ 13

        XII.C.  Plaintiffs' allegations do not state a claim under Florida's Deceptive and
                Unfair Trade Practices Act .................................................................. 14

        XIII.D. Plaintiffs' tortious interference allegations fail to state a claim. ......................... 16

                XIV.1.   The "riding public" is too vague a group to support Plaintiffs'
                         tortious interference with advantageous business relationship
                         claim ......................................................................................... 16

                XV.2.    Plaintiffs' relationship with the County does not give rise to a
                         tortious interference with advantageous business relations claim. ........... 18

**XVI.** 3. The County's ordinances do not give rise to a tortious interference with contract claim. .................................................................................. 18

**XVII.** E. ................................. Plaintiffs' trespass to chattels allegations fail to state a claim. 19

**XVIII.** F. .................. Alternatively, the Court should abstain from deciding this local issue. 20

IV.    CONCLUSION .................................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

CASES

*Aetna Cas. & Sur. Co. v. Growers Props., No. 58 Ltd.*,
   542 So.2d 1028 (Fla. Dist. Ct. App. 1989) ...........................................................................12

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
   889 F. Supp. 2d 1304 (M.D. Fla. 2012) .................................................................................10

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
   No. 8:11-cv-775-T-24-TBM, 2012 WL 33155 (M.D. Fla. Jan. 6, 2012) .........................10, 11

*De La Campa v. Grifols Am., Inc.*,
   819 So.2d 940 (Fla. Dist. Ct. App. 2002) (per curiam) ...........................................................6

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006).................................................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................3, 8, 13

*Bakri v. City of Daytona Beach*,
   No. 608-CV-1572-ORL28GJK, 2009 WL 1587165 (M.D. Fla. June 5, 2009) ......................18

*Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*,
   Civ. A. No. 1:13-CV-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014) ...............11

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943).................................................................................................................20

*Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   805 So.2d 835 (Fla. Dist. Ct. App. 2001) .............................................................................19

*Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
   915 F.2d 167 (5th Cir. 1990) ...............................................................................................4, 5

*Del Rio v. City of Hialeah*,
   904 So.2d 484 (Fla. Dist. Ct. App. 2005) ...............................................................................6

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012) ...........................................................................................13, 19

*Dial A Car, Inc. v. Transp., Inc.*,
   82 F.3d 484 (D.C. Cir. 1996)...........................................................................................10, 20

*Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.*,
   674 F. Supp. 2d 1344 (S.D. Fla. 2009) ..................................................................................15

iii

*Eisenberg v. City of Miami Beach,*
  1 F. Supp. 3d 1327, 1350 (S.D. Fla. 2014) ...................................................................4

*Emory v. Peeler,*
  756 F.2d 1547 (11th Cir. 1985) ...................................................................................4

*Ethan Allen, Inc. v. Georgetown Manor, Inc.,*
  647 So.2d 812 (Fla. 1994)......................................................................................16, 17

*Eveillard v. Nationstar Mortg. LLC,*
  No. 14-CIV-61786, 2015 WL 127893 (S.D. Fla. Jan. 8, 2015).....................................4

*Feheley v. LAI Games Sales, Inc.,*
  No. 1:08-cv-23060, 2009 WL 2474061 (S.D. Fla. Aug. 11, 2009) .........................15

*Greater Houston Transp. Co. v. Uber Techs., Inc.,*
  Civ. A. No. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015).......9, 10, 11, 17, 18, 19

*Hickson Corp. v. N. Crossarm Co.,*
  357 F.3d 1256 (11th Cir. 2004) ............................................................................8, 14

*Horowitz v. Plantation Gen. Hosp. Ltd. P'ship,*
  959 So. 2d 176 (Fla. 2007).........................................................................................5

*In re Edgewater By The Bay, LLP,*
  419 B.R. 511 (Bankr. S.D. Fla. 2009)......................................................................15

*In re Mona Lisa at Celebration, LLC,*
  472 B.R. 582 (Bankr. M.D. Fla. 2012), *aff'd*, 495 B.R. 535 (M.D. Fla. 2013).......................16

*Int'l Eateries of Am., Inc. v. Bd. of Cnty. Comm'rs,*
  838 F. Supp. 580 (S.D. Fla. 1993) ..........................................................................20

*Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.,*
  262 F.3d 1152 (11th Cir. 2001) ..........................................................................16, 17

*Intertape Polymer Corp. v. Inspired Techs., Inc.,*
  725 F. Supp. 2d 1319 (M.D. Fla. 2010)...................................................................11

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
  626 F.3d 1327 (11th Cir. 2010) ...................................................................................3

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,*
  299 F.3d 1242 (11th Cir. 2002) ...................................................................................8

*Johnson v. Aetna Life & Cas. Co.,*
  472 So.2d 859 (Fla. Dist. Ct. App. 1985) ...............................................................12

*Jones v. Hobbs*,
   745 F. Supp. 2d 886 (E.D. Ark. 2010), *aff'd sub nom. by Williams v. Hobbs*, 658 F.3d
   842 (8th Cir. 2011) ........................................................................................................6

*Klopfenstein v. Deutsche Bank Sec., Inc.*,
   592 F. App'x 812 (11th Cir. 2014) ...............................................................................2

*Koziara v. City of Casselberry*,
   392 F.3d 1302 (11th Cir. 2004) ....................................................................................4

*Leon v. Tapas & Tinos, Inc.*,
   No. 14-21133-CIV, 2014 WL 5032435 (S.D. Fla. Oct. 8, 2014) ..........................14, 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014)............................................................................................13, 14

*Lozman v. City of Riviera Beach*,
   713 F.3d 1066 (11th Cir. 2013) ....................................................................................2

*Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*,
   No. 2:07-cv-82-FtM-34SPC, 2008 WL 1925088 (M.D. Fla. Apr. 29, 2008).............16

*McKinney-Green, Inc. v. Davis*,
   606 So.2d 393 (Fla. Dist. Ct. App. 1992) ...................................................................18

*Miami-Dade Cnty. v. Deerwood Homeowners' Ass'n*,
   979 So. 2d 1103 (Fla. Dist. Ct. App. 2008) ..................................................................6

*Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*,
   572 F.3d 502 (8th Cir. 2009) .................................................................................13, 19

*Murthy v. N. Sinha Corp.*,
   644 So. 2d 983 (Fla. 1994)............................................................................................5

*Osmose, Inc. v. Viance, LLC*,
   612 F.3d 1298 (11th Cir. 2010) ....................................................................................8

*Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*,
   2013 WL 1786356 (S.D. Fla. Apr. 25, 2013) .............................................................14

*QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*,
   94 So. 3d 541 (Fla. 2012)..............................................................................................5

*Rosenbaum v. Becker & Poliakoff, P.A.*,
   No. 08-81004-CIV, 2010 WL 376309 (S.D. Fla. Jan. 26, 2010)..................................4

*Schutt v. Lewis*,
   No. 6:12-CV-1697-ORL-37, 2014 WL 3908187 (M.D. Fla. Aug. 11, 2014) .............19

v

*Skelly Oil Co. v. Phillips Petrol. Co.*,
   339 U.S. 667 (1950).....................................................................................................4

*Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*,
   681 So. 2d 826 (Fla. Dist. Ct. App. 1996) ...............................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................2, 3

*United Auto. Ins. Co. v. A 1st Choice Healthcare Sys.*,
   21 So. 3d 124 (Fla. Dist. Ct. App. 2009) .................................................................6

*Vaughn v. Segal*,
   707 So. 2d 951 (Fla. Dist. Ct. App. 1998) ...............................................................6

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ..............................................................................15

*Zolin v. Caruth*,
   No. 3:09-cv-38-WS, 2009 WL 2982907 (N.D. Fla. Sept. 14, 2009)........................4

## STATUTES

28 U.S.C. § 2201(a) (2012)......................................................................................................3

Fla. Stat. Ann. § 501.203(3)(c) (2014)...................................................................................15

## OTHER AUTHORITIES

Restatement (Second) of Torts § 217, cmt. E (1965) .................................................................20

Defendant Lyft, Inc. moves to dismiss Plaintiffs' Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6).  This lawsuit boils down to a complaint about the scope and fairness of county ordinances.  Plaintiffs—private parties in the taxicab and limousine business that own "for-hire licenses" in Miami-Dade County—are unhappy that new transportation network platforms are not subject to the same regulations as Plaintiffs.[1]  That unhappiness may raise political questions concerning the appropriateness of regulating transportation network platforms, but it does not give rise to the myriad causes of action asserted in the Complaint.

Reduced to its core, Plaintiffs' Complaint is nothing more than an attempt to hold Lyft liable for alleged violations of ordinances that provide no private right of action.  But Plaintiffs cannot use any of the causes of action that they assert as a backdoor to enforcement.  All of their claims suffer from this fatal defect, as well as a host of other pleading deficiencies:

- Their Declaratory Judgment Act ("DJA") allegations fail to state a claim because Plaintiffs do not seek a declaration of their own rights, they do not have statutory standing to enforce the ordinances, and they have not pleaded facts plausibly alleging that Lyft is subject to, let alone has violated, the ordinances.

- Their Lanham Act allegations fail to state a claim because Plaintiffs do not adequately plead any of the elements of a prima facie false advertisement claim.

- Plaintiffs are not "consumers," as required to bring a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, and they impermissibly predicate their FDUTPA claim on the ordinances, which are not designed to target unfair or deceptive trade practices.

- Plaintiffs' tortious interference claims fail because they cannot be based on the existence of a purported advantageous business or contractual relationship with "the riding public" or Miami-Dade County.

- Plaintiffs' trespass to chattels claim fails because their right to operate in the for-hire vehicle market does not constitute a chattel under Florida law.

This suit should be seen as exactly what it is:  an attempt to quash competition and hold Lyft liable under ordinances that do not apply to it, and in fact, were enacted before companies like

---

[1]     Plaintiffs are attempting to bring this suit as a class action on behalf of other owners of for-hire licenses in Miami-Dade County.

Lyft ever existed. Because Plaintiffs have not alleged any claims upon which relief can be granted, all of their claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).[2]

Alternatively, because Plaintiffs' allegations center on state law issues concerning local ordinances, and because the relief sought would interfere with the ongoing legislative process and a still-evolving state regulatory scheme, Lyft asks the Court to abstain from deciding the issues presented and dismiss or stay this case.

## I.    BACKGROUND

Lyft is a mobile-based ridesharing platform that "provides a means to enable persons who seek transportation to certain destinations ('Riders') to be matched with persons driving to or through those destinations ('Drivers')." Ex. A, Lyft's Terms of Service at 1.[3] Lyft offers information and a method to connect drivers and riders with each other, but it does not provide transportation services. *See* Compl. ¶ 107 (quoting Lyft's Terms of Service).

Lyft has procured various insurance policies, including a policy that provides drivers with automobile liability insurance of up to $1,000,000 per occurrence. *Id.* ¶¶ 96–97. The policy offers liability protection while the driver is transporting riders on a trip arranged through the Lyft platform. *Id.* ¶¶ 90, 97.

The crux of Plaintiffs' Complaint is their allegation that the Lyft platform violates Miami-Dade County ordinances regulating vehicles for hire. *See, e.g.*, *id.* ¶ 25 ("This case arises from the unauthorized and illegal for-hire transportation service operations of UBER & LYFT . . . ."). Notably, however, Plaintiffs do not allege that there has been an adjudicated finding that Lyft's platform actually contravenes the ordinances, and for good reason—no such adjudicated finding exists. Instead, state and county officials are considering questions about the appropriateness of regulating transportation network platforms, and Lyft is working closely with

---

[2]    Plaintiffs voluntarily dismissed their claims under Florida's RICO statute (Count VIII) and their unjust enrichment claim (Count XII) against Lyft. *See* Dkt. No. 27. Because Plaintiffs have abandoned these claims, Lyft does not respond to them here.

[3]    Plaintiffs incorporate Lyft's terms of service by reference in their complaint. *See, e.g.*, Compl. ¶¶ 69, 101, 107. Accordingly, they may properly be considered in deciding Lyft's motion. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *accord Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013).

LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130  (305) 379-0400

these officials to address any concerns about Lyft's services or drivers who use the Lyft ridesharing platform.[4]

## II.    LEGAL STANDARD

Rule 12(b)(6) mandates dismissal of a complaint when its allegations "fail[] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To avoid dismissal, a plaintiff must provide both fair notice of the nature of the claim and plausible factual allegations to support it.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 698–99 (2009).  "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotation marks omitted).  "And to nudge the claim across the line, the complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.    ARGUMENTS AND AUTHORITIES

### A.    Plaintiffs cannot obtain a declaratory judgment enforcing the Miami-Dade County ordinances.

Plaintiffs seek a declaratory judgment that Lyft is a "passenger service company" "operating in violation of the [ordinances]."  Compl. ¶¶ 290–91.  Critically, however, the DJA is not available to Plaintiffs for three independent reasons:  (1) they are not seeking a declaration of their own rights or legal interests; (2) they lack statutory standing to enforce the ordinances; and (3) they have not pleaded a violation of the ordinances.

---

[4]    Lyft requests that the Court also take judicial notice of the proposed state legislation concerning transportation network companies.  *See* Ex. B, Fla. H.B. 817 (2015), *available at* http://www.myfloridahouse.com/Sections/Documents/loaddoc.aspx?FileName=_h0817__.docx &DocumentType=Bill&BillNumber=0817&Session=2015; Fla. S.B. 1326 (2015), *available at* http://www.myfloridahouse.com/Sections/Documents/loaddoc.aspx?FileName=_s1326__.DOC X&DocumentType=Bill&BillNumber=1326&Session=2015; *see also Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 n.5 (11th Cir. 2014) ("[A] district court may take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment." (citing *Tellabs*, 551 U.S. at 322)).

1.      **Plaintiffs do not seek a declaration of their own rights or legal interests.**

The DJA provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations *of any interested party seeking such declaration* . . . ."  28 U.S.C. § 2201(a) (2012) (emphasis added).  Plaintiffs do not seek a declaration of their own rights or legal relations; rather, they seek a declaration that Lyft has violated Miami-Dade County's ordinances.  Because Plaintiffs would be strangers to any potential litigation that might arise between Lyft and the County over the applicability of, or Lyft's compliance with, the ordinances, Plaintiffs have no standing to obtain the declaratory judgment that they seek.  *See Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (holding that DJA authorizes a declaratory judgment only when, based on the facts alleged, a substantial continuing controversy exists between two adverse parties); *see also Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 172 (5th Cir. 1990) ("While the Act should be liberally applied when the plaintiff has a legal interest in an actual case or controversy, the Act does not allow a stranger to intended litigation to use a declaratory judgment action as a vehicle to create a cause of action for which it has no legal liability."); *cf. Koziara v. City of Casselberry*, 392 F.3d 1302, 1304–06 (11th Cir. 2004) (holding that exotic dancer, who sought declaration that city ordinance enforced against her employer was unconstitutional, "was only a 'concerned bystander'" and could not challenge the revocation of her employer's license to operate).

2.      **Plaintiffs cannot base their declaratory judgment claim on the ordinances because they grant no private cause of action.**

Moreover, Plaintiffs cannot use the DJA to enforce the County's ordinances because the ordinances do not authorize private enforcement actions.  A claim for declaratory relief "cannot stand on its own"; rather, it "is a procedural device which depends on an underlying substantive cause of action."  *Eveillard v. Nationstar Mortg. LLC*, No. 14-CIV-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015); *see Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only.") (internal quotation marks omitted); *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-81004-CIV, 2010 WL 376309, at *8 (S.D. Fla. Jan. 26, 2010) ("[D]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." (quoting *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963))); *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1350 (S.D. Fla. 2014) (dismissing claim for declaratory judgment where "Plaintiffs fail[ed] to allege a

LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

separate cause of action," and thus, "d[id] not state a claim upon which independent relief can be granted"); *cf. Zolin v. Caruth*, No. 3:09-cv-38-WS, 2009 WL 2982907, at *7 (N.D. Fla. Sept. 14, 2009) ("[T]he Declaratory Judgment Act does *not* establish an independent cause of action, it is procedural only and merely establishes a legal remedy available in cases brought pursuant to some other law.").  Because "it is the underlying cause of action of the defendant that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action." *Collin Cnty.*, 915 F.2d at 171 ("It would be anomalous to allow a party who would not be a proper defendant nor able to intervene of right in a NEPA lawsuit to precipitate a judgment in such a suit between others by filing an action pursuant to the [DJA].").

Here, Plaintiffs would not be proper parties to any enforcement action against Lyft because the ordinances do not create a private right of action.  Under Florida law, "[t]he primary guide in determining whether the Legislature intended to create a private cause of action is the actual language used in the statute." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 551 (Fla. 2012) (internal quotation marks omitted).  "In determining the meaning of the language used, the court must look not only to the words themselves but also to the context in which the language lies." *Id.* (internal quotation marks omitted).  Courts may not rely on "extrinsic aids to statutory construction when the language of a statute or ordinance is plain and unambiguous." *Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*, 681 So. 2d 826, 830–31 (Fla. Dist. Ct. App. 1996).  An unambiguous statute cannot be construed "in a way which would extend, modify, or *limit*, its express terms or its *reasonable and obvious implications*," as "[t]o do so would be an abrogation of legislative power." *Horowitz v. Plantation Gen. Hosp. Ltd. P'ship*, 959 So. 2d 176, 182 (Fla. 2007) (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)).

The same rules of construction apply to local ordinances.  Indeed, in concluding that an ordinance did not create a private cause of action, one Florida appellate court explained the issue as follows:

> Writing in the context of a statute, the Florida Supreme Court has said, "Today . . . most courts generally look to the legislative intent of a statute to determine whether a private cause of action should be judicially inferred." *Murthy v. N. Sinha Corp*., 644 So. 2d 983, 985 (Fla. 1994) (citations omitted).  The same logic applies to a local ordinance.  Here, the ordinance sets up a list of prohibited

> conditions, establishes a schedule of required maintenance, and provides for enforcement by the county authorities. Civil penalties may be assessed through the county's code enforcement procedures. We find no intention to create a private cause of action under this county ordinance.

*Vaughn v. Segal*, 707 So. 2d 951, 952 (Fla. Dist. Ct. App. 1998) (some citations omitted);[5] *see United Auto. Ins. Co. v. A 1st Choice Healthcare Sys.*, 21 So. 3d 124, 128–29 (Fla. Dist. Ct. App. 2009) ("It is axiomatic that whether a private right of action exists for a violation of a statute is a matter of legislative intent. Absent a specific expression of such intent, a private right of action may not be implied.") (citations omitted).

Similarly, nothing in the County's ordinances reflects an intent to create a private cause of action. In fact, Chapter 31 includes a detailed enforcement provision that expressly vests the Miami-Dade County Consumer Services Department, as well as county and local police, with the right to enforce the ordinances. *See, e.g.*, Miami-Dade Cnty., Fla., Code Ordin. §§ 31-75, 31-90, 31-110, 31-209, 31-303(i), 31.610 (Dec. 16, 2014).[6] Thus, whether Lyft's service platform is subject to or violates the ordinances is an issue for the Miami-Dade County officials specifically entrusted with enforcing the ordinances to decide; it is not the appropriate subject of a declaratory judgment action. *See, e.g.*, *Jones v. Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010) ("To entertain, under the auspices of the [DJA], a cause of action brought by private parties seeking a declaration that the [statutes] ha[ve] been violated would, in effect, evade the intent of Congress not to create private rights of action under those statutes and would circumvent the discretion entrusted to the executive branch in deciding how and when to enforce those statutes."), *aff'd sub nom. by Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011).

---

[5]    Other Florida courts have similarly refused to permit private parties to enforce provisions of county ordinances absent an express private cause of action. *Compare Miami-Dade Cnty. v. Deerwood Homeowners' Ass'n*, 979 So. 2d 1103, 1104–15 (Fla. Dist. Ct. App. 2008) (refusing to imply a private right of action for violations of county ordinance) *and De La Campa v. Grifols Am., Inc.*, 819 So.2d 940, 941–42 (Fla. Dist. Ct. App. 2002) (per curiam) (same) *with Del Rio v. City of Hialeah*, 904 So.2d 484, 486 (Fla. Dist. Ct. App. 2005) (finding private cause of action to enforce ordinance based on provision entitled "Private Right of Action").

[6]    For example, the article concerning licensing and regulation of for-hire motor vehicles expressly provides that "*the Director* [of the Miami-Dade County Consumer Services Department] may secure enforcement of the provisions of this article by any legal action necessary, such as application to any court for injunctive relief or other appropriate relief." Miami-Dade Cnty., Fla., Code Ordin. § 31-90(e) (emphasis added).

LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

### 3.      Lyft is not subject to the ordinances as a matter of law.

Even if Plaintiffs could somehow enforce the ordinances, their DJA claim still should be dismissed because Plaintiffs fail to allege any facts to support their contention that Lyft is subject to, much less in violation of, the ordinances.  For example, although Plaintiffs baldly assert that Lyft is a "passenger service compan[y]" that provides for-hire transportation services covered by the ordinances, *see, e.g.*, Compl. ¶ 53, Plaintiffs plead no facts to support those allegations.  Nor could they—Lyft is not a passenger service company within the meaning of the ordinances, and it does not provide such services; rather, it provides a mobile-based ridesharing platform that is not subject to Chapter 31.

Chapter 31 regulates the use of "Vehicles for Hire."  *See, e.g.*, Miami-Dade Cnty., Fla. Code Ordin. §§ 31-82(a), 31-87(a), 31.88(a), 31–89(a), 31.303(a) (regulating "for-hire motor vehicle[s]").  "*For-hire* means driving, operating, or managing a for-hire passenger motor vehicle . . . ."  *Id.* § 31-81(q).  "*[F]or-hire motor vehicle[s]* means any chauffeur-driven taxicab."  *Id.* § 31-81(u).  "*Taxicab* means an eight (8) passenger or less, exclusive of chauffeur, for-hire passenger motor vehicle . . . , which is equipped with a taximeter, unless authorized to exclusively operate at a flat rate, and where the route and destination are controlled by the passenger."  *Id.* § 31-81(qq).  Finally, a "*[p]assenger service company*" is "a Florida corporation or partnership created for the purpose of providing passenger services for *for-hire taxi operations* and providing various services *to for-hire license holder(s)* . . . ."  *Id.* § 31-81(s) (second and third emphases added).

As a threshold matter, Lyft is not a Florida corporation or partnership, and thus, cannot be a passenger service company within the meaning of the ordinances.  *See* Compl. ¶ 3 ("Lyft is a Delaware corporation . . . .").  Additionally, Plaintiffs do not allege that Lyft owns, operates, or manages any vehicles, much less taxicabs or taxi operations.  Nor could they, given that drivers using the Lyft platform provide rides using their personal vehicles.  Plaintiffs also do not allege that these vehicles contain taximeters or that the route and destination are controlled by the passenger.  Moreover, Plaintiffs do not allege that Lyft provides services to for-hire license holders, i.e., taxicab operators.  Plaintiffs simply provide no factual allegations to support their legal conclusion that Lyft is a passenger service company providing for-hire transportation services within the meaning of Chapter 31.  Likewise, Plaintiffs fail to specify which ordinance(s) Lyft has violated, much less support their conclusory assertions that Lyft is in

violation of unspecified provisions within Chapter 31.  For example, Plaintiffs do not allege that there has been an adjudicated finding that Lyft's platform actually contravenes the ordinances, and for good reason—no such adjudicated finding exists.

Chapter 31 simply does not govern the kind of service Lyft provides.  Accordingly, Plaintiffs are not entitled to a declaratory judgment that it does, and their DJA claim should be dismissed on this ground, too.  *See Iqbal*, 556 U.S. at 678 (courts need not accept "legal conclusions" or "conclusory statements" as true).

**B.      Plaintiffs fail to state a claim under the Lanham Act.**

Plaintiffs' attempt to state a false advertising claim under the Lanham Act likewise fails. To state a prima facie false advertisement claim, the plaintiff must allege that "(1) the advertisements . . . were false or misleading, (2) the advertisements deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the [plaintiff] has been— or is likely to be—injured as a result of the false advertising."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  Plaintiffs do not adequately plead these elements.

**1.      Plaintiffs fail to plead an actionable misrepresentation of fact, let alone one that actually or potentially materially deceived consumers.**

The first element requires that "the challenged advertisement is literally false, or [that] the challenged advertisement is literally true, but misleading."  *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).  "If the court deems an advertisement to be literally false, then the [plaintiff] is not required to present evidence of consumer deception."  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1318–19 (11th Cir. 2010). "If, on the other hand, the court deems the advertisement to be true but misleading, then the [plaintiff] is required to present evidence of deception."  *Id.* at 1319.  "Even if an advertisement is literally false, the plaintiff must still establish materiality," i.e., that "the defendant's deception is likely to influence the purchasing decision."  *Id.* (internal quotation marks omitted).

Plaintiffs appear to premise their Lanham Act claim against Lyft on alleged "misrepresentations" regarding three topics:  (1) Lyft's use of the term "ridesharing" to describe its business; (2) Lyft's representations that it "is in compliance with local rules and regulations," and (3) Lyft's representations concerning insurance coverage.  *See* Compl. ¶ 272.  Plaintiffs, however, have failed to plead any representation by Lyft that is literally false or likely

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

misleading, let alone one that deceived or had the capacity to deceive a substantial segment of potential consumers or materially affect their purchasing decisions.

        **a.**        **The "ridesharing" representations are not false or misleading.**

Plaintiffs allege that Lyft misrepresents its services as "ridesharing" because it "charge[s] fares" and "advertises pricing" on its website. *Id.* ¶¶ 72, 74, 76. Plaintiffs base their argument primarily on the American Heritage Dictionary, which defines "ridesharing" as an "act or an instance of sharing motor vehicle transportation with another or others, especially [but not exclusively] among commuters." *Id.* ¶ 72 & n.7. But nothing about Lyft's use of the term ridesharing is inconsistent with the dictionary definition, which "does not exclude ridesharing for a fee." *Greater Houston Transp. Co. v. Uber Techs., Inc.*, Civ. A. No. 4:14-0941, 2015 WL 1034254, at *12 (S.D. Tex. Mar. 10, 2015).

Similarly unavailing is Plaintiffs' reliance on a Missouri state court order for the proposition that Lyft does not offer "ridesharing." Compl. ¶ 77 (citing Missouri order). The excerpt upon which Plaintiffs rely confirms that the Missouri court drew no conclusions about whether the term "ridesharing" appropriately describes Lyft's services. *Id.* Instead, the excerpt pertains to whether Lyft is a "carpooling arrangement," which is not an issue here.[7]

Moreover, Plaintiffs' assertion that Lyft "brand[s] [its] operations as 'ridesharing' in an effort to avoid regulation," *id.* ¶ 71, fails to state a false advertising claim. Setting aside the fact that Plaintiffs have pleaded no *facts* in support of their bald assertion, it is not plausible in light of Plaintiffs' concession that they themselves "are in doubt as to whether Lyft is a passenger service company" regulated by the ordinances. *Id.* ¶¶ 290, 291.

Finally, Plaintiffs fail to explain how the term "ridesharing" could mislead consumers in light of Plaintiffs other allegations that Lyft discloses its pricing information on its website. *See id.* ¶ 76. Other courts have dismissed similar misrepresentation claims on this basis, and this Court should do the same. *See Greater Houston*, 2015 WL 1034254, at *12 (dismissing similar

---

[7]      Although the Missouri case is irrelevant for the point cited by Plaintiffs, it does highlight the fact that Plaintiffs lack standing to enforce the Miami-Dade County ordinances. Unlike Plaintiffs, the plaintiff in Missouri, the Metropolitan Taxicab Commission, is a political subdivision of the State of Missouri organized and existing under Missouri law to regulate vehicles for hire.

Lanham Act claims where "Plaintiffs . . . admit that Uber's website openly provides base fares and other information regarding the fares for Uber customers").

Even if Lyft's characterization of its business as "ridesharing" were somehow misleading, Plaintiffs say nothing about why that term deceives consumers or how that deception has had a material effect on purchasing decisions. Instead, they simply baldly assert that the alleged misrepresentation "deceive[s]" potential users of the Lyft app. Compl. ¶¶ 79, 272. That conclusory allegation is not sufficient to state a claim. *See, e.g.*, *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-cv-775-T-24-TBM, 2012 WL 33155, at *3 (M.D. Fla. Jan. 6, 2012) ("[Plaintiff's] recital of [consumer deception and materiality] element[s] of the [false advertising] cause of action is a naked assertion, devoid of further factual enhancement, and it cannot survive a motion to dismiss.") (internal quotation marks omitted). Plaintiffs' "ridesharing" allegations should be dismissed accordingly. *See Greater Houston*, 2015 WL 1034254, at *12, 16 (dismissing nearly identical Lanham Act claim against Lyft "[as] an impermissible attempt to use the Lanham Act to enforce local ordinances").

> **b.    The compliance-with-law representations are not false or misleading.**

Plaintiffs also allege that Lyft has misrepresented its "compliance with local rules and regulations." Compl. ¶ 272. But "[s]tatements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact, unless 'a court or agency of competent jurisdiction has clearly and unambiguously ruled on the matter.'" *Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1317 (M.D. Fla. 2012) (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1357 (S.D. Fla. 2002)). Because Plaintiffs do not allege the existence of any adjudicative finding that Lyft failed to comply with the ordinances, it is axiomatic that Plaintiffs have failed to sufficiently plead a misrepresentation concerning Lyft's ability to operate in Miami-Dade County. *See Ameritox, Ltd.,* 889 F. Supp. 2d at 1317 ("The Lanham Act regulates only representations of fact— statements that are capable of being proven false.") (internal quotation marks omitted); *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 485 (D.C. Cir. 1996) (considering taxi regulations that Taxicab Commission had not yet decisively interpreted and refusing to allow a "contested question of statutory interpretation rather than a clearly established fact" to form the basis of a Lanham Act claim).

But even if such statements could form the basis of a Lanham Act claim, Plaintiffs fail to identify a single statement that Lyft actually made about its compliance with local or state law, much less facts showing any such statement to be false.  Instead, Plaintiffs quote from a representation that a driver must make before using the Lyft platform.  *See* Compl. ¶ 69 (quoting the following excerpt from "Driver Representations and Warranties" section of Lyft's Terms of Service:  "By using the Service, a Driver represents, warrants and agrees that . . . . Such Driver . . . has all appropriate licenses, approvals, and authority to provide transportation to third parties . . . .").  Even if this representation by a driver were somehow attributable to Lyft, and even if it somehow were deemed to be an advertisement by Lyft to potential passengers, the assertion that it is false or misleading represents nothing more than the *ipse dixit* of Plaintiffs.  Because no judicial determination has been made that Lyft violates the ordinances, Plaintiffs' Lanham Act claim based on the ordinances cannot stand.  *See Greater Houston*, 2015 WL 1034254, at *10–11, 16 (dismissing nearly identical Lanham Act claim, reasoning that "the Court cannot permit Plaintiffs to enforce their 'preferred interpretation' of the ordinances in federal court"); *Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, Civ. A. No. 1:13-CV-10769-NMG, 2014 WL 1338148, at *6 (D. Mass. Mar. 27, 2014) (dismissing nearly identical Lanham Act claim where complaint "[did] not identify a representation in which Uber states explicitly or conveys by necessary implication that Uber assigned taxis are operating lawfully") (internal quotation marks omitted).

Plaintiffs' claims fail for the additional reason that they do not sufficiently allege how any of Lyft's purported representations concerning its ability to operate in Miami-Dade County could be deceptive, much less how it would have a material effect on purchasing decisions.  *See, e.g.*, *Ameritox*, 2012 WL 33155, at *3.

### c.      The insurance representations are not false or misleading.

Finally, Plaintiffs fail to identify any false or misleading statements about Lyft's insurance coverage.  In fact, the insurance allegations against Lyft are so conclusory that Lyft is effectively left to guess exactly what it said that Plaintiffs contend is untrue.

To the extent that Plaintiffs fault Lyft for stating that it has a "first-of-its-kind $1,000,000 liability insurance" policy, Compl. ¶ 96, they fail to allege how that statement is false or misleading.  The statement is true, but even if it were not, it would, at worst, be non-actionable "puffery."  *See Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1334–35 (M.D. Fla. 2010) (characterizing statement that Bloc-it masking tape had "[i]ndustry leading

bleed resistance" as "classic puffery" and "not a specific, measurable claim that can be reasonably interpreted as an objective fact").

To the extent that Plaintiffs' complaints center on Lyft's insurance coverage being "illusory," *see, e.g.*, Compl. ¶ 99, Plaintiffs fail to match facts to their rhetoric. Plaintiffs do not (and cannot) allege that Lyft's insurance policy—a surplus lines policy issued by James River Insurance Company—does not exist; it does. *See id.* ¶¶ 90, 97. Instead, Plaintiffs resort to maligning the policy. For example, they insinuate that the policy is somehow ineffective because James River "is not authorized to issue insurance in the form of commercial automobile liability coverage" in Florida. *Id.* ¶ 97. Critically, however, Plaintiffs do not allege that Lyft represented its policy to be a standard commercial auto liability policy, that James River is not authorized to issue the kind of policy that it issued to Lyft, or that James River has ever so much as hinted that it would not fulfill its obligations as Lyft's insurer in Florida.

Plaintiffs' conclusory assertion that "it appears there would be no coverage under [Lyft's] policy," *id.* ¶ 98, is equally unavailing. First, contrary to Plaintiffs' bald assertions, the disclaimers in Lyft's terms of service do not "moot" Lyft's insurance. *See id.* ¶ 101. Lyft expressly limits its liability to the users of its app but also has insurance coverage for claims, such as personal injury by riders; the two are not mutually exclusive. Second, Plaintiffs' assertion that the limitation of liability deprives Lyft of an insurable interest, *id.* ¶¶ 104–08 (citing Fla. Stat. § 627.405), is incorrect. Plaintiffs contend that, under Florida Statute 627.405, Lyft must establish "an interest in the maintenance, possession, or use of the vehicle[]" to have an insurable interest. *Id.* ¶ 108. But that statute "defines insurable interest for purposes of *property* insurance"; it "has no relevance concerning *liability* insurance." *Aetna Cas. & Sur. Co. v. Growers Props., No. 58 Ltd.*, 542 So.2d 1028, 1029 (Fla. Dist. Ct. App. 1989) (emphases added). Lyft's policy expressly covers drivers using the Lyft platform, *see* Ex. A, Lyft Terms of Service at 4, 7, providing a more-than-sufficient insurable interest. *See Johnson v. Aetna Life & Cas. Co.*, 472 So.2d 859, 861 n.2 (Fla. Dist. Ct. App. 1985) ("The insurable interest may be an interest in the property itself *or a particular risk insured against*, such as, in the case of motor vehicle liability insurance, *the possible liability arising out of the use or operation of a vehicle*.") (emphases added). But even if the law were different, Plaintiffs once again allege no *facts* suggesting that Lyft's insurance policy does not work as advertised or that coverage has been denied on the basis of a disclaimer of liability or lack of insurable interest theory.

Finally, to the extent that Plaintiffs complain of unfavorable statements about their own insurance coverage, that complaint rests on nothing more than a conclusory assertion.  *See* Compl. ¶ 98 (alleging that Lyft "routinely compares its alleged insurance to that of taxicabs, claiming to have more coverage").  Plaintiffs do not recount a single instance in which Lyft has compared its insurance coverage to that of taxicabs, nor do they otherwise plead a single fact to support their claim that Lyft has made such comparisons.  They certainly do not plausibly allege that Lyft has ever misrepresented its coverage or disparaged that of taxicabs.  Plaintiffs' conclusory statement to the contrary simply does not suffice, as it does not give fair notice of the claim.  *See Iqbal*, 556 U.S. at 678 (courts need not accept "conclusory statements" as true).

In short, the Complaint relies on pure speculation that Lyft's insurance policy does not work as represented.  As such, Plaintiffs have not pleaded a plausible Lanham Act claim.

### 2.      Plaintiffs do not adequately plead an injury or proximate causation.

Even if Plaintiffs had pleaded an actionable representation, their Lanham Act claims still would be subject to dismissal because Plaintiffs do not adequately plead an injury proximately caused by that representation.  "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014).  Plaintiffs have not pleaded either type of injury; instead, they allege that Lyft's operations have devalued their for-hire licenses.  *E.g.*, Compl. ¶ 81.  But even if their devaluation theory were legally tenable,[8] Plaintiffs have pleaded no facts to support it.  Plaintiffs fail to allege any facts

---

[8]     In fact, Plaintiffs' claimed injury—the devaluation of their licenses—is not legally cognizable.  Courts have recognized that transportation service providers, like Plaintiffs, "merely possess a 'license to participate in the highly regulated taxicab market [that] is subject to regulatory change."  *See, e.g., Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 273–74 (5th Cir. 2012) (explaining that interest in resale value of taxicab license was a "unilateral expectation" and not a property interest subject to regulatory taking); *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 509 (8th Cir. 2009) (same).  Because the value of Plaintiffs' licenses is subject to change at any moment based on Miami-Dade County's discretion to renew a license, issue a new license, or otherwise alter the licensing system, Plaintiffs' interest in the resale value of their licenses is nothing more than an expectation—not a property interest.  To the extent that Plaintiffs rely on this purported injury to support their Lanham Act, FDUTPA, tortious interference, and trespass to chattels claims, these claims should be dismissed for failure to allege a cognizable injury.

concerning the allegedly "devalued" for-hire licenses, e.g., what kind of license each Plaintiff has, the current market value of each type of license, or why any decrease in the value of those licenses would be attributable to Lyft's conduct, rather than other market factors. Plaintiffs' allegations concerning the value of their for-hire licenses in a secondary market are speculative at best and cannot support their Lanham Act claim.

Regardless, Plaintiffs have not adequately pleaded proximate causation with respect to any such devaluation injury. Although "the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute," the plaintiff still "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." *Lexmark*, 134 S. Ct. at 1391. Plaintiffs' Complaint falls well short of this requirement. As a threshold matter, before they can allege a link to their own damages, Plaintiffs must plead "the intervening step of consumer deception," *id.*—that is, they must plead facts plausibly showing that Lyft's alleged misrepresentations deceived or had the capacity to deceive a substantial segment of potential consumers, and that such deception had a material effect on the customers' purchasing decisions. *See Hickson*, 357 F.3d at 1260 (describing the second and third elements of Lanham Act false advertising claim). Because Plaintiffs fail to do so in the Complaint, it necessarily follows that they have not adequately alleged an injury to themselves proximately caused by Lyft. Indeed, Plaintiffs have not pleaded a single fact indicating a direct relationship between any of Lyft's alleged statements and Plaintiffs' alleged injury, *see, e.g.*, Compl. ¶ 98, much less facts plausibly suggesting that their alleged injury was due to those statements and not other factors that could have affected their business, such as the economy or the non-actionable representations of Lyft and others. *Cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006) (noting, in a RICO case, that a "plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense"). Plaintiffs' efforts to plead proximate causation simply do not state a plausible claim.

## C.     Plaintiffs' allegations do not state a claim under Florida's Deceptive and Unfair Trade Practices Act.

Plaintiffs assert that Lyft has violated FDUTPA because its operations purportedly contravene the ordinances. Compl. ¶¶ 144–45. Plaintiffs' FDUTPA claim fails for two reasons: (1) Plaintiffs are not "consumers," and thus, have no standing to bring a FDUTPA claim, and (2) Plaintiffs cannot premise their FDUTPA claim on the alleged ordinance violations.

First, FDUTPA protects only "consumers"; it "has no application to entities complaining of tortious conduct which is not the result of a consumer transaction." *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, 2013 WL 1786356, at *1–2 (S.D. Fla. Apr. 25, 2013) (internal quotations and citation omitted). "A 'consumer' is one who has engaged in the purchase of goods or services." *Leon v. Tapas & Tinos, Inc.*, No. 14-21133-CIV, 2014 WL 5032435, at *6 (S.D. Fla. Oct. 8, 2014). Because Plaintiffs allege no facts to suggest that they are consumers who engaged in any consumer transaction with Lyft, the claim should be dismissed. *Id.*

Second, Lyft's alleged violation of the ordinances (even if true) cannot form the basis of a FDUTPA claim because the ordinances do not regulate deceptive acts or unfair practices. *See In re Edgewater By The Bay, LLP*, 419 B.R. 511, 516 (Bankr. S.D. Fla. 2009) ("Violations of laws or statutes that give rise to a FDUTPA claim must be of the kind that proscribe unfair trade practices or unfair methods of competition; not, as the Counterclaimants suggest, a violation of any law or statute that may have some benefit to consumers."). Although a violation of FDUTPA may arise from a violation of another "law, statute, rule, regulation, or ordinance," the predicate law must be one that "proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. Ann. § 501.203(3)(c) (2014). A statute that is not designed to prevent misleading or deceptive acts falls beyond the ambit of FDUTPA. *See Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.*, 674 F. Supp. 2d 1344, 1358 (S.D. Fla. 2009) (holding that "to deem any statutory violation a *per se* violation of the FDUTPA would be an overly broad and unfounded reading of the statute"); *see also Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (affirming dismissal of FDUTPA claims).

Tellingly, no court has ever cited the ordinances as a predicate for a FDUTPA claim. *Cf. Feheley v. LAI Games Sales, Inc*., No. 1:08-cv-23060, 2009 WL 2474061, at *3 (S.D. Fla. Aug. 11, 2009) (dismissing FDUTPA claim based on criminal statute regulating slot machines in part, because "no Florida court has ever cited it as a FDUTPA predicate"). This makes sense— Chapter 31 "neither expressly nor impliedly regulates unfair or deceptive trade practices." *Id.* (dismissing FDUTPA claim because statute regulating slot machines did not regulate unfair or deceptive trade practices). Chapter 31 outlines the technical requirements for for-hire vehicles and sets forth the regulatory scheme for enforcing those requirements. While the ordinances may have been designed with consumer protection in mind, they do not regulate the type of unfair and deceptive conduct that falls within the ambit of FUDTPA. In fact, Plaintiffs admit

that Chapter 31 "was/is implemented to protect the health, welfare, and safety of the public," Compl. ¶ 49—not to regulate unfair or deceptive conduct. Plaintiffs' FDUTPA claim should be dismissed accordingly. *See In re Edgewater*, 419 B.R. at 518 (dismissing FDUTPA claim based on alleged violations of state and local laws regulating the construction industry and the sale of condominiums because laws were not intended to target unfair trade practices); *Double AA Int'l Inv. Grp.*, 674 F. Supp. 2d at 1358 (holding that a Florida statute addressing escrow accounts in the sale of a condominium "are not designed to proscribe unfair or deceptive trade practices" and therefore could not form the basis for a FDUTPA claim); *In re Mona Lisa at Celebration, LLC*, 472 B.R. 582, 639 (Bankr. M.D. Fla. 2012) (finding that Florida statutes regulating "the use of plaintiffs' deposits held in escrow and other technical requirements" were "unrelated to any unfair or deceptive trade practice" and therefore "not encompassed within the penumbra of consumer protection statutes covered by FDUTPA"), *aff'd*, 495 B.R. 535 (M.D. Fla. 2013).

**D.      Plaintiffs' tortious interference allegations fail to state a claim.**

Plaintiffs assert three claims for tortious interference, but each fails as a matter of law. First, Plaintiffs allege that Lyft has tortiously interfered with an advantageous business relationship with the "riding public," Compl. ¶ 164, but that purported relationship is too generic to support such a claim. Second, Plaintiffs allege that Lyft has tortiously interfered with an advantageous business relationship between Plaintiffs and the County, *id.* ¶ 165, but Plaintiffs' relationship with the County is legally insufficient to give rise to such a claim. Finally, Plaintiffs allege that Lyft has tortiously interfered with a contractual relationship between Plaintiffs and the County, but they fail to allege the existence of a contract or damages resulting from the breach of that contract. *See id.* ¶¶ 187–88. Thus, all three claims should be dismissed.

**1.      The "riding public" is too vague a group to support Plaintiffs' tortious interference with advantageous business relationship claim.**

To state a claim for tortious interference with an advantageous business relationship, a plaintiff must plead "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff" caused by the interference. *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001). "A business relationship need not be evidenced by a contract, but it generally requires 'an understanding between the parties that would have been completed had the defendant not interfered.'" *Id.* (quoting *Ethan Allen, Inc. v. Georgetown*

*Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)).  Thus, while "a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers," "no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen*, 647 So.2d at 815; *accord Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*, No. 2:07-cv-82-FtM-34SPC, 2008 WL 1925088, at *13–15 (M.D. Fla. Apr. 29, 2008).

Indeed, Florida courts have repeatedly rejected attempts to base tortious interference claims on relationships with the general public, the business community, or other non-specific groups.  *See Int'l Sales & Serv.*, 262 F.3d  at 1154–56 (surveying the Florida case law of what constitutes a business relationship for a tortious interference with an advantageous business relationship claim).  In *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, for example, the Florida Supreme Court rejected a claim that Ethan Allen tortiously interfered with Georgetown Manor's advantageous business relationship with past customers who might one day return to shop in the store.  647 So. 2d at 815.  The court noted that, "[a]s a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."  *Id*.  "The mere hope that some of [Georgetown's] past customers may choose to buy again cannot be the basis for a tortious interference claim."  *Id*.

Similarly, in *Ferguson Transportation, Inc. v. North American Van Lines, Inc*., the Florida Supreme Court rejected a tortious inference with an advantageous business relationship claim based on an alleged relationship with the community at large.  687 So. 2d 821 (Fla. 1996) (per curiam).  Ferguson had an agreement to be the exclusive agent for North American Van Lines in Broward County and Boca Raton.  *Id.* at 821–22.  When North American began working with another company, which eventually began operating in the same area as Ferguson, Ferguson brought suit against North American, among others.  *Id*. at 822.  The Florida Supreme Court upheld the appellate court's finding that Ferguson could not bring a tortious interference claim based on an alleged advantageous business relationship with the public at large, finding that Ferguson was required to identify "a business relationship with an identifiable person."  *Id*.

Plaintiffs' claim that Lyft has tortiously interfered with an advantageous business relationship with the "riding public" fails for the same reason.  As in *Ethan Allen* and *Ferguson*, Plaintiffs have not alleged an identifiable relationship, and the speculative allegation of a

relationship with the "riding public"—whether that is construed to be the public at large or past customers—is too vague to support a tortious interference claim.

But even if it could, Plaintiffs fail to allege that Lyft knew about any particular business relationship between plaintiffs and anyone else, much less that Lyft intentionally interfered with that relationship.  The claim should be dismissed for this reason, too.  *Greater Houston*, 2015 WL 1034254, at *19 (dismissing similar claims and finding that alleged ordinance violations could not support an intentional interference claim).

### 2.     Plaintiffs' relationship with the County does not give rise to a tortious interference with advantageous business relations claim.

Similarly unsustainable is Plaintiffs' claim that Lyft tortiously interfered with an advantageous business relationship between Plaintiffs and the County.  Plaintiffs premise this claim on the County's licensing authority over for-hire vehicles under Chapter 31 of the ordinances, Comp. ¶ 63, but such "licensing relationships" do not give rise to tortious interference claims under Florida law.  *See Bakri v. City of Daytona Beach*, No. 608-CV-1572-ORL28GJK, 2009 WL 1587165, at *3 (M.D. Fla. June 5, 2009) (dismissing tortious interference claim based on alleged "licensing relationship" between the plaintiff and the State of Florida, Division of Alcohol Beverages and Tobacco because their relationship was not "a 'business relationship' that has been recognized as supporting the interference tort").

Also fatal to Plaintiffs' claim is the absence of any facts indicating that Lyft has actually interfered (intentionally or otherwise) with any perceived relationship between Plaintiffs and the County.  At best, Plaintiffs plead that Lyft's activities have had an indirect effect on the value of Plaintiffs' relationship with the County, but such allegations do not state a claim for tortious interference.  *See Greater Houston*, 2015 WL 1034254, at *19 (dismissing similar claims).

### 3.     The County's ordinances do not give rise to a tortious interference with contract claim.

Finally, Plaintiffs' allegations that Lyft tortiously interfered with a contractual relationship with the County are woefully deficient.  "The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other."  *McKinney-Green, Inc. v. Davis*, 606 So.2d 393, 397 (Fla. Dist. Ct. App. 1992).  "The elements of a cause of action for tortious interference with a contractual relationship are:   (1) [t]he existence of a contract, (2) [t]he defendant's knowledge of the

contract, (3) [t]he defendant's intentional procurement of the contract's breach, (4) [a]bsence of any justification or privilege, (5) [d]amages resulting from the breach." *Id.* at 397–98.

Although Plaintiffs base their claim on the for-hire licenses that they hold under the County's ordinances, *see* Compl. ¶¶ 187, Plaintiffs fail to plead facts plausibly demonstrating that those licenses are contracts subject to interference by Lyft. But even assuming *arguendo* that the licenses could give rise to a tortious interference with contract claim, Plaintiffs fail to plead any breach of the licenses by the County, much less a breach that Lyft intentionally procured or from which Plaintiffs suffered any damages. The claim should be dismissed accordingly. *See Greater Houston*, 2015 WL 1034254, at *19 (dismissing similar claims).

**E.      Plaintiffs' trespass to chattels allegations fail to state a claim.**

Plaintiffs' trespass to chattels claim fares no better than their tortious interference claims because Plaintiffs fail to identify a viable "chattel." Under Florida law, "[t]respass to chattel requires 'the intentional use of, or interference with, a chattel which is in the possession of another, without justification.'" *Schutt v. Lewis*, No. 6:12-CV-1697-ORL-37, 2014 WL 3908187, at *4 (M.D. Fla. Aug. 11, 2014) (quoting *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. Dist. Ct. App. 1998) (emphasis omitted). The "chattel" requirement was analyzed in *Burshan v. National Union Fire Ins. Co. of Pittsburgh, PA*, 805 So.2d 835, 846 (Fla. Dist. Ct. App. 2001). As the court of appeals explained, a "chattel" is "[e]very species of property, movable or immovable, which is less than a freehold. . . . Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another." *Id.* (internal quotation marks omitted). The court further noted that "[a] survey of Florida law reveals that the trespass cause of action has been applied to chattels such as a black mare, logs, a wagon and mule, clothing, crates of pears, and an automobile." *Id.* (footnotes omitted). Applying this case law and definition, the court determined that "a bank account is not a chattel which can be the subject of a trespass [to chattels claim]." *Id.*

Plaintiffs premise their trespass to chattels claim on the allegation that Lyft has interfered with Plaintiffs' "exclusive chattel right," as owners of for-hire licenses, "to provide for-hire transportation services." Compl. ¶¶ 230, 233. But, like the bank account in *Burshan*, Plaintiffs' "exclusive authority . . . to provide for-hire transportation services" is not the kind of tangible property that Florida courts have found to be a chattel. Indeed, courts have recognized that

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

license holders do not have a "property" interest in the resale value of their licenses. *See, e.g.*, *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 273–74 (5th Cir. 2012) (explaining that interest in resale value of taxicab license was a "unilateral expectation" and not a property interest subject to regulatory taking); *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 509 (8th Cir. 2009) (same).  For this same reason, Plaintiffs do not (and cannot) allege any "trespass" by Lyft, i.e., that Lyft came into physical contact with or dispossessed Plaintiffs of their property.  *See* Restatement (Second) of Torts § 217, cmt. E (1965) (stating that trespass to chattels claim requires physical touching or dispossession of property). Because Plaintiffs fail to allege the necessary chattel, the claim should be dismissed.

**F.    Alternatively, the Court should abstain from deciding this local issue.**

In the alternative, the Court should abstain from exercising its jurisdiction pursuant to the *Burford* abstention doctrine.  *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  At the heart of Plaintiffs' claims are purely state law questions concerning the appropriateness of regulating transportation network platforms.  However, those are questions for state and local elected officials, who are currently considering the issue.  Indeed, two separate bills have been introduced in the state legislature, and each provides a comprehensive, statewide regulatory scheme for transportation network companies.  *See* Ex. B.  Because "federal intervention might disrupt state efforts to formulate a coherent policy in an area of particular local concern," this Court should abstain from deciding the issues presented and dismiss the complaint.  *See Int'l Eateries of Am., Inc. v. Bd. of Cnty. Comm'rs*, 838 F. Supp. 580, 586 (S.D. Fla. 1993) (remanding case to state court on *Burford* abstention grounds where there was an existing conflict between state and local law, the issue was a difficult and unresolved state law question, timely and adequate review was available, the dispute involved issues of particularly sensitive local concern, and federal intervention would be disruptive); *cf. Dial A Car*, 82 F.3d at 488–89 ("[W]e see no reason to reach out and apply federal law to this quintessentially local dispute, and neither appellant nor our dissenting colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so.").

## IV.    CONCLUSION

For all the reasons discussed above, Plaintiffs have failed to allege any viable causes of action against Lyft.  Thus, Lyft respectfully requests that the Court dismiss Plaintiffs' Complaint

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

in its entirety.  Alternatively, Lyft requests that the Court dismiss or stay this case pursuant to the *Burford* abstention doctrine.

Dated this 30th day of March, 2015.          Respectfully submitted,

/s/Andrew Kemp-Gerstel_____
ANDREW KEMP-GERSTEL
Florida Bar No. 0044332
JUNAID N. SAVANI
Florida Bar No. 88816
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower – 25th Floor
44 West Flagler Street
Miami, FL  33130
Telephone:  305.379.0400
E-Mail:  service@lgplaw.com
*Attorneys for Defendant Lyft, Inc.*

/s/ Danny David_____
DANNY DAVID
*Admitted via Pro Hac Vice Admission*
Texas Bar No. 24028267
**BAKER BOTTS L.L.P**
One Shell Plaza
910 Louisiana
Houston, TX 77002
E-mail: danny.david@bakerbotts.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 30, 2015, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Andrew Kemp-Gerstel_____
ANDREW KEMP-GERSTEL