# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:15-CV-20356-JEM

MIADECO CORP., a Florida corporation,
B & S TAXI CORP, a Florida corporation,
CHECKER CAB OPERATORS, INC., a
Florida corporation, and PHIL ELLIS
LOWERY, MINNIE MAE LOWERY,
EDDIELENE GAIL LOWERY BROWN,
and ARNETT LEE JR. individually and on
behalf of others similarly situated,

        Plaintiffs,

v.

UBER TECHNOLOGIES, INC.
and LYFT, INC.,

        Defendants.

---

# DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

<u>**TABLE OF CONTENTS**</u>

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 4

    A.  The Parties ................................................................................................ 4

    B.  Chapter 31 Of The County Code .............................................................. 5

    C.  Plaintiffs' Claims ...................................................................................... 6

III.  ARGUMENT ........................................................................................................ 6

    A.  All Of Plaintiffs' Claims Fail Because Plaintiffs Do Not And Cannot Allege Any Actionable Wrongdoing On The Part Of Uber ................................. 7

        1.  Plaintiffs Cannot Assert Statutory Or Common-Law Claims Based Upon Uber's Alleged Violation Of Chapter 31 ......................................... 7

        2.  Plaintiffs Have Failed To Identify Any Misrepresentation By Uber, Much Less One That Caused Them Any Harm ....................................... 12

    B.  The Complaint Fails To Allege Facts Showing That Uber Has Caused Any Injury To Any Named Plaintiff .................................................................... 15

    C.  All Of Plaintiffs' Claims Fail Because They Do Not Allege A Viable Injury .......................................................................................................... 17

    D.  Each Of Plaintiffs' Claims Fail For Additional Claim-Specific Reasons ............ 18

        1.  Plaintiffs Are Not Consumers And Their FDUTPA Claim (Count I) Cannot Be Based Solely On An Alleged Violation Of Chapter 31 ............................................................................................................. 18

        2.  Plaintiffs Cannot Allege A Physical Touching Or Dispossession Of Property As Required For A Trespass To Chattels Claim (Count III) ........................................................................................................ 19

        3.  Plaintiffs' Lanham Act And Unfair Competition Claims (Counts V And VII) Fail Because Plaintiffs Fail To Plead Consumer Deception ............................................................................................... 19

        4.  There Is No Basis For Declaratory Relief (Count XV) .......................... 20

IV.  CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Aetna Cas. & Sur. Co. v. Growers Props.*,
  542 So. 2d 1028 (Fla. Dist. Ct. App. 1989) ....................................................................15

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
  905 F. Supp. 2d 1334 (S.D. Fla. 2012) .........................................................................13

*Ameritas Variable Life Ins. Co. v. Roach*,
  411 F.3d 1328 (11th Cir. 2005) ....................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................7, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................7, 10

*Borja v. Uber Technologies, Inc., et al.*,
  No. 1:15-cv-20040 (S.D. Fla.) ........................................................................................2

*Buell v. Direct Gen. Ins. Agency, Inc.*,
  267 F. App'x 907 (11th Cir. 2008) ..................................................................................8

*Burk v. State*,
  705 So.2d 1003 (Fla. 4th DCA 1998) ...........................................................................10

*CC-Aventura, Inc. v. Weitz Co., LLC*,
  No. 06-21598-CIV-HUCK/SIMONTON, 2006 WL 3499113 (S.D. Fla. Dec. 4, 2006).........14

*Checker Cab Phila., Inc. v. Uber Techns., Inc.*,
  No. 14-7265, 2015 WL 966284 (E.D. Pa. March 3, 2015)...................................2, 9

*City of Sarasota v. Windom*,
  736 So. 2d 741 (Fla. 2d DCA 1999) ................................................................................8

*Clapper v. Amnesty Int'l USA*,
  133 S.Ct. 1138 (2013)......................................................................................................7

*Davis v. Broward County*,
  No. 11-61819-Civ, 2012 WL 279433 (S.D. Fla. Jan. 31, 2012)......................................8

*Davis v. Miami-Dade Co.*,
  No. 15-cv-20994-CMA (S.D. Fla. March 11, 2015), ECF No. 1-6...................2, 20

*De La Campa v. Grifols Am., Inc.*,
 819 So. 2d 940 (Fla. 3d DCA 2002) ........................................................................9

*Del Rio v. City of Hialeah*,
 904 So. 2d 484 (Fla. 3d DCA 2005) ........................................................................9

*Dennis Melancon, Inc. v. City of New Orleans*,
 703 F.3d 262 (5th Cir. 2012) ...................................................................17, 18

*Dial A Car Inc. v. Transp., Inc.*,
 82 F.3d 484 (D.C. Cir. 1996) ...................................................................................9

*Dolphin LLC v. WCI Comty, Inc*.,
 715 F.3d 1243 (11th Cir. 2013) ........................................................................16, 17

*Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*,
 785 F.2d 897 (11th Cir. 1986) .............................................................................19

*Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*,
 No. 12-60741-CIV, 2014 WL 1329359 (S.D. Fla. Mar. 31, 2014) .........................12

*Eisenberg v. City of Miami Beach*,
 1 F. Supp. 3d 1327 (S.D. Fla. 2014) ....................................................................20

*Fuller v. Mortg. Elec. Reg. Sys., Inc.*,
 888 F. Supp. 2d 1257 (M.D. Fla. 2012) ..................................................................9

*Gentry v. Harborage Cottages-Stuart, LLP*,
 602 F. Supp. 2d 1239 (S.D. Fla. 2009), *aff'd in part, vacated in part on other
 grounds*, 654 F.3d 1247, 2011 WL 3904087 (11th Cir. 2011) ...............................14

*Greater Houston Transp. Co. v. Uber Techs. Inc.*,
 No. 4:14-0491, 2015 WL 1034254 (S.D. Tex. March 10, 2015)....................2, 9, 13

*Haxton v. State Farm Mut. Auto. Ins. Co. Bd. of Dirs.*,
 No. 3:13cv485, 2014 WL 3586550 (N.D. Fla. July 21, 2014) ...............................19

*Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc*.,
 299 F.3d 1242 (11th Cir. 2002) ...........................................................16, 17, 19

*Kelner v. Woody*,
 399 So. 2d 35 (Fla. 3d DCA 1981) .......................................................................20

*Leon v. Tapas & Tinos, Inc.*,
 Case No. 14–21133–CIV, 2014 WL 5032435 (S.D. Fla. Oct. 8, 2014) .................18

*Lexmark Intl., Inc. v. Static Contol Components, Inc.*,
 134 S. Ct. 1377 (2014)...................................................................................16, 17

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)..................................................................................6, 16, 17

*Manzo v. Uber Techs, Inc.,*
  No. 13 C 2407, 2014 WL 3495401 (N.D. Ill. July 14, 2014) ..........................2, 9, 13

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007)...........................................................................................20

*Mfg. Research Corp. v. Greenlee Tool Co.,*
  693 F.2d 1037 (11th Cir. 1982) ........................................................................13

*Miami-Dade Cnty. v. Deerwood Homeowners' Ass'n,*
  979 So. 2d 1103 (Fla. 3d DCA 2008) ..................................................................9

*Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis,*
  572 F.3d 502 (8th Cir. 2009) ......................................................................18, 19

*Perret v. Wyndham Vacation Resorts, Inc.,*
  889 F. Supp. 2d 1333 (S.D. Fla. 2012) ..............................................................20

*Practice Mgmt. Assoc., Inc. v. Old Dominion Ins. Co.,*
  601 So. 2d 587 (Fla. 1st DCA 1992) ..................................................................17

*Procaps S.A. v. Patheon Inc.,*
  36 F. Supp. 3d 1306 (S.D. Fla. 2014) ................................................................16

*QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n,*
  94 So. 3d 541 (Fla. 2012)...........................................................................8, 10

*Sabato v. Fla. Dep't of Ins.,*
  768 F. Supp. 1562 (S.D. Fla. 1991) ...................................................................20

*Santa Rosa Cnty. v. Admin. Comm'n, Div. of Admin. Hearings,*
  661 So. 2d 1190 (Fla. 1995)...............................................................................17

*Schupbach v. City of Sarasota,*
  765 So. 2d 131 (Fla. 2d DCA 2000) ....................................................................9

*Wehunt v. Ledbetter,*
  875 F.2d 1558 (11th Cir. 1989) ...........................................................................8

*West Coast Life Ins. Co. v. Life Brokerage Partners LLC,*
  No. 08-80897-CIV, 2009 WL 2957749 (S.D. Fla. Sept. 9, 2009)...........................9

*Yellow Grp. LLC v. Uber Techs. Inc.,*
  No.12 C 7967, 2014 WL 3396055 (N.D. Ill. July 10, 2014) ................................2, 9

iv

**STATUTES AND ORDINANCES**

15 U.S.C. § 1125(a)(1)(B) .................................................................................................19

Fla. Stat. § 501.203(3)(c) .................................................................................................18

Fla. Stat. § 627.405 .........................................................................................................15

Chapter 31 of The County Code ............................................................................... passim

Chapter 11A of the County Code...........................................................................................9

Chapter 19 of the County Code ............................................................................................9

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 7

**OTHER AUTHORITIES**

Merriam Webster Dictionary, *available at* http://www.merriam-
     webster.com/dictionary/dispatch (last accessed May 4, 2015)................................11

Restatement (Second) of Torts § 217, Comment e .......................................................19

Plaintiffs have failed to and cannot fix their flawed claims.  All of Plaintiffs' claims are still inappropriately based on their flawed interpretation of a local ordinance that Plaintiffs lack standing to enforce and that provides no private cause of action.  Despite Plaintiffs' amendment, they still seek to usurp the authority of Miami-Dade County ("County") by bringing statutory and common-law claims that they are not entitled to bring.  Pursuant to Rule 12(b)(1) and Rule 12(b)(6), Defendant Uber Technologies, Inc. ("Uber") moves to dismiss Plaintiffs' Amended Complaint for failure to state a claim and for lack of subject matter jurisdiction.  Because Plaintiffs cannot state a claim, their Amended Complaint should be dismissed with prejudice.

## I.   <u>INTRODUCTION</u>

Contrary to Plaintiffs' rhetoric that Uber is somehow undermining the "American way of life" (Am. Compl. ¶¶ 24–26, ECF No. 40), this lawsuit is merely an attempt by a stagnated industry to protect its monopoly at the expense of competition, innovation, and rider choice. Plaintiffs are corporate and individual for-hire license holders in Miami-Dade County.  Plaintiffs filed this lawsuit because Uber offers a "smartphone application" (the "App") that allows passengers easily and conveniently to request transportation from third-party transportation providers other than Plaintiffs.  In an effort to quash this competition, Plaintiffs contend that Uber is subject to and has not complied with Chapter 31 of the Miami-Dade County Code of Ordinances (the "County Code" or "MDCCO"), which regulates "for-hire" transportation in the County.  But Chapter 31—enacted long before technology companies like Uber existed—does not regulate or apply to Uber, which does not own any vehicles, does not employ, hire, or dispatch drivers, and does not operate a passenger service company.

Critically, as the County recently clarified, only the County decides how to enforce Chapter 31.  In another case brought against Uber by business competitors, the County made clear that *only* it has the "discretion to file, prosecute, abate, settle, or dismiss for-hire

transportation enforcement actions pursuant to the [County Code]."[1]  Plaintiffs' lawsuit is a backdoor attempt to usurp the County's sovereign authority.  Just as Plaintiffs may not bring a claim directly under the County Code, they may not circumvent legislative intent by bringing statutory and common-law claims premised on supposed violations of Chapter 31.  This Court should join other courts around the country that have denied the efforts of private taxi plaintiffs, just like Plaintiffs here, to bring claims based upon alleged violations of local ordinances that lack a private cause of action and that give exclusive enforcement power to local government.[2]

Here, Plaintiffs assert five counts against Uber, mostly thinly-disguised efforts to enforce Chapter 31:  (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I); (2) trespass to chattels (Count III); (3) violation of the Lanham Act (Count V); (4) common law unfair competition (Count VII); and (5) declaratory judgment (Count IX).  For multiple independent reasons, all counts are flawed and should be dismissed with prejudice.

First, all of Plaintiffs' claims fail because they do not allege any actionable wrongdoing by Uber.  Instead, Plaintiffs seek to sidestep the expressed intent of the County's Board of Commissioners (which enacted Chapter 31) not to permit a private cause of action to enforce Chapter 31.  Florida law prohibits statutory and common-law claims based on the alleged violation of a statute or ordinance that lacks a private cause of action.  As Plaintiffs acknowledge, "industry oversight is conducted by the CSD [Consumer Services Department],

---

[1]   Cnty.'s Mot. Dismiss, *Davis v. Miami-Dade Co.*, No. 15-cv-20994-CMA (S.D. Fla. March 11, 2015), ECF No. 1-6 ¶ 9, attached hereto as Ex. A ("*Davis* Action").  Plaintiffs' counsel also has brought a similar putative class action, captioned *Borja v. Uber Technologies, Inc., et al.*, No. 1:15-cv-20040 (S.D. Fla.), in which plaintiffs improperly seek to bring direct claims under Chapter 31.

[2]   *See, e.g., Greater Houston Transp. Co. v. Uber Techs. Inc.*, No. 4:14-0491, 2015 WL 1034254, at *10–12 (S.D. Tex. March 10, 2015); *Checker Cab Phila., Inc. v. Uber Techns., Inc.*, No. 14-7265, 2015 WL 966284, at *4 (E.D. Pa. March 3, 2015); *Yellow Grp. LLC v. Uber Techs. Inc.*, No.12 C 7967 , 2014 WL 3396055, at *7 (N.D. Ill. July 10, 2014); *Manzo v. Uber Techs, Inc.*, No. 13 C 2407, 2014 WL 3495401, at *4 (N.D. Ill. July 14, 2014).

and enforced by CSD personnel, police forces of various municipalities in Miami-Dade County, and by the Miami-Dade Police Department." (Am. Compl. ¶ 35.) Plaintiffs may not override the authority of the CSD under the guise of a lawsuit alleging common-law and statutory claims.

Plaintiffs also base their Lanham Act and unfair competition claims on alleged misrepresentations made on Uber's website about what Uber "aim[s]" to do and insurance coverage, but the three statements Plaintiffs have identified are neither false nor misleading. Nor have Plaintiffs alleged any facts to show that these statements deceived any passengers into using the App, much less that they caused a devaluation of Plaintiffs' licenses on the secondary market to which consumers are not participants. Plaintiffs' "misrepresentation" theory is the proverbial red herring that illuminates what is truly driving this lawsuit: Plaintiffs' efforts to thwart competition and stifle innovation.

Second, all of Plaintiffs' claims require causation as a critical element, yet Plaintiffs do not and cannot link anything that Uber did or said to Plaintiffs' alleged harm. Plaintiffs contend that because of Uber's alleged misrepresentations or legal violations, unidentified passengers chose to use the App in Miami-Dade County, rather than using Plaintiffs' particular services, which, in turn, has hypothetically caused Plaintiffs' licenses to lose value on a "secondary market." But the independent decision-making of passengers breaks the chain of causation; the Amended Complaint does not identify a single passenger who would have used Plaintiffs' services if not for Uber's alleged non-compliance with Chapter 31, nor does it identify any misrepresentation by Uber that any passenger ever relied upon in deciding to use the App. Worse, Plaintiffs do not and cannot link any alleged non-compliance or statements by Uber to the value of Plaintiffs' licenses, if they were ever to be resold. Plaintiffs' chain of causation is simply too speculative and attenuated and is unsupported by facts.

3

Third, all of Plaintiffs' claims require a cognizable injury, but Plaintiffs' sole alleged injury is that Uber's business has purportedly devalued Plaintiffs' for-hire transportation licenses on the "secondary market." These licenses, however, are "intangible property," do not carry any right of exclusivity, and are not guaranteed any particular resale value. While Plaintiffs may *expect* to sell their licenses in the future, expected secondary market value is not a property right subject to reimbursement. Nor have Plaintiffs alleged any facts to show that the value of their licenses has decreased since Uber entered the Miami market.

Lastly, each of Plaintiffs' individual claims fails for additional, claim-specific reasons:

- Plaintiffs' FDUTPA claims lacks merit because Plaintiffs are not "consumers" and may not use Chapter 31 to pursue a *per se* theory of FDUTPA liability.

- Plaintiffs' trespass to chattels claims fail because Plaintiffs cannot allege that Uber physically took or dispossessed Plaintiffs of their property and the market value of Plaintiffs' license does not qualify as a "property" interest.

- Both Plaintiffs' Lanham Act and unfair competition claims fail because Plaintiffs have not alleged and cannot show any consumer was actually or likely deceived.

- Plaintiffs' request for a declaratory judgment fails because this is a form of relief, not a cause of action, it is duplicative of the other claims, and the Court should exercise its discretion not to issue a declaration over a matter best left to the County.

Plaintiffs have failed to cure any of the fundamental defects in their original pleading—and it is clear that they cannot. Plaintiffs' Amended Complaint must be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Uber is a Delaware corporation. (Am. Compl. ¶ 21.) Plaintiffs allege that Uber offers a "smartphone application" that connects riders seeking transportation services to drivers who can provide those services. (*Id.*) Plaintiffs allege that Uber "receives a portion of all profits garnered by said drivers." (*Id.*) Plaintiffs contend that Uber "acts as a for-hire vehicle dispatcher as if it

were a passenger service company," as defined by Chapter 31, and that it provides "unauthorized and illegal for-hire transportation service operations[.]"  (*Id.* ¶¶ 21, 26.)

Plaintiffs are "for-hire license holders in Miami-Dade County."  (*Id.* ¶ 53; *id.* ¶¶ 6–12, 96(b), 112, 141, 166, 186.)  Plaintiffs Miadeco Corp., B & S Taxi Corp., and Checker Cab Operators, Inc. are Florida corporations that allegedly own multiple for-hire licenses.  (*Id.* ¶¶ 6–8.)  Plaintiffs Phil Lowery, Minnie Lowery, Eddielene Brown, and Arnett Lee, Jr. are individuals who allegedly own for-hire licenses.  (*Id.* ¶¶ 9–12.)  All Plaintiffs claim that they have "been injured by the devaluation of [their] for-hire license[s]" (*id.* ¶¶ 6–12), but still fail to plead any facts about their businesses, their licenses, or harm caused by Uber.

### B.  <u>Chapter 31 Of The County Code</u>

Chapter 31 of the County Code regulates for-hire transportation and "industry oversight is conducted by the CSD, and enforced by the CSD personnel, police forces of various municipalities in Miami-Dade County, and by the Miami-Dade Police Department."  (*Id.* ¶ 35.) The County enacted Chapter 31, entitled "Vehicles for Hire," "to protect the health, welfare, and safety of the public."  (*Id.* ¶ 52.)[3]  Chapter 31 contains no provision granting a private cause of action to private individuals.  Instead, private individuals may file complaints with the County about alleged violations of Chapter 31, but it is the Director of the CSD that has the authority and discretion to resolve those complaints.  Chapter 31 §§ 31-84(a)(2) to (4) (requiring CSD to "attempt to resolve complaints received from any source" and to "[i]nvestigate and prepare reports on alleged violations"); §§ 31-114(a)(2) to (4), 31-212(a)(2) to (4), 31-606(a)(2) to (4).

Chapter 31 provides specific penalties for any violations of its terms.  *See id.* §§ 31-74,

---

[3]     Chapter 31 regulates "Vehicles for Hire" and contains six Articles:  "In General" (Article I); "Licensing and Regulations of For-Hire Motor Vehicles" (Article II); "Passenger Motor Carriers" (Article III); "Special Transportation Service Carriers" (Article IV); "General Requirements" (Article V); and "Licensing and Regulation of For-Hire Limousines" (Article VI).

31-92, 31-111, 31-210, 31-308, 31-612.  Statutory penalties under Chapter 31 range from a warning to civil penalties and fines to potential imprisonment, but in every case, enforcement authority is limited to the County.  Article II, entitled "Licensing and Regulation of For-Hire Motor Vehicles," provides that this "article ***shall*** be enforced by authorized personnel of the CSD, the police forces of the various municipalities in Miami-Dade County and by the Miami-Dade Police Department." *Id.* § 31-90(a) (emphasis added).  Chapter 31 makes clear that only the CSD has the right to institute a legal action for injunctive or other relief.  *Id.* § 31-90(e); *see also id.* §§ 31-110, 31-209, 31-610.

### C.    **Plaintiffs' Claims**

Plaintiffs contend that Uber is a "passenger service company" that must comply with Chapter 31.  (Am. Compl. ¶¶ 21, 24–69, 114, 121(b), 144, 167, 187.)  Plaintiffs further allege that Uber has engaged in a "pattern of deceit towards customers" by making purportedly false statements regarding compliance with local laws and insurance coverage.  (*Id.* ¶¶ 70–95.)

Rather than respond to Uber's first motion to dismiss, Plaintiffs amended their complaint. Plaintiffs now assert five counts against Uber (*id.* ¶¶ 110–221), and seek to assert their claims on behalf of a putative class of all "persons or entities holding for-hire licenses in Miami-Dade County pursuant to Chapter 31 of the MDCCO" (*id.* ¶ 23).  Plaintiffs' Amended Complaint fails to and cannot cure the fundamental defects in their original Complaint.

## III.    **ARGUMENT**

Under Rule 12(b)(1), this Court should grant a motion to dismiss if it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  To demonstrate Article III standing, each Plaintiff must plead facts showing that he or she has suffered a cognizable "injury" and that there is a "causal connection between the injury and the conduct complained of[.]"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  This prevents "the judicial process from being used to usurp the

6

power of the political branches." *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013).

In addition, a court should dismiss an action when the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, Plaintiffs' allegations must transcend the "speculative," "conceivable" and "possible," and instead must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555, 563, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). In making this determination, the Court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they satisfy the elements of each claim and show more than "the mere possibility of misconduct." *Iqbal*, 556 U.S. at 677–79.

Here, applying these principles, Plaintiffs have not satisfied (and cannot satisfy) their pleading burden and their Complaint should be dismissed with prejudice.

### A.      All Of Plaintiffs' Claims Fail Because Plaintiffs Do Not And Cannot Allege Any Actionable Wrongdoing On The Part Of Uber.

All of Plaintiffs' claims are based upon the assertion that Uber violates Chapter 31. In addition, Plaintiffs base their Lanham Act and unfair competition claims on the theory that Uber makes misrepresentations to consumers. Both theories are flawed as a matter of law.

### 1.      Plaintiffs Cannot Assert Statutory Or Common-Law Claims Based Upon Uber's Alleged Violation Of Chapter 31.

Plaintiffs claim that Uber violates Chapter 31 (Am. Compl. ¶¶ 21, 24–69, 114, 144–45, 167, 187, 205–07), but this legal theory fails because: (a) Chapter 31 does not allow for a private cause of action and Plaintiffs cannot evade this legislative intent by asserting common-law and statutory claims; and (b) Plaintiffs do not and cannot show that Uber is subject to Chapter 31.

### a.      Plaintiffs Cannot Circumvent The Absence Of A Private Cause Of Action In Chapter 31.

Plaintiffs contend that Uber has violated Article II of Chapter 31 (titled "Licensing and

Regulations of For-Hire Motor Vehicles"), but Article II does not prescribe a cause of action for private individuals.  *See* Chapter 31 § 31-92 (listing "penalties" for any violations of Article II). While private individuals have an administrative avenue to complain about alleged violations (§ 31-84(a)(4)), only the CSD "Director may secure enforcement of the provisions of this article by any legal action necessary, such as application to any court for injunctive relief or other appropriate relief." *Id.* § 31-90(e).  This enforcement authority is exclusive.

Under well-settled Florida law, where the legislative body chooses not to include any private right of action to enforce a statute or ordinance, that intent controls.  In that instance, a private plaintiff lacks standing and may not evade that legislative intent by bringing a civil action.  *See, e.g.*, *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008) ("plaintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action"); *Wehunt v. Ledbetter*, 875 F.2d 1558, 1567 (11th Cir. 1989) (applying rule); *Davis v. Broward County*, No. 11-61819-Civ, 2012 WL 279433, at *9 (S.D. Fla. Jan. 31, 2012) (applying rule); *QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n*, 94 So. 3d 541, 553 (Fla. 2012) ("courts cannot provide a remedy when the Legislature has failed to do so"); *City of Sarasota v. Windom*, 736 So. 2d 741, 742 (Fla. 2d DCA 1999) (applying rule).[4]

Likewise, Plaintiffs cannot do through other means what Chapter 31 does not permit directly.  Plaintiffs cannot thwart the express will of a legislative body by bringing common-law or statutory claims to enforce a statute, ordinance, or rule that does not allow private enforcement.  *Buell*, 267 F. App'x at 909 (affirming dismissal of common law claims for alleged violation of Florida statute that lacked private cause of action because "[w]e will not use the

---

[4]     This rule has even greater force when, like here, the law that a plaintiff seeks to enforce concerns public safety, which is entrusted to enforcement by public officials—not private parties. *See, e.g.*,*QBE Ins. Corp.*, 94 So. 3d at 553*; Windom*, 736 So. 2d at 742.

common law of contracts to circumvent this deliberate remedial limitation"); *West Coast Life Ins. Co. v. Life Brokerage Partners LLC.*, No. 08-80897-CIV, 2009 WL 2957749, at \*12 (S.D. Fla. Sept. 9, 2009) (same); *Fuller v. Mortg. Elec. Reg. Sys., Inc.*, 888 F. Supp. 2d 1257, 1270–71 (M.D. Fla. 2012) (same).  Plaintiffs' Complaint simply ignores this well-established rule.

Applying these principles, Florida courts have routinely refused to permit private parties to enforce provisions of the County Code (and other local ordinances), absent an express private cause of action.  *Compare Miami-Dade Cnty. v. Deerwood Homeowners' Ass'n*, 979 So. 2d 1103 (Fla. 3d DCA 2008) (affirming dismissal of claims brought for violations of Chapter 19 of the County Code) *and De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 941–42 (Fla. 3d DCA 2002) (affirming dismissal with prejudice of an employment discrimination claim brought under Chapter 11A of the County Code) *and Schupbach v. City of Sarasota*, 765 So. 2d 131, 132–33 (Fla. 2d DCA 2000) (applying rule) *with Del Rio v. City of Hialeah*, 904 So. 2d 484, 486 (Fla. 3d DCA 2005) (finding private cause of action to enforce City of Hialeah Code because ordinance in question was entitled "Private Right of Action").

Likewise, numerous courts across the country have applied these principles to dismiss similar claims against Uber for alleged violations of local transportation-service ordinances— which similarly lack a private cause of action.  *See Greater Houston*, 2015 WL 1032454, at \*10– 12 (dismissing claims against Uber based upon alleged violation of Houston and San Antonio transportation ordinances because "it is effectively an attempt to enforce compliance with local ordinances" reserved for local government); *Checker Cab Phila., Inc.*, 2015 WL 966284, at \*4 (applying rule); *Yellow Grp. LLC*, 2014 WL 3396055, at \*7 (applying rule); *Manzo*, 2014 WL 3495401, at \*4 (applying rule); *see also Dial A Car Inc. v. Transp., Inc.*, 82 F.3d 484, 488–90 (D.C. Cir. 1996) (holding that private parties may not bring Lanham Act claims to enforce local

taxi regulations because "[i]nstead of bringing this claim in federal court, appellant should be forced to take its argument to the D.C. Taxicab Commission").

These decisions set forth a clear rule:  because licensing transportation providers is a local government function, and because local government agencies are expressly and solely tasked with enforcing local transportation ordinances, enforcement is the exclusive province of these local government agencies.  Under Florida law, Plaintiffs cannot usurp that authority and cannot use common-law and statutory claims to do what Chapter 31 does not allow.

Plaintiffs contend that because Chapter 31 deems a for-hire license "intangible property," the County Commissioners somehow intended to provide a cause of action for Plaintiffs to enforce every provision of Chapter 31.  (Am. Compl. ¶¶ 37, 119, 164.)  But the "best evidence of legislative intent is the plain language of the [ordinance] itself[,]" *Burk v. State*, 705 So.2d 1003, 1004 (Fla. 4th DCA 1998), and Chapter 31 says nothing about private citizen enforcement. Moreover, Florida law is clear:  when an ordinance like Chapter 31 is enacted to protect the safety and welfare of the public, it "will not be construed as establishing a civil liability."  *QBE Ins. Corp.*, 94 So. 3d at 551.  Thus, all of Plaintiffs' claims should be dismissed.

**b.**      **Plaintiffs Fail To Show That Uber Is Subject To Chapter 31.**

Even if Plaintiffs could bring claims to enforce Chapter 31 (and they cannot), Plaintiffs do not and cannot plead facts to show that Uber is subject to Chapter 31.  While Plaintiffs assert the legal conclusion that Uber acts "***as if*** it were a passenger service company" subject to Chapter 31 (Am. Compl. ¶¶ 21, 114, 144, 167, 187 (emphasis added)), this legal conclusion fails to satisfy *Iqbal* and *Twombly*; it also makes clear that Uber is ***not*** a passenger service company.

Chapter 31 defines a "passenger service company" as "a Florida corporation or partnership created for the purpose of providing passenger services for for-hire taxi operations and providing various services to for-hire license holder(s) and chauffeurs with whom the

10

passenger service company has entered into passenger service agreements."  Chapter 31 § 31-81(s); (*see also* Am. Compl. ¶¶ 30, 48).  Yet, the Complaint alleges that Uber is a Delaware corporation—not a "Florida corporation."  (Am. Compl. ¶ 21.)  Moreover, the Complaint does not allege (and cannot allege) any facts to show that Uber was "created for the purpose of providing passenger services," that Uber offers "for-hire taxi operations," or that Uber has entered into "passenger service agreements."  Chapter 31 § 31-81(s).

Nor does the Complaint allege any facts to show that Uber performs any of the functions of a passenger service company as defined in Chapter 31.  *Id.* § 31-100(b).  Uber does not provide "for-hire vehicle color schemes and markings"; Uber does not provide "two-way radio or cellular telephone dispatch service"; and Uber does not maintain a "telephone number for receiving . . . calls related to for-hire taxi services[.]"  (*Id.*)  Plaintiffs' Complaint repeatedly concludes that Uber is a "for-hire vehicle dispatcher" (Am. Compl. ¶¶ 21, 55, 58, 114, 144, 167, 187), but offers no factual support.  Uber is a technology platform.  Uber licenses its App to drivers, who pay a fee to use the App to connect to passengers who need transportation.  A dispatcher, by contrast, is one who engages in the act of "send[ing] off or away with promptness or speed; especially: to send off on official business."[5]  Uber does not send drivers anywhere to do anything.  Drivers who use the App are free to choose where to go and whether they will pick up a passenger using the App.   This does not make Uber a passenger service company.

Although Plaintiffs assert that the County has determined that Uber is subject to Chapter 31 (Am. Compl. ¶¶ 63–64, 120, 165), Plaintiffs allege no facts to support this conclusion either.  Plaintiffs appear to base this conclusory assertion exclusively on a January 2015 memorandum ("Waiver Memo") from the Miami-Dade County Commission on Ethics & Public Trust ("COE")

---

[5]      *Merriam Webster Dictionary*, *available at* http://www.merriam-webster.com/dictionary/dispatch (last accessed May 4, 2015).

(Am. Compl. ¶ 63), but the COE is not even authorized to enforce Chapter 31 (which is limited to the CSD, as the County itself confirmed).  More fundamentally, the Waiver Memo addressed the entirely separate issue of whether a company could serve as lobbyist for both the County and Uber—not whether Uber was in violation of Chapter 31.  (Waiver Memo, attached hereto as Ex. B, at 1.)  In addition, although the COE noted that the County was enforcing section 31-303(a) of Chapter 31 against drivers who use the App (*id.* at 2–3), the Waiver Memo says nothing about section 31-100 (the provision alleged violated by Uber), and it certainly does not support Plaintiffs' unfounded assertion that "Miami-Dade has essentially gone on record as stating that UBER . . . violate[s] Chapter 31-100" (*id.* ¶ 64).  The Court should reject Plaintiffs' legal conclusion that Uber is a "passenger service company"; Uber is a technology platform.

### 2.    Plaintiffs Have Failed To Identify Any Misrepresentation By Uber, Much Less One That Caused Them Any Harm.

In addition to trying to use this lawsuit improperly to enforce Chapter 31, Plaintiffs contend that Uber made misrepresentations on its website about:  (a) compliance with local regulations; and (b) available insurance.  (Am. Compl. ¶¶ 70–95.)  But the statements identified are neither false nor misleading, and Plaintiffs fail to link any statements to the alleged devaluation of their licenses.

### a.    Uber Made No Misrepresentations About Compliance.

Plaintiffs allege that Uber has "consistently misled the public as to its compliance with local ordinances" by stating that "we aim to go above and beyond local requirements[.]" (*Id.* ¶ 71.)  But this is not a representation of fact that Uber is subject to or complying with anything; it is merely a non-actionable statement of aspiration or belief.  *See, e.g.*, *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, No. 12-60741-CIV, 2014 WL 1329359, at *18 (S.D. Fla. Mar. 31, 2014) (dismissing Lanham Act claim based on non-actionable "statement of belief about a future

12

event").  Moreover, this claim is simply another attempt to privately enforce a local ordinance under the guise of a misrepresentation theory.  Other courts have expressly rejected this claim against Uber.  *See Greater Houston*, 2015 WL 1034254, at *11 (holding "Plaintiffs have failed to plead a cognizable cause of action that Uber's representations that they 'meet all local regulations' are false or misleading"); *Manzo*, 2014 WL 3495401, at *3–4 (same).

In addition, Plaintiffs do not allege any facts to show that any passenger was deceived or misled into using Uber—to the detriment of Plaintiffs—by virtue of any statement about compliance with local ordinances.  This missing allegation is critical:  absent some connection between the alleged misrepresentation and some harm to Plaintiffs, there is no actionable claim.

### b.      Uber Made No Misrepresentations About Insurance.

Plaintiffs also allege that Uber misrepresents the availability of insurance coverage.  (Am. Compl. ¶¶ 76–79, 84–86, 88–94.)  Plaintiffs point to two purportedly false statements that Uber allegedly made on its website:  "**robust insurance coverage**" and "**best-in-class coverage**[.]" (*Id.* ¶ 77.)  These statements are not actionable for multiple reasons.

As an initial matter, they are non-actionable "puffery."  It is well-settled that "[p]uffing generally refers to an expression of opinion not made as a representation of fact. . . . Statements made to puff goods are not actionable in misrepresentation even if untrue on the theory that no reasonable person would rely on general claims of superiority made by a salesman."  *Mfg. Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) (citations omitted). Here, the statements that Plaintiffs challenge are sales talk, reflecting Uber's position that it offers better insurance than other "ridesharing" services.  It is common place and accepted practice to promote one's business using subjective adjectives such as highest quality, best possible, or even robust and best-in-class.  These statements constitute "non-actionable puffery." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1342, 1342 n.3 (S.D. Fla. 2012)

(holding statement on website regarding "best possible service" was "non-actionable puffery and sales talk"); *Gentry v. Harborage Cottages-Stuart, LLP*, 602 F. Supp. 2d 1239, 1252 (S.D. Fla. 2009), *aff'd in part*, *vacated in part on other grounds*, 654 F.3d 1247, 2011 WL 3904087 (11th Cir. 2011) (exaggerated statements of quality by seller constitute non-actionable puffery).

In addition to being non-actionable "puffery," the insurance statements upon which Plaintiffs base their misrepresentation claims are not false.  Plaintiffs argue that Uber's terms and conditions release Uber from liability and somehow negate Uber's insurance coverage, thereby rendering it "illusory."  (Am. Compl. ¶¶ 85–86, 88).[6]  But the very insurance policies in place (the "Policies") show that Uber's insurance coverage is anything but "illusory."  (*See* Policies, attached hereto as Exs. C1–C2.)  One Policy not only insures Uber's liability, but also provides up to $1,000,000 per accident for whenever drivers have accepted a ride request in the App and when the ride is ongoing.[7]  (Ex. C1, at 2, 30.)  Uber also has procured a second Policy, which covers driver liability for bodily injury up to $100,000 per accident whenever the driver is logged into the App, but awaiting a ride request.[8]  (Ex. C2, at 25, 33).  Thus, Uber's Policies cover all stages of any trip facilitated by the Uber App and expressly contradict Plaintiffs' claims about "illusory" coverage.  *See, e.g.*, *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV-HUCK/SIMONTON, 2006 WL 3499113, at *3 (S.D. Fla. Dec. 4, 2006) ("if an allegation in the

---

[6]     Plaintiffs also allege that the policy is "a surplus lines policy," but Uber made no statements to the contrary.  (Am. Compl. ¶ 78).  Likewise, although Plaintiffs contend upon information and belief that Uber's insurer is not authorized to issue auto liability insurance in Florida (*id.* ¶ 79), Plaintiffs offer no facts in support of this legal conclusion and certainly do not allege that Uber's insurer will not provide the insurance coverage it has agreed to provide.

[7]     The Policy applies to "Covered Autos," which are defined to include those vehicles driven by drivers who"[h]ave entered into a contract to use the App with one or more of the Named Insureds prior to the time of the 'accident.'"  (Ex. C1 at 31 (citing and incorporating definition of "Rideshare Driver" (*id.* at 27)).) The Policy is primary to a driver's personal auto policy.  (*Id.* at 36.)

[8]     This Policy provides coverage whenever the driver's personal insurance does not provide coverage.  (Ex. C2, at 25, 33.)

complaint is contradicted by a document incorporated by reference therein and which reveals facts foreclosing recovery as a matter of law, dismissal is appropriate").

Likewise, Plaintiffs' claim that Uber's terms and conditions negate the insurance coverage is nonsensical.  (Am. Compl. ¶ 84).  The terms and conditions govern the legal relationship between the rider and Uber, but Uber's Policies cover the rider's injuries caused by covered drivers.  (Ex. C1. at 2, 31.)  A limitation as to Uber's liability does not undermine a rider's ability to seek recovery from a covered driver through Uber's insurance coverage.

Even more desperately, Plaintiffs allege that Uber lacks an "insurable interest" in its Policies and, as a result, the insurance coverage is invalid.  (Am. Compl. ¶¶ 90–94.)  This, too, is legally and factually flawed.  The statute upon which Plaintiffs rely, Fla. Stat. § 627.405, "defines insurable interest for purposes of property insurance"; it "has *no relevance* concerning liability insurance."  *Aetna Cas. & Sur. Co. v. Growers Props.*, 542 So. 2d 1028, 1029 (Fla. Dist. Ct. App. 1989) (emphasis added).  Moreover, in addition to protecting drivers against liability arising from an App-arranged trip, the same Policies also insure Uber against actual or alleged liability arising from the same use of the vehicle.  (Ex. C1. at 25.)  Unquestionably, Uber has an interest in insuring its own liability and in Protecting App users against an insurable risk.

Lastly, in addition to failing to identify an actionable "insurance" misrepresentation by Uber, Plaintiffs also fail to allege facts to show that any consumer ever relied on Uber's insurance statements or would even be likely to be deceived by sales talk of "robust insurance coverage" and "best-in-class coverage." Thus, Plaintiffs' Lanham Act and unfair competition claims should be dismissed.

**B.**     **The Complaint Fails To Allege Facts Showing That Uber Has Caused Any Injury To Any Named Plaintiff.**

Each of Plaintiffs' claims and Article III standing require a causal link between

something improper that Uber said or did and Plaintiffs' alleged harm.[9]  It appears that Plaintiffs'

tortured theory of causation is that Uber's alleged "unauthorized and illegal operations" and

"misrepresentations" caused unidentified riders to choose to use the App, rather than the

transportation services of Plaintiffs in particular, which, in turn, has impacted the price of

Plaintiffs' particular for-hire licenses on what Plaintiffs term the "secondary market."  (*Id.* ¶ 70,

95.)  Plaintiffs cannot demonstrate causation as a matter of law because there are too many

intervening links and independent factors and because Plaintiffs have pled no facts to support

their causation theory.

Passengers make independent decisions regarding their transportation needs.  They may

choose to take a particular transportation service for a host of reasons, such as price,

convenience, or past experiences.  Passengers may forgo transportation services if their first

choice is not available.  Plaintiffs fail to identify any facts linking any passenger decision to any

alleged misrepresentations by Uber, much less any factual allegations showing that any

passenger would have chosen to use one of Plaintiffs' particular transportation services had he or

she not requested transportation through the Uber App on a particular occasion.

But Plaintiffs' theory of causation is even further attenuated.  Even if use of the App by

riders and drivers reduced the number of rides provided by Plaintiffs (which Plaintiffs have not

alleged), this does not mean that Plaintiffs' for-hire licenses somehow lost value on the

secondary market as a result.  This value may be impacted by numerous independent factors,

---

[9]     *See, e.g.*, *Lujan*, 504 U.S. at 560–61 (Article III requires "causal connection" between injury
and conduct); *Lexmark Intl., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014)
(Lanham Act claim requires proximate causation); *Dolphin LLC v. WCI Comty, Inc.*, 715 F.3d 1243,
1250 (11th Cir. 2013) (FDUTPA claim requires "causation"); *Johnson & Johnson Vision Care, Inc.
v. 1–800 Contacts, Inc*., 299 F.3d 1242, 1247 (11th Cir. 2002) (for Lanham Act claim, the plaintiff's
injury or likely injury must be "as a result of the false advertising"); *Procaps S.A. v. Patheon Inc.*, 36
F. Supp. 3d 1306, 1334 (S.D. Fla. 2014) ("proximately caused damages [are] a required element for a
common law unfair competition claim").

16

such as general economic conditions, the publicly perceived quality of for-hire transportation services, or a single entity holding multiple for-hire licenses deciding to leave the market (leading to increased supply).  Indeed, there are no factual allegations about how Uber's alleged violation of Chapter 31 impacted Plaintiffs' licenses in any way, let alone caused their devaluation.  The alleged link between Uber and any harm to Plaintiffs is far too attenuated and indirect, and is certainly not supported by any facts.  *See Lexmark*, 134 S. Ct. at 1390–91.

### C.    All Of Plaintiffs' Claims Fail Because They Do Not Allege A Viable Injury.

As an element of their claims and as a matter of Article III standing, Plaintiffs must plead a cognizable injury.[10]  Plaintiffs' only claimed injury is a decrease in their licenses' resale value. (Am. Compl. ¶¶ 6–12, 69, 95, 106, 122–23, 148–49, 170, 191–92.)  This is insufficient.

Courts have recognized that transportation service providers, like Plaintiffs, "merely possess a '*license* to participate in the highly regulated taxicab market [that] is subject to regulatory change.'"  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 273 (5th Cir. 2012) (quoting *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 509 (8th Cir. 2009)).  The County has the final say over whether to approve any sale of a license, whether to renew a license application, and whether to issue new licenses.  Chapter 31 § 31-82(h), (m) to (s).  Thus, as courts have recognized in other contexts, the resale value of a taxicab license is not a property interest; it is nothing more than an ***expectation*** that may change at any

---

[10]     *See, e.g., Lujan*, 504 U.S. at 560–61 (Article III requires a cognizable injury that is (1) "concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical") (internal quotation marks omitted); *Dolphin LLC*, 715 F.3d at 1250 (FDUTPA claim requires "actual damages"); *Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1247 (Lanham Act claim requires injury or likelihood of injury); *Practice Mgmt. Assoc., Inc. v. Old Dominion Ins. Co.*, 601 So. 2d 587, 587–88 (Fla. 1st DCA 1992) ("Florida case law . . . requires injury to a competitor as an essential element of any claim of unfair competition."); *Santa Rosa Cnty. v. Admin. Comm'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1193 (Fla. 1995) (declaratory judgment requires plaintiff show more than "merely the possibility of legal injury").

given moment.  Any alleged devaluation of Plaintiffs' licenses on the secondary market is simply

not cognizable.  *See, e.g.*, *Dennis Melancon, Inc.,* 703 F.3d at 269–70 (interest in resale value of

taxicab license was nothing more than "unilateral expectation"); *Minneapolis Taxi Owners*, 572

F.3d at 509 (any property interest in taxi cab license did "not extend to the market value of the

taxicab licenses derived through the closed nature of the City's taxicab market").

Even if an alleged devaluation of a for-hire license on the resale market could be a

cognizable injury (and it cannot), Plaintiffs further fail to allege facts showing such an injury.

Plaintiffs speculate about the value of their for-hire licenses in the "secondary . . . market" in

January 2014 (Am. Compl. ¶ 44), yet each Plaintiff fails to allege facts as to his, her, or its

license (such as what type of license it is), the current market value of the license, or why any

decrease is attributable to Uber, rather than other factors.  This is fatal to all of Plaintiffs' claims.

### D.   Each Of Plaintiffs' Claims Fail For Additional Claim-Specific Reasons.

#### 1.   Plaintiffs Are Not Consumers And Their FDUTPA Claim (Count I) Cannot Be Based Solely On An Alleged Violation Of Chapter 31.

Plaintiffs' FDUPTA claim fails for multiple independent reasons.  As an initial matter,

FDUTPA only protects "consumers."  *Leon v. Tapas & Tinos, Inc.*, Case No. 14–21133–CIV,

2014 WL 5032435, at *6 (S.D. Fla. Oct. 8, 2014).  Plaintiffs are not "consumers" who purchase

goods and services—they are ***business competitors*** of the transportation providers who use the

Uber App to receive transportation requests.  Thus, this claim should be dismissed.  *Id.*

In addition, Plaintiffs' *per se* theory of FDUTPA liability, based upon a supposed

violation of Chapter 31, is flawed.  (Am. Compl. ¶¶ 110–23.)  A FDUTPA claim may be based

on a violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair

methods of competition, or unfair, deceptive, or unconscionable acts or practices."  Fla. Stat. §

501.203(3)(c).  But Plaintiffs allege that Chapter 31 is an ordinance that seeks to protect the

18

health and safety of the public.  (Am. Compl. ¶ 52.)  Chapter 31 does not proscribe unfair

methods of competition or unfair acts or practices, and Plaintiffs do not identify any provisions

of Chapter 31 that refer to "unfair," "deceptive," or "unconscionable" practices.  Thus, Chapter

31 cannot form the basis of a FDUTPA claim, and Count I fails on this additional basis.

### 2. Plaintiffs Cannot Allege A Physical Touching Or Dispossession Of Property As Required For A Trespass To Chattels Claim (Count III).

Under Florida law, "trespass to personal property 'is the intentional use of, or

interference with, a chattel which is in the possession of another, without justification.'" *Haxton*

*v. State Farm Mut. Auto. Ins. Co. Bd. of Dirs.,* No. 3:13cv485, 2014 WL 3586550, at *8 (N.D.

Fla. July 21, 2014) (internal citation omitted).  This tort fails for multiple reasons.  First, there

are no allegations about any physical or forcible touching of any Plaintiff's personal property or

anything to show that Uber took possession of any such property.  *See* Restatement (Second) of

Torts § 217, Comment e (requiring physical touching or dispossession of Plaintiffs' property).

Second, license holders do not have a "property" interest in the resale value of their licenses.  *See*

*Minneapolis Taxi Owners*, 572 F.3d at 509.  Thus, this claim should be dismissed.

### 3. Plaintiffs' Lanham Act And Unfair Competition Claims (Counts V And VII) Fail Because Plaintiffs Fail To Plead Consumer Deception.

To succeed on a Lanham Act false advertising claim under 15 U.S.C. § 1125(a)(1)(B),

Plaintiffs must plead facts to show, among other things, that Uber's "ads" were "false or

misleading," that they "deceived, or had the capacity to deceive, consumers," and that "the

deception had a material effect on purchasing decisions." *Johnson & Johnson Vision Care, Inc.*,

299 F.3d at 1247.  Similarly, to state a claim for unfair competition under Florida law, Plaintiffs

must allege, among other things, "deceptive or fraudulent conduct of a competitor" and the

"likelihood of consumer confusion." *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes,*

*Inc.*, 785 F.2d 897, 914 (11th Cir. 1986).

As described above, Plaintiffs cannot satisfy the elements of these claims because Plaintiffs have not identified any false or misleading statements and because Plaintiffs have failed to allege that they were injured as a result of any advertising—as opposed to Uber's entry into the market or other competitive forces.  In addition, Plaintiffs have failed to allege facts to show any consumer deception regarding any of the alleged statements—much less that any alleged deception was material to a devaluation of Plaintiffs' for-hire licenses.

### 4.    There Is No Basis For Declaratory Relief (Count XV).

Plaintiffs' count for declaratory judgment is flawed because a declaration is a form of relief—not an independent cause of action.  *See, e.g.*, *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1350 (S.D. Fla. 2014) (applying rule to dismiss claim); *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012) (same).  Moreover, this Court's jurisdiction over Plaintiffs' declaratory relief count is discretionary.  *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007); *Kelner v. Woody*, 399 So. 2d 35, 37 (Fla. 3d DCA 1981).

Here, there is no basis to entertain Plaintiffs' request.  Plaintiffs can file a complaint about Uber with the County, and as the County Code makes clear (and as the County itself has made clear in the *Davis* Action), any dispute should be resolved at that level, based upon the experience and knowledge of the CSD.  This Court should not interfere with the County's authority to enforce its own ordinances.[11]

### IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint with prejudice.

---

[11]    In addition, it is also appropriate for the Court to dismiss this action on abstention grounds. The proper avenue to address Plaintiffs' claims—which are nothing more than a disguised attempt to enforce Chapter 31 against Uber—is before the County.  This case presents a complex issue of local administrative law pertaining to public health and welfare that should be left to the expertise of the CSD.  *See, e.g.*, *Sabato v. Fla. Dep't of Ins.*, 768 F. Supp. 1562, 1565–66 (S.D. Fla. 1991).

Dated:  May 4, 2015                              Respectfully submitted,


                                                 /s/ Brian M. Ercole
                                                 Robert M. Brochin
                                                 Florida Bar No. 319661
                                                 rbrochin@morganlewis.com
                                                 Brian M. Ercole
                                                 Florida Bar No. 0102189
                                                 bercole@morganlewis.com
                                                 Morgan Lewis & Bockius LLP
                                                 200 South Biscayne Boulevard – Suite 5300
                                                 Miami, Florida 33131-2339
                                                 Telephone:     305.415.3000
                                                 Facsimile:     305.415.3001

                                                 *Counsel for Defendant Uber Technologies, Inc.*

**<u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>**

I hereby certify that on May 4, 2015, I electronically filed Defendant Uber Technologies,

Inc.'s Motion To Dismiss Plaintiffs' Amended Complaint, along with all exhibits thereto, with

the Court's ECF System, which will send a notice of electronic filing to all parties as listed on

the Notice of Electronic Filing.


<u>/s/ Brian M. Ercole</u>
Brian M. Ercole

22