# Exhibit C2



## FACE PAGE

**This page is the face of the policy referenced by number below and is a part of the policy.**

Insured's Name:  Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC

Policy Number:  _                              Policy Dates: From:     To:

Surplus Lines Agent's Name:              Marcia Whisman
Surplus Lines Agent's Address:           7700 West Camino Real Suite # 201
                                         Boca raton, FL 33433
Surplus Lines Agent's License:           # P134922
Producing Agent's Name:
Producing Agent's Physical Address:      99 High Street
                                         Boston, MA 02110

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

## "SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."

Policy Premium:                              Policy Fee:
Inspection Fee:                              Service Fee:
Tax:                                         Citizen's Assessment:
EMPA Surcharge:                              FHCF Assessment:

Surplus Lines Agent's Countersignature: _____

**1**

# BUSINESS AUTO DECLARATIONS

**JAMES RIVER INSURANCE COMPANY**
6641 WEST BROAD STREET
SUITE 300
RICHMOND, VA  23230



**JAMES RIVER INSURANCE**

**Policy Number: CA436200FL-00**

### ITEM ONE

| | | | |
|---|---|---|---|
| **Named Insured:** | Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC | **Mailing Address:** | 1455 Market St, 4th Floor San Francisco, CA  94103 |

| **Policy Period:** | |
|---|---|
| **From:** | 3/06/2015 |
| **To:** | 3/01/2016     At 12:01 AM Standard Time at your mailing address shown above |

**Form Of Business:**

| | | | |
|---|---|---|---|
| [ ] Corporation | [x] Limited Liability Company | | [ ] Individual |
| [ ] Partnership | [ ] Other: | | |

| **Premium shown is payable at inception:** | ██████████ |
|---|---|

**Audit Period** (If Applicable): [ ] **Annually**   [ ] **Semiannually**   [ ] **Quarterly**   [x] **Monthly**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE APPLICATION(S) AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

### ITEM TWO

**Schedule of Coverages and Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which "autos" are covered "autos") | Limit The Most We Will Pay for Any One Accident or Loss | Premium |
|---|---|---|---|
| **Liability** | 10 | $50,000 each person BI $100,000 each accident BI $25,000 each accident PD | █████ |
| **Personal Injury Protection (Or Equivalent No-fault Coverage)** | 10 | Separately Stated In Each Personal Injury Protection Endorsement | █████ |
| **Uninsured Motorists (UM)** | Not Covered | $  Not Covered | █████ |
| **Underinsured Motorists (UIM)** (When Not Included In UM Coverage) | Not Covered | $  Not Covered | █████ |
| **Physical Damage** | | | |
| **Physical Damage Comprehensive Coverage** | Not Covered | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $          Deductible For Each Covered Auto, But No Deductible Applies to Loss Caused By Fire or Lightning | $ Not Covered |
| **Physical Damage Specified Causes of Loss Coverage** | Not Covered | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $          Deductible For Each Covered Auto, for  Loss Caused By Mischief or Vandalism | $ Not Covered |

JA2003US 12-14                Page 1 of 2

| | | | |
|---|---|---|---|
| Physical Damage Collision Coverage | **Not Covered** | Actual Cash Value or Cost of Repair, Whichever is Less, Minus<br>$                    Deductible<br>For Each Covered Auto | **$ Not Covered** |

| ITEM THREE – Specifically Described Autos – Physical Damage |
|---|
| Vehicles described below are covered "autos" but only for the Physical Damage Coverage where a premium is shown on the Declarations and only for the Limit(s) designated in the Declarations for such premium charge. |
| **None** |

| | |
|---|---|
| **Premium From Endorsements** | |
| **Estimated Total Premium** | |
| **Surplus Lines Tax** | |
| TOTAL SHOWN IS PAYABLE AT INCEPTION | |

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See attached schedule A – Schedule of Forms |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

# SCHEDULE A Revised 4/21/2015
FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO.**     **CA436200FL-00**

| FORM NUMBER | TITLE |
|---|---|
| **Mandatory Forms** | |
| **JA2003US 12-14** | **Business Auto Declarations** |
| **JA0001US 10-14** | **Business Auto – Schedule A** |
| **CA 00 01   03-06** | **Business Auto Coverage Form** |
| **JA5401US 03-13** | **Common Policy Conditions** |
| **JA5404US 10-14** | **Premium Audit Conditions Amended** |
| **IL  00 21  09-08** | **Nuclear Energy Liability Exclusion** |
| **CA 23 84  10-13** | **Exclusion - Terrorism** |
| **ISO Forms** | |
| **CA 99 54  10-13** | **Covered Auto Symbols (Symbol 10 defined)** |
| **CA 99 27  01-87** | **Split Liability Limits** |
| **Coverage Extensions** | |
| | |
| | |
| **Additional Interests & Waiver of Subrogation** | |
| **JA5201US 10-14  Additional Insured - Scheduled** | |
| **JA5206US 12-14 Additional Insured – Government Entities** | |
| | |
| **Limitations** | |
| **JA5306US 12-14 Limitation of Coverage to State-"Accidents" Occurring** | |
| | |
| **Exclusions** | |
| **JA5608US 12-14 Exclusion of Liability – Other rideshare policies issued by James River** | |
| | |
| **State Mandatory And Cancellation/Non-Renewal Endorsements** | |
| **CA0114 09-14 Puerto Rico Changes** | |
| **AP1014US 10-15  Florida Changes – Cancellation and Non Renewal** | |
| **CA0128 03-09  Florida Changes** | |
| **UM/UIM/PIP Forms** | |
| **CA2210 01 13  Florida Personal Injury Protection** | |
| | |
| **Other** | |
| **JA5312US 12-14 Transportation Network Company/Transportation Network Partner, Rideshare Driver Endorsement** | |
| **Endorsement 1 –County Cancellation and Non Renewal Notice to Third Party AP1015US 03-06 – Palm Beach County Board of County Commissioners** | |

**4**

COMMERCIAL AUTO
CA 00 01 03 06

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|:---:|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

**5**

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|----|---|---|

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

© ISO Properties, Inc., 2005

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

   **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

   **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **a.** Power cranes, shovels, loaders, diggers or drills; or

   **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraph **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **a.** Equipment designed primarily for:

      **(1)** Snow removal;

      **(2)** Road maintenance, but not construction or resurfacing; or

      **(3)** Street cleaning;

   **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

© ISO Properties, Inc., 2005

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© ISO Properties, Inc., 2005
CA 00 01 03 06   ☐

**16**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS

All Coverage Parts in this policy are subject to the following Conditions.

1. **CANCELLATION AND NON-RENEWAL**

   **A.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **B.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **C.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   **D.** Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

   **E.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata unless cancellation is due to non payment of premium, in which case the refund may be less than pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   **F.** If notice is mailed, proof of mailing will be sufficient proof of notice.

   If we elect not to renew this policy, we shall mail written notice to the First Named Insured at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least 30 days prior to the end of the policy term.

2. **CHANGES**

   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

3. **REPRESENTATIONS**

   By accepting this policy, you agree:

   A. The statements in the Declarations are accurate and complete;

   B. Those statements are based upon representations you made to us; and

   C. We have issued this policy in reliance upon your representations.

4. **SERVICE OF SUIT**

   It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.
   It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at the address shown on the Declarations page of this policy, and that in any suit instituted against any one of them upon this policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

**17**

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## 5.  TERMS, CONDITIONS AND PREMIUM

On each renewal, continuation, anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and/or amend the terms and conditions in accordance with the rates and rules then in effect.

## 6.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless signed by duly authorized representatives of this Company.

*VICE PRESIDENT*                              PRESIDENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT CONDITIONS AMENDED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SECTION IV—BUSINESS AUTO CONDITIONS,** subsection **B. General Conditions**, **Item** 6**. Premium Audit** is replaced with the following:

**6.  Premium Audit**

    **a.**  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.**  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

    **c.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. We have the right, but not the obligation, to conduct a physical audit of records needed for premium computation after the expiration of this policy.

    **d.**  The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the difference, if any.  However, the final premium due will never be less than the estimated total premium.

    **e.**  Your refusal to maintain or provide needed records, or to allow us to conduct a physical audit of needed records, will result in our developing and calculating a final audit premium based on information available to us and without your cooperation. If final premium audits calculated without your cooperation result in additional premium, you are obligated to pay such additional premium.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**19**

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

      **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

COMMERCIAL AUTO
CA 23 84 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

  **1.** "Terrorism" means activities against persons, organizations or property of any nature:

    **a.** That involve the following or preparation for the following:

      **(1)** Use or threat of force or violence; or

      **(2)** Commission or threat of a dangerous act; or

      **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

    **b.** When one or both of the following apply:

      **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

  **2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

  **1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**22**

**2.** Radioactive material is released, and it appears that one purpose of the ''terrorism'' was to release such material; or

**3.** The ''terrorism'' is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the ''terrorism'' was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the ''terrorism'' and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of ''terrorism'' which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of ''terrorism'' and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of ''terrorism'', there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any ''loss'', loss of use or rental reimbursement after ''loss'' caused directly or indirectly by ''terrorism'', including action in hindering or defending against an actual or expected incident of ''terrorism''. **But this exclusion applies only when one or more of the following are attributed to an incident of ''terrorism'':**

**1.** The ''terrorism'' is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the ''terrorism'' was to release such material; or

**3.** The ''terrorism'' is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the ''terrorism'' was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the ''terrorism'' and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of ''terrorism'' which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

© Insurance Services Office, Inc., 2013
CA 23 84 10 13

**23**

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

**24**

POLICY NUMBER: CA436200FL-00

**COMMERCIAL AUTO**
**CA 99 54 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERED AUTO DESIGNATION SYMBOL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| | |
|---|---|
| **Named Insured:** | Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC |
| **Endorsement Effective Date:** | 3/6/2015 |

**Section I – Covered Autos** in the Business Auto and Motor Carrier Coverage Forms and **Section I – Covered Autos Coverages** in the Auto Dealers Coverage Form are amended by adding the following:

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

| Symbol | | Description Of Covered Auto Designation Symbols |
|--------|---|--------------------------------------------------|
| | | For use with the Business Auto Coverage Form |
| 10 | = | Any passenger "auto" while being used by a "Rideshare Driver", in connection with the UberDriver application accessed using account credentials issued under a contract with a Named Insured provided the "Rideshare Driver":<br><br>a. has logged into the UberDriver application; and<br><br>b. is "available to receive requests" for transportation services requested through the UberDriver application; and<br><br>c. has not accepted a request through the UberDriver application and is not en route to or providing transportation services in response to a request accepted in the UberDriver application; and<br><br>d. is not on a public airport premises.<br><br>"Available to receive requests" means the UberDriver application is in a state such that an applicable request would be transmitted to the "Rideshare Driver's" UberDriver application account for acceptance by the "Rideshare Driver" and the "Rideshare Driver" is not transporting a passenger for a fee or other compensation. |
| | | For use with the Auto Dealers Coverage Form |
| 32 | = | |

© Insurance Services Office, Inc., 2011

| Symbol | | Description Of Covered Auto Designation Symbols |
|--------|---|--------------------------------------------------|
| | | For use with the Motor Carrier Coverage Form |
| **72** | **=** | |
| **73** | **=** | |

© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO STATE – "ACCIDENTS" OCCURRING

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**SCHEDULE**

| State Operation(s): |
|---|
| All "accidents" occurring in the states of Florida, US Virgin Islands and Puerto Rico |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury" or "property damage" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto" arising out of the operation(s) shown in the SCHEDULE above.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**27**

POLICY NUMBER:  CA436200FL-00                                    **COMMERCIAL AUTO**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SPLIT LIABILITY LIMITS

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Endorsement Effective  03/06/2015 | |
| Named Insured:  Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC | Counter-signed By  *Richard J. Schatz* |
| | (Authorized Representative) |

**SCHEDULE**

| | | |
|---|---|---|
| "Bodily Injury" Liability: | $ | Each Person |
| | $ | Each "Accident" |
| "Property Damage" Liability: | $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The LIABILITY COVERAGE Limit of Insurance is replaced by the following:

Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the limit of insurance is as follows:

1. The most we will pay for all damages resulting from "bodily injury" to any one person caused by any one "accident," including all damages claimed by any one person or organization for care, loss of services or death resulting from one "bodily injury," is the limit of "Bodily Injury" Liability shown in the Schedule for each person.

2. Subject to the limit for each person, the most we will pay for all damages resulting from "bodily injury" caused by any one "accident" is the limit of "Bodily Injury" Liability shown in the Schedule for each "accident."

3. The most we will pay for all damages resulting from property damage" caused by any one "accident" is the limit of "Property Damage" Liability shown in the Schedule.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

**CA 99 27 01 87**          Copyright, Insurance Services Office, Inc.,  1985, 1991          Page 1 of 1          ☐

**28**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LIABILITY – OTHER RIDESHARE POLICIES ISSUED BY JAMES RIVER INSURANCE COMPANY OR JAMES RIVER CASUALTY COMPANY

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement the provisions of the Coverage Form apply unless modified by the endorsement.

This insurance does not apply to any claim or "suit" which is covered under any other Business Auto insurance policies issued to the Named Insured shown in the Declarations by either James River Insurance Company or James River Casualty Company, except for any:

1.   Excess automobile liability policy that schedules this policy as underlying insurance; or

2.   Non-liability physical automobile damage policy.

This exclusion applies to any claim or "suit" which is covered or would have been covered under the Business Auto insurance policies issued to the Named Insured shown in the Declarations by either James River Insurance Company or James River Casualty Company, but for the exhaustion of limits, exclusion(s), or, cancellation or expiration of such policies.

If more than one policy issued by either James River Insurance Company or James River Casualty Company provides coverage to the same "insured" in the same claim or "suit", only the policy providing the broadest coverage to the "insured" will apply to the claim or "suit".

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**29**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – GOVERNMENT ENTITIES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**SCHEDULE**

| **Name Of Additional Insured Entity(ies):** |
| --- |
| **Any state, county, city or other local governmental entity or regulatory organization, and their respective employees, where required by agreement, law, ordinance or contract with a Named Insured.** |

A. **Section II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured** is amended to include as an additional insured the entity(ies) shown in the SCHEDULE, but only with respect to their liability for "bodily injury" or "property damage" to which this insurance applies, caused in whole or in part, by:

   1. Your acts or omissions; or

   2. The acts or omissions of those acting on your behalf;

   and caused by an "accident" resulting from the ownership, maintenance or use of a covered "auto".

   However, the insurance afforded to such additional insured:

   1. Only applies to the extent permitted by law; and

   2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by contract or agreement to provide such additional insured.

B. **Section II – COVERED AUTOS LIABILITY COVERAGE, C. Limit Of Insurance** is amended to add the following:

   With respect to the insurance afforded to the additional insureds shown in the SCHEDULE, the following is added:

   The most we will pay on behalf of the additional insured shown in the SCHEDULE is the amount of insurance:

   1. Required by the contract or agreement you have entered into with the additional insured; or

   2. Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – SCHEDULED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement the provisions of the Coverage Form apply unless modified by the endorsement.

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
| --- |
| **Uber Technologies Inc and its subsidiaries** |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the SCHEDULE, but only with respect to their liability for "bodily injury" or "property damage" to which this insurance applies, caused in whole or in part, by:

    **1.** Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

and caused by an "accident" resulting from the ownership, maintenance or use of a covered "auto".

However, the insurance afforded to such additional insured:

    **1.** Only applies to the extent permitted by law; and

    **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by contract or agreement to provide such additional insured.

**B. Section III – Limits Of Insurance** is amended to add the following:

With respect to the insurance afforded to the additional insureds shown in the SCHEDULE, the following is added:

The most we will pay on behalf of the additional insured shown in the SCHEDULE is the amount of insurance:

    **1.** Required by the contract or agreement you have entered into with the additional insured; or

    **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**31**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TRANSPORTATION NETWORK COMPANY/ TRANSPORTATION NETWORK PARTNER, RIDESHARE DRIVER ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Covered "autos" are specifically included under all coverage parts shown in the Declarations and any coverage forms for Uninsured Motorist, Underinsured Motorist, Personal Injury Protection or other endorsed first party compulsory coverage specific to the state or jurisdiction in which a ride originated regardless of where that covered "auto" is registered or principally garaged.

The following definitions are added to **SECTION V – DEFINITIONS**

**O.** "Rideshare Driver" means an individual that is operating a motor vehicle in connection with the use of an UberDriver application that has entered into a contract with a  "transportation network company" or (TNC).

**P.** "Transportation Network Company" (or TNC) means an entity which uses a proprietary digital network to connect passengers to drivers for the purposes of providing transportation.

**Q.** "UberDriver application" means any smartphone application licensed by Uber Technologies, Inc. which is utilized by a Rideshare Driver to receive requests for transportation from passengers.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured** is deleted and replaced with the following:

**1. Who Is An Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**d.** "Rideshare Drivers" other than you and your employees are "insureds" given that such "Rideshare Drivers":

JA5312US 12-14        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 1 of 2

**32**

**(1)** Are using or operating a covered "auto" that you don't own, hire or borrow in your business or personal affairs; and

**(2)** Have entered into a contract to use the UberDriver application with one or more of the Named Insureds prior to the time of the "accident"; and

**(3)** Have accessed the UberDriver application using a log in credential issued by a Named Insured to such "Rideshare Driver" for their own use.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE, C. Limit of Insurance** is deleted and replaced with the following:

Regardless of the number of "insureds", premiums paid, claims made or vehicles (other than covered "autos") involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

If more than one covered "auto" is involved in the same "accident", each "insured" operating or using a covered "auto" shall have a separate Limit of Insurance for Liability Coverage shown in the Declarations for such covered "auto".

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION IV – BUSINESS AUTO CONDITIONS, B. General Conditions, 5. Other Insurance** is deleted and replaced with the following:

**5. Other Insurance**

Coverage provided by this policy shall only apply if there is no other valid and collectible automobile liability insurance available to a covered "Rideshare Driver" which provides at least the amount of coverage shown on the Declarations of this policy.  If there is other automobile liability insurance available to a covered "Rideshare Driver" which provides at least the amount of coverage shown on the Declarations of this policy, then this coverage shall not apply.

If no other automobile liability insurance is available to a covered "Rideshare Driver" then the coverage provided by this endorsement shall be primary.

If a "Rideshare Driver" has other primary automobile liability insurance available for a "covered auto" which provides less than that amount of coverage shown on the Declarations of this policy, then this policy shall provide excess coverage and our Limits of Insurance will be reduced by the amount of that other insurance including any deductibles or self-insured retention amounts.

If a "Rideshare Driver" is insured by other primary automobile liability insurance for a "covered auto" which specifically excludes coverage for the use of an automobile while a "Rideshare Driver" is logged into the "UberDriver" application or a proprietary digital network controlled by a "Transportation Network Company", then such other insurance shall be deemed to not be available.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

POLICY NUMBER:  CA436200FL-00

COMMERCIAL AUTO
CA 22 10 01 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:   Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC** |
| **Endorsement Effective Date:     3-6-2015** |

We agree with the "named insured", subject to all the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows that:

**SCHEDULE**

| |
|---|
| Any Personal Injury Protection deductible shown in the Declarations of  **$** |
| is applicable to    ☐   the following "named insured" only: |
|          ☐   each "named insured" and each dependent "family member". |
| ☐   Work loss for "named insured" does not apply. |
| ☐   Work loss for "named insured" and dependent "family member" does not apply. |

| Benefits | Limit Per Person |
|---|---|
| Total Aggregate Limit for all Personal Injury Protection Benefits, except Death Benefits | $10,000 |
| Death Benefits | $5,000 |
| Medical Expenses | 80% of medical expenses subject to the total aggregate limit and the provisions of Paragraphs **D.2.a.** and **b.** under Limit Of Insurance. |
| Work Loss | 60% of work loss subject to the total aggregate limit |
| Replacement Services Expenses | subject to the total aggregate limit |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

© Insurance Services Office, Inc., 2013

**A. Coverage**

We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No-fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

**1. Medical Expenses**

**a.** All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after the "motor vehicle" "accident" that are:

**(1)** Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

**(2)** Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

**(3)** Provided by a person or entity licensed to provide emergency transportation and treatment;

as authorized by the Florida Motor Vehicle No-fault Law.

**b.** Upon referral by a licensed health care provider described in Paragraph **A.1.a.(1), (2)** or **(3)**, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph **A.1.a.,** if provided, supervised, ordered or prescribed only by a licensed:

**(1)** Physician, osteopathic physician, chiropractic physician or dentist; or

**(2)** Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician chiropractic physician or dentist;

as authorized by the Florida Motor Vehicle No-fault Law.

Follow-up services and care may also be provided by:

**(3)** A licensed hospital or ambulatory surgical center;

**(4)** An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

**(5)** An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

**(6)** A licensed physical therapist, based upon referral by a provider described in Paragraph **A.1.b;** or

**(7)** A health care clinic licensed under the Florida Health Care Clinic Act:

**(a)** Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

**(b)** Which:

**(i)** Has a licensed medical director;

**(ii)** Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

**(iii)** Provides at least four of the following medical specialties:

**i.** General medicine;

**ii.** Radiography;

**iii.** Orthopedic medicine;

**iv.** Physical medicine;

**v.** Physical therapy;

**vi.** Physical rehabilitation;

**vii.** Prescribing or dispensing outpatient prescription medication; or

**viii.** Laboratory services;

as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph **A.1.,** medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

### 2. Replacement Services Expenses

With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household;

### 3. Work Loss

With respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person; and

### 4. Death Benefits

## B. Who Is An Insured

1. The "named insured".

2. If the "named insured" is an individual, any "family member".

3. Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.

4. A "pedestrian" if the "accident" involves the covered "motor vehicle".

## C. Exclusions

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by the "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle";

2. Sustained by any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;

3. Sustained by any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

   a. Causing "bodily injury" to himself or herself intentionally; or

   b. While committing a felony;

4. To the "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;

5. To any "pedestrian", other than the "named insured" or any "family member", not a legal resident of the state of Florida;

6. To any person, other than the "named insured", if that person is the "owner" of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;

7. To any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or

8. To any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

## D. Limit Of Insurance

1. Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits, available under the Florida Motor Vehicle No-fault Law from all sources combined, including this policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:

   a. $10,000 for medical expenses, work loss and replacement services; and

   b. $5,000 for death benefits.

2. Subject to Paragraph **D.1.a.,** we will pay:

   a. Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or an advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or

   b. Up to $2,500 for medical expenses, if any health care provider described in Paragraph **A.1.a.** or **A.1.b.** has determined that the "insured" did not have an "emergency medical condition".

3. Any amount paid under this coverage will be reduced by the amount of benefits an injured person has been paid or is entitled to be paid for the same elements of "loss" under any workers' compensation law.

© Insurance Services Office, Inc., 2013

4. If personal injury protection benefits, under the Florida Motor Vehicle No-fault Law, have been received from any insurer for the same elements of loss and expense benefits available under this policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

5. The deductible amount shown in the Schedule will be deducted from the total amount of expenses and losses listed in Paragraphs **A.1., A.2.** and **A.3.** of this endorsement before the application of any percentage limitation for each "insured" to whom the deductible applies. The deductible does not apply to the death benefit.

6. Any amount paid under this coverage for medical expenses may be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

**E. Changes In Conditions**

The **Conditions** are changed for **Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

   Compliance with the following duties is a condition precedent to receiving benefits:

   In the event of an "accident", the "named insured" must give us or our authorized representative prompt written notice of the "accident".

   If any injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against a third party, a copy of the summons, complaint or other process served in connection with that legal action must be forwarded to us as soon as possible by the injured person or his or her legal representative.

   A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   **a.** No legal action may be brought against us until there has been full compliance with all terms of this policy. In addition, no legal action may be brought against us:

   **(1)** Until the claim for benefits is overdue in accordance with Paragraph **F.2.** of this endorsement; and

   **(2)** Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

   **(3)** With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

   **(a)** Pay the overdue claim; or

   **(b)** Agree to pay for future treatment not yet rendered;

   in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

   **b.** If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

**3. Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

**a.** We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from the proceeds of any settlement or judgment resulting from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

**b.** If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

**c.** The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if such injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, such commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an "owner" or registrant of a "motor vehicle" used as a taxicab.

**4. Concealment, Misrepresentation Or Fraud** is replaced by the following:

**Concealment, Misrepresentation Or Fraud**

We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

**5. Policy Period, Coverage Territory** is replaced by the following:

**Policy Period, Coverage Territory**

The insurance under this section applies only to "accidents" which occur during the policy period:

**a.** In the state of Florida;

**b.** As respects the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions or Canada; and

**c.** As respects the "named insured", while "occupying" a "motor vehicle" of which a "family member" is the "owner" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions or Canada.

**F. Additional Conditions**

The following conditions are added:

**1. Mediation**

  **a.** In any claim filed by an "insured" with us for:

    **(1)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

    **(2)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

    **(3)** "Loss" to a covered "auto" or its equipment, in any amount,

    either party may make a written demand for mediation of the claim prior to the institution of litigation.

  **b.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

  **c.** The request must state:

    **(1)** Why mediation is being requested.

    **(2)** The issues in dispute, which are to be mediated.

  **d.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

  **e.** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

  **f.** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**2. Payment Of Benefits**

Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law.

However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

**3. Modification Of Policy Coverages**

Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits has been exhausted, any Medical Payments Coverage afforded by the policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits but shall not be payable for the amount of the deductible selected.

© Insurance Services Office, Inc., 2013

**4. Medical Reports And Examinations; Payment Of Claim Withheld**

As soon as practicable, the person making the claim shall submit to mental and physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or failure to appear at, two examinations, raises a rebuttable presumption that such person's refusal or failure was unreasonable.

Whenever a person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**5. Provisional Premium**

In the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

**6. Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

**7. Insured's Right To Personal Injury Protection Information**

**a.** In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

**b.** If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

© Insurance Services Office, Inc., 2013

**G. Additional Definitions**

As used in this endorsement:

1. "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

   a. Serious jeopardy to "insured's" health;

   b. Serious impairment to bodily functions; or

   c. Serious dysfunction of any bodily organ part.

2. "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

   However, "motor vehicle" does not include:

   a. A mobile home;

   b. Any "motor vehicle" which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

3. "Family member" means a person related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured".

4. "Named insured" means the person or organization named in the Declarations of the policy and, if an individual, shall include the spouse if a resident of the same household.

5. "Occupying" means in or upon or entering into or alighting from.

6. "Owner" means a person or organization who holds the legal title to a "motor vehicle" and also includes:

   a. A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;

   b. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

   c. A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

7. "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

8. "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site and duration; and

   c. Not primarily for the convenience of the patient, physician or other health care provider.

© Insurance Services Office, Inc., 2013

COMMERCIAL AUTO
CA 01 14 09 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PUERTO RICO CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Puerto Rico, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**COVERED AUTOS LIABILITY COVERAGE INCLUDES THE COMPULSORY PROPERTY DAMAGE LIABILITY COVERAGE REQUIRED BY THE PUERTO RICO "MOTOR VEHICLE COMPULSORY LIABILITY INSURANCE ACT".**

**A. Changes In Covered Autos Liability Coverage**

1. The third paragraph of **Coverage** is replaced by the following:

    We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". This applies even if the "suit" is groundless, false or fraudulent. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

2. Covered Autos Liability Coverage does not apply to the extent that the "insured" is exempted from liability because of the Puerto Rico Automobile Accident Social Protection Act.

3. The following exclusion is added to Covered Autos Liability Coverage:

    We will not pay for "property damage" to any vehicle that is not insured for compulsory property damage liability coverage to the extent of the limit of liability required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act".

4. The **Limit Of Insurance** provision is amended by the addition of the following paragraph:

    With respect to "accidents" occurring in Puerto Rico, we will first apply the limit of liability to provide the limit required by the Puerto Rico "Motor Vehicle Compulsory Liability Act". However, this provision will not change our total limit of liability.

**B. Changes In Auto Medical Payments Coverage**

Auto Medical Payments Coverage does not apply to the extent that coverage is available under the Puerto Rico Automobile Accident Social Protection Act.

**C. Changes In Conditions**

1. The following provision is added:

    **Compulsory Property Damage Liability Coverage**

    If we cancel or nonrenew this Policy, or if you cancel or do not accept an offer to renew or continue this Policy, as provided in the Cancellation Common Policy Condition, then, in accordance with the requirements of the Regulations of the Insurance Code of Puerto Rico, issued pursuant to the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act":

    a. We will notify the Joint Underwriting Association of the cancellation or nonrenewal of this Policy; and

    b. The Compulsory Liability Insurance Joint Underwriting Association will offer, until the date of expiration of each of your covered "auto's" license, the compulsory property damage liability coverage required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act".

2. The **Cancellation** Common Policy Condition is replaced by the following:

    a. You may cancel the Policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

© Insurance Services Office, Inc., 2013

**b.** We may cancel the Policy by mailing you at least 10 days' notice at the last address you have informed us of in writing or, otherwise, at the address shown in this Policy. Proof of mailing of any notice will be sufficient proof of notice.

**c.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**d.** If this Policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. However, making or offering to make the refund is not a condition of cancellation. If you cancel, the refund, if any, will be computed in accordance with the customary short rate procedure. If we cancel, the refund, if any, will be computed pro rata. Unearned premium does not include any amount that we are required to remit to the Joint Underwriting Association, with respect to the compulsory property damage liability coverage that the Puerto Rico Compulsory Liability Insurance Joint Underwriting Association is required to provide, in accordance with the Regulations of the Insurance Code of Puerto Rico.

**3. Legal Action Against Us** is replaced by the following:

No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form.

**4.** The first sentence of **Appraisal For Physical Damage Loss** is replaced by the following:

If you and we fail to agree as to the amount of "loss", you (but not we) may demand an appraisal of the "loss".

**5. Interruption Of Coverage**

In accordance with requirements of the Regulations of the Insurance Code of Puerto Rico, if coverage provided under this coverage form is interrupted while the license of the covered "auto" is in effect, the period during which the coverage was not in force will be considered covered by the Joint Underwriting Association exclusively under the terms of the compulsory property damage liability coverage required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act".

**6.** The following condition is added:

**Transfer Of Your Interest In The Policy**

We must be notified of any transfer of ownership of your covered "auto" within 10 days of such transfer. After you notify us of the transfer, in accordance with the requirements of the Regulations of the Insurance Code of Puerto Rico, we will notify the Puerto Rico Compulsory Liability Insurance Joint Underwriting Association of the transfer of ownership of your covered "auto".

**7.** The following provisions are added:

**Settlement Of Claims**

Settlement of claims, to the extent of the limit of liability and coverage required by the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act", will be made, whenever applicable, in agreement with the diagrams mentioned in article No. 7 of the Initial Liability Determination System adopted in accordance with the mentioned act.

Notwithstanding the previously mentioned act, payments for other coverage afforded under this Policy, in addition to the payments resulting from the application of the mentioned diagrams, will be made by us, in accordance with the applicable coverage, up to the limits established in the same.

In the case that the above mentioned diagrams are not applicable, payments for coverage afforded under this Policy will be made by us, in accordance with the applicable coverage up to the limits established in the same.

**Conformity To Statute Or Regulation**

Any provision of this Policy that is in conflict with the Puerto Rico "Motor Vehicle Compulsory Liability Insurance Act" or Rule LXX of the Regulations of the Insurance Code of Puerto Rico is hereby amended to conform to that act or rule.

© Insurance Services Office, Inc., 2013

CA 01 14 09 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLLY.**

# FLORIDA CHANGES—CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The CANCELLATION AND NON-RENEWAL Condition of this Policy is deleted and replaced with the following:

**CANCELLATION AND NON-RENEWAL**
    A.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    B.  If the policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2)  20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

            (a)  A material misstatement or misrepresentation; or

            (b)  A failure to comply with our underwriting requirements.

    C.  If the policy has been in effect for more than 90 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
        (2)  45 days before the effective date of cancellation if we cancel for any other reason.

    D.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    E.  Notice of cancellation will state the effective date of cancellation.  The policy will end on that date.

    F.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even of we have not made or offered a refund.

    G.  If notice is mailed, proof of mailing will be sufficient proof of notice.

    If we elect not to renew this Policy for an additional "policy period", we shall mail written notice, stating the reason for non-renewal, to the first Named Insured at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least 45 days prior to the end of the policy period.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP1014US 10-05               Page 1 of 1

**44**

COMMERCIAL AUTO
CA 01 28 03 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Physical Damage Coverage** is changed as follows:

   **1.** No deductible applies under Specified Causes of Loss or Comprehensive coverage for "loss" to glass used in the windshield.

   **2.** All other **Physical Damage Coverage** provisions will apply.

   **3.** Paragraph **1.** of Loss Conditions, **Appraisal For Physical Damage Loss,** is replaced by the following:

      **1.** **Appraisal For Physical Damage Loss**

      If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in this endorsement. The mediation must be completed before a demand for appraisal can be made. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

      **a.** Pay its chosen appraiser; and

      **b.** Bear the other expenses of the appraisal and umpire equally.

      If we submit to an appraisal, we will still retain our right to deny the claim.

**B.** The **General Conditions** are amended as follows:

   **1.** The following is added to the **Other Insurance** Condition in the Business Auto and Garage Coverage Forms, and **Other Insurance – Primary And Excess Provisions** Condition in the Truckers and Motor Carrier Coverage Forms:

      **a.** When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:

        **(1)** One provides coverage to a lessor of "autos" for rent or lease; and

        **(2)** The other provides coverage to a person not described in Paragraph **B.1.a.(1),**

      then the Coverage Form or policy issued to the lessor described in Paragraph **B.1.a.(1)** is excess over any insurance available to a person described in **B.1.a.(2)** if the face of the lease or rental agreement contains, in at least 10 point type, the following language:

        The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

CA 01 28 03 09         © Insurance Services Office, Inc., 2008        Page 1 of 2     ☐

**2.** The following condition is added to the Business Auto, Garage, Truckers and Motor Carrier Coverage Forms:

**Mediation**

**1.** In any claim filed by an "insured" with us for:

    **a.** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

    **b.** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto", or

    **c.** "Loss" to a covered "auto" or its equipment, in any amount;

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**2.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**3.** The request must state:

    **a.** Why mediation is being requested.

    **b.** The issues in dispute, which are to be mediated.

**4.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**5.** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

**6.** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 1

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CA436200FL-00 | 4/21/2015 12:01 AM Standard Time at the address of the Named Insured | James River Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC | Richard J. Schmitzer |

COVERAGE PARTS AFFECTED
ALL COVERAGE PARTS

CHANGES

The following endorsement is added:

Cancellation and Non Renewal Notice to Third Party AP1015US 03-06 – Palm Beach County Board of County Commissioners

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Authorized Representative Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANCELLATION AND NON RENEWAL NOTICE TO THIRD PARTY

The following is added to the CANCELLATION AND NON-RENEWAL condition of this policy:

If we cancel or non-renew this policy, we will send written notice of cancellation or non-renewal to the person or organization shown in the Schedule below at the address shown below.

If the policy is being cancelled for non-payment of premium, the notice will be mailed at least 10 days before the effective date of the cancellation.   If the policy is being cancelled for any other reason or non-renewed, the notice will be mailed at least 30 days before the effective date of the cancellation or non-renewal.   If notice is mailed, proof of mailing will be sufficient proof of notice.

**SCHEDULE**

Palm Beach County Board of County Commissioners
301 N. Olive Avenue,
West Palm Beach, Florida 33401

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP1015US 03-06

**48**