IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CIVIL ACTION 1:15-cv-20356-Martinez

| | |
|---|---|
| MIADECO CORP., B & S TAXI CORP., | § |
| CHECKER CAB OPERATORS, INC., | § |
| and PHIL ELLIS LOWERY, MINNIE MAE | § |
| LOWERY, EDDIELENE GAIL LOWERY | § |
| BROWN, AND ARNETT LEE JR., | § |
| individually and on behalf of others similarly | § |
| situated, | § |
| | § |
| Plaintiffs, | § |
| | § |
| vs. | § |
| | § |
| UBER TECHNOLOGIES, INC., | § |
| LYFT, INC., | § |
| | § |
| Defendants. | § |

**LYFT'S CORRECTED[1] MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

---

[1]    Lyft files this corrected motion to address two proposed amendments to Chapter 31 concerning transportation network companies and to remove references to similar proposed state legislation, which is no longer being considered now that the legislative session has ended.

TABLE OF CONTENTS

I.     Background ..................................................................................................... 2

II.    Legal Standard ............................................................................................... 3

III.    Arguments and Authorities ........................................................................... 3

    A.    Plaintiffs' declaratory judgment allegations remain deficient. .............. 3

        1.    Plaintiffs do not seek a declaration of their own rights or legal interests. ........................................................................... 4

        2.    Plaintiffs cannot base their declaratory judgment claim on the ordinances because they grant no private cause of action. ......... 4

            a.    Chapter 31's text and structure make clear that the drafters did not intend to create a private cause of action. ........................... 5

            b.    Chapter 31's definition of "Medallion system" provides no basis for implying a private cause of action. .................................. 8

        3.    Lyft is not subject to the ordinances as a matter of law. ............. 8

    B.    Plaintiffs' Lanham Act allegations continue to suffer from fatal pleading deficiencies. .................................................................... 10

        1.    Plaintiffs fail to plead an actionable misrepresentation of fact, let alone one that actually or potentially materially deceived consumers. ................................................................. 11

            a.    The compliance-with-law representations are not false or misleading. ...................................................................... 11

            b.    The insurance representations are not false or misleading. ......... 12

        2.    Plaintiffs do not adequately plead an injury or proximate causation. ........ 14

    C.    Plaintiffs still fail to state a claim under FDUTPA. .............................. 16

    D.    Plaintiffs' trespass to chattels allegations still fail to state a claim. ...................... 17

    E.    Plaintiffs' unfair competition allegations do not state a claim. ............................ 18

    F.    The dismissal of the CAC should be with prejudice. ............................ 19

    G.    Alternatively, the Court should abstain from deciding this local issue. .............. 20

IV.    Conclusion .................................................................................................. 20

i

## TABLE OF AUTHORITIES

**Page(s)**

<small>**CASES**</small>

*Aetna Cas. & Sur. Co. v. Growers Props., No. 58 Ltd.*,
　542 So. 2d 1028 (Fla. Dist. Ct. App. 1989) ...............................................................14

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*,
　432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) ...............18

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
　889 F. Supp. 2d 1304 (M.D. Fla. 2012).................................................................11

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
　No. 8:11-CV-775-T-24-TBM, 2012 WL 33155 (M.D. Fla. Jan. 6, 2012) .......................12, 19

*Anza v. Ideal Steel Supply Corp.*,
　547 U.S. 451 (2006).......................................................................................16

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).....................................................................................3, 10

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007).........................................................................................3

*Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*,
　Civ. A. No. 1:13-CV-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014) ...........12, 9

*Burford v. Sun Oil Co.*,
　319 U.S. 315 (1943).......................................................................................20

*Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*.
　805 So. 2d 835, 846 (Fla. Dist. Ct. App. 2001) ...................................................18

*Castillo v. Allegro Resort Mktg.*,
　No. 14-11961, 2015 WL 1214057 (11th Cir. Mar. 18, 2015)....................................10

*City of Sarasota v. Windom*,
　736 So. 2d 741 (Fla. Dist. Ct. App. 1999) ............................................................6

*Clever Covers, Inc. v. Storm Guard, Inc.*,
　No. 8:06-CV-1062T27MAP, 2006 WL 2474266 (M.D. Fla. Aug. 25, 2006)......................19

*Coddington v. Staab*,
　716 So. 2d 850 (Fla. Dist. Ct. App. 1998) ..........................................................17

*Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
   915 F.2d 167 (5th Cir. 1990) ..........................................................................4, 5

*Coventry First, LLC v. McCarty*,
   605 F.3d 865 (11th Cir. 2010) ..............................................................................20

*De La Campa v. Grifols Am., Inc.*,
   819 So. 2d 940 (Fla. Dist. Ct. App. 2002) (per curiam) ..........................................7

*Del Rio v. City of Hialeah*,
   904 So. 2d 484 (Fla. Dist. Ct. App. 2005) ..............................................................7

*Dial A Car, Inc. v. Transp., Inc.*,
   132 F.3d 743 (D.C. Cir. 1998) ......................................................................8, 20

*Dial A Car, Inc. v. Transp., Inc.*,
   82 F.3d 484 (D.C. Cir. 1996) ..............................................................................11

*Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.*,
   674 F. Supp. 2d 1344 (S.D. Fla. 2009) ........................................................16, 17

*Eisenberg v. City of Miami Beach*,
   1 F. Supp. 3d 1327, 1350 (S.D. Fla. 2014) ............................................................4

*Emory v. Peeler*,
   756 F.2d 1547 (11th Cir. 1985) ............................................................................4

*Eveillard v. Nationstar Mortg. LLC*,
   No. 14-CIV-61786, 2015 WL 127893 (S.D. Fla. Jan. 8, 2015)................................4

*Feheley v. LAI Games Sales, Inc.*,
   No. 1:08-cv-23060, 2009 WL 2474061 (S.D. Fla. Aug. 11, 2009) ........................17

*Fla. Physicians Union, Inc. v. United Healthcare of Fla., Inc.*,
   837 So. 2d 1133 (Fla. Dist. Ct. App. 2003) ............................................................6

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.*,
   205 F. Supp. 2d 1335 (S.D. Fla. 2002) ................................................................11

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
   Civ. A. No. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015)....................12

*Healthpoint, Ltd. v. River's Edge Pharms., LLC*,
   No. SA-03-CV-984-RF, 2005 WL 356839 (W.D. Tex. Feb. 14, 2005)....................19

*Hickson Corp. v. N. Crossarm Co.*,
   357 F.3d 1256 (11th Cir. 2004) ....................................................................10, 15

iii

*Holly v. Auld,*
  450 So. 2d 217 (Fla. 1984)..........................................................................................7

*Horowitz v. Plantation Gen. Hosp. Ltd. P'ship,*
  959 So. 2d 176 (Fla. 2007)......................................................................................6, 7

*In re Edgewater By The Bay, LLP,*
  419 B.R. 511 (Bankr. S.D. Fla. 2009) ................................................................16, 17

*In re Mona Lisa at Celebration, LLC,*
  472 B.R. 582 (Bankr. M.D. Fla. 2012), *aff'd,* 495 B.R. 535 (M.D. Fla. 2013) ......................17

*Int'l Eateries of Am., Inc. v. Bd. of Cnty. Comm'rs,*
  838 F. Supp. 580 (S.D. Fla. 1993) ...........................................................................20

*Intertape Polymer Corp. v. Inspired Techs., Inc.,*
  725 F. Supp. 2d 1319 (M.D. Fla. 2010)....................................................................13

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
  626 F.3d 1327 (11th Cir. 2010) ..................................................................................3

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,*
  299 F.3d 1242 (11th Cir. 2002) ................................................................................11

*Johnson v. Aetna Life & Cas. Co.,*
  472 So. 2d 859 (Fla. Dist. Ct. App. 1985) ...............................................................14

*Jones v. Hobbs,*
  745 F. Supp. 2d 886 (E.D. Ark. 2010)........................................................................5

*Klopfenstein v. Deutsche Bank Sec., Inc.,*
  592 F. App'x 812 (11th Cir. 2014) .............................................................................3

*Koziara v. City of Casselberry,*
  392 F.3d 1302 (11th Cir. 2004) ..................................................................................4

*Leon v. Tapas & Tintos, Inc.,*
  51 F. Supp. 2d 1290 (S.D. Fla. 2014) .......................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  134 S. Ct. 1377 (2014)........................................................................................14, 15

*Lozman v. City of Riviera Beach,*
  713 F.3d 1066 (11th Cir. 2013) ..................................................................................2

*Luckenbach S.S. Co. v. United States,*
  312 F.2d 545 (2d Cir. 1963).......................................................................................4

*Miami-Dade Cnty. v. Deerwood Homeowners' Ass'n,*
    979 So. 2d 1103 (Fla. Dist. Ct. App. 2008) ...........................................................7

*Murthy v. N. Sinha Corp.,*
    644 So. 2d 983 (Fla. 1994)......................................................................5, 6, 7, 8, 19

*Osmose, Inc. v. Viance, LLC,*
    612 F.3d 1298 (11th Cir. 2010) ...........................................................................11

*Perret v. Wyndham Vacation Resorts, Inc.,*
    889 F. Supp. 2d 1333 (S.D. Fla. 2012) ................................................................20

*Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC,*
    No. 13-20803-CIV, 2013 WL 1786356 (S.D. Fla. Apr. 25, 2013)........................16

*Practice Mgmt. Assocs., Inc. v. Old Dominion Ins. Co.,*
    601 So. 2d 587 (Fla. Dist. Ct. App. 1992) ...........................................................19

*QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.,*
    94 So. 3d 541 (Fla. 2012).......................................................................................6

*Rosenbaum v. Becker & Poliakoff, P.A.,*
    No. 08-81004-CIV, 2010 WL 376309 (S.D. Fla. Jan. 26, 2010)............................4

*Sailboat Pointe Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.,*
    No. 08-61129-CIV, 2009 WL 248373 (S.D. Fla. Feb. 1, 2009) .............................5

*Schutt v. Lewis,*
    No. 6:12-CV-1697-ORL-37, 2014 WL 3908187 (M.D. Fla. Aug. 11, 2014) .................17, 18

*Skelly Oil Co. v. Phillips Petrol. Co.,*
    339 U.S. 667 (1950)...............................................................................................4

*Swerhun v. Guardian Life Ins. Co. of Am.,*
    979 F.2d 195 (11th Cir. 1992) ...............................................................................6

*Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.,*
    681 So. 2d 826 (Fla. Dist. Ct. App. 1996) .............................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007).....................................................................................2, 3, 10

*Vaughn v. Segal,*
    707 So. 2d 951 (Fla. Dist. Ct. App. 1998) (per curiam) ....................................6, 7

*Villazon v. Prudential Health Care Plan, Inc.,*
    843 So. 2d 842 (Fla. 2003)......................................................................................5

*Williams v. Hobbs,* 658 F.3d 842 (8th Cir. 2011) .......................................................5

v

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) .........................................................................17

*Zolin v. Caruth*,
    No. 3:09-cv-38-WS, 2009 WL 2982907 (N.D. Fla. Sept. 14, 2009)..........................................5

**STATUTES**

28 U.S.C. § 2201(a) (2012)...........................................................................................4

Fla. Stat. Ann. § 501.203(3)(c) (2014).............................................................................16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 2, 3

Restatement (Second) of Torts § 217, cmt. E (1965) ...............................................................18

In response to Lyft's motion to dismiss this action for failure to state a claim, Plaintiffs amended their original complaint in an attempt to address Lyft's arguments.[2]   Plaintiffs' Amended Class Action Complaint ("CAC"), however, continues to suffer from the same defects that doomed their original complaint.  Accordingly, Lyft requests that the Court dismiss the CAC under Federal Rule of Civil Procedure 12(b)(6) with prejudice.

As a threshold matter, Plaintiffs—private parties in the taxicab and limousine business that own "for-hire licenses" in Miami-Dade County—once again seek to hold Lyft liable for alleged violations of Chapter 31 of the Miami-Dade County Code of Ordinances ("Chapter 31" or the "ordinances"), even though it provides no private right of action.  Plaintiffs cannot use any of the causes of action that they assert as a backdoor to enforcement of Chapter 31.

Plaintiffs also failed to cure the numerous pleading deficiencies identified in Lyft's prior motion to dismiss:

- Plaintiffs left virtually untouched their Declaratory Judgment Act ("DJA") allegations (Count X), which still fail to state a claim because Plaintiffs do not seek a declaration of their own rights, do not have statutory standing to enforce the ordinances, and have not pleaded facts plausibly alleging that Lyft is subject to, let alone has violated, the ordinances.

- Plaintiffs' Lanham Act allegations (Count VI) remain deficient for failing to adequately plead the elements of a prima facie false advertisement claim.

- Despite adding volume to their Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, Plaintiffs still have not stated a claim because they are not "consumers" within the meaning of FDUTPA, and they impermissibly predicate their claim on the ordinances, which are not designed to target unfair or deceptive trade practices.

- Plaintiffs' trespass to chattels claim remains deficient because their right to operate in the for-hire vehicle market is not a chattel under Florida law.

Plaintiffs' newly added unfair competition claim fares no better, as it cannot be based on either Chapter 31, due to its lack of a private cause of action, or the alleged misrepresentations underlying Plaintiffs' Lanham Act claim for the same reasons that the Lanham Act claim fails.

The Court should see this suit for exactly what it is:  an attempt to quash competition and hold Lyft liable under ordinances that do not apply to it, and, in fact, were enacted before companies like Lyft ever existed.   Plaintiffs' unhappiness that new transportation network

---

[2]    *See* Dkt. No. 46, Pls.' Mot. for Ext., ¶ 5 ("Upon receipt and review of the Defendants' Motions to Dismiss, the Plaintiffs elected to amend their Complaint . . . .").

platforms are not subject to the same regulations as Plaintiffs may raise political questions concerning the appropriateness of regulating transportation network platforms, but it does not give rise to the myriad causes of action asserted in the CAC.  Because Plaintiffs have not alleged any claims upon which relief can be granted, all of their claims should be dismissed.

Alternatively, because Plaintiffs' allegations center on state law issues concerning local ordinances, and because the relief sought would interfere with the ongoing legislative process and evolving regulatory scheme, Lyft asks the Court to abstain and dismiss or stay the case.

## I.     BACKGROUND

Lyft is a mobile-based ridesharing platform that "provides a marketplace where persons who seek transportation to certain destinations ('Riders') can be matched with persons driving to or through those destinations ('Drivers')."  Ex. A, Lyft's Apr. 29, 2015 Terms of Service ("TOS"), at 1.[3]  Lyft offers information and a method to connect drivers and riders with each other; Lyft does not provide transportation services.  *See* CAC ¶ 93 (quoting Lyft's Apr. 6, 2015 TOS).

Lyft has procured various insurance policies, including a policy that provides drivers with automobile liability insurance of up to $1,000,000 per occurrence.  *Id.* ¶¶ 80–81; *see also* Ex. C, www.lyft.com/safety.[4]  The policy offers liability protection while the driver is transporting riders on a trip arranged through the Lyft platform.  *See* CAC ¶¶ 78, 81; *see also* Ex. C, www.lyft.com/safety.

The crux of Plaintiffs' CAC is their allegation that the Lyft platform violates Chapter 31, which regulates vehicles for hire.  Notably, however, Plaintiffs do not allege that there has been an adjudicated finding that Lyft's platform actually contravenes the ordinances, and for good reason—no such adjudicated finding exists.  Instead, state and county officials are considering

---

[3]     Plaintiffs incorporate Lyft's Terms of Service ("TOS") by reference in their complaint. *See, e.g.*, CAC ¶¶ 74, 87, 93.  Accordingly, the TOS may properly be considered in deciding Lyft's motion.  *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) ("[C]ourts must consider the complaint in its entirety, as well as . . .  documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *accord Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). Because Plaintiffs quote from Lyft's April 6, 2015 TOS but Lyft changed its TOS on April 29, 2015, Lyft has attached both versions to this motion.  *See* Ex. A, Apr. 29, 2015 TOS; Ex. B, Apr. 6, 2015 TOS.

[4]     Because Plaintiffs incorporate this website into the CAC by reference, *see* CAC ¶ 80 n.27, the Court may consider the contents of the site.  *See, e.g., Tellabs*, 551 U.S. at 322–23.

questions about the appropriateness of regulating transportation network platforms, and Lyft is working closely with these officials to address any concerns about Lyft's services or drivers who use the Lyft ridesharing platform.[5]

## II.   LEGAL STANDARD

Rule 12(b)(6) mandates dismissal of a complaint when its allegations "fail[] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To avoid dismissal, a plaintiff must provide both fair notice of the nature of the claim and plausible factual allegations to support it.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 698–99 (2009).  "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible."  *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (citation omitted).  "And to nudge the claim across the line, the complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## III.   ARGUMENTS AND AUTHORITIES

### A.   Plaintiffs' declaratory judgment allegations remain deficient.

Claiming that they "are in doubt as to whether LYFT may permissibly act as dispatcher of for-hire vehicles and as if it were a passenger service company," Plaintiffs seek a declaratory judgment that Lyft is "operating in violation of the [ordinances]."  CAC ¶¶ 216–17.  But the DJA is not available to Plaintiffs for three independent reasons:  (1) they are not seeking a declaration of their own rights or legal interests; (2) they lack statutory standing to enforce the ordinances; and (3) they have not adequately pleaded a violation of the ordinances.

---

[5]    Lyft requests that the Court take judicial notice of the proposed amendments to Chapter 31 to address transportation network companies.  *See* Ex. D, Miami-Dade Legislative Item File No. 150792, *available at* http://www.miamidade.gov/govaction/matter.asp?matter=150792&file=true&yearFolder=Y2015; Miami-Dade Legislative Item File No. 142256, *available at* http://www.miamidade.gov/govaction/matter.asp?matter=142256&file=true&year Folder=Y2014; *see also Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 n.5 (11th Cir. 2014) ("[A] district court may take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment." (citing *Tellabs*, 551 U.S. at 322)).

1.    **Plaintiffs do not seek a declaration of their own rights or legal interests.**

The DJA provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations *of any interested party seeking such declaration . . . .*" 28 U.S.C. § 2201(a) (2012) (emphasis added). Plaintiffs, however, do not seek a declaration of their own rights or legal relations; rather, they seek a declaration that Lyft has violated the County's ordinances. Because Plaintiffs would be strangers to any potential litigation that might arise between Lyft and the County over the applicability of, or Lyft's compliance with, the ordinances, Plaintiffs have no standing to obtain the declaratory judgment that they seek. *See Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (holding that DJA authorizes a declaratory judgment only when, based on the facts alleged, a substantial continuing controversy exists between two adverse parties); *see also Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 172 (5th Cir. 1990) ("While the Act should be liberally applied when the plaintiff has a legal interest in an actual case or controversy, the Act does not allow a stranger to intended litigation to use a declaratory judgment action as a vehicle to create a cause of action for which it has no legal liability."); *cf. Koziara v. City of Casselberry*, 392 F.3d 1302, 1304–06 (11th Cir. 2004) (holding that exotic dancer, who sought declaration that city ordinance enforced against her employer was unconstitutional, "was only a 'concerned bystander'" and could not challenge the revocation of her employer's license to operate).

2.    **Plaintiffs cannot base their declaratory judgment claim on the ordinances because they grant no private cause of action.**

Moreover, Plaintiffs cannot use the DJA to enforce the County's ordinances because the ordinances do not authorize private enforcement actions. A claim for declaratory relief "cannot stand on its own"; rather, it "is a procedural device which depends on an underlying substantive cause of action." *Eveillard v. Nationstar Mortg. LLC*, No. 14-CIV-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015); *see Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only.") (citation omitted); *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-81004-CIV, 2010 WL 376309, at *8 (S.D. Fla. Jan. 26, 2010) ("[D]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." (quoting *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963))); *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1350 (S.D. Fla. 2014) (dismissing claim for declaratory judgment where "Plaintiffs fail[ed] to allege a separate

cause of action," and thus, "d[id] not state a claim upon which independent relief can be granted"); *cf. Zolin v. Caruth*, No. 3:09-cv-38-WS, 2009 WL 2982907, at *7 (N.D. Fla. Sept. 14, 2009) ("[T]he Declaratory Judgment Act does *not* establish an independent cause of action, it is procedural only and merely establishes a legal remedy available in cases brought pursuant to some other law.").  Because "it is the underlying cause of action of the defendant that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action." *Collin Cnty.*, 915 F.2d at 171 ("It would be anomalous to allow a party who would not be a proper defendant nor able to intervene of right in a NEPA lawsuit to precipitate a judgment in such a suit between others by filing an action pursuant to the [DJA].").

Plaintiffs would not be proper parties to any enforcement action against Lyft because the ordinances do not create a private right of action.  Thus, whether Lyft's service platform is subject to or violates the ordinances is an issue for the Miami-Dade County officials specifically entrusted with enforcing the ordinances to decide; it is not the appropriate subject of a declaratory judgment action.  *See, e.g.*, *Jones v. Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010) ("To entertain, under the auspices of the [DJA], a cause of action brought by private parties seeking a declaration that the [statutes] ha[ve] been violated would, in effect, evade the intent of Congress not to create private rights of action under those statutes and would circumvent the discretion entrusted to the executive branch in deciding how and when to enforce those statutes."), *aff'd sub nom. by Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011).

a. **Chapter 31's text and structure make clear that the drafters did not intend to create a private cause of action.**

Under Florida law, it is well settled that, "absent clear legislative intent to create a statutory cause of action, a court should not imply such a cause of action, especially where a statute is designed to address the security or welfare of the public as an entity." *Sailboat Pointe Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 08-61129-CIV, 2009 WL 248373, at *3 (S.D. Fla. Feb. 1, 2009) (citing *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 852 (Fla. 2003) ("There are other regulatory statutes in which the legislature has specifically created a private right of action. . . . Absent such expression of intent, a private right of action is not implied.")); *accord Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 986 (Fla. 1994) ("In general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability.")

(citation omitted).   Moreover, Florida courts have been particularly reluctant to find a private right of action implicit in a statute that expressly provides for public enforcement.  *See, e.g., Fla. Physicians Union, Inc. v. United Healthcare of Fla., Inc.*, 837 So. 2d 1133, 1135 (Fla. Dist. Ct. App. 2003) (refusing to imply private right of action where "the general scheme of the statute is to empower the Department of Insurance to enforce the statute's requirements and determine whether the provisions are being complied with or violated"); *City of Sarasota v. Windom*, 736 So. 2d 741, 742 (Fla. Dist. Ct. App. 1999) (refusing to imply private right of action where "the enforcement power for section 316.0745 is vested in the Department of Transportation"); *Vaughn v. Segal*, 707 So. 2d 951, 952 (Fla. Dist. Ct. App. 1998) (per curiam) (refusing to imply private right of action where "the ordinance sets up a list of prohibited conditions, establishes a schedule of required maintenance, and provides for enforcement by the county authorities," and "[c]ivil penalties may be assessed through the county's code enforcement procedures"); *Horowitz v. Plantation Gen. Hosp. Ltd. P'ship*, 959 So. 2d 176, 184 (Fla. 2007) (holding physician financial responsibility statute did not create implied cause of action against hospital for failing to ensure the financial responsibility of its staff-privileged physicians where "statutory enforcement mechanisms" provided "significant administrative penalties" for violations); *Murthy*, 644 So. 2d at 986 (refusing to imply private right of action where a statute created a public agency to enforce the performance of the Act's licensing procedures and regulatory duties imposed on construction industry).   And, federal courts hesitate to hold that a state statute contains a private right of action when, as here, the statute itself does not provide for one and state courts have not implied one.  *See, e.g., Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195, 198 (11th Cir. 1992) (declining to imply private right of action into Florida state statute in light of federal courts' "reluctance to read private rights of action in state laws where state courts and state legislatures have not done so.") (citation omitted).

"The primary guide in determining whether the Legislature intended to create a private cause of action is the actual language used in the statute." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 551 (Fla. 2012) (citation omitted).  "In determining the meaning of the language used, the court must look not only to the words themselves but also to the context in which the language lies." *Id.* (citation omitted).  Courts may not rely on "extrinsic aids to statutory construction when the language of a statute or ordinance is plain and unambiguous." *Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*, 681 So.

2d 826, 830–31 (Fla. Dist. Ct. App. 1996).  An unambiguous statute cannot be construed "in a way which would extend, modify, or *limit*, its express terms or its *reasonable and obvious implications*," as "[t]o do so would be an abrogation of legislative power."  *Horowitz*, 959 So. 2d at 182 (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)).

The same rules of construction apply to local ordinances.  In concluding that an ordinance did not create a private action, one Florida court explained the issue as follows:

> Writing in the context of a statute, the Florida Supreme Court has said, "Today . . . most courts generally look to the legislative intent of a statute to determine whether a private cause of action should be judicially inferred."  *Murthy v. N. Sinha Corp*., 644 So. 2d 983, 985 (Fla. 1994) (citations omitted).  The same logic applies to a local ordinance.  Here, the ordinance sets up a list of prohibited conditions, establishes a schedule of required maintenance, and provides for enforcement by the county authorities.  Civil penalties may be assessed through the county's code enforcement procedures.  We find no intention to create a private cause of action under this county ordinance.

*Vaughn*, 707 So. 2d at 952 (some citations omitted).[6]

Applying these principles, this Court—construing a Florida ordinance, and with no state or local precedent for reading a private cause of action into Chapter 31—should not imply a private cause of action.  Chapter 31 lays out licensing procedures and regulatory duties for the vehicle-for-hire industry.  It includes a public enforcement scheme that tasks governmental agencies—the County Consumer Services Department, the police forces of the municipalities in the County, and the Miami-Dade Police Department—with investigating and enforcing its procedures and duties.[7]  It provides penalties to punish offenders.[8]  And, it "does not purport to

---

[6]     Other Florida courts have similarly refused to permit private parties to enforce provisions of county ordinances absent an express private cause of action.  *Compare Miami-Dade Cnty. v. Deerwood Homeowners' Ass'n*, 979 So. 2d 1103, 1104–15 (Fla. Dist. Ct. App. 2008) (refusing to imply a private right of action for violations of county ordinance) *and De La Campa v. Grifols Am., Inc.*, 819 So. 2d 940, 941–42 (Fla. Dist. Ct. App. 2002) (per curiam) (same) *with Del Rio v. City of Hialeah*, 904 So. 2d 484, 486 (Fla. Dist. Ct. App. 2005) (finding private cause of action to enforce ordinance based on provision entitled "Private Right of Action").

[7]     For example, the article concerning licensing and regulation of for-hire motor vehicles expressly provides that "*the Director* [of the Miami-Dade County Consumer Services Department] may secure enforcement of the provisions of this article by any legal action necessary, such as application to any court for injunctive relief or other appropriate relief."  Miami-Dade Cnty., Fla., Code Ordin. § 31-90(e) (Dec. 16, 2014) (the "Code") (emphasis added); *see also id.* §§ 31-75, 31-90, 31-110, 31-209, 31-303(i), 31.610.

establish civil liability." *Murthy*, 644 So. 2d at 986 (citation omitted).  As such, the Court should conclude that Chapter 31 presents no basis for inferring that the drafters intended to provide Plaintiffs with a private cause of action.  *See id.* (refusing to imply a private right of action under similar circumstances).

> **b.    Chapter 31's definition of "Medallion system" provides no basis for implying a private cause of action.**

To the extent that Plaintiffs allege that a private right of action may be implied from a single sentence in Chapter 31's "Definitions" section, *see* CAC ¶¶ 36–37 (citing Miami-Dade Cnty., Fla., Code Ordin. (the "Code") § 31-81(aa) (defining "[m]edallion system" as "the system which deems a taxicab for-hire license to be intangible property"), that definition says nothing about whether the drafters intended to give individuals a right to privately enforce the ordinances.  There is no better indicator of the drafters' intent than the plain language of the "Enforcement" section—and the myriad other sections like it in Chapter 31—which, as explained above, repeatedly task the County Consumer Services Department and county and local police with investigating and enforcing the ordinances.[9]  As these provisions demonstrate, the drafters knew how to create enforcement rights and procedures, and had they intended to provide for-hire license owners with a cause of action to privately enforce the ordinance against third parties, they surely would have said so.  *See Dial A Car, Inc. v. Transp., Inc.*, 132 F.3d 743, 745 (D.C. Cir. 1998) ("[A] provision for public enforcement is a good indication that the [County] did not by its silence intend to create a parallel private right of action.").

> **3.    Lyft is not subject to the ordinances as a matter of law.**

Even if Plaintiffs could somehow enforce the ordinances, their DJA claim still should be dismissed because Plaintiffs fail to allege any facts to support their contention that Lyft is subject to, much less in violation of, the ordinances.  Nor could they, given that Chapter 31 regulates taxi services—not ridesharing platforms like Lyft.

---

[8]    *See, e.g.*, Code §§ 31-74, 31-92, 31-111, 31-210, 31-612.

[9]    *See, e.g.*, Code § 31-84(a) ("In addition to the duties and responsibilities specified in this article, the CSD shall be charged with the following duties and responsibilities: . . . (2) Investigate and prepare reports on alleged violations of this article. (3) Enforce the provisions of this article. (4) Attempt to resolve complaints received from any source concerning the industry. . . ."); *id.* § 31-90(a) ("This article shall be enforced by authorized personnel of the CSD, the police forces of the various municipalities in Miami-Dade County and by the Miami-Dade Police Department.").

Chapter 31 regulates the use of "Vehicles for Hire."  *See, e.g.*, Code §§ 31-82(a), 31-87(a), 31.88(a), 31–89(a), 31.303(a) (regulating "for-hire motor vehicle[s]").  "*For-hire* means driving, operating, or managing a for-hire passenger motor vehicle . . . ." *Id.* § 31-81(q).  "*[F]or-hire motor vehicle[s]* means any chauffeur-driven taxicab."  *Id.* § 31-81(u).  "*Taxicab* means an eight (8) passenger or less, exclusive of chauffeur, for-hire passenger motor vehicle . . ., which is equipped with a taximeter, unless authorized to exclusively operate at a flat rate, and where the route and destination are controlled by the passenger."  *Id.* § 31-81(qq).  Thus, by its plain terms, Chapter 31 regulates taxicabs, not ridesharing platforms like Lyft.

Nevertheless, Plaintiffs insist that Lyft is subject to the ordinances because it purportedly "act[s] as [a] for-hire transportation dispatcher[] and as if [it were a] passenger service compan[y] within the meaning of" the ordinances.  *See, e.g.*, CAC ¶ 55.  However, Plaintiffs have not alleged any facts to support their contention that Lyft qualifies as a "passenger service company."  A "*[p]assenger service company*" is "a Florida corporation or partnership created for the purpose of providing passenger services for *for-hire taxi operations* and providing various services *to for-hire license holder(s)* . . . ."  Code § 31-81(s) (second and third emphases added).  As Plaintiffs concede, however, Lyft is not a Florida corporation or partnership.  *See* CAC ¶ 3 ("LYFT is a Delaware corporation . . . .").  Moreover, Plaintiffs have not alleged that Lyft "provid[es] passenger services for *for-hire* taxi operations," because Plaintiffs do not allege that Lyft owns, operates, or manages any vehicles, much less taxicabs or taxi operations.  Nor could they, given that drivers using the Lyft platform provide rides using their personal vehicles.  Plaintiffs also do not allege that those drivers' vehicles contain taximeters, or that Lyft "provides . . . services to for-hire license holder(s)," i.e., taxicab operators.

Plaintiffs also insufficiently allege that Lyft provides any "taxicab passenger services" or "dispatching services" within the meaning of the ordinances.  Indeed, such services can only be provided by a "passenger service company," which, as explained above, Lyft is not.  *See* Code § 31-100(b) ("Taxicab passenger services *provided by a passenger service company* . . . shall minimally include . . . : providing for-hire vehicle color schemes and markings; providing two-way radio or cellular telephone dispatch services, maintenance and advertising of a telephone number for receiving all calls related to for-hire taxi services . . . .") (emphasis added); *id.* § 31-81(m) ("*Dispatch* means a communication via two-way radio or cellular telephone *from a*

9

*passenger service company to a taxi chauffeur* to provide for-hire transportation to a passenger.")
(emphasis added).

Nor do Plaintiffs otherwise provide factual support for their conclusory assertions that
Lyft is in violation of Chapter 31.  For example, Plaintiffs do not allege that there has been an
adjudicated finding that Lyft's platform actually contravenes the ordinances, and for good
reason—no such adjudicated finding exists.[10]

Chapter 31 simply does not govern the kind of service Lyft provides.  Accordingly,
Plaintiffs are not entitled to a declaratory judgment that it does, and their DJA claim should be
dismissed on this ground, too.  *See Iqbal*, 556 U.S. at 678 (courts need not accept "legal
conclusions" or "conclusory statements" as true).

**B.      Plaintiffs' Lanham Act allegations continue to suffer from fatal pleading
         deficiencies.**

To state a prima facie false advertisement claim, a plaintiff must allege that "(1) the
advertisements . . . were false or misleading, (2) the advertisements deceived, or had the capacity
to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the
misrepresented product or service affects interstate commerce, and (5) the [plaintiff] has been—
or is likely to be—injured as a result of the false advertising."  *Hickson Corp. v. N. Crossarm
Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  Plaintiffs do not adequately plead these elements.

---

[10]     According to Plaintiffs, the Miami-Dade County Commission on Ethics and Public Trust
(the "Ethics Commission") concluded in January 2015 that Uber's operations violated the
ordinances because its drivers operate for-hire vehicles without chauffeurs' registrations.  CAC
¶ 63.  Thus, Plaintiffs allege, "[i]t follows that *LYFT's operations* have also been deemed by
Miami-Dade County to violate the MDCCO since its drivers do not have CSD-issued chauffers'
registrations, either."  *Id.* (emphasis added).  But conspicuously absent from the CAC are any
details as to why the Ethics Commission—which is *not* one of the entities charged with
enforcing Chapter 31—was looking at Uber's operations, much less any explanation as to how
the Ethics Commission would have jurisdiction to draw any binding conclusions about Uber's
compliance with Chapter 31.   Regardless, Plaintiffs' suggestion that anything the Ethics
Commission may or may not have concluded about Uber somehow qualifies as an adjudication
against Lyft is an unsupported inferential leap.  *See Castillo v. Allegro Resort Mktg.*, No. 14-
11961, 2015 WL 1214057, at *1 (11th Cir. Mar. 18, 2015) ("We do not . . . accept as true
unwarranted deductions of fact or legal conclusions.") (citation omitted).  Plaintiffs simply do
not—and cannot—point to any proceeding in which any County agency has determined that
Lyft's platform contravenes the ordinances.

1. **Plaintiffs fail to plead an actionable misrepresentation of fact, let alone one that actually or potentially materially deceived consumers.**

The first element requires that "the challenged advertisement is literally false, or [that] the challenged advertisement is literally true, but misleading." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). "If the court deems an advertisement to be literally false, then the [plaintiff] is not required to present evidence of consumer deception." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1318–19 (11th Cir. 2010). "If, on the other hand, the court deems the advertisement to be true but misleading, then the [plaintiff] is required to present evidence of deception." *Id.* at 1319. "Even if an advertisement is literally false, the plaintiff must still establish materiality," i.e., that "the defendant's deception is likely to influence the purchasing decision." *Id.* (citation omitted).

Plaintiffs appear to premise their Lanham Act claim against Lyft on alleged "misrepresentations" regarding two topics:  (1) Lyft's representations that it "is in compliance with local rules and regulations," and (2) Lyft's representations concerning insurance coverage. *See* CAC ¶ 180.  Plaintiffs, however, have failed to plead any representation by Lyft that is literally false or likely misleading, let alone one that deceived or had the capacity to deceive a substantial segment of potential consumers or materially affect their purchasing decisions.

a. **The compliance-with-law representations are not false or misleading.**

Plaintiffs allege that Lyft has misrepresented its "compliance with local rules and regulations." *Id.*  But "[s]tatements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact, unless 'a court or agency of competent jurisdiction has clearly and unambiguously ruled on the matter.'" *Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1317 (M.D. Fla. 2012) (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1357 (S.D. Fla. 2002)).  Because Plaintiffs do not allege the existence of any adjudicative finding that Lyft failed to comply with the ordinances, it is axiomatic that Plaintiffs have failed to sufficiently plead a misrepresentation concerning Lyft's ability to operate in the County.  *See Ameritox, Ltd.*, 889 F. Supp. 2d at 1317 ("The Lanham Act regulates only representations of fact—statements that are capable of being proven false.") (citation omitted); *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 485 (D.C. Cir. 1996) (considering taxi regulations that Taxicab Commission had not yet decisively interpreted and refusing to allow a "contested question of statutory interpretation rather than a clearly established fact" to form the basis of a Lanham Act claim).

11

But even if such statements could form the basis of a Lanham Act claim, Plaintiffs fail to identify a single statement that Lyft actually made about its compliance with local or state law, much less facts showing any such statement to be false. Instead, Plaintiffs quote from a representation that a *driver* must make before using the Lyft platform. *See* CAC ¶ 74 (quoting the following excerpt from "Driver Representations and Warranties" section of Lyft's Terms of Service: "By using the Service, a Driver represents, warrants and agrees that . . . . Such Driver . . . has all appropriate licenses, approvals, and authority to provide transportation to third parties . . . ."). Even if this representation by a driver were somehow attributable to Lyft, and even if it somehow were deemed to be an advertisement by Lyft to potential passengers, the assertion that it is false or misleading represents nothing more than the *ipse dixit* of Plaintiffs. Because no judicial determination has been made that Lyft violates the ordinances, Plaintiffs' Lanham Act claim based on the ordinances cannot stand. *See Greater Houston Transp. Co. v. Uber Techs., Inc.*, Civ. A. No. 4:14-0941, 2015 WL 1034254, at *10–11, 16 (S.D. Tex. Mar. 10, 2015) (dismissing nearly identical Lanham Act claim, reasoning that "the Court cannot permit Plaintiffs to enforce their 'preferred interpretation' of the ordinances in federal court"); *Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, Civ. A. No. 1:13-CV-10769-NMG, 2014 WL 1338148, at *6 (D. Mass. Mar. 27, 2014) (dismissing nearly identical Lanham Act claim where complaint "[did] not identify a representation in which Uber states explicitly or conveys by necessary implication that Uber assigned taxis are operating lawfully") (citation omitted).

Plaintiffs' claims fail for the additional reason that they do not sufficiently allege how any of Lyft's purported representations concerning its ability to operate in Miami-Dade County could be deceptive, much less how it would have a material effect on purchasing decisions. *See, e.g.*, *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-CV-775-T-24-TBM, 2012 WL 33155, at *3 (M.D. Fla. Jan. 6, 2012) ("[Plaintiff's] recital of [consumer deception and materiality] element[s] of the [false advertising] cause of action is a naked assertion, devoid of further factual enhancement, and it cannot survive a motion to dismiss.") (citation omitted).

> **b.     The insurance representations are not false or misleading.**

Plaintiffs also allege that Lyft has misrepresented its insurance coverage, but Plaintiffs' insurance allegations against Lyft are so conclusory that Lyft is effectively left to guess exactly what it said that Plaintiffs contend is untrue. *See* CAC ¶ 180.

To the extent that Plaintiffs fault Lyft for stating that it is "changing the industry with safety front of mind," or that it "designed safety into every part of Lyft, from our $1,000,000 liability insurance to our dedicated Trust & Safety team," CAC ¶ 80, Plaintiffs fail to allege how those statements are false or misleading.  The statements are true, but even if they were not, they would, at worst, be non-actionable "puffery."  *See Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1334–35 (M.D. Fla. 2010) (characterizing statement that Bloc-it masking tape had "[i]ndustry leading bleed resistance" as "classic puffery" and "not a specific, measurable claim that can be reasonably interpreted as an objective fact").[11]

To the extent that Plaintiffs' complaints center on Lyft's insurance coverage being "illusory," *see, e.g.*, CAC ¶ 82, Plaintiffs fail to match facts to their rhetoric.  Plaintiffs do not (and cannot) allege that Lyft's insurance policy—a surplus lines policy issued by James River Insurance Company—does not exist; it does.  *Id.* ¶¶ 78, 81.  Instead, Plaintiffs resort to maligning the policy, insinuating, for example, that the policy is somehow ineffective because James River "is not authorized to issue insurance in the form of commercial automobile liability coverage" in Florida.  *Id.* ¶ 81.  Critically, however, Plaintiffs do not allege that Lyft represented its policy to be a standard commercial auto liability policy, that James River is not authorized to issue the kind of policy that it issued to Lyft, or that James River has ever so much as hinted that it would not fulfill its obligations as Lyft's insurer in Florida.

Plaintiffs' conclusory assertions that Lyft's insurance coverage is illusory due to disclaimers in Lyft's TOS, or because Lyft lacks an insurable interest, are equally unavailing.  First, contrary to Plaintiffs' bald assertions, *see id.* ¶ 84, the disclaimers do not "moot" Lyft's insurance.  Lyft expressly limits its liability to the users of its app but also has insurance coverage for claims, such as personal injury by riders; the two are not mutually exclusive.  Second, Plaintiffs' assertion that the limitation of liability deprives Lyft of an insurable interest, *id.* ¶¶ 90–94 (citing Fla. Stat. § 627.405), is incorrect.  Although Plaintiffs contend that, under Florida Statute 627.405, Lyft must establish "an interest in the maintenance, possession, or use of the vehicle[]" to have an insurable interest, CAC ¶ 94, that statute "defines insurable interest for

---

[11]    To the extent that Plaintiffs complain about a statement on a prior version of Lyft's website—"[f]rom background checks to our first-of-its $1,000,000 liability insurance, we go above and beyond to create a more safe community," *see* CAC ¶ 80 n.27—that allegation likewise fails to state a claim because the statement is both true and, at best, non-actionable puffery.

purposes of *property* insurance"; it "has no relevance concerning *liability* insurance." *Aetna Cas. & Sur. Co. v. Growers Props., No. 58 Ltd.*, 542 So. 2d 1028, 1029 (Fla. Dist. Ct. App. 1989) (emphases added). Lyft's policy expressly covers drivers using the Lyft platform, *see* Ex. A, Lyft TOS, at 10; Ex. C, www.lyft.com/safety, providing a more-than-sufficient insurable interest. *See Johnson v. Aetna Life & Cas. Co.*, 472 So. 2d 859, 861 n.2 (Fla. Dist. Ct. App. 1985) ("The insurable interest may be an interest in the property itself *or a particular risk insured against*, such as, in the case of motor vehicle liability insurance, *the possible liability arising out of the use or operation of a vehicle*.") (emphases added). But even if the law were different, Plaintiffs once again allege no *facts* suggesting that Lyft's insurance policy does not work as advertised, or that coverage has been denied on the basis of a disclaimer of liability or lack of insurable interest theory.

In short, the Complaint relies on pure speculation that Lyft's insurance policy does not work as represented. As such, Plaintiffs have not pleaded a plausible Lanham Act claim.

### 2.      Plaintiffs do not adequately plead an injury or proximate causation.

Even if Plaintiffs had pleaded an actionable representation, their Lanham Act claims still would be subject to dismissal because Plaintiffs do not adequately plead an injury proximately caused by that representation. "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). Plaintiffs, however, have failed to plead either type of injury.

Instead, Plaintiffs allege that Lyft's purported misrepresentations have induced customers to "offer their business to" Lyft instead of Plaintiffs, "thereby diluting the for-hire transportation services market in Miami-Dade County and diminishing the value of for-hire licenses." *E.g.*, CAC ¶ 95. Even if their devaluation theory were legally tenable,[12] Plaintiffs fail to allege any

---

[12]      In fact, Plaintiffs' claimed injury—the devaluation of their licenses—is not legally cognizable. Because nothing in Chapter 31 suggests that Plaintiffs were given an exclusive monopoly over transportation services within the County, or that they would never be subject to competition from market innovators like Lyft, their claim that their property interests are being affected by Lyft simply is not actionable. Chapter 31 does not insulate for-hire license holders from market innovation or newly emerging technologies. Nor does it vest Plaintiffs with a right to a guaranteed revenue stream or even the right to operate in a market that is competition-light. In fact, the County could expand or contract the scope of entities subject to Chapter 31's

14

facts concerning the allegedly "devalued" for-hire licenses, including why any decrease in the value of those licenses would be attributable to Lyft's alleged misrepresentations about its legality and insurance coverage, rather than to other potential market factors, such as a depressed tourist industry, increased new or used car sales, or population changes in Miami-Dade County, to name just a few.  The few allegations that Plaintiffs do make concerning the value of for-hire licenses fail to show such a devaluation injury.  For example, although Plaintiffs allege that the County auctioned off several for-hire licenses for more than $400,000 each in 2012, *id.* ¶ 43, and, "upon information and belief, the secondary fair market value of a for-hire license in January of 2014 was approximately $340,000," *id.* ¶ 44, those allegations do not show that a decline in the value of for-hire licenses occurred between 2012 and January 2014 because Plaintiffs never explain the relationship between the primary and secondary markets.  But even if Plaintiffs had adequately pleaded such a decline, it would not matter because Plaintiffs do not (and cannot) allege that Lyft was even operating in Miami in January 2014.  As such, Lyft could not have been responsible for any such devaluation.

Furthermore, Plaintiffs have not adequately pleaded proximate causation with respect to any such devaluation injury.  Although "the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute," the plaintiff still "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising."  *Lexmark*, 134 S. Ct. at 1391.  Plaintiffs' CAC falls well short of this requirement.  Before they can even allege a link to their own damages, Plaintiffs must plead "the intervening step of consumer deception," *id.*—that is, they must plead facts plausibly showing that Lyft's alleged misrepresentations deceived or had the capacity to deceive a substantial segment of potential consumers, and that such deception had a material effect on the customers' purchasing decisions.  *See Hickson*, 357 F.3d at 1260 (describing the second and third elements of Lanham Act false advertising claim).  Because Plaintiffs fail to do so in the Complaint, it necessarily follows that they have not adequately alleged an injury to themselves proximately caused by Lyft.  Indeed, Plaintiffs have not pleaded a single fact indicating a direct relationship between

---

regulations at any point—including expanding Chapter 31 to bring in companies like Lyft.  Thus, any limited property interest that Plaintiffs might hold in their for-hire licenses simply does not give rise to a claim based on a devaluation theory.  To the extent that Plaintiffs rely on this purported injury to support their Lanham Act, FDUTPA, unfair competition, and trespass to chattels claims, these claims should be dismissed for failure to allege a cognizable injury.

any of Lyft's alleged statements and Plaintiffs' alleged injury much less facts plausibly suggesting that their alleged injury was due to those statements and not other factors that could have affected their business, such as the economy or the non-actionable representations of Lyft and others. *Cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006) (noting, in a RICO case, that a "plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense"). Plaintiffs' efforts to plead proximate causation simply do not state a plausible claim.

**C.     Plaintiffs still fail to state a claim under FDUTPA.**

Plaintiffs continue to assert that Lyft has violated FDUTPA because its operations purportedly contravene the ordinances. CAC ¶¶ 132–35. But that claim fails for two reasons: (1) Plaintiffs are not "consumers," and thus, have no standing to bring a FDUTPA claim, and (2) Plaintiffs cannot premise their FDUTPA claim on the alleged ordinance violations.

First, FDUTPA protects only "consumers"; it "has no application to entities complaining of tortious conduct which is not the result of a consumer transaction." *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, No. 13-20803-CIV, 2013 WL 1786356, at *1–2 (S.D. Fla. Apr. 25, 2013) (quotations and citation omitted). "A 'consumer' is one who has engaged in the purchase of goods or services." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 2d 1290, 1297 (S.D. Fla. 2014). Because Plaintiffs allege no facts to suggest that they are consumers who engaged in any consumer transaction with Lyft, the claim should be dismissed. *Id.*

Second, Lyft's alleged violation of the ordinances (even if true) cannot form the basis of a FDUTPA claim because the ordinances do not regulate deceptive acts or unfair practices. *See In re Edgewater By The Bay, LLP*, 419 B.R. 511, 516 (Bankr. S.D. Fla. 2009) ("Violations of laws or statutes that give rise to a FDUTPA claim must be of the kind that proscribe unfair trade practices or unfair methods of competition; not, as the Counterclaimants suggest, a violation of any law or statute that may have some benefit to consumers."). Although a violation of FDUTPA may arise from a violation of another "law, statute, rule, regulation, or ordinance," the predicate law must be one that "proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. Ann. § 501.203(3)(c) (2014). A statute that is not designed to prevent misleading or deceptive acts falls beyond the ambit of FDUTPA. *See Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.*, 674 F. Supp. 2d 1344, 1358 (S.D. Fla. 2009) (holding that "to deem any statutory violation a *per se* violation of the FDUTPA

would be an overly broad and unfounded reading of the statute"); *see also Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (affirming dismissal of FDUTPA claims).

Tellingly, no court has ever cited the ordinances as a predicate for a FDUTPA claim. *Cf. Feheley v. LAI Games Sales, Inc.*, No. 1:08-cv-23060, 2009 WL 2474061, at *3 (S.D. Fla. Aug. 11, 2009) (dismissing FDUTPA claim based on criminal statute regulating slot machines in part, because "no Florida court has ever cited it as a FDUTPA predicate"). This makes sense— Chapter 31 "neither expressly nor impliedly regulates unfair or deceptive trade practices." *Id.* (dismissing FDUTPA claim because statute regulating slot machines did not regulate unfair or deceptive trade practices). Chapter 31 outlines the technical requirements for for-hire vehicles and sets forth the regulatory scheme for enforcing those requirements. Although the ordinances may have been designed with consumer protection in mind, they do not regulate the type of unfair and deceptive conduct that falls within the ambit of FUDTPA. In fact, Plaintiffs admit that Chapter 31 "was/is implemented to protect the health, welfare, and safety of the public," CAC ¶ 52—not to regulate unfair or deceptive conduct. Plaintiffs' FDUTPA claim should be dismissed accordingly. *See In re Edgewater*, 419 B.R. at 518 (dismissing FDUTPA claim based on alleged violations of state and local laws regulating the construction industry and the sale of condominiums because laws were not intended to target unfair trade practices); *Double AA Int'l Inv. Grp.*, 674 F. Supp. 2d at 1358 (holding that a Florida statute addressing escrow accounts in the sale of a condominium "are not designed to proscribe unfair or deceptive trade practices" and therefore could not form the basis for a FDUTPA claim); *In re Mona Lisa at Celebration, LLC*, 472 B.R. 582, 639 (Bankr. M.D. Fla. 2012) (finding that Florida statutes regulating "the use of plaintiffs' deposits held in escrow and other technical requirements" were "unrelated to any unfair or deceptive trade practice" and therefore "not encompassed within the penumbra of consumer protection statutes covered by FDUTPA"), *aff'd*, 495 B.R. 535 (M.D. Fla. 2013).

**D.      Plaintiffs' trespass to chattels allegations still fail to state a claim.**

Plaintiffs' trespass to chattels claim continues to suffer from a basic failure: Plaintiffs fail to identify a viable "chattel." Under Florida law, "[t]respass to chattel requires 'the intentional use of, or interference with, a chattel which is in the possession of another, without justification.'" *Schutt v. Lewis*, No. 6:12-CV-1697-ORL-37, 2014 WL 3908187, at *4 (M.D. Fla. Aug. 11, 2014) (quoting *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. Dist. Ct. App. 1998)) (emphasis omitted). The "chattel" requirement was analyzed in *Burshan v. National*

*Union Fire Ins. Co. of Pittsburgh, PA.*  As the court of appeals explained, a "chattel" is "[e]very species of property, movable or immovable, which is less than a freehold. . . . Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another."   805 So. 2d 835, 846 (Fla. Dist. Ct. App. 2001) (citation omitted).   The court further noted that "[a] survey of Florida law reveals that the trespass cause of action has been applied to chattels such as a black mare, logs, a wagon and mule, clothing, crates of pears, and an automobile."  *Id.* (footnotes omitted).  Applying this case law and definition, the court determined that "a bank account is not a chattel which can be the subject of a trespass [to chattels claim]."  *Id.*

Plaintiffs premise their trespass to chattels claim on the allegation that Lyft has interfered with Plaintiffs' "exclusive chattel right," as owners of for-hire licenses, "to provide for-hire transportation services."  CAC ¶¶ 154, 157.  But, like the bank account in *Burshan*, Plaintiffs' "exclusive authority . . . to provide for-hire transportation services" is not the kind of tangible property that Florida courts have found to be a chattel.  Indeed, Plaintiffs specifically allege that their licenses are "*intangible* property."  CAC ¶¶ 140, 142 (emphasis added).  Accordingly, Plaintiffs do not (and cannot) allege any "trespass" by Lyft, i.e., that Lyft came into physical contact with or dispossessed Plaintiffs of their property.  *See* Restatement (Second) of Torts § 217, cmt. E (1965) (stating that trespass to chattels claim requires physical touching or dispossession of property).  Because Plaintiffs fail to allege the necessary chattel, the claim should be dismissed.

**E.      Plaintiffs' unfair competition allegations do not state a claim.**

Plaintiffs' new claim for unfair competition fares no better than their other claims.  Under Florida law, unfair competition serves as an "umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) (citation omitted).  Courts have recognized that the contours of Florida's unfair competition law are "somewhat elusive," and, thus, there is no single set of "elements that apply uniformly to all claims of unfair competition." *See id.*  "Accordingly, courts have applied elements from other established claims to unfair

competition claims, where appropriate, on a case-by-case basis." *Ameritox*, 2012 WL 33155, at *4 (citing cases).

Plaintiffs predicate their unfair competition claims on Lyft's (1) purported violations of the ordinances and (2) alleged misrepresentations regarding its compliance with the ordinances and its insurance coverage.  CAC ¶ 199.  But neither basis supports an unfair competition claim under Florida law.  The lack of a private right of action in Chapter 31 is fatal to Plaintiffs' attempt to state an unfair competition claim based on Lyft's alleged violations of the ordinances. *See Murthy*, 644 So. 2d at 986; *Clever Covers, Inc. v. Storm Guard, Inc.*, No. 8:06-CV-1062T27MAP, 2006 WL 2474266, at *2 (M.D. Fla. Aug. 25, 2006) (holding plaintiff failed to state an unfair competition claim under Florida law, noting that "unfair competition functions like a 'piggyback' tort, applying only when the court finds that a related, independent tort has been committed" (quoting *Healthpoint, Ltd. v. River's Edge Pharms., LLC*, No. SA-03-CV-984-RF, 2005 WL 356839, at *3 (W.D. Tex. Feb. 14, 2005))).  And, to the extent that Plaintiffs base their unfair competition claim on the alleged misrepresentations underlying their Lanham Act claim, the unfair competition claim fails for the same reasons the Lanham Act claim fails.[13]  *See Ameritox*,  2012 WL 33155, at *5 ("Because Ameritox bases its common law unfair competition claim on the theory of false advertising, the Court has evaluated Ameritox's [claim] through the lens of the Lanham Act, and . . . [because] Ameritox failed to state a plausible claim under the Lanham Act, its unfair competition claim is likewise insufficiently pled.").

**F.     The dismissal of the CAC should be with prejudice.**

When the Court dismisses the CAC, it should do so with prejudice.  As a threshold matter, Plaintiffs have now had two chances to try to plead a cognizable claim, yet they still have not stated a claim for which relief can be granted.  Accordingly, the Court is well within its discretion to dismiss the CAC with prejudice.

Moreover, it is well settled that "leave to amend may be denied for futility 'when the complaint as amended would still be properly dismissed.'"  *Perret v. Wyndham Vacation*

---

[13]     Plaintiffs' Lanham Act-based unfair competition claim also fails because Plaintiffs do not sufficiently allege that they have suffered damages proximately caused by Lyft's purported unfair competition. *See Practice Mgmt. Assocs., Inc. v. Old Dominion Ins. Co.*, 601 So. 2d 587, 587–88 (Fla. Dist. Ct. App. 1992) (per curiam) ("Florida case law . . . requires injury to a competitor as an essential element of any claim of unfair competition.").  The crux of Plaintiffs' claim is that they have been harmed by Lyft's mere presence in Miami-Dade County, not as a consequence of any representations made by Lyft.  *See* CAC ¶ 200.

*Resorts, Inc.*, 889 F. Supp. 2d 1333, 1347 (S.D. Fla. 2012) (quoting *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010)).  To the extent that Plaintiffs' claims stem from Lyft's purported violations of Chapter 31, the lack of a private right of action in the ordinances is fatal and renders any proposed amendment futile.  Thus, at a minimum, all claims based on the ordinances should be dismissed with prejudice.

**G.    Alternatively, the Court should abstain from deciding this local issue.**

In the alternative, the Court should abstain from exercising its jurisdiction pursuant to the *Burford* abstention doctrine.  *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  At the heart of Plaintiffs' claims are purely state law questions concerning the appropriateness of regulating transportation network platforms.  However, those are questions for state and local elected officials, who are currently considering the issue.  Indeed, two separate amendments to Chapter 31 have been proposed to address transportation network companies.  *See* Ex. D.  Because "federal intervention might disrupt state efforts to formulate a coherent policy in an area of particular local concern," this Court should abstain from deciding the issues presented and dismiss the complaint.  *See Int'l Eateries of Am., Inc. v. Bd. of Cnty. Comm'rs*, 838 F. Supp. 580, 586 (S.D. Fla. 1993) (remanding case to state court on *Burford* abstention grounds where there was an existing conflict between state and local law, the issue was a difficult and unresolved state law question, timely and adequate review was available, the dispute involved issues of particularly sensitive local concern, and federal intervention would be disruptive); *cf. Dial A Car*, 82 F.3d at 488–89 ("[W]e see no reason to reach out and apply federal law to this quintessentially local dispute, and neither appellant nor our dissenting colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so.").

## IV.   CONCLUSION

For all the reasons discussed above, Plaintiffs have failed to allege any viable causes of action against Lyft.  Thus, Lyft respectfully requests that the Court dismiss the CAC in its entirety and with prejudice.  Alternatively, Lyft requests that the Court dismiss or stay this case pursuant to the *Burford* abstention doctrine.

Dated this 5th day of May, 2015.       Respectfully submitted,


  */s/ Andrew Kemp-Gerstel*
J. Randolph Liebler
Florida Bar No. 507954
JRL@lgplaw.com
Andrew Kemp-Gerstel
Florida Bar No. 0044332
AKG@lgplaw.com
Junaid N. Savani
Florida Bar No. 88816
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel: (305) 379-0400
Fax: (305) 379-9626
*Attorneys for Lyft, Inc.*


Danny David
Texas Bar No. 24028267
BAKER BOTTS L.L.P
One Shell Plaza
910 Louisiana
Houston, TX 77002
E-mail: danny.david@bakerbotts.com
*Attorney for Defendant Lyft, Inc.*

*Admitted via Pro Hac Vice Admission*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 5, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Andrew Kemp-Gerstel*
ANDREW KEMP-GERSTEL

Ralph G. Patino, Esq.
Patino & Associates, P.A.
550 Biltmore Way, Suite 740
Coral Gables, Florida 33134
Telephone: 305.443.6163
Facsimile: 305.443.5635
service@patinolaw.com
*Counsel for Plaintiff*

Mark E. Zelek
E-Mail: mzelek@morganlewis.com
Robert M. Brochin
E-Mail: rbrochin@morganlewis.com
Morgan, Lewis & Bockius LLP
5300 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2339
Telephone: 305.415.3303
Facsimile: 877.432.9652
*Attorneys for Uber Technologies*