Exhibit D

# MEMORANDUM

Agenda Item No. 4(B)

| | | | |
|---|---|---|---|
| **TO:** | Honorable Chairman Jean Monestime<br>and Members, Board of County Commissioners | **DATE:** | April 21, 2015 |
| **FROM:** | R. A. Cuevas, Jr.<br>County Attorney | **SUBJECT:** | Ordinance relating to vehicles for hire; creating Chapter 31, Article VII of the Code, regulating transportation network entities, transportation network entity for-hire drivers and transportation network entity vehicles operating in the incorporated and unincorporated areas of Miami-Dade County |

The accompanying ordinance was prepared and placed on the agenda at the request of Prime Sponsor Vice Chairman Esteban L. Bovo, Jr.

R. A. Cuevas, Jr.
County Attorney

RAC/smm

*1*



# MEMORANDUM
### (Revised)

| | | | |
|---|---|---|---|
| **TO:** | Honorable Chairman Jean Monestime<br>and Members, Board of County Commissioners | **DATE:** | April 21, 2015 |
| **FROM:** | R. A. Cuevas, Jr.<br>County Attorney | **SUBJECT:** | Agenda Item No. 4(B) |

---

**Please note any items checked.**

_____     "3-Day Rule" for committees applicable if raised

✓     6 weeks required between first reading and public hearing

✓     4 weeks notification to municipal officials required prior to public hearing

_____     Decreases revenues or increases expenditures without balancing budget

_____     Budget required

_____     Statement of fiscal impact required

_____     Ordinance creating a new board requires detailed County Mayor's report for public hearing

_____     No committee review

_____     Applicable legislation requires more than a majority vote (i.e., 2/3's ____, 3/5's ____, unanimous ____ ) to approve

_____     Current information regarding funding source, index code and available balance, and available capacity (if debt is contemplated) required

Approved _____ Mayor      Agenda Item No. 4(B)

Veto    _____              4-21-15

Override    _____

ORDINANCE NO. _____

ORDINANCE RELATING TO VEHICLES FOR HIRE; CREATING CHAPTER 31, ARTICLE VII OF THE CODE OF MIAMI-DADE COUNTY, FLORIDA, REGULATING TRANSPORTATION NETWORK ENTITIES, TRANSPORTATION NETWORK ENTITY FOR-HIRE DRIVERS AND TRANSPORTATION NETWORK ENTITY VEHICLES OPERATING IN THE INCORPORATED AND UNINCORPORATED AREAS OF MIAMI-DADE COUNTY; PROVIDING FOR DEFINITIONS; REQUIRING THAT TRANSPORTATION NETWORK ENTITIES OBTAIN A TRANSPORTATION NETWORK ENTITY LICENSE; REQUIRING THAT TRANSPORTATION NETWORK ENTITIES COMPLY WITH SPECIFIED RULES OF OPERATION; REGULATING TRANSPORTATION NETWORK ENTITY FOR-HIRE DRIVERS; MANDATING THAT TRANSPORTATION NETWORK ENTITY FOR-HIRE DRIVERS COMPLY WITH SPECIFIED REQUIREMENTS; ESTABLISHING DUTIES OF THE REGULATORY AND ECONOMIC RESOURCES DEPARTMENT OR SUCCESSOR DEPARTMENT; PROVIDING FOR ADDITIONAL RULES OF OPERATION; AUTHORIZING TRANSPORTATION NETWORK ENTITIES TO ESTABLISH FARES AND RATES; ESTABLISHING INSURANCE REQUIREMENTS; PROVIDING FOR REGULATION OF TRANSPORTATION NETWORK ENTITY VEHICLES; PROVIDING FOR ENFORCEMENT, PENALTIES, SUSPENSION, AND REVOCATION; AMENDING SECTION 8CC-10 OF THE CODE TO PROVIDE FOR CIVIL PENALTIES: PROVIDING FOR SEVERABILITY, INCLUSION IN THE CODE, AND AN EFFECTIVE DATE

**BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF MIAMI-DADE COUNTY, FLORIDA:**

**Section 1.**      Chapter 31, Article VII of the Code of Miami-Dade County, Florida, is

Agenda Item No. 4(B)
Page 2

hereby created as follows:[1]

## CHAPTER 31.          VEHICLES FOR HIRE

\*                    \*                    \*

>>**Article VII.   REGULATION      OF      TRANSPORTATION
NETWORK ENTITIES, FOR-HIRE DRIVERS
AND VEHICLES**

### Section 31-701.  Definitions.

For purposes of this article, the following definitions shall apply:

(a)     *Applicant* means an individual, partnership or corporation
which applies for a transportation network entity license
pursuant to the provisions of this article.  "Applicant" shall
also mean an individual, partnership or corporation which
makes application, where applicable, to renew a
transportation network entity license pursuant to the
provisions of this article.  In the case of partnerships and
corporations, "applicant" shall also mean each individual
with a partnership interest, each shareholder of a privately
held corporation as well as the corporate officers and
directors.

(b)     *Commission* means the Board of County Commissioners of
Miami-Dade County, Florida.

(c)     *County* means Miami-Dade County, Florida.

(d)     *County Mayor* means the head of county government as
provided in Article 2 of the Home Rule Charter of
Miami-Dade County, Florida.

(e)     *Department* means the Department of Regulatory and
Economic Resources or successor department.

(f)     *Director* means the Director of the Department or the
Director's designee.

---

[1]   Words stricken through and/or [[double bracketed]] shall be deleted.  Words underscored
and/or >>double arrowed<< constitute the amendment proposed.  Remaining provisions are now
in effect and remain unchanged.

*4*

(g)   *Passenger* means a person utilizing a transportation network entity for-hire vehicle for the purpose of being transported to a destination, or a person who is awaiting the arrival of a transportation network entity for-hire vehicle, but does not include the transportation network entity for-hire driver.

(h)   *Person* means any natural person(s), firm, partnership, association, corporation, or other business entity.

(i)   *Personnel authorized by the Department* means uniformed enforcement personnel and any other individual authorized by the Director.

(j)   *Solicit* means an appeal by bell, horn, whistle, words or gestures by a driver or his or her agent directed at individuals or groups.

(k)   *Street* means any public street, avenue, road, boulevard, alley, lane, highway, sidewalk, public park, viaduct or other public place accessible to the public, located in Miami-Dade County and used by motor vehicles.

(l)   *Street hail* means an immediate arrangement made on a street with a driver by a person seeking immediate transportation.

(m)   *Taxicab stand* means the County-approved location on a public right-of-way for awaiting employment which is specifically marked with a taxicab stand sign. "Taxicab stand" also means a location for awaiting employment authorized and provided by the owner of private property.

(n)   *Transportation network entity* shall mean a natural person(s), firm, partnership, association, corporation, or other business entity that uses a digital platform to, among other things, connect passengers to transportation network entity for-hire drivers so that such drivers may provide transportation services.

(o)   *Transportation network entity license* means a license issued by the Department to a transportation network entity authorizing the transportation network entity to allow transportation network entity for-hire drivers to provide

Agenda Item No. 4(B)
Page 4

transportation network entity services using a transportation network entity for-hire vehicle within the incorporated and unincorporated areas of Miami-Dade County, Florida.

(p)     *Transportation network entity for-hire driver* shall mean an individual who uses the individual's personal vehicle to provide transportation services through a transportation network entity using a transportation network entity for-hire vehicle.

(q)     *Transportation network entity services* shall mean the provision of transportation services by a transportation network entity for-hire driver through a transportation network entity digital platform.

(r)     *Transportation network entity for-hire vehicle or transportation network entity vehicle* shall mean a vehicle which transports eight passengers or less, which is not a limousine or taxicab, that is used by a transportation network entity for-hire driver to provide transportation network entity services.

(s)     *Trade name or doing business as or (d/b/a)* name means the County-approved name under which the transportation network entity license holder may provide transportation network entity services, and which name shall not duplicate the name of any other transportation network entity license holder or transportation network entity.

**Sec. 31-702.    Transportation Network Entity License.**

(a)     Prohibition against unauthorized operations.    It shall be unlawful for any transportation network entity to begin operations, or allow authorized transportation network entity for-hire drivers to provide transportation network entity services, as defined in Section 31-701, upon the streets of Miami-Dade County, Florida, without first obtaining a transportation network entity license and maintaining it current and valid pursuant to the provisions of this article.    There shall be no limitation on the number of transportation network entity licenses that may be issued.

(b)     Out-of-County origin exception. Nothing in this article shall be construed to prohibit:

Agenda Item No. 4(B)
Page 5

(1)    Discharge within Miami-Dade County of any passenger lawfully picked up in another County and lawfully transported into Miami-Dade County.

(2)    Pick up of a paratransit passenger by a provider of paratransit services that is duly licensed and legally authorized to provide paratransit services in a county adjacent to Miami-Dade County provided that such county has determined that the passenger is eligible for paratransit services and such passenger is picked up within the American with Disabilities Act defined areas of Miami-Dade County. A paratransit service provider shall not be required to obtain a Miami-Dade County transportation network entity license for such purpose.

(c)    Application procedures. Every initial application for a transportation network entity license shall be in writing, signed and sworn to by the applicant, and shall be filed with the Department together with an investigative and processing fee which shall be nonrefundable. If the applicant is a corporation, the form shall be signed and sworn to by the president or vice president, and the corporate secretary shall attest such signature and affix the corporate seal. If the applicant is a partnership, the form shall be signed and sworn to by a general partner. The application shall be on a form provided by the Department and shall contain all information required thereon, including:

(1)    Sufficient information to identify the applicant including, but not limited to, full legal name and trade name, date of birth, telephone number, business address and residence address of the applicant. If the applicant is a corporation, the foregoing information shall be provided for each officer, resident agent and director. If the applicant is a partnership, the foregoing information shall be provided for each partner. Post office box address will not be accepted hereunder.

(2)    All applicants shall have a place of business in Miami-Dade County, Florida. All corporate or partnership applicants shall be organized or qualified to do business under the laws of Florida and shall have a place of business in Miami-Dade

Agenda Item No. 4(B)
Page 6

County, Florida. Post office box addresses will not be accepted.

(3) The class or classes of transportation service which the applicant desires to furnish.

(4) The trade name under which the applicant intends to operate.

(5) A description of all present and prior transportation business activities of the applicant during the past five (5) years.

(6) A record of all crimes to which the applicant has pled nolo contendere, pled guilty, or of which the applicant has been found guilty or been convicted, whether or not adjudication has been withheld within the five (5) years preceding the date of the application. In the case of a corporate or partnership applicant, this information shall be obtained from all corporate officers and directors or partners, as the case may be.

(7) Two (2) credit references including at least one (1) bank where the applicant has an active account. In lieu of the second credit reference, the applicant may submit alternative written evidence of financial trustworthiness.

(8) A sworn statement signed by the applicant that all information provided by the applicant is true and correct.

(9) Any additional information as the Director shall require to enforce the provisions of this article.

(d) Investigation of transportation network entity license applicants. The Director shall investigate each application and accompanying required documents and reject any application that is not properly filed or that is incomplete or untrue in whole or in part. The Director may approve or deny the issuance of transportation network entity licenses as specified in this article on such terms and conditions as the public interest may require. The Director's decision to reject or to deny may be appealed in accordance with this article. An applicant shall not be eligible for a transportation network entity license if he/she/it:

Agenda Item No. 4(B)
Page 7

(1)     Has misrepresented or concealed a material fact on his, her or its application;

(2)     Is an alien who is not duly authorized to work by the immigration laws or the Attorney General of the United States;

(3)     Is a user of alcohol or drugs whose current use would constitute a direct threat to property or the safety of others;

(4)     Has pled nolo contendere, pled guilty, been found guilty or been convicted of a felony within the last five (5) years, regardless of whether adjudication has been withheld, unless his or her civil or residency rights have been restored;

(5)     Has pled nolo contendere, pled guilty, been found guilty or been convicted of any crime wherein a transportation network entity vehicle was employed whether or not adjudication has been withheld;

(6)     Has pled nolo contendere, pled guilty, been found guilty or been convicted of any felony, regardless of whether adjudication has been withheld, involving moral turpitude relating to sex, the use of a deadly weapon, homicide, violence against a law enforcement officer under Section 775.0823, Florida Statutes, or is a habitual violent felony offender under Section 775.084, Florida Statutes;

(7)     Has violated any condition, limitation, or restriction of a transportation network entity license imposed by the Director where the Director deems the violation to be grounds for denial;

(8)     Was enjoined by a court of competent jurisdiction in Miami-Dade County from engaging in the for-hire business or was enjoined by a court of competent jurisdiction in Miami-Dade County with respect to any of the requirements of this chapter;

(9)     Does not have a place of business located in Miami-Dade County, Florida;

(10)    Has any unsatisfied civil penalty or judgment in Miami-Dade County, unless either is being challenged by the transportation network entity in a

Agenda Item No. 4(B)
Page 8

legal proceeding pertaining to transportation network entity operation;

(11)  Has had a transportation network entity license issued by Miami-Dade County revoked;

(12)  Has within the last five (5) years pled nolo contendere, pled guilty, been found guilty or been convicted of any misdemeanor (regardless of whether adjudication is withheld) involving moral turpitude relating to sex; or

(13)  Has within the last ten (10) years pled nolo contendere, pled guilty, been found guilty or been convicted (regardless of whether adjudication is withheld) of any offense involving trafficking in narcotics. After said ten-year period, such a person shall only be eligible if and when his or her civil or residency rights have been restored.

(e)  Conditions for obtaining a transportation network entity license.  No transportation network entity license shall be issued unless the applicant:

(1)  Has paid an annual license fee;

(2)  Has submitted proof of insurance required by this article; and

(3)  Has ensured that transportation network entity vehicles operated by the transportation network entity have passed all required vehicle inspections.

(f)  Failure of the applicant to meet all of the foregoing requirements within forty-five (45) days after notification of conditional approval shall cause the license not to be issued. If the applicant believes he, she or it cannot meet the foregoing requirements within the 45-day period, the applicant may, prior to expiration of such 45-day period, request in writing a reasonable extension from the Director. If the request states good cause for an extension, the Director may grant such a reasonable extension as the Director finds is in the public interest.

(g)  Vehicles authorized to operate under a transportation network entity license. There shall be no limit to the number of vehicles authorized to operate under a transportation network entity license.

Agenda Item No. 4(B)
Page 9

(h)    Issuance of transportation network entity license. Each transportation network entity license shall be on a form developed by the Department and shall be signed by the Director. Each transportation network entity license shall, at a minimum, contain the name and the business address of the license holder, date of issuance, its expiration date and such additional terms, conditions, provisions and limitations as were imposed during the approval process.

(i)    Expiration of and renewal process for transportation network entity licenses. Transportation network entity licenses may be issued for such periods as specified in the implementing order establishing the fees but in no case for a period less than three (3) years. Each renewal shall be submitted no less than thirty (30) days prior to expiration of the existing transportation network entity license together with payment of a license fee. As part of the renewal process, the original application shall be updated and verified by the applicant on forms supplied by the Department. The Director shall deny any renewal application that is not timely, is not properly filed, is incomplete, is untrue in whole or in part, or results in a determination by the Director that the applicant has failed to satisfy the requirements of subsections 31-702 (c), (d) or (e). Appeal of the denial of a renewal application shall be in accordance with this article.

(j)    Grace period. License holders shall have a grace period of up to thirty (30) days after expiration of their license in which to renew same provided, however, that all operations shall cease on the date of license expiration and the license holder shall also pay a late fee over and above the annual license fee. All transportation network entity licenses which have not been renewed on or before thirty (30) days after their expiration shall automatically be deemed revoked.

(k)    Rules of operation. Transportation network entity license holders shall abide by all rules and regulations applicable to transportation network entity license holders and shall be subject to the enforcement provisions contained in this chapter and chapter 8CC of the Miami-Dade County Code. A transportation network entity license holder and her, his or its agents shall comply with the following regulations:

(1)    Comply with applicable federal law, Florida law, and ordinances, rules and regulations of the County

//

applicable to the operation of transportation network entity vehicles;

(2)     Immediately report any change of address;

(3)     Maintain all records pertaining to the transportation network entity services of a transportation network entity vehicle electronically for one (1) year and make same available for inspection during the regular business hours of such entity. When requested by the Department, such entity shall electronically provide copies of the records;

(4)     Not allow any person to operate a transportation network entity vehicle who has not met the requirements set out in Section 31-703;

(5)     Not allow or permit any person to operate a transportation network entity vehicle without current, valid and sufficient insurance coverage as required in this article;

(6)     Not permit or authorize anyone to provide transportation network entity services unless the transportation network entity vehicle's brakes, steering mechanism, tires, horn, windshield wipers, side and rearview mirrors and all lighting devices are in good working order and such vehicle meets all other applicable transportation network entity vehicle standards as set forth in this article;

(7)     Adopt a policy that prohibits transportation network entity for-hire drivers from operating a transportation network entity vehicle while his or her ability or alertness is so impaired or so likely to become impaired through fatigue, illness, or any other cause, as to make it unsafe for such driver to begin or continue to drive the transportation network entity vehicle, and inform transportation network entity for-hire drivers of such policy;

(8)     Adopt a policy that prohibits discrimination on the basis of destination, race, color, national origin, religious belief or affiliation, sex, disability, age or sexual orientation/identity and inform transportation network entity for-hire drivers of such policy;

Agenda Item No. 4(B)
Page 11

(9)    Every deaf or hard of hearing person, totally or partially blind person, or physically disabled person shall have the right to be accompanied by a service animal specially trained for the purpose without being required to pay an extra charge for the service animal;

(10)    Every transportation network entity license holder shall require any transportation network entity for-hire driver operating an accessible vehicle to produce to the transportation network entity evidence that such driver is trained in the safe and proper methods of securing, transporting, and dealing with passengers utilizing a wheelchair; and

(11)    It shall be unlawful for any transportation network entity to allow a person to use, drive or operate an accessible vehicle without training in the safe and proper methods of securing, transporting, and dealing with passengers utilizing a wheelchair.

(l)    Responsibility for violations of chapter. The holder of a transportation network entity license shall be held responsible for any applicable violation of this chapter arising from the operation of the transportation network entity vehicle authorized under the holder's transportation network entity license and shall be subject to the penalties provided in this chapter for any such violation. In addition, his, her or its transportation network entity license shall be subject to suspension or revocation for any such violation. Charges against or penalties imposed on a transportation network entity for-hire driver for the same or related violations shall not relieve the transportation network entity license holder of responsibility under this chapter.

(m)    The fee for a transportation network entity license shall be determined by an implementing order approved by a resolution adopted by the County Commission.

(n)    Transfers. No transportation network entity license may be sold, leased, assigned, mortgaged or otherwise transferred by a holder of a transportation network entity license.

(o)    Each transportation network entity operating pursuant to a transportation network entity license:

Agenda Item No. 4(B)
Page 12

(1)     Shall, upon completion of a trip, transmit an electronic receipt to the passenger's e-mail address or mobile application documenting the date of the trip, the origination of the trip, the name of the transportation network entity for-hire driver and a description of the total amount paid, if any.

(2)     Shall maintain a website that provides a customer service telephone number or e-mail address.

**Sec. 31-703.    Transportation    Network    Entity    For-hire Drivers.**

(a)     Transportation network entity for-hire drivers shall not be required to obtain a chauffeur's registration from the Department pursuant to Chapter 31, Article V of the Code.

(b)     It shall be unlawful for any transportation network entity to authorize a driver to have access to the transportation network entity's digital platform unless the following requirements are met. The driver must:

(1)     Hold a current, valid State of Florida driver license;

(2)     Have participated in a driver-training program established by the transportation network entity to ensure that each driver safely operates his or her transportation network entity vehicle prior to the driver being able to offer transportation services;

(3)     Be eighteen (18) years of age or older;

(4)     Have certified under oath that he or she is not a user of alcohol or drugs whose current use would constitute a direct threat to property or the safety of others; and

(5)     Have certified under oath that he or she is of sound health and is free from any physical or mental defect or disease that would constitute a direct threat to the property or safety of others or would impair his or her ability to drive a transportation network entity for-hire vehicle.

All records pertaining to transportation network entity for-hire drivers must be made available for inspection in the transportation network entity's offices for the purpose of verifying continued

*14*

Agenda Item No. 4(B)
Page 13

compliance with the above requirements, within one (1) business day of such request by the Department.

(c)     No driver shall be permitted to have access to a transportation network entity's digital platform for the purposes of providing transportation network entity services if the driver:

    (1)     Is an individual who is not duly authorized to work by the immigration laws or the Attorney General of the United States;

    (2)     Has not submitted the certifications to the transportation network entity as required by subparagraphs (b)(4) and (5);

    (3)     Falsifies his or her application; such an applicant shall not be eligible to re-apply for one (1) year;

    (4)     Has within the last five (5) years pled nolo contendere, pled guilty, been found guilty or been convicted of a felony, unless his or her civil or residency rights have been restored;

    (5)     Has pled nolo contendere, pled guilty, been found guilty, or been convicted, regardless of whether adjudication has been withheld, of any criminal offense involving moral turpitude relating to sex crimes, the use of a deadly weapon, homicide, violent offense against a law enforcement officer under Section 775.0823, Florida Statutes, or is a habitual violent felony offender under Section 775.084, Florida Statutes;

    (6)     During the last five (5) years prior to application has had his or her driver license suspended for or has pled nolo contendere, pled guilty or been found guilty or been convicted (regardless of whether adjudication has been withheld) of:

        (i)     Driving under the influence of drugs or intoxicating liquors (D.U.I.);

        (ii)     Three (3) or more traffic infractions resulting in accidents;

Agenda Item No. 4(B)
Page 14

       (iii)    Fleeing the scene of any accident; or

       (iv)    Vehicular manslaughter or any death resulting from driving;

(7)    During the last three (3) years prior to application has had more than three moving violations, or one major violation in the prior three-year period, including, but not limited to, attempting to evade the police, reckless driving, or driving with a suspended or revoked license;

(8)    Has received in the most recent twelve (12) month period prior to application two (2) or more driver license suspensions of any type on his or her State of Florida or other state record; or the applicant has been determined by the State of Florida, or other state to be a habitual traffic offender in accordance with Section 322.264, Florida Statutes, as amended or other applicable state law;

(9)    Has within the last ten (10) years pled nolo contendere, pled guilty, been found guilty or been convicted, regardless of whether adjudication has been withheld, of any offense involving trafficking in narcotics. After said ten-year period, such a person shall only be eligible if and when his or her civil or residency rights have been restored; or

(10)    Fails to comply with the insurance requirements set forth in Section 31-707.

Each transportation network entity shall conduct, or have a third party conduct, a local and national criminal background check for each applicant that shall include review of a Multi-State/Multi-Jurisdiction Criminal Records Locator or other similar commercial nationwide database with validation (primary source search), and the National Sex Offender Registry database.

(d)    Transportation network entity for-hire drivers shall be subject to enforcement, violations and penalties contained in this chapter and Chapter 8CC of this Code. A transportation network entity for-hire driver shall comply with all of the following regulations:

*16*

Agenda Item No. 4(B)
Page 15

(1)     At all times while providing transportation network entity services, such driver shall display an electronic waybill when requested by the Department or law enforcement to do so.

(2)     No transportation network entity for-hire driver shall Solicit, as defined by this article, passengers or drive his or her transportation network entity vehicle back and forth in front of any place of public assemblage.

(3)     No transportation network entity for-hire driver shall smoke while transporting passengers or sleep inside the motor vehicle.

(4)     No transportation network entity for-hire driver shall refuse or neglect to transport to any place in the County any orderly person on the basis of destination, race, sex, religion, national origin, age, sexual orientation/identity, or physical disability, who is willing and able to pay the fare and no transportation network entity for-hire driver shall accept any additional passengers without the consent of the passengers already within the transportation network entity for-hire vehicle unless the passenger is being transported under a shared ride or other special service rate.

(5)     Transportation network entity for-hire drivers shall at all times  maintain a neat appearance.

(6)     Transportation network entity for-hire drivers shall maintain accurate trip records for at least one (1) year showing at least the following information: name of transportation network entity for-hire driver, vehicle plate number, date, origin and destination of each trip, and fare for each trip. The total miles, trips and units accumulated during a transportation network entity for-hire driver's shift shall be recorded. All information must be recorded legibly. Upon request of the Department,

Agenda Item No. 4(B)
Page 16

transportation network entity for-hire drivers shall produce, in person, records required to be maintained by this section within one (1) business day of such request.

(7)   No transportation network entity for-hire driver shall collect fares or compensation for transportation services other than the rates or charges for the type of service being provided, nor may any transportation network entity for-hire driver collect any additional payment for transporting any baggage which accompanies the passenger, provided, however, that this provision shall not apply to gratuities.

(8)   The passenger shall be provided an electronic or paper receipt for the fare collected.

(9)   Transportation network entity for-hire drivers shall not operate any transportation network entity for-hire vehicle with any lighting devices that are not functioning properly. Likewise, no transportation network entity for-hire vehicle shall be driven unless the transportation network entity for-hire driver shall have satisfied himself or herself that the brakes, steering mechanism, tires, horn, windshield wipers, and side and rearview mirrors are in good working order.

(10)   A transportation network entity for-hire driver shall not use abusive language or be discourteous to passengers or enforcement personnel or solicit gratuities.

(11)   No transportation network entity for-hire driver shall operate a transportation network entity for-hire vehicle while his or her ability or alertness is so impaired or so likely to become impaired, through fatigue, illness or any other cause, as to make it unsafe for him or her to begin or continue to operate the transportation network entity for-hire vehicle.

Agenda Item No. 4(B)
Page 17

However, in a case of grave emergency where the hazard to occupants of the transportation network entity for-hire vehicle or other users of the highway could be increased by compliance with this section, the transportation network entity for-hire driver may continue to operate the transportation network entity for-hire vehicle to the nearest place at which that hazard is removed.

(12)    All transportation network entity for-hire drivers shall notify the transportation network entity of each change of address within ten (10) days of relocation.

(13)    Transportation network entity for-hire drivers shall select routes to trip destinations that are most economical to the passenger unless otherwise directed by or agreed to by the passenger.

(14)    No transportation network entity for-hire driver shall attempt to Solicit or attempt to divert the patronage of any passenger, prospective passenger, or other person on behalf of any hotel, motel, apartment, restaurant, nightclub, bar or any other business establishment, or accept or receive from any business establishment any payment for such Solicitation or diversion of passengers from or to any place of business.

(15)    It shall be unlawful for any transportation network entity for-hire driver to refuse to stop his or her transportation network entity for-hire vehicle for inspection by personnel authorized by the Department or any law enforcement officer when such personnel witness a violation of the Code of Miami-Dade County pertaining to such vehicle or when the officer witnesses a violation of the requirements of law or the Code of Miami-Dade County pertaining to such vehicle; or to refuse to permit personnel authorized by the Department or any law enforcement officer to conduct an

inspection of the transportation network entity for-hire vehicle.

(16)     Each transportation network entity for-hire driver shall use the air conditioner unless otherwise requested by the passenger, where the vehicle standards mandated by this chapter require that a transportation network entity for-hire vehicle be equipped with an air conditioner.

(17)     No transportation network entity for-hire driver shall refuse to sign and accept a violation notice acknowledging receipt of the notice.

(18)     No transportation network entity for-hire driver shall operate a transportation network entity for-hire vehicle without evidence contained within such vehicle of a currently valid transportation network entity vehicle inspection.

(19)     No transportation network entity for-hire driver shall refuse or neglect to transport to any place in the County any orderly person, including a service animal, who is willing and able to pay the prescribed fare. As used in Chapter 31, the term "service animal" shall mean any guide dog, signal dog, or other animal, as defined in 28 C.F.R. § 36.104, individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items.

(e)     A transportation network entity shall suspend or revoke a transportation network entity for-hire driver's access to its digital platform whenever a transportation network entity for-hire driver has pled nolo contendere, plead guilty, or been convicted of a felony or of any criminal offense

Agenda Item No. 4(B)
Page 19

involving moral turpitude or a crime involving the use of deadly weapons or trafficking in narcotics or should the State of Florida revoke or suspend the transportation network entity for-hire driver's driver license.

(f)     Conviction of a crime. A transportation network entity for-hire driver shall be required to notify the transportation network entity and the Department in writing of a conviction of a crime within ten (10) business days of said occurrence.

**Sec. 31-704.    Duties of Regulatory and Economic Resources Department or successor department.**

In addition to the duties and responsibilities specified in this article, the Department shall be charged with the following duties and responsibilities:

(1)     Process, investigate and prepare all reports required by this article.

(2)     Investigate and prepare reports on alleged violations of this article.

(3)     Enforce the provisions of this chapter.

(4)     Attempt to resolve complaints received from any source concerning the industry.

(5)     Issue, deny, suspend and revoke all transportation network entity licenses pursuant to the provisions of this article, and maintain appropriate files regarding same.

(6)     Provide technical assistance to the industry.

(7)     Develop a standardized reporting technique for transportation network entities after consultation with the transportation network entities.

(8)     Provide a system to handle complaints of municipal officials relating to transportation network entity service within such municipalities and expedite the solution of same.

(9)    Perform any other functions assigned by the County Mayor.

(10)   Coordinate cooperative enforcement activities with municipalities, including implementing procedures for the disposition of fine revenues collected.

(11)   Prepare and implement, in coordination and after consultation with the industry, changes, amendments or modifications to implementing orders establishing fees pursuant to this article and provide the industry with at least ten (10) days' notice prior to consideration of such changes, amendments or modifications by the Commission, other than when approved by the Commission as part of the annual budget approval process.

(12)   Upon court order have closed and sealed unlicensed service provider establishments in accordance with this article.

(13)   The Director may propose and the County Mayor may promulgate further rules and regulations to carry out the provisions of this article, which rules and regulations, when approved by the Commission, shall have the force and effect of the law.

(14)   Except for the fees recommended by the County Mayor and approved by the Commission for transportation network entity vehicles providing transportation of persons and their baggage from Miami International Airport and from the Port of Miami, whenever in this article a fee is charged or is required to be paid, the amount of such fee shall be established by implementing order approved by the Commission. Such fees shall be deposited in a separate Miami-Dade County fund and shall be used exclusively to accomplish the regulatory purposes of this article. The amount of each fee established hereunder shall be reasonably related to the cost of the services and regulation provided therefor.

Agenda Item No. 4(B)
Page 21

### Sec. 31-705.    Rules for operation.

(a)    Each transportation network entity shall adopt and require all transportation network entity for-hire drivers to display consistent trade markings (i.e., distinctive signage or display on the vehicle) when providing transportation network entity services that are sufficiently large and color contrasted as to be readable during daylight hours at a distance of at least 50 feet.

(b)    No transportation network entity for-hire vehicle or driver shall utilize a designated taxicab stand.

(c)    A transportation network entity license holder shall not permit a transportation network entity for-hire driver to Solicit or pick up passengers other than by prearrangement through the transportation network entity.

(d)    A transportation network entity license holder shall not permit a transportation network entity for-hire driver to accept Street Hails. Transportation network entity for-hire drivers shall not accept Street Hails.

(e)    Transportation network entity vehicles shall not display the word(s) taxicab, taxi or cab on the exterior or interior of the transportation network entity for-hire vehicle.

(f)    Every transportation network entity and transportation network entity for-hire driver shall fully comply with all ordinances, rules and regulations of the County applicable to the operation of transportation network entity vehicles.

(g)    The software application used by a transportation network entity to connect transportation network entity for-hire drivers and passengers must display the name of the transportation network entity for-hire driver, the license plate number of the transportation network entity for-hire vehicle, a picture of the transportation network entity for-hire driver, and a picture of the type of transportation network entity vehicle.

(h)    All transportation network entities shall implement a zero tolerance policy on the use of drugs or alcohol while a transportation network entity for-hire driver provides transportation network entity services, provide notice of the zero tolerance policy on its website, as well as the procedures to report a complaint about a transportation

network entity for-hire driver with whom the rider was matched and for whom the rider reasonably suspects was under the influence of drugs or alcohol during the course of the ride.

(i)    Each transportation network entity shall establish a driver-training program to ensure that each transportation network entity for-hire driver safely operates his or her transportation network entity vehicle prior to the transportation network entity for-hire driver being able to offer service.

(j)    Each transportation network entity shall annually furnish financial information relating to its operations to the Department on forms prescribed by the Department.

**Section 31-706.  Fares and rates.**

Transportation network entities may establish and charge fares for transportation services based on distance traveled and/or time elapsed during service, or a flat prearranged rate.

**Section 31-707.  Insurance requirements.**

(a)    Each transportation network entity vehicle owner or lessee shall provide the Department with a certificate of insurance in compliance with state law.  Failure to provide current certificates of insurance or to maintain appropriate insurance coverage shall be grounds for revocation of a transportation network entity license.

(b)    Insurance coverage shall be for a policy term of at least six (6) months. Nothing in the insurance policy or declaration shall permit binders, deductibles, self-insurance or any provision requiring the insured to reimburse the insurance company for claims.

(c)    Each automobile liability insurance policy shall be endorsed to provide for thirty (30) days' notice by registered mail to the Department of any material change regarding the scope or levels of coverage, cancellation, or expiration. No policy will be accepted for a shorter period than six (6) months.

(d) Unless a transportation network entity vehicle owner or lessee furnishes the Department with satisfactory evidence of the required insurance coverage prior to the expiration of the thirty (30) days' notice specified in subsection (c) of this section, or upon a third notice of cancellation within twelve (12) months, the transportation network entity license shall be suspended forthwith by the Director and surrendered to the Department pending a hearing to determine whether said for-hire license should be revoked. This automatic suspension requirement will not pertain to a transportation network entity or transportation network entity for-hire driver when the insurer withdraws from Florida and cancels its policies, or when the policy is canceled through no fault of the operator.

(e) Examination of insurance policy. The Department reserves the right to require submission of a certified copy of or to examine the original policies of insurance including, but not limited to, endorsements, amendments, exclusions, riders, any additional contracts between the insured and the insurer and applications to confirm the existence of the required insurance coverage.

**Section 31-708.  Vehicle Standards.**

Each transportation network entity shall have a certified mechanic conduct a safety inspection of each prospective transportation network entity vehicle before a transportation network entity for-hire driver may accept rides on the transportation network entity's digital platform, and annually thereafter.  A copy of the certified inspection shall be contained within the transportation network entity for-hire vehicle.  A safety inspection shall include an inspection of:

(1) Foot brakes;
(2) Emergency parking brake;
(3) Suspension/steering mechanism;
(4) Windshield;
(5) Rear window and other glass;
(6) Windshield wipers;
(7) Headlights;
(8) Taillights;

Agenda Item No. 4(B)
Page 24

(9)      Turn indicator lights;
(10)     Brake lights;
(11)     Front seat adjustment mechanism;
(12)     Doors (open/close/lock);
(13)     Horn;
(14)     Speedometer;
(15)     Bumpers;
(16)     Muffler and exhaust system;
(17)     Condition of tires, including tread depth;
(18)     Interior and exterior rear view mirrors;
(19)     Air conditioning; and
(20)     Safety belts for driver and passengers.

Transportation network entity vehicle age limits are as follows. Any transportation network entity for-hire vehicle over ten (10) model years of age shall not be operated as a transportation network entity for-hire vehicle. It shall be unlawful for any person to drive a transportation network entity for-hire vehicle over any street in Miami-Dade County without first completing an inspection by a certified mechanic who confirms that the vehicle satisfies all of the vehicular standards mandated by this Section 31-708.

The Department may inspect a transportation network entity vehicle that is currently being used by a driver to provide transportation network entity services. Any transportation network entity vehicle which fails inspection by Department shall be removed from service until the owner or lessee submits to Department a certification, completed by a certified mechanic, that the deficiency has been rectified. All records pertaining to transportation network entity vehicles must be made available for inspection in the transportation network entity's offices for the purpose of verifying continued compliance with the above requirements, within one (1) business day of such request by the Department.

**Section 31-709.  Enforcement of article.**

(a)      This article shall be enforced by authorized personnel of the Department, the police forces of the various municipalities in Miami-Dade County and by the Miami-Dade Police Department, and other law enforcement officers as permitted by State law or this Code. When

specifically authorized by the Director, this article may be enforced by personnel of the Seaport and Aviation Department against violations occurring within their respective boundaries. The Department shall prepare and distribute to all authorized enforcement personnel an enforcement manual outlining procedures for the detection, reporting and issuance of citations or deficiency reports for violations of this article.

(b)     The Department may employ a deficiency or warning system through which transportation network entities are given written notice of minor violations and a specified period of time to correct same. Unless otherwise provided in this chapter, all other violations shall be processed under chapter 8CC of the Code.

(c)     Deficiency reports and citations shall be issued to the party responsible for the violation as set forth in this article. Any person issued a deficiency report or a citation shall sign and accept it.

(d)     Notwithstanding the provisions of this section, the Director may secure enforcement of the provisions of this article by any legal action necessary, such as application to any court for injunctive relief or other appropriate relief.

**Section 31-710.  Suspension and revocation proceedings.**

(a)     Grounds for suspension or revocation. In addition to the grounds for automatic suspension or revocation provided elsewhere in this article, transportation network entity licenses shall be subject to suspension or revocation by the Director as follows:

(1)     Upon the Director's determination that:

(i)     The transportation network entity license holder has pled nolo contendere, pled guilty, been found guilty or been convicted (regardless of whether adjudication has been withheld) of any criminal offense which would preclude the issuance of a transportation network entity license as provided in this chapter;

Agenda Item No. 4(B)
Page 26

    (ii)    The transportation network entity license was obtained by an application in which any material fact was omitted or falsely stated;

    (iii)    The transportation network entity license holder has failed to comply with or has violated any of the provisions of this chapter;

    (iv)    The transportation network entity license renewal application does not comply with the requirements of this chapter; or

    (v)    Any transportation network entity vehicle has been operated in violation of this chapter.

(b)    Notice of suspension or revocation action. Except where this chapter provides for automatic suspension or revocation, the Department shall provide notice of suspension or revocation to the violator by certified mail ten (10) days before the violator must comply with the Director's decision.

(c)    Appeals from decisions of Director and administrative hearings.

    (1)    Right to appeal. Any transportation network entity license holder shall have the right to appeal application denials, suspensions and revocations by the Director. The named party shall elect to either:

    (a)    Comply with the Director's decision in the manner indicated on the notice of Director's decision; or

    (b)    Request an administrative hearing before a hearing officer to appeal the decision of the Director.

    (2)    Filing the appeal. Appeal by administrative hearing shall be accomplished by filing within ten (10) days after the date of the decision complained of a written notice of appeal to the Clerk of the Courts, Code Enforcement Section. The notice of appeal shall set forth concisely the nature of the decision appealed and the reasons or grounds for appeal.

(3)     Failure to appeal. Failure to appeal the decision of the Director within the prescribed time period shall constitute a waiver of the person's right to an administrative hearing before the hearing officer. Where the Director's decision involves a suspension or revocation, a waiver of the right to an administrative hearing shall be treated as an admission of the violation and the Director's decision shall be deemed final and enforceable. No further remedies shall be granted and the decision shall stand.

(4)     Hearing officers. Hearing officers shall be appointed by the Clerk of the Courts, Code Enforcement Section.

(5)     Scheduling and conduct of hearing.

    (a)     Upon receipt of a timely request for an administrative hearing, the hearing officer shall set the matter down for hearing on the next regularly scheduled hearing date or as soon as possible thereafter or as mandated in the specified section of the Code.

    (b)     The hearing officer shall send a notice of hearing by first class mail to the named party at his, her or its last known address. The notice of hearing shall include but not be limited to the following: place, date and time of the hearing; right of the named party to be represented by a lawyer; right of the named party to present witnesses and evidence; in the case of the Director's decision involving suspension or revocation, notice that failure of the named party to attend the hearing shall be deemed a waiver of the right to hearing and an admission of the acts specified in the notice; and notice that requests for continuances will not be considered if not received by the hearing officer at least ten (10) calendar days prior to the date set for hearing.

    (c)     The hearing officers shall call hearings on a monthly basis or upon the request of the Department. No hearing shall be set sooner

Agenda Item No. 4(B)
Page 28

than fifteen (15) calendar days from the date of notice of the Director's decision, unless otherwise prescribed by this chapter.

(d)    A hearing date shall not be postponed or continued unless a request for continuance, showing good cause for such continuance, is received in writing by the hearing officer at least ten (10) calendar days prior to the date set for the hearing. No additional continuances shall be granted without concurrence of the Department.

(e)    All hearings conducted by a hearing officer shall be open to the public. All testimony shall be under oath. If the named party has been properly notified, a hearing may proceed in the absence of the named party and the failure to attend a hearing shall be deemed a waiver of the right to a hearing and an admission of the acts specified in the notice.

(f)    The proceedings at the hearing shall be recorded and may be transcribed at the expense of the party requesting the transcript.

(g)    The Clerk of the Commission shall provide clerical and administrative personnel as may be reasonably required by each hearing officer for the proper performance of his or her duties.

(h)    Each case before a hearing officer shall be presented by the Director or his or her designee.

(i)    The hearing need not be conducted in accordance with the formal rules relating to evidence and witnesses.

(j)    Each party shall have the right: to call and examine witnesses; to introduce exhibits; to cross-examine opposing witnesses on any relevant matter; to impeach any witness regardless of which party first called him or

her to testify; and to rebut the evidence against him or her. All relevant evidence shall be admitted.

(k)     The hearing officer shall make findings of fact based on the evidence of record. In order to make a finding upholding the Director's decision the hearing officer must find that a preponderance of the evidence supports the Director's decision and, where applicable, indicate that the named party was responsible for the violation of the relevant section of the Code as charged.

(m)     The fact-finding determination of the hearing officer shall be limited to whether the alleged violation occurred or whether competent, substantial evidence supports the Director's decisions. Based upon this fact-finding determination, the hearing officer shall either affirm or reverse the decision of the Director. If the hearing officer affirms the decision of the Director, the named party shall have fifteen (15) days from the date of the hearing officer's decision to comply with the decision of the Director. If the hearing officer reverses the decision of the Director and finds (1) the named party is not responsible for the violation alleged; or (2) insufficient basis for the denial of application, a written decision shall be prepared setting forth the basis for such determination. If the hearing officer reverses the decision of the Director, the named party shall not be required to comply with the decision of the Director, absent reversal of the hearing officer's findings pursuant to this article. If the decision of the hearing officer is to affirm, then all of the following shall be included in the decision:

(a)     Decision of the Director.

(b)     Administrative costs of the hearing.

(c)     Date for compliance, if applicable.

Agenda Item No. 4(B)
Page 30

(n)    The hearing officer shall have the power to:

    (a)    Adopt procedures for the conduct of hearings;

    (b)    Subpoena alleged violators and witnesses for hearings; subpoenas may be served by the Miami-Dade Police Department or by the hearing officer's staff;

    (c)    Subpoena evidence; and

    (d)    Take testimony under oath.

(6)    Appeals.

    (a)    The named party or the County may appeal a final order of the hearing officer by filing a notice of appeal in the Circuit Court in and for Miami-Dade County, Florida, in accordance with the procedures and within the time provided by the Florida Rules of Appellate Procedure for the review of administrative action.

    (b)    Unless the findings of the hearing officer are overturned in a proceeding held pursuant to this article, all findings of the hearing officer shall be admissible in any further proceeding to compel compliance with the Director's decision.

(7)    Nothing contained in this chapter shall prohibit Miami-Dade County from enforcing the Code by any other means authorized by law. The enforcement procedures outlined herein are cumulative to all others and shall not be deemed to be prerequisites to filing suit for the enforcement of any section of the Code. The words "action" and "decision" as used herein shall not include the filing of any action by the Director in any court. The Director may reconsider at any time any action or decision taken by the Director and therefore may modify such an action or decision.

### Sec. 31-711.  Violations; penalties.

In addition to any other penalties provided by law, including, but not limited to, those provided in this chapter, a violation of any applicable provision of this chapter by a transportation network entity license holder or transportation network entity for-hire driver shall constitute a civil offense punishable by the applicable civil penalty as provided in the schedule of civil penalties in Section 8CC-10 of the Code. Failure of a person to pay a civil penalty within sixty (60) days of the due date for paying such fine as specified on the civil violation notice or within sixty (60) days of the date of the final outcome of any timely filed appeal of such violation notice, whichever is later, shall result in automatic suspension of such person's transportation network entity license or authorization to drive as a transportation network entity for-hire driver. If a transportation network entity for-hire driver commits five (5) violations of the same section of this article during any twelve-month period, the appropriate transportation network entity shall suspend or revoke the transportation network entity for-hire driver's access to the appropriate digital platforms.   If a transportation network entity for-hire driver commits five (5) violations of this article during any twelve-month period, the appropriate transportation network entity shall suspend the transportation network entity for-hire driver's access to the appropriate digital platforms or revoke authorization to drive for the transportation network entity.

### Sec. 31-712.  Special provisions.

(a)     The applicable provisions of this article shall be the exclusive regulations applicable to the provision of and operation of transportation network entity services in Miami-Dade County. Regulations established by this article shall be uniform throughout Miami-Dade County both in the incorporated and unincorporated areas without regard to municipal boundaries.

(b)     Any transportation network entity for-hire driver driving on a transportation network entity platform licensed pursuant to this article shall be authorized to provide transportation of persons and their baggage to and from Miami International Airport and to and from the Port of Miami upon compliance with terms, conditions and fees, as established by implementing order approved by the Commission. The transportation of persons and baggage to and from Miami International Airport or to and from the Port of Miami shall constitute an agreement by the

Agenda Item No. 4(B)
Page 32

transingly, underline: transportation network entity that it will conform to such terms, conditions, and fees.<<

**Section 2.**     Section 8CC-10 of the Code of Miami-Dade County, Florida, is hereby amended to read as follows:

### Sec. 8CC-10.          Schedule of civil penalties.

\*                       \*                       \*

| Code Section | Description of Violation | Civil Penalty |
|---|---|---|
| \* | \* | \* |
| 31-615(d) | False, misleading and deceptive advertising | 1000.00 |
| | Any and all other violations of Article 6 | 250.00 |
| >>31-702(a) | Unauthorized operation of transportation network entity services | 1000.00 |
| 31-702(k)(1) | Violation of applicable law | 250.00 |
| 31-702(k)(2) | Failure to report change of address | 100.00 |
| 31-702(k)(3) | Failure to maintain records | 100.00 |
| 31-702(k)(4) | Allowing person to operate transportation network entity vehicle without meeting requirements | 500.00 |
| 31-702(k)(5) | Allowing or permitting any person to operate a transportation network entity vehicle without current, valid and sufficient insurance coverage | 500.00 |
| 31-702(k)(6) | Permitting or authorizing any driver to operate any vehicle without that vehicle complying with applicable vehicle standards | 500.00 |

Agenda Item No. 4(B)
Page 33

| 31-702(k)(7) | Failure to adopt a policy that prohibits drivers from operating when alertness impaired and drivers inform | 500.00 |
| 31-702(k)(8) | Failure to adopt antidiscrimination policy and inform drivers | 200.00 |
| 31-702(k)(9) | Refusal to transport passenger and service animal, for first violation | 500.00 |
| 31-702(k)(9) | Refusal to transport passenger and service animal, subsequent violations | 1000.00 |
| 31-702(k)(10) | Failure to require driver to produce evidence that driver trained in safe and proper operation of accessible vehicle | 250.00 |
| 31-702(k)(11) | Allowing driver to operate accessible vehicle without required training regarding accessible vehicles | 250.00 |
| 31-702(o)(1) | Failure to provide electronic receipt | 250.00 |
| 31-702(o)(2) | Failure to maintain required website | 250.00 |
| 31-703(b) | Providing access to transportation network entity driver who does not meet requirements | 500.00 |
| 31-703(b) | Failure to make records available for inspection | 500.00 |
| 31-703(c) | Providing access to person prohibited from having access to a transportation network entity's digital platform | 500.00 |
| 31-703(c) | Failure to conduct required background check | 500.00 |

Agenda Item No. 4(B)
Page 34

| 31-703(d)(1) | Failure to display electronic waybill | 50.00 |
| 31-703(d)(2) | Violation of solicitation prohibition | 75.00 |
| 31-703(d)(3) | Violation of smoking while transporting passengers or sleeping in vehicle prohibition | 75.00 |
| 31-703(d)(4) | Refusal to transport passenger, for first violation | 250.00 |
| 31-703(d)(4) | Subsequent violations | 500.00 |
| 31-703(d)(5) | Failure to maintain a neat appearance | 25.00 |
| 31-703(d)(6) | Failure to maintain accurate, legible trip records or failure to provide trip records to the Department when requested | 25.00 |
| 31-703(d)(7) | Overcharging passenger | 250.00 |
| 31-703(d)(8) | Failure to provide receipt to paying passenger | 25.00 |
| 31-703(d)(9) | Operating an unsafe vehicle | 75.00 |
| 31-703(d)(10) | Violation of abusive language prohibition; or being discourteous to passengers or enforcement personnel or soliciting gratuities | 100.00 |
| 31-703(d)(11) | Operating a vehicle while ability or alertness is impaired | 250.00 |
| 31-703(d)(12) | Failure to notify the Department of change of address within ten (10) days of relocation | 25.00 |
| 31-703(d)(13) | Failure to select the most economical route to destination | 100.00 |

Agenda Item No. 4(B)
Page 35

| | | |
|---|---|---|
| 31-703(d)(14) | Violation of passenger diversion prohibition, or accepting payment for passenger diversion | 250.00 |
| 31-703(d)(15) | Failure to stop vehicle for inspection; or failure to allow authorized enforcers to inspect vehicle | 50.00 |
| 31-703(d)(16) | Failure to use air conditioning | 250.00 |
| 31-703(d)(17) | Failure to sign and accept violation  notice | 250.00 |
| 31-703(d)(18) | Operating a vehicle without evidence of vehicle inspection | 250.00 |
| 31-703(d)(19) | Refusal to transport passenger and service animal, for first violation | 500.00 |
| 31-703(d)(19) | Refusal to transport passenger and service animal; subsequent violations | 1000.00 |
| 31-703(e) | Failure of a transportation network entity to suspend or revoke access to digital platform when driver commits certain acts | 500.00 |
| 31-703(f) | Failure of driver to notify when convicted of a crime | 250.00 |
| 31-705(a) | Failure to adopt and require consistent trade markings | 250.00 |
| 31-705(b) | Failure to comply with requirements for designated taxicab stands | 100.00 |
| 31-705(c) | Permitting a driver to solicit passengers other than by prearrangement through the transportation network entity | 100.00 |
| 31-705(d) | Permitting a driver to accept street hails | 100.00 |

Agenda Item No. 4(B)
Page 36

| | | |
|---|---|---|
| 31-705(d) | Transportation network entity driver accepts street hails | 100.00 |
| 31-705(e) | Displaying the word(s) taxicab, taxi or cab on the exterior or interior of the vehicle | 100.00 |
| 31-705(f) | Failure to comply with all ordinances, rules and regulations | 100.00 |
| 31-705(g) | Failure of software application to display required information | 250.00 |
| 31-705(h) | Failure to implement zero tolerance policy and procedure to report complaints | 250.00 |
| 31-705(i) | Failure to establish and implement driver training program | 500.00 |
| 31-705(j) | Failure to furnish records | 500.00 |
| 31-707 | Failure to have required insurance | 1000.00 |
| 31-707(e) | Failure to allow for access of insurance policy | 500.00 |
| 31-708 | Failure to have safety inspection | 250.00 |
| 31-708 | Failure to maintain records and grant access | 500.00 |
| 31-708 | Failure to comply with vehicle standards | 250.00 |
| | Any and all other violations of Article 7 | 250.00<< |

**Section 3.**    If any section, subsection, sentence, clause or provision of this ordinance is held invalid, the remainder of this ordinance shall not be affected by such invalidity.

Agenda Item No. 4(B)
Page 37

**Section 4.**     It is the intention of the Board of County Commissioners, and it is hereby ordained that the provisions of this ordinance, including any sunset provision, shall become and be made a part of the Code of Miami-Dade County, Florida.  The sections of this ordinance may be renumbered or relettered to accomplish such intention, and the word "ordinance" may be changed to "section," "article," or other appropriate word.

**Section 5.**     This ordinance shall become effective ten (10) days after the date of enactment unless vetoed by the Mayor, and if vetoed, shall become effective only upon an override by this Board.

PASSED AND ADOPTED:

Approved by County Attorney as
to form and legal sufficiency:

Prepared by:

Gerald K. Sanchez

Prime Sponsor:     Vice Chairman Esteban L. Bovo, Jr.

# MEMORANDUM

TAC
Substitute to
Agenda Item No. 1(G)1

**TO:** Honorable Chairwoman Rebeca Sosa
and Members, Board of County Commissioners

**DATE:** October 15, 2014

**FROM:** R. A. Cuevas, Jr.
County Attorney

**SUBJECT:** Ordinance relating to For-hire
Motor Vehicles amending
Chapter 31, Article V of the
Code relating to Chauffeurs

---

**The substitute differs from the original item in that the substitute:**

(1) Amends section 31-703 regarding issuance of chauffeur registrations by requiring, among other things, that the transportation network entity, and not the Regulatory and Economic Resource Department ("RER") shall be responsible for: (a) performing background checks and submitting a certification to RER regarding the results; (b) training chauffeur applicants and submitting a certification to RER regarding the results; and (c) administering the chauffeur training test to applicants and submitting a certification to RER regarding the results;

(2) Amends section 31-707 regarding insurance requirements by providing, among other things, that each transportation network vehicle owner or lessee shall provide RER with a certificate of insurance in compliance with state law;

(3) Amends section 31-708 regarding vehicle standards by providing, among other things, that the owner or lessee of a transportation network entity vehicle may satisfy the vehicle inspection requirement by submitting to RER a certification by a mechanic who has a current and valid motor vehicle repair license issued pursuant to Chapter 8A stating that the vehicle satisfies all of the vehicular standards mandated by section 31-708;

(4) Amends section 31-708 to require that each transportation network entity utilize a passenger rating system which allows each passenger to rate the transportation experience and the driver; and

(5) Amends the maximum vehicle age requirement from five to eight years of age, and mandates annual submission of vehicle inspection certifications.

The accompanying ordinance was prepared and placed on the agenda at the request of Co-Prime Sponsors Commissioner Esteban L. Bovo, Jr. and Commissioner Audrey M. Edmonson and Co-Sponsors Vice-Chair Lynda Bell, Commissioner Xavier L. Suarez and Commissioner Juan C. Zapata.

R. A. Cuevas, Jr.
County Attorney

RAC/lmp

**Memorandum** 

| | |
|---|---|
| **Date:** | |
| **To:** | Honorable Chairwoman Rebeca Sosa<br>and Members, Board of County Commissioners |
| **From:** | Carlos A. Gimenez<br>Mayor |

**Subject:** Ordinance relating to for-hire motor vehicles; amending Chapter 31, Article V of the Code of Miami-Dade County, Florida, relating to chauffeurs; mending definitions and requiring that transportation network entity for-hire vehicle drivers obtain a chauffeur's registration and comply with the requirements therein; creating Chapter 31, Article VII of the Code regulating transportation network entities, chauffeurs

---

The proposed ordinance amends Chapter 31, Article V of the Code of Miami-Dade County relating to definitions of chauffeurs and requiring that transportation network entity for-hire vehicles obtain chauffeur's registration and comply with the requirements therein creating Chapter 31, Article VII. Licensing, operating permit and inspection fees are collected by the Department of Regulatory and Economic Resources to support regulatory activities. Chauffeur fees are $55 per year, per driver. Operating permit fees are $625 per vehicle while vehicle inspection fees are $70 per vehicle for new vehicle inspections and $38 per vehicle for re-inspections.

Fiscal impact to the County will be determined at a later time once an analysis can be performed to ascertain the number of companies, chauffeurs, and vehicles that will require licensing and registration in compliance with this ordinance and a fee schedule for the Transportation Network Entity for hire vehicles is presented to and adopted by the Board of County Commissioners.

Jack Osterholt
Deputy Mayor

Fis9514



# MEMORANDUM
## (Revised)

TO:    Honorable Chairwoman Rebeca Sosa      DATE:    November 5, 2014
and Members, Board of County Commissioners

FROM:    R. A. Cuevas, Jr.              SUBJECT:    Substitute to Agenda Item No. 1(G)(1)
County Attorney

---

**Please note any items checked.**

_____    "3-Day Rule" for committees applicable if raised

_____    6 weeks required between first reading and public hearing

_____    4 weeks notification to municipal officials required prior to public hearing

_____    Decreases revenues or increases expenditures without balancing budget

_____    Budget required

_____    Statement of fiscal impact required

_____    Ordinance creating a new board requires detailed County Mayor's report for public hearing

_____    No committee review

_____    Applicable legislation requires more than a majority vote (i.e., 2/3's ____, 3/5's ____, unanimous _____) to approve

_____    Current information regarding funding source, index code and available balance, and available capacity (if debt is contemplated) required

Approved _____ Mayor

Veto        _____

Override    _____

Substitute to

Agenda Item No. 1(G)1

ORDINANCE NO. _____

ORDINANCE RELATING TO FOR-HIRE MOTOR VEHICLES; AMENDING CHAPTER 31, ARTICLE V OF THE CODE OF MIAMI-DADE COUNTY, FLORIDA, RELATING TO CHAUFFEURS; AMENDING DEFINITIONS AND REQUIRING THAT TRANSPORTATION NETWORK ENTITY FOR-HIRE VEHICLE DRIVERS OBTAIN A CHAUFFEUR'S REGISTRATION AND COMPLY WITH THE REQUIREMENTS THEREIN; CREATING CHAPTER 31, ARTICLE VII OF THE CODE REGULATING TRANSPORTATION NETWORK ENTITIES, CHAUFFEURS AND VEHICLES; PROVIDING FOR DEFINITIONS, LICENSING AND REGULATION OF TRANSPORTATION NETWORK ENTITIES; PROHIBITING TRANSFER OF TRANSPORTATION NETWORK ENTITY LICENSES; REQUIRING THAT DRIVERS OF TRANSPORTATION NETWORK ENTITY VEHICLES OBTAIN A CHAUFFEUR'S REGISTRATION; PROVIDING FOR DUTIES OF REGULATORY AND ECONOMIC RESOURCES DEPARTMENT; PROVIDING FOR RULES OF OPERATION; PROVIDING THAT TRANSPORTATION NETWORK ENTITIES MAY DETERMINE RATES AND FARES; ESTABLISHING INSURANCE REQUIREMENTS AND VEHICLE STANDARDS; PROVIDING FOR ENFORCEMENT, SUSPENSION, REVOCATION AND PENALTIES; AMENDING CHAPTER 8CC OF THE CODE TO PROVIDE FOR PENALTIES; PROVIDING FOR SEVERABILITY, INCLUSION IN THE CODE, AND AN EFFECTIVE DATE

**BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF MIAMI-DADE COUNTY, FLORIDA:**

**Section 1.**     Chapter 31, Article V of the Code of Miami-Dade County, Florida, is hereby amended as follows:

**CHAPTER 31.       VEHICLES FOR HIRE**

**Article V.   General Requirements**

4

**Sec. 31-301.   Applicability.**

All general requirements contained in this article are applicable to chauffeur applicants and chauffeurs for nonemergency medical transportation regulated under Chapter 4, Article III, private school buses regulated under Chapter 30, Section 371 and 372, taxicabs regulated under Chapter 31, Article II, Passenger Motor Carriers regulated under Chapter 31, Article III, [[and]] special transportation service regulated under Chapter 31, Article IV [[and]] >>,<<limousines regulated under Chapter 31, Article VI >>and transportation network entity for-hire vehicles regulated under Chapter 31, Article VII<<.[1]

**Sec. 31-302.   Definitions.**

For purposes of this article the following definitions shall apply:

(a)   >>RER<<   [[CSD]] means   the   Miami-Dade   County [[Consumer   Services   Department]]   >>Regulatory   and Economic   Resources   Department   or   successor department.<<

(b)   *For-hire company* means an entity which is registered with the [[Consumer Services Department]]>>Regulatory and Economic Resources Department<<, which shall minimally provide a color scheme, including the trade name, customer lost and found services and a system for handling customer complaints satisfactory to the RER. A for-hire company may among other things also provide communication services, contract services to chauffeurs and contract services for for-hire license holders.

(c)   *For-hire passenger motor vehicle* or *for-hire vehicle* means any of the following chauffeur-driven vehicles as defined in Chapters 4, 30 or 31 of the Code of Miami-Dade County:

(i)   Taxicab

(ii)   Limousine

---

[1] Words stricken through and/or [[double bracketed]] shall be deleted.  Words underscored and/or >>double arrowed<< constitute the amendment proposed.  Remaining provisions are now in effect and remain unchanged.

Substitute to
Agenda Item No. 1(G)1
Page 3

    (iii)    Passenger motor carrier vehicle

    (iv)    Non-emergency medical transportation vehicle

    (v)    Private school bus

    (vi)    Special transportation service vehicle

>>(vii)    <u>Transportation network entity for-hire vehicle</u><< which engages in the transportation of passengers and their accompanying property for compensation over the public streets of Miami-Dade County which complies with Section 319.23, Florida Statutes, as may be amended from time to time, but excluding ambulances, vehicles used exclusively for the transportation of decedents and persons participating in funeral services, vehicles used solely to provide free transportation services for customers of the business establishment owning said vehicles, and rental or leased vehicles which rental or lease does not include a chauffeur; provided, however, that no vehicle excluded under this definition shall be used on a for-hire basis except as authorized by this chapter.

              *              *              *

**Sec. 31-303.   Chauffeur's registration; all types.**

(a)    It shall be unlawful for any person to drive any for-hire vehicle over any street in Miami-Dade County without first having obtained a chauffeur's registration from the [[CSD]]>>RER<< pursuant to this section.

(b)    Initial application for a chauffeur's registration shall be on forms provided by the Department and shall be accompanied by a non-refundable payment of an application and processing fee. Application for renewal of chauffeur's registration shall be accompanied by a non-refundable payment of a renewal fee. Registration



Substitute to
Agenda Item No. 1(G)1
Page 4

applications whether initial or for a renewal shall contain all information required by this chapter.

(c)     The [[CSD]]>>RER<< and the Miami-Dade Police Department shall investigate each applicant and report all findings. The [[CSD]]>>RER<<, or any authorized agent, shall examine each applicant to determine his or her knowledge of the English language, Miami-Dade County geography, traffic regulations and chauffeur responsibilities as contained in this chapter.

(d)     The [[CSD]]>>RER<< may issue a chauffeur's registration, for such periods as prescribed within the administrative order establishing the fees when it is shown that the initial or renewal applicant:

   (1)     Holds a current, valid State of Florida driver's license of the class required for the type of for-hire vehicle to be operated;

   (2)     Has taken a one (1) day course in one (1) location, as directed by [[CSD]]>>RER<<, which will ensure that the applicant is able to speak, read and write the English language sufficiently to perform the duties of a chauffeur; and passes the required [[CSD]]>>RER<< oral and written exam demonstrating his or her knowledge of the English language, Miami-Dade County geography, traffic regulations, defensive driving techniques and chauffeur responsibilities. Notwithstanding the foregoing, chauffeurs who have held a chauffeur's registration issued by Miami-Dade County for twenty or more years and have not violated a vehicle or chauffeur standard on two or more occasions within the preceding five (5) years, shall be exempt from the requirements of this paragraph (2). Further, chauffeurs who, as of the effective date of this ordinance, have held a chauffeur's registration issued by Miami-Dade County for twenty or more years shall be exempt from the

Substitute to
Agenda Item No. 1(G)1
Page 5

requirements of this paragraph (2). The provisions of this paragraph (2) shall not apply to initial or renewal private school bus chauffeur applicants except as provided in Section 31-306. In addition, the provisions of this paragraph (2) shall not apply to initial or renewal fixed route or jitney service chauffeur applicants except as provided in Section 31-309.

(3)   Completes a physical examination within the most recent twelve-month period (including any drug test required by the [[CSD]]>>RER<< Director pursuant to authority of subsection (j)) by a licensed physician or advanced registered nurse practitioner showing the applicant to be free from any physical or mental defect and to be of sound health;

(4)   Is eighteen (18) years of age or older;

(5)   Certifies under oath that he or she is not a user of alcohol or drugs whose current use would constitute a direct threat to property or the safety of others;

(6)   Certifies under oath that he or she is free from any physical or mental defect or disease that would constitute a direct threat to the property or safety of others or would impair his or her ability to drive a for-hire vehicle;

(7)   Has attended a National Safety Council Defensive Driving Course or equivalent; provided, however, that renewal applicants shall only be required to take an additional defensive driving course approved by the [[CSD]]>>RER<< if, in the most recent two-year period, said renewal applicant has been found guilty, or pled guilty or nolo contendere to two (2) or more moving violations.

Substitute to
Agenda Item No. 1(G)1
Page 6

(e)     No person shall be issued a chauffeur's registration who:

   (1)     Fails the physical examination or any drug test required by subsection (d)(3);

   (2)     Is an individual who is not duly authorized to work by the immigration laws or the Attorney General of the United States;

   (3)     Is a user of alcohol or drugs whose current use would constitute a direct threat to property or the safety of others;

   (4)     Falsifies his or her application, is found cheating on any exam, or has altered any chauffeur registration such an applicant shall not be eligible to re-apply for one (1) year;

   (5)     Has within the last five (5) years pled nolo contendere, pled guilty, been found guilty or been convicted of a felony, unless his or her civil or residency rights have been restored;

   (6)     Has pled nolo contendere, pled guilty, been found guilty, or been convicted, regardless of whether adjudication has been withheld, of any criminal offense involving moral turpitude relating to sex crimes, the use of a deadly weapon, homicide, violent offense against a law enforcement officer under Section 775.0823, Florida Statutes, or is a habitual violent felony offender under Section 775.084, Florida Statutes;

   (7)     Has been convicted of an offense involving moral turpitude not relating to sex crimes when, in the discretion of the [[CSD]]>>RER<< Director, approval of such registration would constitute a threat to health, welfare or safety of the public or property and therefore would not be in the public's interest;

*9*

(8)     During the last five (5) years prior to application has had his or her driver's license suspended for or has pled nolo contendere, pled guilty or been found guilty or been convicted (regardless of whether adjudication has been withheld) of:

    (i)     Driving under the influence of drugs or intoxicating liquors (D.U.I.);

    (ii)    Three (3) or more traffic infractions resulting in accidents;

    (ii)    Fleeing the scene of any accident, or

    (iv)    Vehicular manslaughter or any death resulting from driving;

(9)     During the last five (5) years prior to application has accumulated twenty-four (24) points provided, however, renewal applicants applying for renewal of a chauffeur's registration on or before five (5) years from the effective date of this ordinance shall not be issued a renewal registration, if he or she has accumulated twenty-four (24) points during the last three (3) years prior to such application; or

(10)    A chauffeur registration shall be denied when a chauffeur has received in the most recent twelve (12) month period prior to application two (2) or more driver's license suspensions of any type on his or her State of Florida or other state record; or when the applicant has been determined by the State of Florida, or other State to be a habitual traffic offender in accordance with Section 322.264, Florida Statutes, as amended or other applicable State law.

(11)    Has within the last ten (10) years pled nolo contendere, pled guilty, been found guilty or been

convicted, regardless of whether adjudication has been withheld, of any offense involving trafficking in narcotics. After said ten-year period, such a person shall only be eligible if and when his or her civil or residency rights have been restored.

(f)     The director of the [[CSD]]>>RER<< may issue a temporary chauffeur's registration valid for six (6) months only to any applicant, who otherwise qualifies, whose State of Florida application for restoration of civil or residency rights is pending. This temporary chauffeur registration process shall not be available to nor shall such chauffeur's registration be issued to any person who:

(1)     Has pled nolo contendere, pled guilty, been found guilty or been convicted (regardless of whether adjudication has been withheld) of:

a.     Any criminal offense involving moral turpitude relating to sex crimes, the use of a deadly weapon, homicide, trafficking in narcotics, or a violent offense against a law enforcement officer under Section 775.0823 Florida Statutes, or is a habitual felony offender or a habitual violent felony offender under Section 775.084 Florida Statutes; or

b.     Any crime wherein a for-hire vehicle was employed; or

c.     The crime of assault or battery on any county code enforcement personnel.

(2)     Upon approval of a pending application for restoration of civil or residency rights, the temporary chauffeur shall have the privilege of applying for a chauffeur's registration. Upon denial of a pending application for restoration of civil or residency rights, the temporary chauffeur

Substitute to
Agenda Item No. 1(G)1
Page 9

registration shall be automatically revoked. If, at the expiration of the temporary chauffeur's registration, the applicant can prove that his same application for restoration of civil or residency rights is still legitimately pending, the [[CSD]]>>RER<< director may further extend the temporary chauffeur's registration, upon application and non-refundable fee payment.

(g)     Each chauffeur's registration (other than a temporary chauffeur's registration) shall expire on the chauffeur's birthday during the appropriate calendar year following issuance. Duplicate chauffeur's registrations may be issued in the same manner as required by Section 31-303. The request must be sworn to and must state that the original has been lost or stolen.

(h)     Chauffeurs shall have a grace period of up to thirty (30) days after expiration in which to renew same and maintain the continuity of the registration, provided, however, the chauffeur within such thirty-day period shall not drive a for-hire vehicle without a valid chauffeur registration and shall also pay a non-refundable penalty surcharge over and above the chauffeur's registration fee.

(i)     Chauffeurs must abide by all rules and regulations applicable to chauffeurs and shall be subject to enforcement, violations and penalties contained in this chapter and Chapter 8CC of this Code. A chauffeur shall comply with the following regulations:

        (1)     At all times when operating a for-hire motor vehicle, a chauffeur shall display in such a vehicle a valid chauffeur's registration issued by the [[CSD]]>>RER<< for the class of transportation operated.

        (2)     No chauffeur shall solicit, as defined by this article, passengers or drive his or her vehicle back and forth in front of any place of public assemblage.

*12*

Substitute to
Agenda Item No. 1(G)1
Page 10

(3)   No chauffeur shall smoke while transporting passengers or sleep or permit others to sleep inside the motor vehicle while parked at a public or private stand or stop.

(4)   No chauffeur shall refuse or neglect to transport to any place in the county any orderly person regardless of race, sex, religion, national origin, age or physical disability, who is willing and able to pay the prescribed fare and no chauffeur shall accept any additional passengers without the consent of the passengers already within the vehicle unless the passenger is being transported under a shared ride or other special service rate.

(5)   Chauffeurs at all times shall maintain a neat appearance. Chauffeurs, other than private school bus chauffeurs, shall wear a collared shirt, dark trousers or skirt, and closed shoes.

(6)   Chauffeurs shall maintain accurate trip sheets for at least one (1) year showing at least the following information: name of chauffeur, vehicle number, date, origin and destination of each trip, number of passengers, and fare for each trip. The total miles, trips and units accumulated during a chauffeur's shift shall be recorded. All information must be recorded legibly. Upon request of [[CSD]]>>RER<<, chauffeurs shall produce, in person, trip sheets required to be maintained by this section within one (1) business day of such request.

(7)   No chauffeur shall collect fares or compensation for transportation services other than the established rates or charges for the type of service being provided, nor may any driver collect any additional payment for transporting any baggage which accompanies the passenger, provided, however, that this provision shall not apply to gratuities.

Substitute to
Agenda Item No. 1(G)1
Page 11

(8)     The passenger shall be offered a receipt for the fare collected.

(9)     Chauffeurs shall not operate any for-hire vehicle with any lighting devices that are not functioning properly. Likewise, no vehicle shall be driven unless the chauffeur shall have satisfied himself or herself that the brakes, steering mechanism, tires, horn, windshield wipers, and side and rearview mirrors are in good working order.

(10)    A chauffeur shall not use abusive language or be discourteous to passengers or enforcement personnel or solicit gratuities.

(11)    No chauffeur shall operate a motor vehicle while his or her ability or alertness is so impaired or so likely to become impaired, through fatigue, illness or any other cause, as to make it unsafe for him or her to begin or continue to operate the motor vehicle. However, in a case of grave emergency where the hazard to occupants of the vehicle or other users of the highway could be increased by compliance with this section, the driver may continue to operate the motor vehicle to the nearest place at which that hazard is removed.

(12)    All chauffeurs shall notify the [[CSD]]>>RER<< upon each modification of his or her agreement with an operator or for-hire company. All chauffeurs shall notify the [[CSD]]>>RER<< of each change of address within ten (10) days of relocation.

(13)    Chauffeurs shall select routes to trip destinations that are most economical to the passenger unless otherwise directed by or agreed to by the passenger.

(14)    No chauffeur shall attempt to solicit or attempt to divert the patronage of any passenger, prospective passenger, or other person on behalf of any hotel,

Substitute to
Agenda Item No. 1(G)1
Page 12

motel, apartment, restaurant, nightclub, bar or any other business establishment, or accept or receive from any business establishment any payment for such solicitation or diversion of passengers from or to any place of business.

(15)   It shall be unlawful for any chauffeur to refuse to stop his or her vehicle for inspection by [[CSD]]>>RER<< authorized personnel or any police officer when such personnel witness a violation of the Code of Miami-Dade County pertaining to such vehicle or when the officer witnesses a violation of the requirements of law or the Code of Miami-Dade County pertaining to such vehicle; or to refuse to permit [[CSD]]>>RER<< authorized personnel or any police officer to conduct inspection of the vehicle.

(16)   Each chauffeur shall prominently display an off-duty sign when not waiting employment or actually transporting paying passengers.

(17)   Each chauffeur shall use the air conditioner unless otherwise requested by the passenger, where the vehicle standards mandated by the Code require that a vehicle be equipped with an air conditioner.

(18)   No chauffeur shall display an altered chauffeur's registration when operating.

(19)   No chauffeur shall refuse to sign and accept a violation notice.

(20)   No chauffeur shall operate a vehicle without a currently valid operating permit and vehicle inspection displayed.

(21)   No chauffeur shall operate a vehicle with a tampered or altered operating permit decal or vehicle inspection sticker.

*15*

Substitute to
Agenda Item No. 1(G)1
Page 13

(22) All chauffeurs who are authorized by state law to carry a firearm and intend to carry said firearm on their bodies or in their vehicles shall notify the [[CSD]]>>RER<< in writing on a form provided by the [[CSD]]>>RER<<.

(23) No chauffeur shall refuse or neglect to transport to any place in the county any orderly person, including a service animal, who is willing and able to pay the prescribed fare and no chauffeur shall accept any additional passengers without the consent of the passengers already within the vehicle unless the passenger is being transported under a shared ride or other special service rate. As used in Chapter 31, the term "service animal" shall mean any guide dog, signal dog, or other animal, as defined in 28 C.F.R. § 36.104, individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items.

(j) The county [[manager]]>>mayor<<, within one hundred eighty (180) days from the date of passage of this ordinance, shall prepare and submit directly to the commission a proposed administrative order which provides for drug and alcohol testing where (i) reasonable suspicion exists that a chauffeur applicant or registered chauffeur is abusing alcohol or misusing prescription drugs or illegal substances, or (ii) a registered chauffeur has been involved in a serious accident or repetitive accidents as defined in said administrative order. Such administrative order may also provide for the conduct of periodic recurring testing of such chauffeurs. A chauffeur who is determined to have used or to have been impaired by alcohol while operating or driving a for-hire motor vehicle

Substitute to
Agenda Item No. 1(G)1
Page 14

shall have his or her registration revoked for two (2) years. A chauffeur who is determined to have used a controlled substance, except as permitted for medical purposes by law or regulation, shall have his or her registration revoked for two (2) years.

(k) Any chauffeur's registration shall be automatically revoked should the chauffeur plead nolo contendere, plead guilty, or be convicted of a felony or of any criminal offense involving moral turpitude or a crime involving the use of deadly weapons or trafficking in narcotics or should the State of Florida revoke or suspend the chauffeur's driver's or operator's license.

(l) Conviction of a crime. A chauffeur shall be required to notify the [[CSD]]>>RER<< in writing of a conviction of a crime within ten (10) business days of said occurrence. Failure to provide the required notice may result in the revocation or suspension of the chauffeur's registration.

   *    *    *

**Section 2.** Chapter 31, Article VII of the Code of Miami-Dade County, Florida, is hereby created as follows:

### CHAPTER 31.  VEHICLES FOR HIRE

   *    *    *

>>**Article VII.**  **LICENSING AND REGULATION OF TRANSPORTATION NETWORK ENTITY FOR-HIRE VEHICLES**

**Section 31-701.**  **Definitions.**

For purposes of this article, the following definitions shall apply:

(a) *Applicant* means an individual, partnership or corporation which applies for a transportation network entity license, permit, or chauffeur's registration pursuant to the provisions of this article. "Applicant" shall also mean an

*17*

Substitute to
Agenda Item No. 1(G)1
Page 15

individual, partnership or corporation which makes application, where applicable, to renew or transfer a certificate, permit or chauffeur's registration pursuant to the provisions of this article.  In the case of partnerships and corporations, "applicant" shall also mean each individual with a partnership interest, each shareholder of the corporation as well as the corporate officers and directors.

(b) *Chauffeur* means a duly licensed driver registered with and authorized by the Department of Regulatory and Economic Resources to operate a for-hire passenger motor vehicle.

(c) *Chauffeur registration* means a registration card issued by the Department of Regulatory and Economic Resources.

(d) *Commission* means the Board of County Commissioner of Miami-Dade County, Florida.

(e) *County* means Miami-Dade County, Florida.

(f) *County Mayor* means the head of county government as provided in Article 2 of the Home Rule Charter of Miami-Dade County, Florida.

(f) *Department* means the Department of Regulatory and Economic Resources (hereinafter "Department") or successor department.

(g) *Director* means the Department of Regulatory and Economic Resources Director or the Director's designee.

(h) *Operating permit* means the valid and current vehicle decal issued to the transportation network entity or for-hire chauffeur, when applicable, which authorizes a specific, registered vehicle to operate for-hire and which may expire, be suspended or revoked.

(i) *Transportation Network Entity License* means a license issued by RER to a transportation network entity authorizing the transportation network entity to allow transportation network entity chauffeurs to provide transportation network entity services within the incorporated and unincorporated areas of Miami-Dade County, Florida.

(j) *MDT* means the Miami-Dade Transit.



Substitute to
Agenda Item No. 1(G)1
Page 16

(k)   *Passenger* means a person utilizing a transportation network entity for-hire vehicle for the purpose of being transported to a destination, or a person who is awaiting the arrival of a transportation network entity vehicle, and does not include the transportation network entity chauffeur.

(l)   *Person* means any natural person(s), firm, partnership, association, corporation, or other business entity.

(m)   *Personnel authorized by the RER* means uniformed enforcement personnel and any other individual authorized by the director.

(n)   *Solicit* means an appeal by bell, horn, whistle, words or gestures by a chauffeur or his or her agent directed at individuals or groups.

(o)   *Street* means any public street, avenue, road, boulevard, alley, lane, highway, sidewalk, public park, viaduct or other public place accessible to the public, located in Miami-Dade County and used by motor vehicles.

(p)   *Street hail* means an immediate arrangement made on a street with a transportation network entity chauffeur by a person seeking immediate transportation.

(q)   *Taxicab stand* means the county-approved location on a public right-of-way for awaiting employment which is specifically marked with a taxicab stand sign. "Taxicab stand" also means a location for awaiting employment authorized and provided by the owner of private property.

(r)   *Transportation Network Entity* shall mean a natural person(s), firm, partnership, association, corporation, or other business entity that uses a digital platform to connect passengers to transportation network entity chauffeurs for the purpose of transportation.

(s)   *Transportation Network Entity For-hire Chauffeur* shall mean an individual who uses the individual's personal vehicle to provide transportation services through a transportation network entity.

*19*

Substitute to
Agenda Item No. 1(G)1
Page 17

(t)     *Transportation Network Entity Services* shall mean the provision of transportation services by a transportation network entity chauffeur through a transportation network entity.

(u)     *Transportation Network Entity For-hire Vehicle or Transportation Network Entity Vehicle* shall mean a vehicle which transports eight passengers or less, which is not a limousine or taxicab, that is used by a transportation network entity and chauffeur to provide transportation services.

(v)     *Trade name or doing business as or (d/b/a) name* means the county-approved name under which the transportation network entity license holder may provide a transportation network entity, and which name shall not duplicate the name of any other license holder or transportation network entity.

### Sec. 31-702.    Transportation Network Entity License.

(a)     Prohibition against unauthorized operations.   It shall be unlawful for any transportation network entity to begin operations, or allow affiliated transportation network entity chauffeurs to provide transportation network entity services, as defined in Section 31-701, upon the streets of Miami-Dade County, Florida, without first obtaining a transportation network entity license and maintaining it current and valid pursuant to the provisions of this article.

(b)     Out-of-County origin exception. Nothing in this article shall be construed to prohibit:

    (1)     Discharge within Miami-Dade County of any passenger lawfully picked up in another County and lawfully transported into Miami-Dade County.

    (2)     Pick up of a paratransit passenger by a provider of paratransit services that is duly licensed and legally authorized to provide paratransit services in a county adjacent to Miami-Dade County provided that such county has determined that the passenger is eligible for paratransit services and such passenger is picked up within the ADA-defined areas of Miami-Dade County.  A paratransit service provider shall not be required to obtain a Miami-

20

Dade County transportation network entity license for such purpose.

(c)     Application procedures.   Every initial applicant for a transportation network entity license shall be in writing, signed and sworn to by the applicant, and shall be filed with the RER together with an investigative and processing fee which shall be nonrefundable.   If the applicant is a corporation, the form shall be signed and sworn to by the president or vice president, and the corporate secretary shall attest such signature and affix the corporate seal.   If the applicant is a partnership, the form shall be signed and sworn to by a general partner.   The application shall be on a form provided by the RER and shall contain all information required thereon, including:

(1)     Sufficient information to identify the applicant, including but not limited to full legal name and trade name, date of birth, telephone number, business address and residence address, of the applicant.   If the applicant is a corporation, the foregoing information shall be provided for each officer, resident agent and director.   If the applicant is a partnership, the foregoing information shall be provided for each partner.   Post office box address will not be accepted hereunder.

(2)     All applicants shall have a place of business in Miami-Dade County, Florida. All corporate or partnership applicants shall be organized or qualified to do business under the laws of Florida and shall have a place of business in Miami-Dade County, Florida. Post office box addresses will not be accepted.

(3)     The class or classes of transportation service which the applicant desires to furnish.

(4)     The trade name under which the applicant intends to operate.

(5)     A record and proof of all present and prior transportation business activities of the applicant during the past five (5) years.

21

Substitute to
Agenda Item No. 1(G)1
Page 19

(6)     A record of all crimes to which the applicant has pled nolo contendere, pled guilty, or of which the applicant has been found guilty or been convicted, whether or not adjudication has been withheld within the five (5) years preceding the date of the application. The applicant shall have his or her fingerprints and photograph taken by the Miami-Dade Police Department. In the case of a corporate or partnership applicant, this information shall be obtained from all corporate officers and directors or partners, as the case may be.

(7)     Two (2) credit references including at least one (1) bank where applicant has an active account. In lieu of the second credit reference, the applicant may submit alternative written evidence of financial trustworthiness.

(8)     A sworn statement signed by the applicant that all information provided by the applicant is true and correct.

(9)     Any additional information as the Director shall require to enforce the provisions of this article

(d)     Investigation of Transportation Network Entity License Applicants. The director shall investigate each application and accompanying required documents and reject any application that is not properly filed or that is incomplete or untrue in whole or in part. The director may approve or deny the issuance of transportation network entity licenses as specified in this article on such terms and conditions as the public interest may require. The director's decision to reject or to deny may be appealed in accordance with this article. An applicant shall not be eligible for a transportation network entity license if he/she/it:

(1)     Has misrepresented or concealed a material fact on his, her or its application;

(2)     Is an alien who is not duly authorized to work by the immigration laws or the Attorney General of the United States;

Substitute to
Agenda Item No. 1(G)1
Page 20

(3)    Is a user of alcohol or drugs whose current use would constitute a direct threat to property or the safety of others;

(4)    Has pled nolo contendere, pled guilty, been found guilty or been convicted of a felony within the last five (5) years, regardless of whether adjudication has been withheld, unless his or her civil or residency rights have been restored;

(5)    Has pled nolo contendere, pled guilty, been found guilty or been convicted of any crime wherein a transportation network entity vehicle was employed whether or not adjudication has been withheld;

(6)    Has pled nolo contendere, pled guilty, been found guilty or been convicted of any felony, regardless of whether adjudication has been withheld, involving moral turpitude relating to sex, the use of a deadly weapon, homicide, violence against a law enforcement officer under Section 775.0823, Florida Statutes, or is a habitual violent felony offender under Section 775.084, Florida Statutes;

(7)    Has violated any condition, limitation, or restriction of a transportation network entity license imposed by the director or commission where the director deems the violation to be grounds for denial;

(8)    Was enjoined by a court of competent jurisdiction from engaging in the for-hire business or was enjoined by a court of competent jurisdiction with respect to any of the requirements of this chapter;

(9)    Has as a stockholder, officer, director, or partner of a corporation or partnership committed an act or omission which would be cause for denying a transportation network entity license to the officer, director, stockholder, or partner as an individual;

(10)   Failed to comply with the terms of a cease and desist order, notice to correct a violation or any other lawful order;

(11)   Does not have a place of business located in Miami-Dade County, Florida;

23

(12) Has any unsatisfied civil penalty or judgment pertaining to transportation network entity operation;

(13) Has had a transportation network entity license issued by Miami-Dade County revoked;

(14) Has within the last five (5) years pled nolo contendere, pled guilty, been found guilty or been convicted of any misdemeanor (regardless of whether adjudication is withheld) involving moral turpitude relating to sex; or

(15) Has within the last ten (10) years pled nolo contendere, pled guilty, been found guilty or been convicted (regardless of whether adjudication is withheld) of any offense involving trafficking in narcotics. After said ten-year period, such a person shall only be eligible if and when his or her civil or residency rights have been restored.

(e) Conditions for obtaining a Transportation Network Entity License. No transportation network entity license shall be issued unless the applicant:

(1) Has paid an annual license fee;

(2) Has<< >>certified that its transportation network entity chauffeurs have acquired the<<[[submitted proof of]][2] >>insurance required by this article;

(3) Has ensured that the transportation network entity vehicles to be operated under the applicant's transportation network entity license have passed all required vehicle inspections. Failure of the applicant to meet all of the foregoing requirements within forty-five (45) days after notification of conditional approval shall cause the license not to be issued. If the applicant believes he, she or it cannot meet the foregoing requirements within the forty-five-day period, the applicant may, prior to

---

[2] The differences between the substitute and the original item are indicated as follows: Words double stricken through and/or [[double bracketed]] are deleted, words double underlined and/or >>double arrowed<< are added.

Substitute to
Agenda Item No. 1(G)1
Page 22

expiration of such forty-five-day period, request in writing a reasonable extension from the director. If the request states good cause for an extension, the director may grant such a reasonable extension as the director finds is in the public interest.

(f)     Vehicles authorized to operate under a Transportation Network Entity License. There shall be no limit to the number of vehicles authorized to operate under a transportation network entity license.

(g)     Issuance of Transportation Network Entity License. Each transportation network entity license shall be on a form developed by RER and shall be signed by the director. Each transportation network entity license shall, at a minimum, contain the name and the business address of the license holder, date of issuance, its expiration date and such additional terms, conditions, provisions and limitations as were imposed during the approval process.

(h)     Expiration of and renewal process for Transportation Network Entity License. Transportation network entity licenses may be issued for such periods as specified in the Implementing Order establishing the fees.  Each renewal shall be submitted no less than thirty (30) days prior to expiration of the current initial or annual transportation network entity license together with payment of a license fee. As part of the renewal process, the original application shall be updated and verified by the applicant on forms supplied by RER. The director shall deny any renewal application that is not timely, is not properly filed, is incomplete, is untrue in whole or in part, or results in a determination by the director that the applicant has failed to satisfy the requirements of subsections 31-702 (c), (d) or (e). Appeal of the denial of a renewal application shall be in accordance with this chapter.

(i)     Grace period. License holders shall have a grace period of up to thirty (30) days after expiration of their license in which to renew same provided, however, that all operations shall cease on the date of license expiration and the license holder shall also pay a late fee over and above the annual license fee. All transportation network entity licenses which have not been renewed on or before thirty (30) days after their expiration shall automatically be deemed revoked.

25

(j)     Rules of operation. Transportation network entity license holders shall abide by all rules and regulations applicable to transportation network entity license holders and shall be subject to the enforcement provisions contained in this chapter and chapter 8CC of the Miami-Dade County Code. A transportation network entity license holder and her, his or its agents shall comply with the following regulations:

(1)     Comply with applicable federal law, Florida law, and ordinances, rules and regulations of the County applicable to the operation of transportation network entity vehicles;

(2)     Immediately report any change of address;

(3)     Maintain all electronic records pertaining to the transportation network entity services of a vehicle for one (1) year and make same available for inspection during the regular business hours of such entity. When requested by the RER, the entity shall electronically provide copies of the records;

(4)     Not allow any person to operate a transportation network entity vehicle who has not passed the requirements set out in this article;

(5)     Not allow or permit any person to operate a transportation network entity vehicle without current, valid and sufficient insurance coverage as required in this chapter;

(6)     Obtain an operating permit for each for-hire vehicle operated pursuant to authority of the for-hire license and pay all application and vehicle inspection fees;

(7)     Not permit or authorize any chauffeur or other person to operate any transportation network entity vehicle without that vehicle's current valid operating permit being displayed therein;

(8)     Not allow any person to operate a transportation network entity vehicle who is not a Miami-Dade County registered chauffeur in accordance with this article;

(9)     Ensure that all transportation network entity vehicles to be placed into service and all vehicles

26

taken out of service have been registered and inspected by RER;

(10)   Not permit or authorize anyone to drive any transportation network entity vehicle unless the brakes, steering mechanism, tires, horn, windshield wipers, side and rearview mirrors and all lighting devices are in good working order and the vehicle meets all other applicable vehicle standards as set forth in this chapter;

(11)   Not allow or permit any person to operate a transportation network entity vehicle while his or her ability or alertness is so impaired or so likely to become impaired through fatigue, illness, or any other cause, as to make it unsafe for the chauffeur to begin or continue to drive the for-hire vehicle;

(12)   Not refuse or neglect to transport to or from any place in the county, any orderly person requesting service;

(13)   Every deaf or hard of hearing person, totally or partially blind person, or physically disabled person shall have the right to be accompanied by a service animal specially trained for the purpose without being required to pay an extra charge for the service animal;

(14)   Every transportation network entity license holder shall ensure that any transportation network entity chauffeur operating an accessible vehicle is certified in the safe and proper methods of securing, transporting, and dealing with passengers utilizing a wheelchair.  Proof of certification shall be provided to the RER.

(15)   It shall be unlawful for any person to use, drive or operate an accessible vehicle without training in the safe and proper methods of securing, transporting, and dealing with passengers utilizing a wheelchair.

(k)   Responsibility for violations of chapter. The holder of a transportation network entity license shall be held responsible for any applicable violation of this article arising from the operation of the transportation network

Substitute to
Agenda Item No. 1(G)1
Page 25

entity vehicle authorized under the holder's transportation network entity license and shall be subject to the penalties provided in this chapter for any such violation. In addition, his, her or its license shall be subject to suspension or revocation for any such violation. Charges against or penalties imposed on a transportation network chauffeur for the same or related violations shall not relieve the transportation network company license holder of responsibility under this article.

(l)     The fee for a transportation network entity license shall be determined by an implementing order approved by a resolution adopted by the County Commission.

(m)     Transfers. No transportation network entity license may be sold, leased, assigned, mortgaged or otherwise transferred by a holder of a transportation network entity license.

(n)     Each transportation network entity operating pursuant to a transportation network entity license:

(1)     Shall, upon completion of a trip, transmit an electronic receipt to the passenger's e-mail address or mobile application documenting the date of the trip, the origination of the trip, the name of the transportation network entity chauffeur and a description of the total amount paid, if any.

(2)     Shall maintain a website that provides a customer service telephone number or e-mail address.

**Sec. 31-703.   Transportation Network Entity Chauffeurs.** <<

>>(a)<< >>It shall be unlawful for any person to drive a transportation network entity for-hire vehicle over any street in Miami-Dade County without first having obtained a chauffeur's registration from RER pursuant to Chapter 31, Article V of this Code.<<

>>(b) Initial applications for a transportation network entity chauffeur's registration shall be on forms provided by Regulatory and Economic Resources and shall be accompanied by a non-refundable payment of an application and processing fee. Application for renewal of chauffeur's registration shall be accompanied by a non-refundable payment of a renewal fee. Registration applications whether

28

initial or for a renewal shall contain all information required by this chapter.

(c)  Notwithstanding any provision to the contrary, each transportation network entity shall investigate each chauffeur applicant and report all findings, required by this section 31-703, on a form provided by RER and certified by the transportation network entity.

(d)  Notwithstanding any provision to the contrary, the RER may issue a chauffeur's registration for such periods as prescribed within the implementing order establishing the fees when both the transportation network entity and the chauffeur applicant submit the required certifications, on forms prepared by RER, stating that the initial or renewal applicant:

(1)  Holds a current, valid State of Florida driver's license of the class required for the type of for-hire vehicle to be operated;

(2)  Has taken a one (1) day course, which has been prepared and administered by the transportation network entity and approved by RER, which will ensure that the applicant is able to speak, read and write the English language sufficiently to perform the duties of a chauffeur;

(3)  Has passed an oral and written exam, which has been prepared and administered by the transportation network entity and approved by RER demonstrating his or her knowledge of the English language, Miami-Dade County geography, traffic regulations, defensive driving techniques and chauffeur responsibilities.

(4)  Has completed a physical examination within the most recent twelve-month period (including any drug test required by the RER Director) by a licensed physician or advanced registered nurse practitioner showing the applicant to be free from any physical or mental defect and to be of sound health;

(5)  Is eighteen (18) years of age or older;

Substitute to
Agenda Item No. 1(G)1
Page 27

(6)    Has certified under oath that he or she is not a user of alcohol or drugs whose current use would constitute a direct threat to property or the safety of others;

(7)    Has certified under oath that he or she is free from any physical or mental defect or disease that would constitute a direct threat to the property or safety of others or would impair his or her ability to drive a for-hire vehicle; and

(8)    Has attended a National Safety Council Defensive Driving Course or equivalent; provided, however, that renewal applicants shall only be required to take an additional defensive driving course approved by the RER if, in the most recent two-year period, said renewal applicant has been found guilty, or pled guilty or nolo contendere to two (2) or more moving violations.

All records pertaining to the training of applicants, including the training course and examinations must be made available for inspection and copying, for the purpose of verifying continued compliance with the above requirements, within one (1) business day of such request by the RER or any police agency during regular business hours.

(e)    No person shall be issued a chauffeur's registration who:

(1)    Fails the physical examination, the written examination or any drug test required by subsection (d)(4);

(2)    Is an individual who is not duly authorized to work under the immigration laws or the Attorney General of the United States;

(3)    Is a user of alcohol or drugs whose current use would constitute a direct threat to property or the safety of others;

Substitute to
Agenda Item No. 1(G)1
Page 28

(4)     Falsifies his or her application, is found cheating on any exam, or has altered any chauffeur registration such an applicant shall not be eligible to re-apply for one (1) year;

(5)     Has within the last five (5) years pled nolo contendere, pled guilty, been found guilty or been convicted of a felony, unless his or her civil or residency rights have been restored;

(6)     Has pled nolo contendere, pled guilty, been found guilty, or been convicted, regardless of whether adjudication has been withheld, of any criminal offense involving moral turpitude relating to sex crimes, the use of a deadly weapon, homicide, violent offense against a law enforcement officer under Section 775.0823, Florida Statutes, or is a habitual violent felony offender under Section 775.084, Florida Statutes;

(7)     Has been convicted of an offense involving moral turpitude not relating to sex crimes when, in the discretion of the Director, approval of such registration would constitute a threat to health, welfare or safety of the public or property and therefore would not be in the public's interest;

(8)     During the last five (5) years prior to application has had his or her driver's license suspended for or has pled nolo contendere, pled guilty or been found guilty or been convicted (regardless of whether adjudication has been withheld) of:

     (i)     Driving under the influence of drugs or intoxicating liquors (D.U.I.);

     (ii)    Three (3) or more traffic infractions resulting in accidents;

     (ii)    Fleeing the scene of any accident; or

     (iv)    Vehicular manslaughter or any death resulting from driving;

31

Substitute to
Agenda Item No. 1(G)1
Page 29

(9) During the last five (5) years prior to application has accumulated twenty-four (24) points provided, however, renewal applicants applying for renewal of a chauffeur's registration on or before five (5) years from the effective date of this ordinance shall not be issued a renewal registration, if he or she has accumulated twenty-four (24) points during the last three (3) years prior to such application; or

(10) A chauffeur registration shall be denied when a chauffeur has received in the most recent twelve (12) month period prior to application two (2) or more driver's license suspensions of any type on his or her State of Florida or other state record; or when the applicant has been determined by the State of Florida, or other State to be a habitual traffic offender in accordance with Section 322.264, Florida Statutes, as amended or other applicable State law.

(11) Has within the last ten (10) years pled nolo contendere, pled guilty, been found guilty or been convicted, regardless of whether adjudication has been withheld, of any offense involving trafficking in narcotics. After said ten-year period, such a person shall only be eligible if and when his or her civil or residency rights have been restored.

Notwithstanding any provision to the contrary, each transportation network entity shall conduct a background check and certify, on a form provided by RER, that the applicant has satisfied the requirements of this subsection (e).

(f) The director may issue a temporary chauffeur's registration valid for six (6) months only to any applicant, who otherwise qualifies, whose State of Florida application for restoration of civil or residency rights is pending. This temporary chauffeur registration process shall not be available to nor shall such chauffeur's registration be issued to any person who:

32

(1)     Has pled nolo contendere, pled guilty, been found guilty or been convicted (regardless of whether adjudication has been withheld) of:

       a.    Any criminal offense involving moral turpitude relating to sex crimes, the use of a deadly weapon, homicide, trafficking in narcotics, or a violent offense against a law enforcement officer under Section 775.0823 Florida Statutes, or is a habitual felony offender or a habitual violent felony offender under Section 775.084 Florida Statutes; or

       b.    Any crime wherein a for-hire vehicle was employed; or

       c.    The crime of assault or battery on any county code enforcement personnel.

Notwithstanding any provision to the contrary, where an applicant applies for a temporary chauffeur's registration, the transportation network entity shall conduct a background check and certify, on a form prepared by RER, that the applicant satisfies the requirements of this subsection (f).

(2)     Upon approval of a pending application for restoration of civil or residency rights, the temporary chauffeur shall have the privilege of applying for a chauffeur's registration. Upon denial of a pending application for restoration of civil or residency rights, the temporary chauffeur registration shall be automatically revoked. If, at the expiration of the temporary chauffeur's registration, the applicant can prove that his same application for restoration of civil or residency rights is still legitimately pending, the may further extend the temporary chauffeur's registration, upon application and non-refundable fee payment.

(g)     Each chauffeur's registration (other than a temporary chauffeur's registration) shall expire on the chauffeur's birthday during the appropriate calendar year following issuance. Duplicate chauffeur's registrations may be issued

33

Substitute to
Agenda Item No. 1(G)1
Page 31

in the same manner as required by Section 31-303. The request must be sworn to and must state that the original has been lost or stolen.

(h)   Chauffeurs shall have a grace period of up to thirty (30) days after expiration in which to renew same and maintain the continuity of the registration, provided, however, the chauffeur within such thirty-day period shall not drive a for-hire vehicle without a valid chauffeur registration and shall also pay a non-refundable penalty surcharge over and above the chauffeur's registration fee.

(i)   Transportation network entity chauffeurs must, except as provided in this subsection 31-703, abide by all rules and regulations applicable to chauffeurs and shall be subject to enforcement, violations and penalties contained in this chapter and Chapter 8CC of this Code. A transportation network entity chauffeur shall comply with the following regulations:

(1)   At all times when operating a for-hire motor vehicle, a chauffeur shall display in such a vehicle a valid chauffeur's registration issued by the RER for the class of transportation operated.

(2)   No chauffeur shall solicit, as defined by this article, passengers or drive his or her vehicle back and forth in front of any place of public assemblage.

(3)   No chauffeur shall smoke while transporting passengers or sleep or permit others to sleep inside the motor vehicle while parked at a public or private stand or stop.

(4)   No chauffeur shall refuse or neglect to transport to any place in the county any orderly person regardless of race, sex, religion, national origin, age or physical disability, who is willing and able to pay the fare and no chauffeur shall accept any additional passengers without the consent of the passengers

34

already within the vehicle unless the passenger is being transported under a shared ride or other special service rate.

(5) Chauffeurs at all times shall maintain a neat appearance. Chauffeurs, other than private school bus chauffeurs, shall wear a collared shirt, dark trousers or skirt, and closed shoes.

(6) Chauffeurs shall maintain accurate trip records for at least one (1) year showing at least the following information: name of chauffeur, vehicle number, date, origin and destination of each trip, number of passengers, and fare for each trip. The total miles, trips and units accumulated during a chauffeur's shift shall be recorded. All information must be recorded legibly. Upon request of RER, chauffeurs shall produce, in person, records required to be maintained by this section within one (1) business day of such request.

(7) No chauffeur shall collect fares or compensation for transportation services other than the rates or charges for the type of service being provided, nor may any driver collect any additional payment for transporting any baggage which accompanies the passenger, provided, however, that this provision shall not apply to gratuities.

(8) The passenger shall be provided an electronic or paper receipt for the fare collected.

(9) Chauffeurs shall not operate any for-hire vehicle with any lighting devices that are not functioning properly. Likewise, no vehicle shall be driven unless the chauffeur shall have satisfied himself or herself that the brakes, steering mechanism, tires, horn, windshield wipers, and side and rearview mirrors are in good working order.

Substitute to
Agenda Item No. 1(G)1
Page 33

(10)   A chauffeur shall not use abusive language or be discourteous to passengers or enforcement personnel or solicit gratuities.

(11)   No chauffeur shall operate a motor vehicle while his or her ability or alertness is so impaired or so likely to become impaired, through fatigue, illness or any other cause, as to make it unsafe for him or her to begin or continue to operate the motor vehicle. However, in a case of grave emergency where the hazard to occupants of the vehicle or other users of the highway could be increased by compliance with this section, the driver may continue to operate the motor vehicle to the nearest place at which that hazard is removed.

(12)   All chauffeurs shall notify the RER of each change of address within ten (10) days of relocation.

(13)   Chauffeurs shall select routes to trip destinations that are most economical to the passenger unless otherwise directed by or agreed to by the passenger.

(14)   No chauffeur shall attempt to solicit or attempt to divert the patronage of any passenger, prospective passenger, or other person on behalf of any hotel, motel, apartment, restaurant, nightclub, bar or any other business establishment, or accept or receive from any business establishment any payment for such solicitation or diversion of passengers from or to any place of business.

(15)   It shall be unlawful for any chauffeur to refuse to stop his or her vehicle for inspection by RER authorized personnel or any police officer when such personnel witness a violation of the Code pertaining to such vehicle or when the officer witnesses a violation of the requirements of law or the Code pertaining to such vehicle; or to refuse to

36

Substitute to
Agenda Item No. 1(G)1
Page 34

permit RER authorized personnel or any police officer to conduct an inspection of the vehicle.

(16)  Each chauffeur shall use the air conditioner unless otherwise requested by the passenger, where the vehicle standards mandated by the Code require that a vehicle be equipped with an air conditioner.

(17)  No chauffeur shall display an altered chauffeur's registration when operating.

(18)  No chauffeur shall refuse to sign and accept a violation notice.

(19)  No chauffeur shall operate a vehicle without a currently valid operating permit and vehicle inspection displayed.

(20)  No chauffeur shall operate a vehicle with a tampered or altered operating permit decal or vehicle inspection sticker.

(21)  No chauffeur shall refuse or neglect to transport to any place in the county any orderly person, including a service animal, who is willing and able to pay the prescribed fare and no chauffeur shall accept any additional passengers without the consent of the passengers already within the vehicle unless the passenger is being transported under a shared ride or other special service rate. As used in Chapter 31, the term "service animal" shall mean any guide dog, signal dog, or other animal, as defined in 28 C.F.R. § 36.104, individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items.

37

Substitute to
Agenda Item No. 1(G)1
Page 35

(j)     Any chauffeur's registration shall be automatically revoked should the chauffeur plead nolo contendere, plead guilty, or be convicted of a felony or of any criminal offense involving moral turpitude or a crime involving the use of deadly weapons or trafficking in narcotics or should the State of Florida revoke or suspend the chauffeur's driver's or operator's license.

(k)     Conviction of a crime. A chauffeur shall be required to notify the transportation network entity and RER in writing of a conviction of a crime within ten (10) business days of said occurrence. Failure to provide the required notice may result in the revocation or suspension of the chauffeur's registration.<<

>>**Sec. 31-704. Duties of Regulatory and Economic Resources Department.**

(a)     In addition to the duties and responsibilities specified in this article, the RER shall be charged with the following duties and responsibilities:

(1)     Process, investigate and prepare all reports required by this article.

(2)     Investigate and prepare reports on alleged violations of this article.

(3)     Enforce the provisions of this article.

(4)     Attempt to resolve complaints received from any source concerning the industry.

(5)     Issue, deny, suspend and revoke all transportation network entity licenses pursuant to the provisions of this chapter, and maintain appropriate files regarding same.

(6)     Develop and implement, in cooperation with the industry, service expansion and improvements.

(7)     Provide technical assistance to the industry.

38

Substitute to
Agenda Item No. 1(G)1
Page 36

(8)     Develop a standardized reporting technique for transportation network entities.

(9)     Provide a system to handle complaints of municipal officials relating to transportation network entity service within such municipalities and expedite the solution of same.

(10)    Perform any other functions assigned by the County Mayor.

(11)    Coordinate cooperative enforcement activities with municipalities, including implementing procedures for the disposition of fine revenues collected.

(12)    Prepare and implement changes, amendments or modifications to implementing orders establishing fees pursuant to this article and provide the industry with at least ten (10) days notice prior to consideration of such changes, amendments or modifications by the Board.

(13)    Upon court order have closed and sealed unlicensed service provider establishments in accordance with this article.

(14)    The Director may propose and the County Mayor may promulgate further rules and regulations to carry out the provisions of this article, which rules and regulations, when approved by the Board , shall have the force and effect of the law.

(15)    The Board may by implementing order proposed by the County Mayor approve fees for transportation network entity vehicles providing transportation of persons and their baggage to and from Miami International Airport and from the Port of Miami.

(16)    With the exception of fees established pursuant to Section 31-704(15), all fees charged or required to be paid shall be established by implementing order and approved by the Board. Such fees shall be deposited in a separate Miami-Dade County fund and shall be used exclusively to accomplish the regulatory purposes of this article.<<

**Sec. 31-705.    Rules for operation.**

*39*

Substitute to
Agenda Item No. 1(G)1
Page 37

(a)     Each transportation network entity shall adopt and require all transportation network entity chauffeurs to display consistent trade markings (i.e., distinctive signage or display on the vehicle) when providing transportation network entity services that are sufficiently large and color contrasted as to be readable during daylight hours at a distance of at least 50 feet.

(b)     No transportation network entity vehicle or chauffeur shall utilize a designated taxicab stand.

(c)     A transportation network entity license holder shall not allow a chauffeur to solicit or pick up passengers other than by prearrangement through the transportation network entity.

(d)     A transportation network entity license holder shall not allow a chauffeur to accept street hails. Chauffeurs shall not accept street hails.

(e)     Transportation network entity vehicles shall not display the word(s) taxicab, taxi or cab on the exterior or interior of the vehicle.

(f)     Every transportation network entity shall fully comply with all ordinances, rules and regulations of the County applicable to the operation of transportation network entity vehicles.

(g)     The computer application used by a transportation network entity to connect transportation network entity chauffeurs and passengers must display the name of the transportation network entity chauffeur, and a picture of the transportation network entity vehicle, including the license plate number to identify the vehicle.

(h)     All transportation network entities shall implement a zero tolerance policy on the use of drugs or alcohol while a transportation network entity chauffeur provides transportation network entity services, provide notice of the zero tolerance policy on its website, as well as the procedures to report a complaint, including a complaint telephone number, about a transportation network entity chauffeur with whom the rider was matched and for whom the rider reasonably suspects was under the influence of drugs or alcohol during the course of the ride.

*40*

(i)     Each transportation network entity shall establish a driver-training program to ensure that each driver safely operates his or her transportation network entity vehicle prior to the driver being able to offer service.

(j)     Each transportation network entity shall maintain accurate records of all revenues, all associated expenses, capital expenditures, and other financial and operating information as may be required by the RER. The RER shall be granted access to these records for the purpose of inspection and copying same upon five (5) days' prior notice. Each Transportation Network Company shall annually furnish financial and operating information to the RER on forms and in the manner prescribed by the RER.

**Sec. 31-706.    Fares and rates.**

Transportation network entities may charge fares or rates for transportation services based on distance travelled and/or time elapsed during service, or a flat prearranged fare, or a suggested donation. <<

**Sec. 31-707.    Insurance requirements.**

(a)     >>Each transportation network entity vehicle owner or lessee shall provide RER with a certificate of insurance in compliance with state law.  No transportation network entity vehicle shall be permitted to operate without providing the required certificate of insurance in compliance with state law.<< [[No transportation network entity vehicle shall be permitted to operate without the transportation network entity or chauffeur providing passenger services having first obtained and filed with the RER a certificate of insurance for each for-hire motor vehicle showing the federal vehicle identification number, a vehicle description and the transportation network entity license number, and shall list each chauffeur that operates the vehicle, and the owner of the vehicle as insureds under a commercial automobile liability insurance policy, with limits of no less than one hundred thousand dollars ($100,000) per person, and three hundred thousand dollars ($300,000) per occurrence for bodily injury, and fifty thousand dollars ($50,000) per occurrence for property damage arising out of or caused by the operation of a transportation network entity vehicle (including owned, hired, leased and non-owned vehicles).  Additionally, the

certificate of insurance and each policy shall specify that each policy provides complete 24-hour vehicle coverage for all operations for all drivers who have a Miami-Dade County chauffeur's registration, regardless of where operated or whether engaged in for-hire operations, and shall state the limits of automobile liability and property damage coverage.]] >>Failure to provide current certificates of insurance or to maintain appropriate insurance coverage shall be grounds for revocation of a transportation network entity license<< >>and/or chauffeur's registration<<.

(b)    [[Insurance policies required in this section shall be issued by companies authorized to do business under the laws of the State of Florida, with the following qualifications: the company must be rated no less than "A" as to management, and no less than "Class VII" as to financial strength by A.M. Best Company, Oldwick, New Jersey, or its equivalent subject to the approval of the County Risk Management Division.]] >>Nothing in the insurance policy or declaration shall permit binders, deductibles, self-insurance or any provision requiring the insured to reimburse the insurance company for claims.

(c)    Each automobile liability insurance policy shall be endorsed to provide for thirty (30) days' notice by registered mail to the RER of any material change, cancellation, or expiration. No policy will be accepted for a shorter period than six (6) months.

(d)    Unless a transportation network entity or chauffeur furnishes the RER with satisfactory evidence of the required insurance coverage prior to the expiration of the thirty (30) days' notice specified in subsection (c) of this section, or upon a third notice of cancellation within twelve (12) months, the transportation network entity license shall be suspended forthwith by the Director and surrendered to the RER pending a hearing to determine whether said for-hire license should be revoked. This automatic suspension requirement will not pertain to a for-hire motor vehicle when its insurer withdraws from Florida and cancels its

42

Substitute to
Agenda Item No. 1(G)1
Page 40

policies, or when the policy is canceled through no fault of the operator.

(e)     Examination of Insurance Policy. The RER reserves the right to require submission of a certified copy of or to examine the original policies of insurance including, but not limited to, endorsements, amendments, exclusions, riders, any additional contracts between the insured and the insurer and applications to confirm the existence of the required insured coverage.

**Sec. 31-708.   Vehicle Standards.**

In addition to the applicable Federal Motor Vehicle Safety requirements in 49 Code of Federal Regulations, part 571 and Florida Statutes, the following vehicle standards apply to all transportation network entity vehicles operated under the provisions of this article. It is the transportation network entity's and chauffeur's responsibility to insure that each vehicle meets the following standards and minimum<<   [[inspection]] >>requirements:

(1)     Brakes within allowable parameters as provided by test equipment readings for stopping effectiveness. There shall be no leaks in lines, hoses, fittings, or parts; hoses shall not be cracked or frayed; there shall be no audible air leaks in air brake system.

(2)     License, permit or inspection decals, as applicable, shall be correctly displayed and be clearly visible from the outside of the vehicle;

        (a)     Chauffeur registration, operating permit number, and any additional information as may be required shall be displayed within the vehicle in accordance with the instructions of the RER.

        (b)     Vehicle signage and markings shall be as required by this article.

43

Substitute to
Agenda Item No. 1(G)1
Page 41

(3)    Inside rear-view mirror and a mirror on each side of vehicle.

(4)    A functioning speedometer and odometer indicating speed in miles per hour and a functioning odometer indicating distance in miles.

(5)    Functioning windows, door handles and latches. The primary and secondary hood/trunk/rear access door latches shall be fully operable.

(6)    A functioning interior light within the passenger compartment. If the light becomes defective, the operator must correct the defect on the very next day or remove the vehicle from service at that time.

(7)    An operating air-conditioning system that provides cooled and heated air. If the air-conditioning system becomes inoperable, the vehicle must be removed from service until such system is repaired. Maximum output temperature will be based on a sliding scale chart which takes outside air temperature and relative humidity into account. Output temperature will be taken at center duct with controls set for maximum cooling.

(8)    The vehicle exterior must be free of grime, oil or other substances and free from cracks, breaks, dents and damaged paint that detracts from the overall appearance of the vehicle and that could harm, injure, soil or impair the passenger or his personal belongings.

(9)    Equipped with hubcaps or wheelcovers, on all four (4) wheels. If not on vehicle, the operator must put them on vehicle the next day.

(10)   Bumpers/moldings/guards shall be installed/ replaced as originally manufactured except for moldings on side panel doors.

44

Substitute to
Agenda Item No. 1(G)1
Page 42

(11)    The interior of the trunk, or rear portion of for-hire vehicles, shall be free from dirt, grime, oil, trash, or other material which could soil items placed therein and free of protruding metal or other objects that could damage items placed therein.

(12)    The passenger compartment must be clean, free from torn upholstery or floor coverings, damaged or broken seats, and protruding sharp edges. All equipment in the interior of the vehicle shall be safely and adequately secured. There shall be no holes opening to the passenger compartment from the underbody.

(13)    A horn which shall be audible from a reasonable distance.

(14)    The driver's vision must be unobstructed on all four (4) sides.

(15)    Safe tires no recaps shall be used. Maximum allowable treadwear shall be where tread is level with wear bar, or 2/32" when measured at three random places in tire tread. The tires shall be inflated to manufacturer's specifications and free of cuts, cracks, bulges or exposed belts.

(16)    Front-end and rear-end alignment shall be within allowable parameters as provided by test equipment readings for alignment.

(17)    Wiper blades must be able to clean glass when wet and the rubber element shall not be torn, ripped, or loose.

(18)    All lights shall be operable including 4-way flasher, turn and signal, clearance, warning, marker, brakes, taillight, license plate, backup and parking light. All lights must be of correct color and properly positioned as required by Florida Statutes and regulations. All dome lights must be operable with lens in place.

(19)    Reflectors and lenses shall not be cracked or missing and must be of correct color and properly positioned.

45

Substitute to
Agenda Item No. 1(G)1
Page 43

(20)   Headlights, low and high beam, shall be operable, and within test equipment allowable readings.

(21)   Glass shall not be broken or cracked and chips must be capable of being ground out, leaving a smooth, clear finish.

(22)   Doors shall be operable with all weather stripping and rubber seals.

(23)   Vehicle steering and suspension shall be functional.

(24)   Seatbelts for all persons transported shall be in place and functional, unless otherwise exempted by regulation.

(25)   Accessible vehicles shall have posted the international symbol of accessibility for disabled persons in the manner prescribed by RER and shall be equipped with the following:

Ramp or lift facility which is operated electrically, hydraulically or manually with sufficient capacity to safely and smoothly lift passengers into and out of the vehicle and is in compliance with the lift and ramp requirements of the Americans with Disabilities Act.

For each wheelchair passenger transported, four (4) points of securement of latching or locking to the vehicle and the wheelchair in which the passenger will ride. The latching or locking devices shall be designed to minimize any lateral, longitudinal, or vertical motion of the passenger conveyance within the vehicle.

For each wheelchair passenger being transported, there shall be sufficient restraining belts or straps designed to securely confine the passenger to the wheelchair in which he or she is transported. The restraining belts or straps shall be utilized.

46

(26)    Vehicles, other than taxicabs, used to transport passengers shall not display the word(s) "taxicab," "taxi" or "cab" on the vehicle exterior or interior and shall not be equipped with a taximeter.

(27)    Advertisement on behalf of third parties may be displayed on the outside or inside of a for-hire vehicle provided approval is given by the RER and any display is installed pursuant to instructions of the RER.<<

>>(28) Each transportation network entity shall utilize a passenger rating system which shall allow each passenger to rate the transportation experience and the driver. RER shall have access to each transportation network entity's rating system and may reject any passenger rating system which does not allow for adequate review of the driver.<<

>>Vehicle age limits<< >>, permits<< >>and inspection<< >>s<< [[schedules]].  >>Transportation network entity vehicle age limits<< [[and frequency of inspections]] are as follows [[provided, however, that the RER may inspect a for-hire vehicle at any time.  Any vehicle initially placed into service shall be no greater than five (5) model years of age]].  >>Any vehicle over<< [[five (5)]]>>eight (8)<< >>model years of age shall not be operated as a transportation network entity vehicle. << >>It shall be unlawful for any person to drive a transportation network entity for-hire vehicle over any street in Miami-Dade County without first having obtained a vehicle permit from RER. In order to be issued an operating permit, the owner or lessee of a transportation network entity vehicle shall submit to RER a certification, on a form created by RER, completed by a mechanic who has a current and valid motor vehicle repair license issued pursuant to Chapter 8A Article VIIA of the Code stating that the vehicle satisfies all of the vehicular standards mandated by this section 31-708.<< >>Transportation network entity vehicles shall display an operating permit issued by RER << >>.<<[[and shall minimally meet the following inspection schedule:]]

>>Certifications shall be submitted as follows:<<

47

[[(1)]] >>Transportation network entity vehicles 1 through<< [[2]]>>8<< >>model years of age shall<< [[be inspected]] >>submit their certifications<< annually>>.<<[[;

(2)    Transportation network entity vehicles 3 through 5 model years of age shall be inspected semi-annually;]]

>>Notwithstanding the foregoing, the RER may inspect a transportation network entity vehicle at any time.    Any transportation network entity vehicle which fails inspection by RER shall be removed from service until the owner or lessee submits to RER a certification, on a form created by RER, completed by a mechanic who has a current and valid motor vehicle repair license issued pursuant to Chapter 8A Article VIIA of the Code, that the deficiency has been rectified.<<

>>**Sec. 31-709.  Enforcement of article.**

(a)    This article shall be enforced by authorized personnel of the RER, the police forces of the various municipalities in Miami-Dade County and by the Miami-Dade Police Department. When specifically authorized by the Director, this article may be enforced by personnel of the Seaport and Aviation Department against violations occurring within their respective boundaries. The RER shall prepare and distribute to all authorized enforcement personnel an enforcement manual outlining procedures for the detection, reporting and issuance of citations or deficiency reports for violations of this article.

(b)    The RER may employ a deficiency or warning system through which transportation network entities are given written notice of minor violations and a specified period of time to correct same. Unless otherwise provided, all other violations shall be processed under Chapter 8CC of the Code.

(c)    Deficiency reports and citations shall be issued to the party responsible for the violation as set forth in this article. Any person issued a deficiency report or a citation shall sign and accept it.

(d)    Whenever a corporation, partnership, or association violates any of the provisions of this article, such violation

48

Substitute to
Agenda Item No. 1(G)1
Page 46

shall be deemed also to be that of the individual officers, directors, partners, or agents of such corporation who have personally authorized, personally ordered, or personally done any of the actions constituting in whole or in part such violation, and any such officer, director, partner, or agent may be fined in the same manner and to the same extent as herein provided for an individual.

(e)    Notwithstanding the provisions of this section, the Director may secure enforcement of the provisions of this article by any legal action necessary, such as application to any court for injunctive relief or other appropriate relief.

### Sec. 31-710.    Suspension and revocation proceedings.

(a)    Grounds for suspension or revocation. In addition to the grounds for automatic suspension or revocation provided elsewhere in this chapter, transportation network entity licenses shall be subject to suspension or revocation by the director as follows:

(1)    Upon the director's determination that:

(i)    The license holder has pled nolo contendere, pled guilty, been found guilty or been convicted (regardless of whether adjudication has been withheld) of any criminal offense which would preclude the issuance of the license, registration or permit as provided in this chapter;

(ii)    The license was obtained by an application in which any material fact was omitted or falsely stated;

(iii)    The license holder has failed to comply with or has violated any of the provisions of this chapter; or

(iv)    The public interest will best be served by revocation or suspension of the license, registration or permit provided, however, that good cause be shown;

(v)    The transportation network entity license renewal application does not comply with the requirements of this chapter;

49

(vi) Any transportation network entity vehicle has been operated in violation of this chapter.

(b) Notice of suspension or revocation action. Except where this chapter provides for automatic suspension or revocation, the RER shall provide notice of suspension or revocation to the violator by certified mail ten (10) days before the violator must comply with the director's decision.

(c) Appeals from decisions of director and administrative hearings.

(1) Right to appeal. Any transportation network entity license holder shall have the right to appeal application denials, suspensions and revocations by the Director. The named party shall elect to either:

(a) Comply with the Director's decision in the manner indicated on the Notice of Director's Decision; or

(b) Request an administrative hearing before a hearing officer to appeal the decision of the Director.

(2) Filing the appeal. Appeal by administrative hearing shall be accomplished by filing within ten (10) days after the date of the decision complained of a written notice of appeal to the Clerk of the Courts, Code Enforcement Section. The notice of appeal shall set forth concisely the nature of the decision appealed and the reasons or grounds for appeal.

(3) Failure to appeal. Failure to appeal the decision of the Director within the prescribed time period shall constitute a waiver of the person's right to an administrative hearing before the hearing officer. Where the Director's decision involves a suspension or revocation, a waiver of the right to an administrative hearing shall be treated as an admission of the violation and the Director's decision shall be deemed final and enforceable. No further remedies shall be granted and the decision shall stand.

50

Substitute to
Agenda Item No. 1(G)1
Page 48

(4)   Hearing officers. Hearing Officers shall be appointed by the Clerk of the Courts, Code Enforcement Section.

(5)   Scheduling and conduct of hearing.

(a)   Upon receipt of a timely request for an administrative hearing, the hearing officer shall set the matter down for hearing on the next regularly scheduled hearing date or as soon as possible thereafter or as mandated in the specified section of the Code.

(b)   The hearing officer shall send a notice of hearing by first class mail to the named party at his, her or its last known address. The notice of hearing shall include but not be limited to the following: place, date and time of the hearing; right of the named party to be represented by a lawyer; right of the named party to present witnesses and evidence; in the case of a director's decision involving suspension or revocation, notice that failure of the named party to attend the hearing shall be deemed a waiver of the right to hearing and an admission of the acts specified in the notice; and notice that requests for continuances will not be considered if not received by the hearing officer at least ten (10) calendar days prior to the date set for hearing.

(c)   The hearing officers shall call hearings on a monthly basis or upon the request of the RER. No hearing shall be set sooner than fifteen (15) calendar days from the date of notice of the director's decision, unless otherwise prescribed by this chapter.

(d)   A hearing date shall not be postponed or continued unless a request for continuance, showing good cause for such continuance, is received in writing by the hearing officer at least ten (10) calendar days prior to the date set for the hearing. No additional

Substitute to
Agenda Item No. 1(G)1
Page 49

continuances shall be granted without concurrence of the RER.

(e)     All hearings conducted by a hearing officer shall be open to the public. All testimony shall be under oath. If the named party has been properly notified, a hearing may proceed in the absence of the named party and the failure to attend a hearing shall be deemed a waiver of the right to a hearing and an admission of the acts specified in the notice.

(f)     The proceedings at the hearing shall be recorded and may be transcribed at the expense of the party requesting the transcript.

(g)     The Clerk of the Board of County Commissioners shall provide clerical and administrative personnel as may be reasonably required by each hearing officer for the proper performance of his or her duties.

(h)     Each case before a hearing officer shall be presented by the director or his or her designee.

(i)     The hearing need not be conducted in accordance with the formal rules relating to evidence and witnesses.

(j)     Each party shall have the right: to call and examine witnesses; to introduce exhibits; to cross-examine opposing witnesses on any relevant matter; to impeach any witness regardless of which party first called him or her to testify; and to rebut the evidence against him or her. All relevant evidence shall be admitted.

(k)     The hearing officer shall make findings of fact based on the evidence of record. In order to make a finding upholding the director's decision the hearing officer must

52

Substitute to
Agenda Item No. 1(G)1
Page 50

find that a preponderance of the evidence supports the director's decision and, where applicable, indicate that the named party was responsible for the violation of the relevant section of the Code as charged.

(l)    If the director's decision is affirmed the named party may be held liable for the reasonable costs of the administrative hearing.

(m)    The fact-finding determination of the hearing officer shall be limited to whether the alleged violation occurred or whether competent, substantial evidence supports the director's decisions. Based upon this fact-finding determination, the hearing officer shall either affirm or reverse the decision of the director. If the hearing officer affirms the decision of the director, the named party shall have fifteen (15) days from the date of the hearing officer's decision to comply with the decision of the director. If the hearing officer reverses the decision of the director and finds (1) the named party not responsible for the violation alleged; or (2) insufficient basis for the denial of application, a written decision shall be prepared setting forth the basis for such determination. If the hearing officer reverses the decision of the director, the named party shall not be required to comply with the decision of the director, absent reversal of the hearing officer's findings pursuant to this article. If the decision of the hearing officer is to affirm, then the following shall be included in the decision:

(a)    Decision of the Director.

(b)    Administrative costs of the hearing.

(c)    Date for compliance, if applicable.

(n)    The hearing officer shall have the power to:

53

Substitute to
Agenda Item No. 1(G)1
Page 51

    (a)    Adopt procedures for the conduct of hearings;

    (b)    Subpoena alleged violators and witnesses for hearings; subpoenas may be served by the Miami-Dade County Sheriff's Department or by the hearing officer's staff;

    (c)    Subpoena evidence; and

    (d)    Take testimony under oath.

(6)    Appeals.

    (a)    The named party or the county may appeal a final order of the hearing officer by filing a notice of appeal in the Circuit Court in and for Miami-Dade County, Florida, in accordance with the procedures and within the time provided by the Florida Rules of Appellate Procedure for the review of administrative action.

    (b)    Unless the findings of the hearing officer are overturned in a proceeding held pursuant to this article, all findings of the hearing officer shall be admissible in any further proceeding to compel compliance with the director's decision.

(7)    Nothing contained in this chapter shall prohibit Miami-Dade County from enforcing the Code by any other means authorized by law. The enforcement procedures outlined herein are cumulative to all others and shall not be deemed to be prerequisites to filing suit for the enforcement of any section of this Code. The words "action" and "decision" as used herein shall not include the filing of any action by the director in any court. The director may reconsider at any time any action or decision taken by the director and therefore may modify such an action or decision.

**Sec. 31-711.   Violations; penalties.**

54

Substitute to
Agenda Item No. 1(G)1
Page 52

(a)     In addition to any other penalties provided by law, including, but not limited to, those provided in this article, a violation of any applicable provision of this article by a transportation network entity license holder or a transportation network entity chauffeur shall constitute a civil offense punishable by the applicable civil penalty as provided in the schedule of civil penalties in Section 8CC-10 of this Code. Failure of a person to pay a civil penalty within sixty (60) days of the due date for paying such fine as specified on the civil violation notice or within sixty (60) days of the date of the final outcome of any timely filed appeal of such violation notice, whichever is later, shall result in automatic suspension of such person's transportation network entity license. If a person commits five (5) violations of the same section of this chapter during any twelve-month period, the transportation network entity chauffeur shall be automatically suspended.  If a person commits five (5) violations of this chapter during any twelve-month period, such transportation network entity chauffeur may be suspended for a period of up to six (6) months or revoked.

(b)      Except for civil violations, the hearings specified in subsection (c) hereof shall be within the jurisdiction of the County Court and the Clerk of the Court is hereby empowered to dispose of the case and fines assessed through the normal procedure.

### Sec. 31-712.   Special provisions.

(a)     The provisions of this article shall be the exclusive regulations applicable to the provision of and operation of transportation network entity services in Miami-Dade County. Notwithstanding the provisions of any municipal ordinance, resolution or agreement to the contrary, from and after the effective date of this article no municipality shall authorize, establish, change, alter, amend, or otherwise regulate transportation network entity transportation in Miami-Dade County. Regulations established by this article shall be uniform throughout Miami-Dade County both in the incorporated and unincorporated areas without regard to municipal boundaries. All municipal ordinances or resolutions to the contrary are hereby superseded and rescinded.

55

Substitute to
Agenda Item No. 1(G)1
Page 53

(b)    Any transportation network entity chauffeurs driving on a
transportation network entity platform licensed pursuant to
this article shall be authorized to provide transportation of
persons and their baggage from Miami International
Airport and from the Port of Miami upon compliance with
reasonable and nondiscriminatory terms, conditions and
fees, as established by the County Mayor. The
transportation of persons and baggage from Miami
International Airport or from the Port of Miami shall
constitute an agreement by the transportation network
entity that it will conform to such terms, conditions, and
fees.<<

**Section 3.**     Section 8CC-10 of the Code of Miami-Dade County, Florida, is hereby

amended to read as follows:

**Sec. 8CC-10.**            **Schedule of civil penalties.**

\*                        \*                        \*

| **Code Section** | **Description of Violation** | **Civil Penalty** |
|---|---|---|
| >>31-702(a) | Unauthorized operation | $1000.00 |
| 31-702(j)(1) | Violation of applicable law | $250.00 |
| 31-702(j)(2) | Failure to report change of address | $100.00 |
| 31-702(j)(3) | Failure to maintain records at principal place of business of entity responsible for passenger services | $100.00 |
| 31-702(j)(4) | Allowing person to operate without a chauffeur registration | $500.00 |
| 31-702(j)(5) | Allowing or permitting any person to operate a for-hire vehicle without current, valid and sufficient insurance coverage | $500.00 |
| 31-702(j)(7) | Permitting or authorizing any chauffeur or other person to operate any for-hire vehicle | $500.00 |



Substitute to
Agenda Item No. 1(G)1
Page 54

without that vehicle's current
valid operating permit displayed

| | | |
|---|---|---|
| 31-702(j)(8) | Allowing person to operate without a chauffeur registration | $500.00 |
| 31-702(j)(9) | Failure to register and inspect all vehicles placed and taken out of service | $200.00 |
| 31-702(j)(10) | Permitting or authorizing operation of a vehicle which does not meet applicable vehicle standards | $100.00 |
| 31-702(j)(11) | Allowing any person to operate a for-hire vehicle whose alertness is impaired | $250.00 |
| 31-702(j)(12) | Refusal or neglect to transport, for first violation | $250.00 |
| 31-702(j)(12) | Subsequent violations | $500.00 |
| 31-702(j)(13) | Refusal to transport passenger and service animal, for first violation | $500.00 |
| 31-702(j)(13) | Refusal to transport passenger and service animal, subsequent violations | $1000.00 |
| 31-702(j)(14) | Operating accessible vehicle without certification | $250.00 |
| 31-702(j)(15) | Allowing chauffeur to operate accessible vehicle without certification | $250.00<< |
| >>31-703(a) | Failure to obtain a chauffeur's registration. Fine shall be reduced to $50.00 if the person issued the citation has held a valid Miami-Dade County chauffeur registration within the past six | $1,000.00 |

57

Substitute to
Agenda Item No. 1(G)1
Page 55

months

| | | |
|---|---|---|
| 31-703(i)(1) | Failure to display a valid chauffeur's registration | $50.00 |
| 31-703(i)(2) | Violation of solicitation prohibition | $75.00 |
| 31-703(i)(3) | Violation of smoking while transporting passengers or sleeping in vehicle prohibition | $75.00 |
| 31-703(i)(4) | Refusal to transport passenger, for first violation | $250.00 |
| 31-703(i)(4) | Subsequent violations | $500.00 |
| 31-703(i)(5) | Failure to maintain a neat appearance; or failure to meet dress standards | $25.00 |
| 31-703(i)(6) | Failure to maintain accurate, legible trip records or failure to provide trip records to RER when requested | $25.00 |
| 31-703(i)(7) | Overcharging passenger | $250.00 |
| 31-703(i)(8) | Failure to provide receipt to paying passenger | $25.00 |
| 31-703(i)(9) | Operating an unsafe vehicle | $75.00 |
| 31-703(i)(10) | Violation of abusive language prohibition; or being discourteous to passengers or enforcement personnel or soliciting gratuities | $100.00 |
| 31-703(i)(11) | Operating a vehicle while ability or alertness is impaired | $250.00 |
| 31-703(i)(12) | Failure to notify RER of change of address within ten (10) days of relocation | $25.00 |
| 31-703(i)(13) | Failure to select the most economical route to destination | $100.00 |



Substitute to
Agenda Item No. 1(G)1
Page 56

| | | |
|---|---|---|
| 31-703(i)(14) | Violation of passenger diversion prohibition, or accepting payment for passenger diversion | $250.00 |
| 31-703(i)(15) | Failure to stop vehicle for inspection; or failure to allow authorized enforcers to inspect vehicle | $50.00 |
| 31-703(i)(16) | Failure to use air conditioning | $250.00 |
| 31-703(i)(17) | Displaying an altered chauffeur's registration | $250.00 |
| 31-703(i)(18) | Failure to sign and accept violation notice | $250.00 |
| 31-703(i)(19) | Vehicle operation with no valid operating permit and/or vehicle inspection displayed. Fine shall be reduced to $50.00 if valid operating permit or valid inspection decal is presented to RER within two (2) business days of citation issuance | $250.00 |
| 31-703(i)(20) | Vehicle operation when displayed operating permit decal or vehicle inspection sticker tampered or altered | $250.00 |
| 31-703(i)(21) | Refusal to transport passenger and service animal, for first violation | $500.00 |
| 31-703(i)(21) | Refusal to transport passenger and service animal; subsequent violations | $1000.00<< |
| >>31-705(b) | Failure to comply with requirements for designated public stands | $100.00 |
| 31-705(c) | Permitting a chauffeur to solicit passengers other than by prearrangement through the | $100.00 |

55

Substitute to
Agenda Item No. 1(G)1
Page 57

transportation network entity

| | | |
|---|---|---|
| 31-705(d) | Permitting a chauffeur to accept street hails | $100.00 |
| 31-705(e) | Permitting a network entity vehicle to display the word(s) taxicab, taxi or cab on the exterior or interior of the vehicle | $100.00 |
| 31-705(f) | Failure to comply with all ordinances, rules and regulations | $100.00 |
| 31-705(g) | Failure to provide chauffeur's name, license plate number and picture of vehicle to passenger | $100.00 |
| 31-705(j) | Failure to provide documents when requested by the RER | $200.00 |
| 31-707(a) | Failure to comply with insurance coverage requirements | $500.00 |
| 31-707(b) | Failing to provide necessary insurance coverage or insurance-related services | $500.00 |
| 31-707(c) | Failure to provide RER with required notices of insurance cancellation | $200.00 |
| 31-707(e) | Failure to provide documents when requested by the RER | $200.00 |
| 31-708 | Operating a vehicle in violation of the vehicle standards and Sec. 31-711(a) | $75.00 |
| 31-708(2) | Operating for-hire vehicle without a current, valid operating permit or inspection decal, as applicable displayed | $250.00 |
| 31-708(7) | Failure to have an operating air-conditioning system | $250.00 |



Substitute to
Agenda Item No. 1(G)1
Page 58

|  |  |  |
|---|---|---|
| 31-708(25) | Failure to have or to maintain in working order wheelchair restraining devices | $500.00 |
| 31-708(26) | Unauthorized display of "taxicab","taxi", or "cab" and/or use of taximeter | $100.00<< |

**Section 4.**     If any section, subsection, sentence, clause or provision of this ordinance is held invalid, the remainder of this ordinance shall not be affected by such invalidity.

**Section 5.**     It is the intention of the Board of County Commissioners, and it is hereby ordained that the provisions of this ordinance, including any sunset provision, shall become and be made a part of the Code of Miami-Dade County, Florida.  The sections of this ordinance may be renumbered or relettered to accomplish such intention, and the word "ordinance" may be changed to "section," "article," or other appropriate word.

**Section 6.**     This ordinance shall become effective ten (10) days after the date of enactment unless vetoed by the Mayor, and if vetoed, shall become effective only upon an override by this Board.

PASSED AND ADOPTED:

Approved by County Attorney as
to form and legal sufficiency:

Prepared by:

Gerald K. Sanchez

Co-Prime Sponsors:     Commissioner Esteban L. Bovo Jr.
                       Commissioner Audrey M. Edmonson
Co-Sponsors:           Vice Chair Lynda Bell
                       Commissioner Xavier L. Suarez
                       Commissioner Juan C. Zapata

*61*