UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No: 1: 15 CV 20356
Honorable Judge Jose E. Martinez/Magistrate Judge Jonathan Goodman

MIADECO CORP., a Florida Corporation,
B & S TAXI CORP., a Florida
Corporation, CHECKER CAB
OPERATORS, INC., a Florida
Corporation, and PHIL ELLIS LOWERY,
MINNIE MAE LOWERY, EDDIELENE
GAIL LOWERY BROWN, and ARNETT
LEE JR., individually and on behalf of
others similarly situated,

      Plaintiffs,

v.

UBER TECHNOLOGIES, INC., and
LYFT, INC.,

      Defendants.
_____/

**PLAINTIFFS' CORRECTED[1] RESPONSE IN OPPOSITION TO DEFENDANT
UBER'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

     Plaintiffs MIADECO CORP., a Florida Corporation, B & S TAXI CORP., a Florida
Corporation, CHECKER CAB OPERATORS, INC., a Florida Corporation, and PHIL ELLIS
LOWERY, MINNIE MAE LOWERY, EDDIELENE GAIL LOWERY BROWN, and ARNETT
LEE JR., individually and on behalf of all others similarly situated ("Plaintiffs"), respectfully
submit this Response in Opposition to UBER TECHNOLOGIES, INC.'s ("UBER") Motion to
Dismiss Plaintiffs' Amended Class Action Complaint. [DE 49]. For the reasons discussed below,
UBER's Motion has no merit and should be denied. In the alternative, Plaintiffs request leave to
amend their complaint to cure any deficiencies the Court may perceive.

---

[1] This corrected response addresses a request that the Court judicially notice Exhibits A & B.

## I.  INTRODUCTION

UBER's chief argument for dismissal of the Amended Class Action Complaint ("Complaint") is that all of the claims in it supposedly are based on Plaintiffs' misguided attempt to enforce a local ordinance that "lacks a private right of action" and does not apply to an "innovative" "technology platform" like UBER anyway. [DE 49:1-3, 11]. According to UBER, and despite the Complaint's express allegations, it really is not a for-hire transportation company or dispatcher, but rather a "technology company" that does nothing more than "license its App to drivers, who pay a fee to use the App to connect passengers who need transportation." [DE 49:11]. UBER says its App merely allows passengers to request transportation from "third party transportation providers" (i.e., UBER drivers). [DE 49:1]. Framing its argument through these benign descriptions, UBER insists that Chapter 31 of the Miami-Dade County Code of Ordinances ("MDCCO") is a throwback to quainter times, and thus cannot "regulate or apply to [UBER], which does not own any vehicles, does not employ, hire, or dispatch drivers, and does not operate a passenger service company." [DE 49:1]. UBER's dismissal argument fails.

In the first place, UBER overlooks that unlike the local ordinances at issue in lawsuits brought against it elsewhere, Chapter 31 expressly creates intangible property rights in for-hire medallions. Consequently, Chapter 31 impliedly authorized Plaintiffs to invoke the courts to protect their property against incursions by gatecrashers like UBER (and LYFT) who seek to dilute and diminish the property's value by evading any regulatory oversight or responsibility.

UBER's claim that it bears no resemblance to a traditional transportation company or for-hire transportation dispatcher likewise does not bear scrutiny.  A federal district court in California, UBER's home state, recently rejected that very argument.  In *O'Connor v. Uber Technologies, Inc.,* 2015 WL 1069092 (N.D. Cal. Mar. 11, 2015), UBER drivers brought suit against UBER, contending they are UBER employees and not independent "third party contractors," like UBER claims here. The district court denied UBER's motion for summary judgment on the employee vs. independent contractor claim, reasoning as follows:

> The central premise of [UBER's argument that its drivers are independent contractors] is Uber's contention that it is not a "transportation company," but instead is a pure "technology company" that merely generates "leads" for its transportation providers through its software. Using this semantic framing … **Uber passes itself off as merely a technological intermediary between potential riders and potential drivers. This argument is fatally flawed … Uber's self-definition as a mere "technology company" focuses exclusively on the mechanics of its platform (*i.e.,*

- 2 -

**the use of internet enabled smartphones and software applications) rather than on the substance of what Uber actually *does* (*i.e.,* enable customers to book and receive rides). This is an unduly narrow frame.** [italics in original] …

**Uber does not simply sell software; it sells rides. Uber is no more a "technology company" than Yellow Cab is a "technology company" because it uses CB radios to dispatch taxi cabs, John Deere is a "technology company" because it uses computers and robots to manufacture lawn mowers, or Domino Sugar is a "technology company" because it uses modern irrigation techniques to grow its sugar cane** … **If,** however, **the focus is on the substance of what the firm actually does** (*e.g.,* sells cab rides, lawn mowers, or sugar), **it is clear that Uber is most certainly a transportation company,** albeit a technologically sophisticated one. In fact, as noted above, **Uber's own marketing bears this out, referring to Uber as "Everyone's Private Driver," and describing Uber as a "transportation system" and the "best transportation service in San Francisco**."

***

**Under such circumstances, it strains credulity to argue that Uber is not a "transportation company" or otherwise is not in the transportation business** ….

*Id.* at \*6-8.[2] *See also* Exhibit A, the May 14, 2015 Florida DEO ruling finding that an Uber driver was UBER's employee and not an independent contractor.[3]

The ruling in *O'Connor*, Plaintiffs submit, is right on the money, and defeats UBER's primary argument that it is entitled to judgment as a matter of law on all of their claims. Given the *O'Connor* analysis, there can be no question that UBER acts as if it were a passenger service company and/or for-hire dispatcher within the meaning of the MDCCO, just as the Complaint alleges. [DE 40: ¶58]. There likewise can be no question that UBER's operations in fact are unauthorized and illegal. In January 2015, the Miami-Dade County Commission on Ethics and Public Trust went on record and stated that the "County has determined that drivers for firms like Uber are operating illegally and consequently, it has issued over 700 violations to drivers engaging in for-hire car service." [DE 49-2:6; DE 40: ¶ 63]. *See also* Exhibit B (Official letter from Miami-Dade County Mayor Carlos A. Gimenez to LYFT's former counsel). UBER itself has acknowledged that it runs afoul the MDCCO since it has coached its drivers on tactics to avoid being cited by law enforcement by "going dark." [DE 40: ¶ 62]; *see also* Exhibit B, the

---

[2] All emphasis has been supplied by counsel.

[3] Plaintiffs request that the Court take judicial notice of this DEO ruling as well as Exhibit B, an official letter from Mayor Gimenez addressing LYFT's operations. A district court may take judicial notice of such records without converting a dismissal motion into a summary judgment motion. *Klopfenstein v. Deutsche Bank Sec., Inc.* 592 F. App'x 812, 816 n. 5 (11th Cir. 2014).

letter from Miami-Dade County Mayor Carlos A. Gimenez to LYFT's counsel. Consequently, and in contrast to some other actions brought against UBER nationwide, Miami-Dade County has clearly and unambiguously indicated that UBER's operations violate provisions of the MDCCO.

UBER's additional arguments for wholesale dismissal of the Complaint have no merit either. UBER's "no causation" argument fails since the Complaint abounds with well-pleaded factual allegations, which must be accepted as true at this stage, that UBER's wrongdoing has resulted in the devaluation of Plaintiffs' for-hire medallions. Two federal district court decisions in cases against UBER prove Plaintiffs' point on this issue.  And as for UBER's related "no viable injury" argument, UBER disregards that Plaintiffs do not hold ordinary taxicab licenses: Plaintiffs bought and paid for Miami-Dade County for-hire medallions/licenses which -- under the express terms of Chapter 31, and as Chapter 31 has been interpreted by two federal courts in this district -- constitute intangible property entitled to judicial protection.

UBER's claim-specific assaults on Plaintiffs' Complaint are similarly without merit as UBER fails to apply the correct standard of review on a Motion to Dismiss and overlooks case law against its position. Thus, UBER's Motion to Dismiss should be denied in its entirety.

## II. ARGUMENT

### A.    STANDARD ON DISMISSAL

### 1.    Rule 12(b)(1)

To the extent UBER asserts Plaintiffs lack standing to bring this action, that argument is judged under the standard established by Rule 12(b)(1) of the Federal Rules of Civil Procedure. To establish standing under the rule, a plaintiff must show: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Florida Wildlife Fed'n, Inc. v. S. Florida Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011).

Attacks on subject matter jurisdiction under Rule 12(b)(1) are either facial or factual. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F. 3d 1256, 1260 (11th Cir. 1997). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.*  (internal quotations omitted).  "Factual attacks,

on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 1261 (internal quotations omitted). Here, UBER's attack is facial in that it alleges Plaintiffs have not sufficiently pleaded causation or a cognizable injury. [DE 49:15-18].

"Where the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits." *Eaton v. Dorchester Dev., Inc.*, 692 F. 2d 727, 733 (11th Cir. 1982). Thus, when "an attack on subject matter jurisdiction also implicates an element of the cause of action," the Court should apply a Rule 12(b)(6) standard. *Id.* at 1261.

**2.      Rule 12(b)(6).**

To the extent UBER seeks dismissal for failure to state a claim pursuant to Rule 12(b)(6), this Court has set forth the following standard to be applied:

> **When deciding a motion to dismiss, the court is limited to the four corners of the complaint and must accept all well-pleaded allegations as true, drawing all inferences in favor of the non-moving party** . . . "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) . . . If the court determines that "there are well-pleaded factual allegations, [the] court should ... determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). **A motion to dismiss should only be granted "when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief**."

*Trinidad & Tobago Unit Trust Corp. v. CB Richard Ellis, Inc.*, 280 F.R.D. 676, 677-78 (S.D. Fla. 2012) (Martinez, J.) (certain citations omitted).

In addition, Rule 12(b)(6)'s dismissal standard "does **not** impose a probability requirement at the pleading stage." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citations and quotation omitted). Indeed, the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the required element." *Id.* at 1309-10 (same). "**It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render [the element] plausible**." *Id.* at 1310 (same).

When the Complaint's allegations are measured against these principles, UBER's dismissal motion, whether based on either Rule 12(b)(1) or Rule 12(b)(6), is handily defeated.

**B.      UBER'S "NO PRIVATE RIGHT OF ACTION" ARGUMENT IS FLAWED SINCE CHAPTER 31 OF THE MDCCO CREATES A PROPERTY RIGHT OF ACTION.**

1.    **Overview.**

UBER argues that this action should be dismissed because "Chapter 31 [of the MDCCO] does not allow for a private cause of action and Plaintiffs cannot evade this legislative intent …." [DE 49: 7].[4] UBER relies on for-hire ordinances at issue in other actions across the country [DE 49: 9-10], entirely disregarding the fact that Chapter 31 creates property and includes provisions for the sale of that property to private individuals.  MIAMI-DADE COUNTY, FL, Code § 31-81(aa) ("Medallion system means the system which deems a taxicab for-hire license to be intangible property").[5] *See also*, *S. Florida Taxicab Ass'n v. Miami-Dade County*, 2004 WL 958073 (S.D. Fla. Mar. 18, 2004) (property interest created by Chapter 31 is protectable); *Restrepo v. Miami-Dade County et al*., 2002 WL 548821 (S.D. Fla. 2002) ("[t]he term 'medallion system' [in Chapter 31] signifies that a for-hire license constitutes intangible personal property rather than a mere license").

By creating intangible property and then selling that intangible property to private individuals, Miami-Dade County addressed the for-hire transportation industry in a manner that differs both structurally and in-kind from those local ordinances addressed by other courts determining whether a private right of action exists against entities like UBER (and LYFT) – i.e., entities which bear all of the hallmarks of transportation dispatchers, but purposefully meet none of the regulatory requirements.  *See* MINNEAPOLIS, MINN. CODE of ORDINANCES § 341.305 (2013); NEW ORLEANS, La. CODE of ORDINANCES § 162-59 (2012); Phila. Parking Authority Regulations for Taxicab and Limousine Serv. in the City of Phila. 11(a)(vi) (July 29, 2008); Boston Police Department Hackney Carriage Rules and Regulations (August 29, 2008) (failing to define a medallion as a property right).

---

[4] The decision in *Borja v. Uber Technologies, Inc.*, No. 15-20040-Civ-Scola (S.D. Fla. May 28, 2015), has no application in the instant case. Judge Scola addressed only whether Chapter 31 of the MDCCO created a private cause of action in favor of members of the public who are **not** holders of for-hire medallions/licenses. *Id.* at 5-6.

[5] Plaintiffs contend (and have alleged) that the County Commission's explicit denomination of a taxicab medallion as property is the last word on whether medallions constitute property in Miami-Dade County. To the extent the Court were to find otherwise, however, and rule that additional evidence is necessary, that evidence cannot be introduced on a motion to dismiss and Plaintiffs would respectfully suggest that such a determination should be made at the summary judgment stage with the benefit of testimony from County and industry officials.

UBER suggests that because Chapter 31 does not contain magic words like "private right of action," then no such action may exist.  [DE 49:10].  Not so: the question is whether "judicially imply a cause of action."  *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 550 (Fla. 2012).  While UBER is correct that legislative intent controls whether to judicially imply a private right of action from a statute/ordinance that contains no express language to that effect, *id.* at 550-51, UBER's analysis of the intent behind Chapter 31 is faulty because UBER gives short shrift to the fact that Chapter 31 creates property.  Instead, UBER analyzes the ordinance as if it merely is a vehicle for "licensing transportation providers."  [DE 49:10].  Plaintiffs submit that the creation of a property right is the evidence of legislative intent that should guide this Court's analysis.

**2.      Property Rights Are Sacrosanct Under Florida Law.**

The right to "acquire, possess, and **protect**" property is enshrined in the Florida Constitution under the heading "basic rights."  Art. I, §2, Fla. Const.  Indeed, "Property rights are among the basic substantive rights expressly protected by the Florida Constitution."  *Dep't of Law Enforcement v. Real Prop.*, 588 So. 2d 957, 964 (Fla. 1991).  Analyzing the scope of the constitutional right, the Florida Supreme Court looked toward the dictionary definition of terms "acquire," "possess," and "protect," and found that protect means "to guard, preserve and keep safe from harm, encroachment, injury, alteration, damage, or loss."  *Shriners Hosps. For Crippled Children v. Zrillic*, 563 So. 2d 64, 67 (Fla. 1990).

It is thus well established that with a property right comes the right to protect that property from those who would encroach upon the full exercise of the property right.  "American democracy is a distinct departure from other democracies in that we place emphasis on the individual and protect him in his personal property rights against the State **and all other assailants**."  *White v. Pinellas County*, 185 So. 2d 468, 471 (Fla. 1966).  And, in Florida, the general equity jurisdiction of the circuit courts under the Constitution includes the specific enforcement of property rights.  *Meloche v. Meloche*, 133 So. 339, 340 (Fla. 1931).  This protection of property rights against all accosters includes protection from non-governmental entities.  *E.g., Duvall v. Fair L. Acres, Inc.* 50 So. 3d 688, 671 (Fla. 2d DCA 2010) (holding that homeowner's association could not require members to give up right to dispose of property).

**3.      By Creating A Property Right, Chapter 31 Implies A Private Right Of Action.**

Despite UBER's repeated use of some variant of the word "exclusive," that word does not appear in MDCCO § 31-90, which merely provides a mechanism for enforcement "by authorized personnel of the [Consumer Services Department ("CSD")], the police forces of the various municipalities in Miami-Dade County and by the Miami-Dade Police Department."  And that section, apparently recognizing that citations and police enforcement may not be enough to enforce Miami-Dade's for-hire transportation system, also provides the CSD with the right to "secure enforcement" through the courts.  MIAMI-DADE COUNTY, FL, Code § 31-90(e).  And the section of the code regarding Passenger Service Companies provides no explicit enforcement mechanism, merely stating that "Violations shall be punishable as provided in this chapter."  *Id.* at § 31-100(l).

Although the MDCCO specifies an enforcement mechanism, it does not create an exclusive means of enforcement.  Nor could it.  With the creation of a property right comes certain rights and benefits enshrined in the Constitution.  *Zrillic*, 563 So. 2d at 67; *White*, 185 So. 2d at 471; *Meloche*, 133 So. at 340.  In creating taxicab medallions as intangible property, the drafters of Chapter 31 are presumed to have drafted it in accordance with constitutional principles.  *See State Dept. of Hwy. Safety & Motor Vehicles v. Killen*, 667 So. 2d 433, 436 (Fla. 4th DCA 1996) ("The Legislature must be presumed to be aware of the 1982 amendment to the Florida Constitution"); *see also*, *State ex rel. Gillespie v. Bay County*, 151 So. 10 (Fla. 1933) (Justice Ellis, concurring) ("Such an entry is a mere declaration that the Legislature has observed the requirements of the Constitution, which under the Constitution it is presumed to observe").

With constitutional property rights protection in mind, the drafters of Chapter 31 must have intended that owners of the created property would have the right to protect it through the judicial system.  Indeed, the United States Supreme Court considered a similar issue, and implied a private right of action in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 12-13 (1979).  There, the Court evaluated whether a private right of action could be implied from § 215 of the Investment Advisors Act, which states "that contracts whose formation or performance would violate the act shall be void … as regards the rights of the violator and knowing successors in interest."  *Id.* at 16-17.  Even though other provisions of the Act contained an express cause of action, while section 215 did not, the Court held that "[b]y declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere."  *Id.* at 18.  "[W]hen Congress declared in § 215 that certain

contracts are void, **it intended that the customary legal incidents of voidness would follow**, including the availability of a suit … for an injunction … and for restitution." *Id*. at 19.

Just as the voidness of a contract is accompanied by "customary legal incidents," so too is the creation and sale of intangible property. *Zrillic*, 563 So. 2d at 67; *White*, 185 So. 2d at 471; *Meloche*, 133 So. at 340. When the Miami-Dade County Commission established Chapter 31, and "a medallion system" that is "intangible property," it must have understood that with property comes the right to protect that property in a court. Thus, while the county may have intended to exclude the public at large from a private right of enforcement, it explicitly granted a private enforcement vehicle within the confines of the holder of the property itself. It is of no moment, Plaintiffs submit, that no express right was granted to the for-hire medallion/license holders; that right is a "customary legal incident" to the creation of property itself.

In *Jarrell v. Orlando Transit Co.*, 167 So. 664, 666 (Fla 1936), the Florida Supreme Court addressed the question of whether the holder of an exclusive franchise from a city to provide bus transportation could protect that franchise from unregulated competition in the courts. The Supreme Court answered in the affirmative, holding that "[t]he reason for a franchise or permit in such cases, whether it be exclusive or limited, is to secure for the public an efficient, safe, and dependable service." *Id*. at 667.

By creating intangible property ala for-hire medallions/licenses, Miami-Dade County created medallions/licenses that are functionally no different from an exclusive franchise that "will be protected as other rights are protected" "by injunction or other appropriate relief." *Jarrell*, 167 So. at 667. And so it is that for-hire medallion/license holders may seek relief in the courts to protect their property rights, even in the event that UBER's analysis would apply to prevent the public from enforcing Chapter 31. And therein lies the rub -- UBER would have this Court lump the public together with the for-hire medallion/license holders and then rule that there is no private right of action. But that analysis is flawed as it disregards the level of protection the Florida and Federal constitutions grant to private property rights.

There is another analog to be considered. In *Westside EKG Assocs. v. Foundation Health*, 932 So. 2d 214 (Fla. 4th DCA 2005), Florida's Fourth District Court of Appeal considered whether a private right of action to enforce a statute could be implied where that statute was incorporated into a private contract. Although the particular statute did not contain a

private right of action, the Court found the plaintiff had the right to enforce the terms of the statute by virtue of the rights accorded to it by private contract. *Id*. at 216-17.

The same can be said of an ordinance that creates property. That property was created by ordinance and that ordinance governs the transportation system for which that property was created. Failure to permit Plaintiffs an avenue to protect that property through the court system is analogous to the failure to permit contracting parties to protect their property rights. Indeed, interpreting Chapter 31 to restrict the rights of medallion owners to protect their property right is arguably a violation of the Florida Constitution's access to courts provision.

For all of these reasons, UBER's argument that all of Plaintiffs' claims fail because MDCCO Chapter 31 does not expressly authorize this action does not bear scrutiny. Moreover, it is also important to note that even if the Court determines that Plaintiffs have no right to protect their property by alleging that UBER is in violation of Chapter 31, Plaintiffs' Lanham Act, Trespass to Chattels, and common law Unfair Competition claims are not burdened by such a ruling and stand on their own. *See Manzo v. Uber Techns., Inc*., 2014 WL 3495401 at *5 (N.D. Ill. July 14, 2014); *Boston Cab Dispatch, Inc. v. Uber Techs., Inc.,* No. 13–10769–NMG, 2014 WL 1338144, at *25 (D. Mass. Feb. 28, 2014), *report & recommendation adopted in part & rejected in part,* 2014 WL 1338148 (D. Mass. Mar. 27, 2014).

## C.   UBER'S "NO CAUSATION" ARGUMENT IS FLAWED SINCE PLAINTIFFS HAVE ALLEGED SUFFICIENT NON-CONCLUSORY CAUSATION FACTS.

Plaintiffs allege in their Complaint that in the years prior to UBER's arrival in Miami-Dade County, there was an existing for-hire transportation market governed and defined by MDCCO Chapter 31. [DE 40: ¶¶ 34-35]. According to the MDCCO, as explained previously, for-hire medallions/licenses are intangible property. [DE 40: ¶ 36]. As a result of the limitation on the creation of new for-hire medallion/licenses and regulatory compliance in the industry, an equilibrium based on demand formed in the for-hire medallion market, allowing for-hire medallions to be valued and sold for consideration. [DE 40: ¶¶ 42-44, 143]. Then, in June of 2014, UBER began its transportation service operations in Miami-Dade County and, as a result of these operations, misrepresentations, and other wrongdoing, the for-hire market was diluted and fares that would have rightfully been paid to Plaintiffs have instead been paid to UBER. [DE 40: ¶ 69]. It follows that because the valuation of for-hire medallions is tied to their profitability, UBER's operations both directly and proximately diminished the value of

Plaintiffs' for-hire medallions. [40: ¶¶ 42, 69]. Indeed, the Complaint alleges -- repeatedly -- that UBER's wrongdoing has "induced customers, members of the riding public, to offer their business to UBER instead of for-hire license holders and operators of authorized for-hire transportation services, thereby diluting the for-hire transportation services market in Miami-Dade County and diminishing the value of for-hire licenses held by Plaintiffs and the putative class." [DE 40: ¶¶ 122-123; *see also* DE 40: ¶¶ 6-12, 42, 69, 95, 106, 147-49, 170, 191-92].

Despite the foregoing concrete and non-conclusory factual allegations, UBER insists that all Plaintiffs' claims fail because "there are too many intervening links and independent factors" to withstand dismissal on causation grounds. [DE 49:16]. Along these same lines, UBER hypothesizes that Plaintiffs' for-hire medallions/licenses may have lost value for reasons unrelated to UBER's activities, like "general economic conditions, the publicly perceived quality of for-hire transportation services, or a single entity holding multiple for-hire licenses deciding to leave the market … " [DE 40:16-17]. The problem with UBER's "no causation" theory is that the Complaint does not allege anything of the sort and the courts that have considered similar causation arguments from UBER have rejected them, and for good reason.

In *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 13-10769-NMG, 2015 WL 314131 (D. Mass. Jan. 26, 2015), UBER asserted that the unfair competition complaint filed against it by licensed taxicab entities should be dismissed on causation grounds akin to those UBER raises here. The district court disagreed:

> Uber contends that plaintiffs fail to plead facts showing that it proximately caused them any injury because plaintiffs … fail to plead any facts with respect to their alleged lost revenues or the reduction in the value of their medallions. **Uber's argument that the plaintiffs must negate all potential causes of loss other than those related to Uber's activities … At the pleading stage, plaintiffs must state a facially plausible legal claim and the Court must take non-conclusory factual allegations in the complaint as true** …
>
> **Contrary to Uber's contention that the plaintiffs' lost business might have gone to other medallioned taxis, common economic sense suggests that Uber's expansion of its car service business would have a high likelihood of affecting the revenue of all Boston medallioned taxis, including the plaintiffs.** *See Katin v. Nat'l Real Estate Info. Servs., Inc.,* 2009 WL 929554, at *7 (D. Mass. Mar.31, 2009) (explaining that the *Twombley* standards for pleading injury in fact can be met by establishing the overall effect of the defendant's unlawful behavior on the relevant market and the likelihood of harm to the plaintiff) ….

The First Circuit has confirmed that **economic realities can be used to analyze injury-in-fact allegations at the pleading stage** [citing cases]; *see also Am. Soc. of Travel Agents, Inc. v. Blumenthal,* 566 F.2d 145, 157 (D.C.Cir.1977) (acknowledging that "**all claims of competitive injury are to some extent speculative, since they are predicated on the independent decisions of third parties; i.e., customers. However, economics is the science of predicting these economic decisions** ...").

Moreover, plaintiffs claim that they will be able to show that Uber's vehicles have deprived revenue from all Boston medallioned taxis, including the plaintiffs. **Accordingly, plaintiffs have adequately pled the causal connection between Uber's alleged unfair acts and the diversion of revenue experienced by plaintiffs "to raise a reasonable expectation that discovery will reveal evidence of" their allegations of lost revenue.** *Twombly,* **550 U.S. at 556. Defendant's motion to dismiss Count I of plaintiffs' amended complaint will be denied**.

*Id.* at *4.

The federal district court in a Texas action against UBER and LYFT employed a similar rationale to reject their "no causation" as a matter of law theory:

**Uber and Lyft … argue that Plaintiffs have failed to properly allege proximate cause** because: (1) Plaintiffs failed to allege and cannot show that customers would have been influenced by most of the alleged misrepresentations, (2) Plaintiffs have not pleaded how their loss of business was the result of Defendants' alleged misrepresentations as opposed to less nefarious market factors, and (3) showing that a direct correlation between Plaintiffs' loss of business and Defendants' alleged misrepresentations would involve an impermissible amount of speculation.

… **While Plaintiffs have not offered the precise amount of business they have lost, they have alleged that Defendants' misrepresentations sway consumers of vehicle-for-hire services to use their services, resulting in damage to competing transportation services, such as Plaintiffs. … Plaintiffs need not prove that their harms were not wholly or in part the result of natural market factors to survive a motion to dismiss. It is sufficient that they pleaded that customers were induced by false advertising to offer their business to Plaintiffs' competitors instead of Plaintiffs** … **The Northern District of Illinois recently applied the holding in the** *Lexmark* **decision to a similar case involving Uber and numerous Chicago taxi companies**. *See Yellow Grp. LLC v. Uber Technologies Inc.,* No. 12 C 7967, 2014 WL 3396055, at *3 (N. D. Ill. July 10, 2014) (holding **at the [dismissal] stage that "the Court is satisfied that the Taxi Affiliation Plaintiffs and Your Private Limousine have plausibly alleged that Uber's deceptive advertising has caused customers to refrain from using their dispatch services**.").

***

**[T]he Court finds that Plaintiffs have adequately pleaded facts that support a theory that Defendants' actions are a proximate cause of Plaintiffs' injuries and establish standing to bring a cause of action under the Lanham Act**.

*Greater Houston Transp. Co. v. Uber Technologies, Inc.,* 2015 WL 1034254, at *8-9 (S.D. Tex. Mar. 10, 2015) (certain citations and quotations omitted).

UBER's "no causation" argument should be rejected by this Court, too. The analysis set forth in *Boston Cab Dispatch* and *Greater Houston* on the causation issue is sound, consistent with the dismissal pleading standard, and directly on point here.

**D.   THE "NO VIABLE INJURY" ARGUMENT IS FLAWED SINCE PLAINTIFFS HAVE ALLEGED SUFFICIENT NON-CONCLUSORY DAMAGES FACTS.**

UBER also argues that Plaintiffs' claims are infirm since the claimed damages, in the form of diminished value of Plaintiffs' for-hire medallions/licenses, negate any viable cause of action. Like UBER's other global assaults on Plaintiffs' claims, this one is similarly ineffective.

The Complaint alleges that Chapter 31 of the MDCCO, by its own terms, creates property rights in the form of for-hire medallions/licenses. The Complaint further alleges that these rights have been damaged by UBER's wrongdoing. [DE 40: ¶¶ 6-12, 42, 69, 95, 106, 122-23, 148-49, 170, 191-92 147-148]. As discussed above, the MDCCO defines the for-hire medallion/licenses owned by Plaintiffs as "intangible property." Courts in this district have (rightly) determined that, unlike a garden-variety license from a governmental entity, "[t]he term 'medallion system' [in Chapter 31] signifies that a for-hire license constitutes **intangible personal property rather than a mere license**"). *Restrepo*, 2002 WL 548821; *see also Florida Taxicab Ass'n v. Miami-Dade County,* 2004 WL 958073. And as these courts have also concluded, this property interest is protectable and enforceable. *See S. Florida Taxicab Ass'n,* 2004 WL 958073.

UBER's argument that courts in Minnesota and Louisiana have found that the plaintiffs there "merely possess[ed] a license to participate in the highly regulated taxicab market [that] is subject to regulatory change" is a non-starter. [DE 49:17-18]. UBER's cases are inapposite because the licenses at issue in those cases were ordinary licenses/privileges; whereas here, Plaintiffs' for-hire medallions/licenses have been explicitly defined by Miami-Dade County as **intangible property**, a distinction with a legally substantial difference that carries with it the right of protection. *See and compare* MDCCO § 31-81(aa) ("Medallion system means the system which deems a taxicab for-hire license to be intangible property"); *Restrepo*, 2002 WL 548821; *Florida Taxicab Ass'n,* 2004 WL 958073, *with Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F. 3d 502 (8th Cir. 2009); MINNEAPOLIS, MINN. CODE of ORDINANCES § 341.305 (2013) (all taxicab licenses "shall remain the property of the City of Minneapolis."),

and *Dennis Melancon, Inc. v. City of New Orleans,* 703 F. 3d 262 (5th Cir. 2012); NEW ORLEANS, La. CODE of ORDINANCES § 162-59 (2012) (driver's permits and CPNCs are "privileges and not rights").[6]

**E.      The Complaint States A Plausible FDUTPA Claim.**

Count I asserts a claim against UBER under the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* [DE 40: ¶¶ 110-123]. UBER argues that this claim fails because Plaintiffs are its business competitors and not "consumers," and, according to UBER, only consumers may assert claims under the Act. [DE 49:18]. While there is some legal support for UBER's interpretation of the Act, *see Leon v. Tapas & Tinos, Inc.*, 2014 WL 5032435 (S.D. Fla. Oct. 8, 2014), the better reasoned authorities from this district have concluded that the 2001 amendment to the Act conferred standing on business competitors as well as the typical purchaser of goods and services.

FDUTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" § 501.204(1). The Act's purpose is "[t]o protect the consuming public and **legitimate business enterprises** [like Plaintiffs] from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

---

[6] Similarly unavailing is UBER's argument that despite Miami-Dade County's creation of intangible property in for-hire medallions, the rights held by the Plaintiffs are somehow degraded by the applicable regulatory structure because "[t]he County has the final say over whether to approve any sale of a license, whether to renew a license application, and whether to issue any new licenses." [DE 49:17]. UBER provides absolutely no authority for it donning the cloak of governmental authority in this private party vs. private party scenario, and UBER does not provide any authority for the additional claim that a property right like the one held by Plaintiffs is not enforceable by a private party against another private party. Nevertheless, even if UBER could tenably argue that Plaintiffs do not have a protectable property interest in this context (which is denied), its argument would still fail since, even in a governmental takings analysis, the degree to which a property interest is impaired is based on a totality of circumstances analysis. *Villas of Lake Jackson, Ltd. v. Leon County.*, 121 F.3d 610, 614 (11th Cir. 1997). The fact that Miami-Dade County may have the final say over whether to approve the sale of a for-hire license is not fatal to Plaintiffs' property interests because under this analysis, Plaintiffs can still use, enjoy or dispose of the for-hire license. *See generally* MIAMI-DADE COUNTY, FL, Code § 31. Moreover, in a scenario where Plaintiffs want to sell, or not renew their for-hire license, or where the for-hire license is foreclosed on, the County is bound to auction off the license to the highest bidder, and to provide the former owner with the proceeds of the sale, less the payment of any applicable liens. *Id.* at § 31-82(r)(8)(i). Finally, the issuance of new for-hire licenses currently is determined by a formula that is tied to population in Miami-Dade County. *Id.* § 31-82(p)(1).

§ 501.202(2). The Florida Supreme Court has held that a practice is unfair if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003) (certain quotations omitted). The Act explicitly instructs that the courts are to **construe its provisions liberally**. § 501.202.

In *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269 (S.D. Fla. 2013), the Court explained the evolution of FDUTPA as follows:

> Before 2001, the FDUTPA allowed "a consumer who has suffered a loss as a result of a violation" of the FDUTPA to bring a cause of action. Fla. Stat. § 501.211(2) (2000). The Florida Legislature amended § 501.211(2) to replace "consumer" with "person" in 2001 … Since that amendment, courts have disagreed as to whether nonconsumers may bring a private action under the FDUTPA … On its face, the FDUTPA statute seeks "[t]o protect the consuming public *and legitimate business enterprises* from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (emphasis added). It is unclear if the word "consuming" applies to only "public" or also to "legitimate business enterprises." The more natural reading is that this clause lists two independent groups that the Act seeks to protect: first, 'the consuming public,' and second, 'legitimate business enterprises.…

*Id.* at 1286-1287 (certain citations and quotations omitted; italics by the court).

The plaintiff there alleged that it was a legitimate enterprise and that the defendants had engaged in wrongful activities in trade or commerce, the Court refused to dismiss the FDUTPA claim simply because the plaintiff was not a "consumer." *Id.* at 1287; *see also Kelly v. Palmer, Reifler, & Associates, P.A.,* 681 F. Supp. 2d 1356, 1372-74 (S.D. Fla. 2010) (italics by the Court) ("Applying a liberal construction to § 501.211(2), as we are compelled to do when construing the provisions of FDUTPA … we see no reason not to conclude that replacing the term 'consumer' with 'person' served to broaden the reach of the statute so that more than just *consumers* could avail themselves of the protection of this statute. We agree with the line of cases that so hold as a matter of standing to sue"); *Niles Audio Corp. v. OEM Sys. Co.*, 174 F. Supp. 2d 1315, 1319-20 (S.D. Fla. 2001) (same). This Court should come to the same conclusion here.

UBER's additional assault on Plaintiffs' FDUTPA claim fares no better. UBER cites no authority for its contention that the MDCCO is not a "law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." [DE 49:18]. In contrast, the Complaint expressly alleges that the MDCCO "is an

ordinance within the meaning of FDUTPA which proscribes unfair methods of competition" [DE 40: ¶ 118], and its provisions amply support Plaintiffs' position. Consequently, the Complaint states a plausible claim under a *per se* theory of FDUTPA liability. In the alternative, in consideration of the above, the Complaint states a plausible claim for "traditional" FDUTPA liability. *See Williams v. Delray Auto Mall, Inc.*, 916 F. Supp. 2d 1294, 1300 (S.D. Fla. 2013)(stating that "in order to claim a "traditional" FDUPTA violation, a plaintiff must establish (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages").

**F.      The Complaint States A Plausible Trespass To Chattels Claim.**

UBER contends that Plaintiffs' Trespass to Chattels claim (Count III) must be dismissed because (1) the Complaint does not allege a "physical or forcible touching" of any Plaintiffs' personal property, and (2) Plaintiffs are mere "license holders" who do not have a "property interest" in the resale value of their licenses. [DE 49:19]. These arguments do not bear scrutiny.

In Florida, "[t]respass to personal property is the **intentional** use of, or **interference with**, **a chattel** which is in the possession of another, without justification." *Coddington v. Staab,* 716 So. 2d 850, 851 (Fla. 4th DCA 1998). In this connection, the Complaint alleges that by virtue of the MDCCO, the County created property in the form of the for-hire medallions/licenses that Plaintiffs own. [DE 40: ¶ 140]. The Complaint further alleges that the MDCCO confers on Plaintiffs the exclusive authority to provide for-hire transportation services and this is an exclusive chattel right derived from the for-hire medallion/license. [DE 40: ¶¶ 141-142]. UBER has, however, through its unauthorized and illegal provision of for-hire transportation, intentionally "**interfered with the possessory interest** held by Plaintiffs and the putative class in the property rights created by Miami-Dade County and bestowed by the for-hire licenses, to wit: their rights to exclusively provide for hire transportation services within Miami-Dade County, and therefore their rights to collect income from same." [DE 40: ¶ 145].

Plaintiffs submit that Count III states a plausible claim for relief under *Coddington. See also In re Am. Online, Inc.*, 168 F. Supp. 2d 1359, 1380 (S.D. Fla. 2001*); eBay, Inc. v. Bidder's Edge, Inc.,* 100 F. Supp. 2d 1058, 1066-67 (N.D. Cal. 2000). UBER has cited no case from Florida holding that "physical or forcible touching" is an essential element of a Florida Trespass to Chattel theory of liability. And as for UBER's argument that Plaintiffs do not a have "property" interest in the resale value of their for-hire medallions/licenses, that argument has already been shown to lack merit. *See* Argument Sections II. B. and II. D. above.

**F.      The Complaint States A Plausible Lanham Act False Advertising Claim.**

To succeed on a Lanham Act false advertising claim, the plaintiff must allege and prove:

(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising.

*Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir.2004). A representation by a defendant can be either literally false or misleading.  *Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1318-19 (11th Cir. 2010).

When determining whether an advertisement is literally false or misleading, courts "must analyze the message conveyed in full context," and "must view the face of the statement in its entirety...." *Id.* at 1308. "Statements that have an unambiguous meaning, either facially or considered in context, may be classified as literally false." *Id.* at 1309. Where a court deems an advertisement to be literally false, the plaintiff need not present evidence of consumer deception." If, on the other hand, the court deems the advertisement to be true but misleading, then the plaintiff is required to present evidence of deception. *Id.* at 1319.

**1.      Uber's Misrepresentation Regarding Compliance With The Local Law.**

The Complaint alleges that UBER represents that "[t]he specifics vary depending on what local governments allow, but **within each city we operate, we aim to go above and beyond local requirements to ensure your comfort and security** – what we're doing in the US is an example of our standards around the world." [DE 40: ¶ 71]. UBER argues that "this is not a representation of fact that UBER is subject to or complying with anything; it is merely a non-actionable statement of aspiration or belief." [DE 49:12]. UBER is wrong. First, UBER's advertising is literally false, because when viewed in its totality, it is reasonable to conclude that UBER is asking the public to infer not only that it is in compliance with the local requirements set forth in Chapter 31 of the MDCCO, but that it is somehow limited by what Miami-Dade County will allow to ensure rider comfort and safety. In truth, UBER fails even to comply with the minimum regulatory requirements of Miami-Dade County, much less exceed them. UBER's representations are unambiguous and literally false. Dismissal therefore should be denied.

Even if UBER's representations were merely misleading (which is denied), Plaintiffs satisfy the pleading demands at the dismissal stage: the Complaint sufficiently alleges that UBER's representations are misleading and have materially affected the decisions of consumers.

[DE 40: ¶¶ 70-73, 75-76 169,170. And, contrary to UBER's claim that Plaintiffs have not alleged facts showing that any passenger was deceived or misled into using UBER, the Complaint has specifically done so. [DE 40: ¶ 170].  Since the Court is bound to accept these allegations as true, Plaintiffs have alleged an actionable Lanham Act claim.

Moreover, while it is generally true that mere aspirational statements are not actionable, UBER overlooks the exception to this rule: "a statement known at the time by the speaker to be false, or a statement by a speaker who lacks a good faith belief in the truth of the statement, may constitute an actionable misrepresentation [under the Lanham Act]." *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 2014 WL 1329359 at *18 (S.D. Fla. Mar. 31, 2014). Putting aside UBER's lobbying efforts to have the County Commissioners change the for-hire transportation laws to accommodate itself, Plaintiffs have alleged that UBER lacked a good faith belief in the truth of the statement, specifically alleging that "on its own website, UBER expressly acknowledged the illegal business model of LYFT . . . and then explain[ed] that they will do the same thing in an effort to compete with LYFT and other unlicensed for-hire transportation providers." [DE 40: ¶ 73]. This knowledge of UBER's unauthorized and illegal status indicates that even if UBER's representations were just aspirational (which is denied), they are still actionable.

**2.      Uber's Insurance Misrepresentations.**

UBER asserts that it has not misrepresented the nature and character of its insurance coverage. [DE 49:13]. This argument is also deficient. Plaintiffs' Complaint takes issue with UBER's representations about its supposedly "robust insurance coverage" and "best-in-class coverage." [DE 40: ¶ 77]. These representations are literally false, as they are grounded in a quantifiable and unambiguous classification of "best-in-class." UBER's insurance policy is not actually the best-in-class – to the contrary, it is a surplus lines policy issued by a surplus lines carrier, and such policies exist in a dimly regulated market and function ambiguously. [DE 40: ¶¶ 77-79].  Because Plaintiffs' allegations must be taken as true, this alone defeats UBER's motion.

UBER argues that its insurance representations were non-actionable "puffery." [DE 49:13-14]. First, "[s]pecific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that cannot." *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014). A totality of the circumstances analysis is used to determine whether a statement is puffery, and from this lens, the statement can be paired with others to determine its

deceptive nature. *Id*. Therefore, when UBER says its insurance is "best-in-class," this is not puffery because it is a quantifiable statement of fact, rather than a general, unverifiable claim, and because the identity of the entity with the best-in-class insurance coverage is readily ascertainable. *See id*.  Plaintiffs have alleged that UBER's insurance is not the best-in-class, and that UBER's statements have deceived the riding public, enticing them to offer their business to UBER instead of Plaintiffs. [DE 40: ¶¶ 76-79, 84-86,88-95 169-170].  Again, since the Court is bound to accept these allegations as true, dismissal is not warranted.

Alternatively, even if UBER's advertisement regarding its insurance was merely misleading as opposed to literally false (which, once more, is denied), Plaintiffs satisfy the pleading demands at the dismissal stage since they have sufficiently alleged that UBER's insurance representations are misleading and that the decisions of members of the riding public have been materially influenced by them. [DE 40: ¶¶ 76-79, 84-86, 88-95, 169-170]. And, contrary to UBER's claim that Plaintiffs failed to allege facts showing that any passenger was deceived or misled, the Complaint alleges that "[a]s a result of these false representations, customers have been and are induced to offer their business to UBER instead of for-hire license holders and operators of authorized for-hire transportation services . . . ." [DE 40: ¶ 170].  Thus, Plaintiffs have alleged an actionable Lanham Act claim.

Finally, although Plaintiffs are not required at the dismissal stage to prove their claims, the Complaint provides examples of UBER's misrepresentations to show that its statements were false. [DE 40: ¶¶ 76-79, 84-86, 88-95 169-170].  For instance, Plaintiffs allege that any insurance would be moot due to lengthy disclaimers in UBER's customer agreements, and further allege that UBER has no insurable interest. [DE 40: ¶¶ 84-86, 88-95].  UBER's claims that Plaintiffs' allegations are substantively wrong are misplaced at the dismissal stage. In any event, even if UBER's insurance coverage is real, there are still material factual issues as to its applicability to UBER's passengers and drivers as a result of UBER's terms of service. These issues may be addressed at summary judgment or trial, but not on a motion to dismiss. Indeed, that was the very holding of the Texas district court in which the Court rejected UBER's claim that it was entitled to dismissal of the plaintiffs' Lanham Act claim based on its alleged misrepresentations regarding insurance. *Greater Houston Transp. Co.,* 2015 WL  at *14-15.

**G.      The Complaint States A Plausible Florida Unfair Competition Claim.**

In Florida, a claim for common law "[u]nfair competition … acts as an umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters." *Chassis Master Corp. v. Borrego*, 610 F. Supp. 473, 479 (S.D. Fla. 1985). Plaintiffs assert that UBER is guilty of numerous acts and practices -- in addition to the alleged misrepresentations set forth in their Lanham Act claim -- that meet this standard for recovery on a Florida common law Unfair Competition claim. [DE 40: ¶¶ 193-201]. UBER's sole challenge to this claim, however, is that because Plaintiffs' Lanham Act misrepresentation claim fails, Plaintiffs' Unfair Competition claim necessarily fails too.

UBER's attempt to evade responsibility for Unfair Competition liability has no merit. First, as Plaintiffs established in the preceding section of this Response, the Lanham Act claim states a plausible claim for relief and thus should not be dismissed. Following UBER's reasoning, dismissal of the common law Unfair Competition claim is not warranted either. What's more, UBER has inappropriately equated a Florida common law Unfair Competition claim with a federal Lanham Act claim. As noted, a defendant may be held liable for common law Unfair Competition in Florida where that defendant is shown to have engaged in "business conduct which is contrary to honest practices in industrial or commercial matters." Plaintiffs have met that pleading burden here, irrespective of the fate of their Lanham Act claim.

## H. The Complaint States A Plausible Claim For Declaratory Relief.

UBER contends that Plaintiffs' count for declaratory relief is flawed because a declaration is a form of relief, not a cause of action. [DE:49:20]. But Plaintiffs tie their request for declaratory relief to each of the counts asserted against UBER. [DE:40: ¶¶206-07, 211]. Plaintiffs allege that they are in doubt whether "UBER is operating in violation of the rules and regulations contained Chapter 31 of the MDCCO." [DE:40: ¶207]. To the extent Plaintiffs were to prevail on their FDUTPA, Trespass to Chattels, and Unfair Competition counts, a declaration of Plaintiffs rights to be free from unwarranted intrusion on their property rights would be warranted. Such a declaration would not usurp the County's authority, as the County explicitly granted Plaintiffs property rights that may be protected in court.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that UBER's Motion to Dismiss their Complaint be denied in all respects. In the alternative, Plaintiffs request that they be granted leave to amend their Complaint to cure any pleading deficiencies that the Court may perceive.

- 20 -

*Crowe v. Boatright RR. Cos.,* 2014 WL 3889875 at \*3 (N.D. Ala. Aug. 7, 2014); *Manzo v. Uber Technologies, Inc.*, No. 13 C 2407, 2014 WL 3495401 at \*5 (N.D. Ill. July 14, 2014)

**Respectfully submitted this 5th Day of June, 2015.**

|  |  |
|---|---|
| ___/s Daniel M. Samson___. | ___/s Ralph G. Patino___. |
| Daniel M. Samson, Esq. | Ralph G. Patino, Esq. |
| Florida Bar No. 866911 | Florida Bar No. 768881 |
| dan@samsonappellatelaw.com | Ryan P. Forrest, Esq. |
| Samson Appellate Law | Florida Bar No. 111487 |
| 201 S. Biscayne Blvd., Suite 2700 | service@patinolaw.com |
| Miami, Florida 33131 | RForrest@patinolaw.com |
| T: (305) 341-3055 | Patino & Associates, P.A. |
| F: (305) 379-3428 | 550 Biltmore Way, Suite 740 |
| *Attorneys for the Plaintiffs* | Coral Gables, Florida 33134 |
|  | T: (305) 443-6163 |
|  | F: (305) 443-5635 |
|  | *Attorneys for the Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

By: ___/s Ralph G. Patino___.
**RALPH G. PATINO, ESQ.**
Florida Bar No. 768881

*[Service List Follows]*

## SERVICE LIST

Robert M. Brochin, Esq.
Florida Bar No. 0319661
Brian M. Ercole, Esq.
Florida Bar No. 102189
Melissa M. Coates, Esq.
Florida Bar No.: 111420
Bercole@morganlewis.com
Rbrochin@morganlewis.com
mcoates@morganlewis.com
Morgan, Lewis, Bockius, LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Phone: 305-415-3303
Fax: 877-432-9652
*Attorneys for Uber Technologies, Inc.*

Andrew Kemp-Gerstel, Esq.
Florida Bar No. 44332
Junaid N. Savani, Esq.
Florida Bar No. 88816
Service@lgplaw.com
akg@lgplaw.com
jns@lgplaw.com
mkv@lgplaw.com
Liebler, Gonzalez & Portuondo
44 W. Flagler St.
Miami, FL 33130
Phone:  305-379-0400
Fax:      305-379-9626
*Attorneys for Lyft, Inc.*

Danny David, Esq.
Texas Bar No. 24028267
Danny.david@bakerbotts.com
Baker Botts LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Phone: 713-229-4055
Fax: 713-229-2855
*Attorneys for Lyft, Inc.*